**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| *In re: PVC Pipe Antitrust Litigation* <br> _____ <br> This Document Relates To: <br> *All Direct Purchaser Plaintiff Actions* | Case No. 1:24-cv-07639 <br><br> Hon. LaShonda A. Hunt |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFF BILL WAGNER & SONS, INC.'S MOTION TO APPPOINT KAPLAN FOX & KILSHEIMER LLP AS LEAD COUNSEL FOR THE DIRECT PURCHASER CLASS AND SPERLING & SLATER, LLC AS LIAISON COUNSEL FOR THE DIRECT PURCHASER CLASS**

## INTRODUCTION

Pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure, and to preserve time and resources and ensure the effective prosecution of this litigation, Plaintiff respectfully requests that the Court appoint Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Lead Counsel for the proposed class of direct purchasers (the "Direct Purchaser Plaintiff Class" or "DPPs"), and Sperling & Slater, LLC ("Sperling & Slater") as Liaison Counsel for that class.[1]

These firms and their co-counsel seek to represent a class of entities that purchased PVCP <u>directly</u> from the Defendant manufacturers of PVCP (known as "converters"). This proposed class of direct purchasers is different and distinct – both legally and factually – from the proposed class of "purchasers of PVC Pipes through a non-converter seller," who for brevity's sake will be referred to here as "PFNCS Plaintiffs" represented by the Lockridge Grindal Nauen and Scott + Scott firms, who recently filed an application for appointment as co-lead counsel for the PFNCS Plaintiffs' classes.[2] The PFNCS Plaintiffs actions seek an injunction under federal law, and damages under various state statutes. DPPs bring only a claim under federal law for an injunction and damages. The same lead class counsel cannot represent the PFNCS Plaintiffs and the DPPs, since there are conflicts between the two classes of plaintiffs, including so-called "pass-on" issues.

The PFNCS Plaintiffs do not object to the filing of this motion or to the appointment of Kaplan Fox and Sperling & Slater. Three defendants have advised do not oppose this motion; the remaining defendants have advised us that they take no position on this motion.

---

[1] Consistent with the Court's 26 September 2024 Order Regarding Stipulation of the Parties As To Relatedness, Reassignment, and Initial Case Management Deadlines in *In re: PVC Pipe Antitrust Litigation*, 1:24-cv-07639, ECF No. 109, at ¶ 13, Plaintiff's motion was first filed on 30 September 2204 before Judge Kness, before whom the case was then pending.

[2] *In re: PVC Pipe Antitrust Litigation*, 1:24-cv-07639, ECF No. 111, at 1, Memorandum of Law in Support of Unopposed Motion to Appoint Lockridge Grindal Nauen PLLP and Scott + Scott Attorneys at Law LLP Co-Lead Class Counsel Pursuant to Federal Rule of Civil Procedure 23(g).

1

Even though only one direct purchaser complaint has been filed to date, Lead Counsel should be appointed so that the DPP Class' case can be on the same schedule as the PFNCS Plaintiffs' classes, which will ensure the efficient prosecution of this litigation.

Federal Rule of Civil Procedure 23(g)(3) permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Designating interim class counsel is essential because it "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation (Fourth) ("MCL Fourth") § 21.11 (2004)..

Kaplan Fox, which has an office in this District operated by counsel Gary Specks, has extensive experience litigating and trying antitrust cases (both class actions and opt-out cases) in Seventh Circuit courts and in this District in particular. Since 2022 alone, the firm has tried two antitrust cases to verdict (in both instances along with proposed Liaison Counsel Sperling & Slater): *In re Opana ER Antitrust Litigation*, No. 1:14-cv-02114, before late Judge Lienenweber, where Kaplan Fox was court-appointed liaison counsel for the direct purchaser class and helped recover over $115 million from one defendant,[3] and *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08737, before Judge Durkin, where the firm represented as opt-out plaintiffs large retailers and distributors, securing favorable confidential settlements for its clients.[4] Kaplan Fox has been

---

[3] Kaplan Fox, who served as co-counsel with Sperling & Slater for class representative Meijer, Inc. in *Opana*, tried the case along with Ms. Garvey and Mr. Hogan, now of Scott + Scott, who represented at their prior firms end-payors (who in a reverse-payment drug case are the rough equivalent of indirect purchasers in a cartel case like the one here).

[4] Kaplan Fox and Sperling & Slater, both of whom represented large opt-out plaintiffs in *Broilers*, tried the lengthy and complex case with the Lockridge firm, working closely and collaboratively

appointed as a co-lead class counsel by Judge Tharp in *In re Surescripts Antitrust Litigation*, 1:19-cv-06627, and was also co-lead counsel for a certified class of direct purchasers in *In re High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087 (C.D. Ill.) ("*Fructose*"), where it argued the seminal summary judgement decision before the Seventh Circuit, cited at 295 F.3d 641 (7th Cir. 2004). More information about Kaplan Fox and its attorneys can be found on its website www.kaplanfox.com.

Kaplan Fox has an exceptional record of experience, knowledge, and commitment of resources in similar litigation, including some of the largest and most complex antitrust class actions in recent years. The firm has already dedicated significant time and resources to the investigation and prosecution of this litigation on behalf of the proposed DPP Class, and along with Sperling & Slater, will continue to do so. Kaplan Fox thoroughly investigated, drafted and filed the first direct purchaser complaint on file anywhere in the country. As part of its thorough investigation, the firm consulted extensively with an economist, who performed preliminary economic analyses, combed through many pages of publicly-available documents, press releases, and industry publications, and discussed the structure and functioning of the PVCP marketplace with market participants.

This case involves complex legal, factual and economic issues that will require a strong team of experienced counsel to litigate. Kaplan Fox, with offices in both New York and Chicago, has proven expertise in complex antitrust litigation and has a history of representing plaintiffs successfully in similar cases and is well-positioned to deliver exceptional results for the proposed class. Its knowledge and understanding of intricacies involved in this litigation make it an ideal choice for this appointment as Lead Counsel for the DPP Class. Chicago-based Sperling & Slater's

---

for many years in preparing and trying the case.

similarly extensive experience and long history successfully litigating complex antitrust and other cases make it an equally appropriate choice for appointment as Liaison Counsel.

The case demands substantial factual development, comprehensive domestic (and possibly foreign) party discovery, analysis of potentially millions of documents (including documents in foreign languages), extensive non-party discovery within the PVCP chain of distribution, extensive data processing and econometric analysis, and the navigation of many complex issues under federal antitrust law.

Kaplan Fox and Sperling & Slater are confident in their abilities to effectively and efficiently leverage the expertise and experience of any other later-filing firms when it serves the best interests of the putative class, ensuring the most favorable outcome.

## BACKGROUND

I. **PVCPs, THE DPP CLASS, AND PLAINTIFF'S ALLEGATIONS.**

PVCPs are an indispensable component of America's infrastructure, playing a crucial role in numerous vital segments of the nation's economy.[5] The DPP Class members purchased PCVPs directly from the Defendants. The proposed DPP Class is made up of various types of entities such as builders, contractors, plumbing and utility companies. Plaintiff alleges that the Defendants – the nation's largest manufacturers, or "converters" or PVCPs – conspired with each other to fix the prices of PVCPs sold to Plaintiff and other direct purchasers. This cartel was facilitated by the knowing participation of Defendant the Oil Price Information Service, LLC ("OPIS"). OPIS is the industry's only source of PVC pipe prices, which publishes a regular report (the "OPIS

---

[5] *Bill Wagner & Son, Inc. v. Atkore, Inc. et al.*, Case No. 1:24-cv-08991, ECF No. 1 ("*Wagner* Complaint"), at 12-14.

Report") containing, among other things, prices and quotes about Converter Defendants' future pricing actions, the state of the market, and the need to maintain pricing "discipline."[6]

The Wagner Complaint alleges that each Converter Defendant knew the OPIS Reports were being read by the other Converter Defendants, and while OPIS is ostensibly a price-reporting service, its actual function was to act as a crucial source of detailed, forward-looking pricing information among the Defendants, facilitating their cartel and ensuring the success of their collusive efforts to illegally boost prices, causing significant damages to Plaintiff and the DPP Class it seeks to represent.[7] Moreover, it is alleged that this conduct took place in a concentrated market ripe for collusion, with Converter Defendants meeting regularly at trade association functions to confirm each other's continued adherence to their illegal agreement.[8]

## II. CASE COMPLEXITY AND WORK REQUIRED.

This antitrust price-fixing litigation presents complex factual and legal issues, requiring extensive time, effort, and financial resources from DPPs and their appointed counsel. With 12 families of Defendants, liability issues alone will necessitate a broad discovery process, including both fact and expert discovery. Drawing from past antitrust actions, it is anticipated that Defendants' document productions will amount to millions of pages or multiple terabytes of structured and unstructured data. The discovery process will involve meticulous meet and confers, potential discovery motions, and in-depth analyses of these productions—all demanding substantial data management. Deposition discovery will be similarly complex and labor intensive, requiring dedicated team of skilled antitrust lawyers that the Kaplan Fox and Sperling & Slater firms can provide.

---

[6] *Id.*, at 16-21.
[7] *Id.*, at 21-23.
[8] *Id.*, at 14-16, 22-27.

Moreover, it is likely that, in order to sufficiently develop the factual and economic record there will be discovery from numerous non-parties. The process of meeting and conferring with these non- parties is time-consuming and requires experienced antitrust litigators who have strong negotiation skills but who are also sensitive to the nonparties' burdens. Kaplan Fox and Sperling & Slater have extensive experience doing so. Finally, work with expert economists related to class certification, impact and damages will also constitute a significant undertaking. This work will include, among other tasks, managing experts in the pursuit, review and processing of structured data from defendants for use in econometric and other analyses in connection with class certification and expert merits reports.

These tasks, while substantial, represent only a portion of the work required of Lead Counsel, and supporting counsel such as Liaison Counsel, in this litigation. Counsel is happy to provide further detail regarding what the litigation will likely entail if helpful to the Court's assessment of this Motion.

## ARGUMENT

### III. STANDARDS FOR APPOINTING CLASS COUNSEL.

Federal Rule of Civil Procedure 23(g)(3) allows the court to designate "interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." *Id.* Interim lead counsel must represent the interests of the class. Fed. R. Civ. P. 23(g)(2). In selecting interim lead counsel, this Court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigations, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Courts have found that proposed interim lead counsel's experience and service as lead counsel in prior cases is particularly persuasive. *In re FIFCO*

6

*Antitrust Litigation Related Cases*, 2021 WL 4478042, at *6 (N.D. Ill. Sept. 30, 2021) (finding interim lead counsel qualified to serve because they had "the expertise and experience needed to represent the proposed class."); *Moore v. Groeb Farms*, 2013 WL 12621969, at *3 (N.D. Ill. Aug. 9, 2013) (finding the fact that a firm has "a breadth of experience, resources, and talent that is currently serving as co-lead counsel in some 17 major national antitrust class action cases" weighs strongly in favor of appointing that firm as interim co-lead class counsel).

In addition to the four "must" factors in Rule 23(g)(1)(A), a court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), *see also Smith v. State Farm Automobile Insurance Company*, 301 F.R.D. 284, 288 (N.D. Ill. Jan. 21, 2014), which in this District routinely include (5) the ability to work cooperatively with others; and (6) diversity. Kaplan Fox satisfies all six factors.

### A. Proposed Lead Counsel Has Expended Significant Time and Resources to Investigate DPPs' Claims and Advance This Litigation.

Kaplan Fox has taken significant steps to identify and investigate DPPs' claims and to advance this litigation. *See* Fed. R. Civ. P. 23(g)(1)(A)(i). One factor a court may consider is whether an attorney has undertaken "the process of drafting the complaint [which] requires investigatory and analytical effort." MOORE'S FEDERAL PRACTICE § 23.120[3][a] (2007). The firm has done that. Kaplan Fox undertook an extensive investigation before filing the first direct purchaser complaint. *See* Declaration of Robert N. Kaplan in Support of the Direct Purchaser Plaintiffs' Motion for Order Appointing Kaplan Fox & Kilsheimer LLP as Lead Counsel and Sperling & Slater, LLC as Liaison Counsel, for the Proposed Direct Purchaser Class ("Kaplan Decl."), at ¶ 5.

As part of that investigation, it conducted a rigorous analysis of the industry and was the first to allege factually-supported damages claims on behalf of entities who bought PCVPs <u>directly</u>

7

from the Defendants. Its research included conducting economic analyses and extensive review of industry reports, government reports, and other publicly available data, and conferring with an economic consultant. *Id.*

    **B.**    **Proposed Direct Purchaser Plaintiff Lead Counsel and Liaison Counsel Have Extensive Experience in Class Actions and Antitrust Litigation, and Know the Applicable Law.**

Kaplan Fox and Sperling & Slater have extensive experience prosecuting antitrust class actions and other complex litigation and have demonstrated their deep knowledge of antitrust and other applicable law. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii) and (iii). Below is a summary of their experience.

    **1.**    **Kaplan Fox & Kilsheimer LLP**

With offices in both Chicago and New York, Kaplan Fox has been a leader in representing those injured by violations of the antitrust laws for more than 40 years, recovering billions of dollars for class members. The firm has all the necessary skills to efficiently and effectively prosecute antitrust claims, including: (1) decades of experience leading class and multidistrict antitrust litigation; (2) expertise in complex antitrust cases with a deep bench of lawyers from diverse backgrounds with experience in econometrics and electronic discovery and attorneys who have argued and obtained key summary judgment decisions in the Seventh and Third Circuits; and (3) sufficient resources and experience to litigate this case through trial. As to resources, the firm has already committed substantial amounts to this case, and is prepared to continue doing so. *See* Kaplan Decl., at ¶¶ 4-5.

The following lawyers will be principally responsible for overseeing and managing the litigation if the firm is appointed:

**Robert N. Kaplan** has more than 40 years of experience in antitrust, and other complex litigation, and is widely recognized as a leading litigator. He has led the prosecution of numerous

8

antitrust class actions, recovering billions of dollars for the victims of corporate wrongdoing and also represents significant businesses in business-to-business antitrust litigation. After clerking for a federal judge, Mr. Kaplan served as a trial attorney with the Antitrust Division of the U.S. Department of Justice in Washington before entering private practice.

Mr. Kaplan has played a significant role in most of the firm's major antitrust cases, including: *In re Air Cargo Antitrust Litigation* (E.D.N.Y.); *In re High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087, Master File No. 95-1477 (C.D. Ill.); *In re Flat Glass Antitrust Litigation*, MDL 1200 (W.D. Pa.); *DIPF Antitrust Litigation*, Civ. No. 12-711 (AET)(LHG) (D.N.J.), *In re Cast Ion Soil Pipe and Fittings Antitrust Litigation* (E.D. Tenn.); and *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* (S.D.N.Y.), and successfully argued the summary judgment appeal in *In re Flat Glass Antitrust Litigation*, 385 F.3d 350 (3d Cir. 2004).

**Elana Katcher**, a partner at Kaplan Fox since 2015, has extensive complex antitrust litigation experience drawn from her work on both the plaintiff and defense sides, and was appointed as a member of the Steering Committee for a class of indirect-purchaser plaintiffs in *In re Juul Labs, Inc. Antitrust Litig.*, Case No. 3:20-cv-02345-WHO (N.D. Cal.). Ms. Katcher began her career in antitrust litigation as an associate at Sullivan & Cromwell LLP where she was a member of the trial team defending Microsoft Corporation against a series of private class actions brought in courts around the country, as well as representing other major defendants in bet-the-company litigation.

Since joining the firm in 2007, Ms. Katcher has been instrumental in some of Kaplan Fox's largest cases, including *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D.N.Y.), and a successful bellwether trial in *Neurontin Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1629 (D. Mass.). She currently works on behalf of a proposed class of

direct purchasers in the *Generic Pharmaceutical* antitrust actions now pending before District Judge Cynthia M. Rufe in the Eastern District of Pennsylvania. Her recent class action antitrust cases also include *Dinosaur Financial Group LLC v. S&P Global, Inc.*, 22-cv-1860 (S.D.N.Y) (Polk Failla, J.) and *In re Propranolol Antitrust Litig.*, 16-cv-9901 (S.D.N.Y) (Rakoff, J.). Of particular import to this case, Ms. Katcher is very knowledgeable about e-discovery and also authored an article entitled "*Discovery from Foreign Litigants in U.S. Courts: Why hasn't the Sedona Conference Shifted the Narrative?*" ABA Antitrust Section, Global Private Litigation Bulletin (Feb. 2020).

**Matthew McCahill**, a partner at the firm since 2015, has extensive antitrust experience, and antitrust trial experience in particular, playing large roles in many of the firm's major antitrust cases, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.); *In re Cast Iron Soil Pipe Antitrust Litigation*, MDL No. 2508 (E.D. Tenn.); and *In re Neurontin Antitrust Litigation*, MDL No. 1479 (D.N.J.). Mr. McCahill has also been part of the Kaplan Fox team representing large grocery chains and food distributors in *In re Packaged Seafood Products Antitrust Litigation*, MDL No. 2670 (S.D. Cal.), alleging price-fixing and other antitrust violations against the country's largest suppliers of packaged tuna, *In re Pork Antitrust Litigation*, Civil No. 18-cv-1775-JRT-JFD (D. Minn.) and *In re Cattle & Beef Antitrust Litig.*, MDL No. 3031 (D. Minn.). He also has significant, recent trial experience in this District, having been a principal member of the trial team representing large direct purchasers in *Broilers*, tried in 2023, and a class of direct purchasers in *Opana*, tried in 2022).

Other Kaplan Fox team members working on this case include: partner **Gregory Arenson**, whose deep experience in economics and econometrics is routinely sought by the antitrust bar, even in cases where the firm is not lead counsel, and who successfully argued before the Seventh Circuit

10

the summary judgment appeal in *Fructose*, 295 F.3d 641 (7th Cir. 2004), resulting in one of the seminal appellate court antitrust decisions from then-Judge Posner; counsel **Gary Specks**, who operates the firm's Chicago office, is an experienced antitrust litigator who has played critical roles in many of the firm's antitrust cases for over 20 years; associate **Brandon Fox**, who has worked on antitrust, securities and consumer-protection matters since joining the firm in 2019; and associate **Carihanna Morrison**, who joined the firm in 2022 and currently works on several active antitrust matters, including *In re Google Play Consumer Antitrust Litigation*, 20-cv-05671 (N.D. Cal.) and alongside Mr. McCahill and Ms. Katcher in *In re Cattle & Beef Antitrust Litig.*, MDL No. 3031 (D. Minn.).

2. **Sperling & Slater, LLC**

Sperling & Slater is a Chicago based firm that has been a leader in antitrust litigation for over 40 years. The firm has a highly experienced and efficient antitrust team that has represented plaintiffs in class and other antitrust actions involving a wide variety of industries such as pharmaceuticals, food products, insurance, payment card services and technology platforms. Sperling & Slater has a long record of success, having secured billions in antitrust recoveries for its clients. Representative examples of Sperling & Slater's antitrust and class action experience include, without limitation, the following past and active matters:

- *In re: Suboxone and. Naloxone Antitrust Litig.,*(E.D. Pa.)*(*pharmaceutical antitrust class action that resulted in favorable settlement and an American Antitrust Institute Outstanding Antitrust Litigation Achievement award in 2024); *Cameron et al. v. Apple, Inc.,* 19-cv-03074 (N.D. Cal.)(antitrust monopolization case on behalf of class of application developers that resulted in favorable settlement and an American Antitrust Institute Outstanding Antitrust Litigation Achievement award in 2022);

11

- *In re Glumetza Antitrust Litigation*, 19-cv-6156 (N.D. Cal.)(pharmaceutical antitrust class action that resulted in favorable settlement for class members);

- *Puchtler v. Barclays PLC* et al, 1:24-cv-01872-LJL (ongoing securities class action on behalf of short sellers against defendant for selling unregistered shares of securities);

- *Meijer, Inc. v. Ranbaxy Inc.*, Case No. 15-cv-11828 (D. Mass.)(pharmaceutical antitrust class action that resulted in favorable settlement for class members); *In re Restatis Antitrust Litigation,* Case No. MDL No. 2819 (E.D.N.Y.)(pharmaceutical antitrust class action that resulted in favorable settlement for class members);

- *Bentley v. United of Omaha Life Ins.*, CV 15-7870 (C.D. Cal.)(contract action on behalf of a class of life insurance beneficiaries that resulted in summary judgment in favor of the class);

- *In re: Broilers Antitrust Litigation,* Case No. 1:16-cv-08637 (N.D. Ill.)(antitrust action against the country's largest chicken producers that was partially settled and litigated through a jury trial);

- *In re Eggs Antitrust Litigation,* 2:08-md-02002 (E.D. Pa)(antitrust action against the country's largest egg producers that was partially settled and litigated through a jury trial); and

- *In re Pork Antitrust Litig.,* (D. Minn.)(ongoing antitrust action against the country's largest pork producers); and

- *In re Beef Antitrust Litig.* (D. Minn.)(ongoing antitrust action against the country's largest beef producers)

**Joseph Vanek**, **David Germaine** and **John Bjork** will lead Sperling & Slater's team in this matter. They will be joined by other key attorneys including **Allison Margolies**, **Phil Cramer** and **James Almon**. Descriptions of each attorney's experience are included in Exhibit 1 to the Kaplan Declaration.

    **C.    Kaplan Fox And Sperling & Slater Are Able to Dedicate the Resources Necessary to Prosecute this Litigation.**

As Lead Counsel, Kaplan Fox will dedicate the resources necessary to represent the interests of the proposed DPP Class through rigorous motion practice, discovery, class certification, and trial. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). It has demonstrated its dedication and commitment in the many complex cases discussed above. The firm has ample resources to litigate complex cases such as this one. This litigation will also likely involve a substantial financial investment that Kaplan Fox is more than able to meet. It is accustomed to financing complex cases and routinely invests significant financial resources in litigating claims against the largest and most well-funded defendants in the world. It will bring the same resources and commitment to ensure the successful prosecution of this case. *See* Kaplan Decl., at ¶ 4.

    **D.    Kaplan Fox And Sperling & Slater Are Dedicated to Efficiently Prosecuting this Case.**

Kaplan Fox and Sperling & Slater are committed to prosecuting this case as efficiently as possible and submit that its proposed streamlined leadership structure is appropriate for that purpose. This litigation is complex, and will involve fact and expert discovery against numerous Defendants and third parties, and the firms' deep experience in efficiently and successfully litigating similarly complex cases against well-funded defendants will pay dividends for the proposed DPP Class. Successful cooperation with PFNCS Plaintiffs' counsel, which Kaplan Fox and Sperling & Slater are confident they can achieve given their past collaborations with those firms, will be important to ensuring an efficient and cost-effective recovery (either through settlements or judgments) for the DPP Class.

    **E.    As Lead and Liaison Counsel, Respectively, Kaplan Fox and Sperling & Slater Will Work Cooperatively with All Counsel.**

Kaplan Fox has a demonstrated record of accomplishment in working professionally with

13

defense counsel and counsel for other classes of plaintiffs, and will continue to do so. *See Smith*, 301 F.R.D. at 290 (interim counsel's "demonstrated ability to work cooperatively with additional counsel" showed it was best able to represent the interests of the class) (internal quotations omitted); *see also* MCL Fourth § 10.224). As noted above, Kaplan Fox and Sperling & Slater have a recent history of working collegially and collaboratively with both proposed firms seeking co-leadership of the PFNCS Plaintiffs' Classes. *See* Kaplan Decl., at ¶ 6.

In addition, Kaplan Fox and Sperling & Slater are currently litigating both class and non-class antitrust cases against several firms representing Defendants in this case. While zealously advocating for our clients, we have worked collegially with those defense counsel. Kaplan Fox has already reached out to defense counsel in this case to begin the process of serving the *Wagner* complaint, and anticipate continued cooperation with their defense colleagues as the case progresses. *Id.* Kaplan Fox and Sperling & Slater will make every effort to prosecute this case efficiently and successfully, as they have done in many previous cases.

### F. The DPP Team Will Include Lawyers of Varying Backgrounds and Experience.

Kaplan Fox's staffing of its cases is (and has always been) consistent with this Court's encouragement of newer attorneys taking substantive roles, including *inter alia*, at oral argument, taking depositions, and meaningful trial work. Two of the firm's newer lawyers – Brandon Fox and Carihanna Morrison, admitted to the bar in 2020 and 2022, respectively – have had, and will continue to have, integral roles to play in this matter as part of the team representing the proposed DPP Class. Sperling & Slater similarly intends to offer newer attorneys at its firm meaningful roles in the litigation. Moreover, many of the firms' lawyers, including those who are or will be working on this case, come from diverse backgrounds.

## IV. PROPOSED DUTIES AND RESPONSIBILITIES FOR LEAD COUNSEL.

If appointed as Lead Counsel for the DPP Class, Kaplan Fox will execute all duties and responsibilities expected of lead counsel in class action to resolve this litigation effectively and efficiently. These comport with the standards in MCL Fourth and include presenting written and oral arguments to the court; communicating with other parties; organizing discovery requests and responses; examining deponents; delegating specific tasks to other counsel; seeing that schedules are met; and undertaking other pretrial duties to coordinate pretrial activities or as authorized by the Court. *See* MCL Fourth § 10.221. As Lead Counsel, Kaplan Fox will also establish a time and expense reporting protocol for all counsel compliant with the directives contained in MCL Fourth § 14.213.

### CONCLUSION

For these reasons, Direct Purchaser Plaintiff Bill Wagner & Son, Inc., respectfully requests that the Court appoint Kaplan Fox & Kilsheimer LLP as Lead Counsel, and Sperling & Slater, LLC as Liaison Counsel, for the proposed DPP Class.

Dated: October 4, 2024

Respectfully submitted,

By: */s/ Joseph M. Vanek*
Joseph M. Vanek
David Germaine
John P. Bjork
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, IL 60603
T: (312) 641-3200
jvanek@sperling-law.com
dgermaine@sperling-law.com
jbjork@sperling-law.com

Phillip F. Cramer (*pro hac vice application forthcoming*)
**SPERLING & SLATER, LLC**
1221 Broadway, Suite 2140
Nashville, TN 37212
Tel: (312) 641-3200
Fax: (312) 641-6492
pcramer@sperling-law.com

James Almon
**SPERLING & SLATER, LLC**
2707 Killarney Way, Suite 202
Tallahassee, FL 32309
T: (850) 354-5300
F: (312) 641-6492
jalmon@sperling-law.com

Gary L. Specks
**KAPLAN FOX & KILSHEIMER LLP**
681 Prestwick Lane
Wheeling, IL 60090
T: (847) 831-1585
gspecks@kaplanfox.com

Robert N. Kaplan
Matthew P. McCahill
Elana Katcher
Brandon Fox
Carihanna Morrison
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
T: (212) 687-1980
rkaplan@kaplanfox.com
mmccahill@kaplanfox.com
ekatcher@kaplanfox.com
Bfox@kaplanfox.com
cmorrison@kaplanfox.com

Joshua H. Grabar
Julia Varano
**GRABAR LAW OFFICE**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
T: (267) 507-6085
jgrabar@grabarlaw.com

16

jvarano@grabarlaw.com

Dianne M. Nast
Joseph Roda
Michael Ford
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, PA 19107
T: (215) 923-9300
dnast@nastlaw.com
jnroda@nastlaw.com
mford@nastlaw.com

*Attorneys for Plaintiff Bill Wagner & Son, Inc.*

17

## **CERTIFICATE OF SERVICE**

I certify that on 4 October 2024, I caused true and correct copies of this brief and its supporting declaration to be served on all counsel of record via the Court's CM/ECF system and by e-mail.

*/s/ Joseph M. Vanek*
Joseph M. Vanek