**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *In re PVC Pipe Antitrust Litigation* | Case No. 1:24-cv-07639 |
| This Document Relates to: | Hon. LaShonda A. Hunt |
| Non-Converter Seller Purchaser Class | |

**NON-CONVERTER SELLER PURCHASER CLASS PLAINTIFFS' OPPOSED MOTION TO ENFORCE THE COURT'S LEADERSHIP AND CONSOLIDATION ORDERS (ECF NOS. 164 & 165) AND UNOPPOSED NOTICE OF RELATED CASE[1]**

On November 7, 2024, a Department of Justice criminal grand jury inquiry into price-fixing in the PVC Pipe industry was publicly disclosed for the first time. The very next day, the Fegan Scott firm filed *Erie County Water Authority v. Atkore Inc., et al.*, No. 1:24-cv-11531 (N.D. Ill.) (hereinafter, the "Fegan Scott Complaint"). The Fegan Scott Complaint, which purports to be on behalf of private and public entities that provide drinking water and sewer services in the United States, is a near-complete copy-paste replication of the original *Bavolak* complaint filed two and half months ago by Co-Lead Class Counsel for the Non-Converter Seller Purchaser Class (ECF No. 1). The entities that Fegan Scott purports to sue on behalf of, however, are already part of the Non-Converter Seller Purchaser Class ("NCSP Class"). Indeed, named Plaintiffs City of Omaha and Water District No. 1 of Johnson County (Kansas) are exactly the type of entities on whose behalf the Fegan Scott Complaint purports to be filed.

---

[1] Fegan Scott consents to the reassignment of the Fegan Scott Complaint to this Court. Fegan Scott opposes the motion to enforce the Court's leadership and consolidation orders (ECF Nos. 164 & 165). Defendants agree to the reassignment of the *Erie County* action to this Court pursuant to Local Rule 40.4. Defendants do not contest any relief requested by Plaintiffs related to Plaintiffs' leadership structure. In addition, because Defendants were not provided a copy of the motion ahead of filing, Defendants reserve all rights to respond to the motion.

As described in further detail below, Beth Fegan, from the Fegan Scott firm, expressed to Co-Lead Class Counsel her intention to tell the Court that there is a conflict in the NCSP Class and that her proposed carve-out of a certain group of plaintiffs would address that conflict. Not only does no such conflict presently exist, but Fegan Scott's proposed carve-out would fail to "solve" this hypothetical issue. The timing of the filing of the Fegan Scott Complaint, the lack of independent investigation into the PVC Pipe industry by the Fegan Scott firm, and the Fegan Scott's firm's ignorance of the make-up of the NCSP Class make it clear that Fegan Scott is manufacturing a non-existent conflict in an attempt to carve out a piece of promising litigation for itself.

Given the lack of a conflict and the fact that the Court already appointed Co-Lead Class Counsel for the NCSP Class (ECF Nos. 122 & 164), already consolidated all NCSP Class actions (ECF No. 165), and Co-Lead Class Counsel already filed a consolidated complaint on October 30, 2024 (ECF No. 179) (the "NCSP Class Complaint"), Co-Lead Class Counsel respectfully requests that the Court find the Fegan Scott Complaint related to the actions in *In re PVC Pipe Antitrust Litigation* and that the Court enforce its leadership order and determine that the Fegan Scott Complaint is subsumed by the October 30, 2024, NCSP Class Complaint (ECF No. 179).[2]

---

[2] Plaintiffs recognize that the Court's Amended Order Regarding Relatedness, Reassignment, and Initial Case Management Deadlines (ECF No. 165) sets forth a procedure for filing notices regarding relatedness and consolidation. *See id.* at ¶ 11. But, in light of the fact that Fegan Scott already indicated that it would oppose consolidation, Plaintiffs are filing the instant motion in order to more expeditiously advance this issue. After meeting and conferring regarding this motion, Plaintiffs and Fegan Scott agreed to the following briefing schedule: opposition brief due November 27, 2024, and reply brief due December 4, 2024. Fegan Scott agreed to a Notice of Presentment date for this motion of November 19, 2024.

I. **BACKGROUND**

**A. Relevant Case History and the Circumstances of Fegan Scott's Complaint.**

Co-Lead Class Counsel have engaged in extensive investigation and litigation in the past three months on behalf of the NCSP Class, including retaining and working with experts, undertaking extensive factual investigation, appearing for two in-person hearings with the Court, coordinating with all parties on consolidation and case deadlines, ensuring service of the complaints, holding a Rule 26(f) conference, serving discovery, vetting potential named representatives by numerous co-counsel firms, and conducting extensive investigation and factual analysis. *See, e.g.*, ECF Nos. 27 (Joint Stipulation of the Parties), 109 (Order regarding parties' stipulation on relatedness, reassignment and initial case deadlines). As a result of this work, Co-Lead Class Counsel filed the First Consolidated Class Action Complaint (i.e., the NCSP Class Complaint) on behalf of a class of all purchasers of PVC Pipe through a non-converter seller on October 30, 2024. ECF No. 179. Among the named representatives are the City of Omaha and Water District No. 1 of Johnson County, Kansas, a municipality and a quasi-municipal agency, respectively, that provide drinking water or sewage services to citizens in each of their communities. NCSP Class Complaint ¶¶ 18, 21. The NCSP Class Complaint also specifically alleges that three large PVC Pipe distributors, which constitute roughly half of the PVC Pipe distribution market, are co-conspirators in the price-fixing conspiracy. *Id.* at ¶¶ 43-45, 165-176.

Fegan Scott did not participate in this litigation, or any of the preparation leading up to it, in any manner prior to November 8, 2024, the day after the Department of Justice's criminal grand jury investigation into PVC Pipe prices became public.[3] This timing is notable because, as courts

---

[3] Ottertail Corporation, November 7, 2024 Quarterly Report, page 17, *available at* https://www.ottertail.com/investors/sec-filings/sec-filings-details/default.aspx?FilingId=17949340.

3

have recognized, cases not aided by a government investigation are inherently riskier. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, 2024 WL 3292794, at *2 (N.D. Ill. July 3, 2024) ("*Broilers*") ("Many courts, including this one, recognize that filing a complex antitrust action without the benefit of a prior government investigation increases the amount of work necessary to litigate the case and decreases the chance of success."). Thus, for a firm to wait to file until *after* a government investigation is announced—and here no less than a *criminal* grand jury investigation that was announced—certainly raises an eyebrow.

The Fegan Scott Complaint is a nearly complete copy-paste of the original *Bavolak* complaint that Co-Lead Class Counsel Lockridge Grindal Nauen filed on August 23, 2024, containing essentially only minor typographical changes, moving a few sentences between paragraphs, deleting references to PVC electrical conduit and PVC plumbing pipe, and removing three of the five Mitsubishi-Shin-Etsu Defendants. Clark Decl. ¶ 3.

After the filing of the Fegan Scott Complaint on November 8, 2024, Co-Lead Class Counsel Brian Clark spoke to Ms. Fegan on November 11, 2024. Clark Decl. ¶ 4. During that conversation, Mr. Clark explained that the Court's leadership and consolidation orders meant that the Fegan Scott Complaint is essentially a nullity, as the class it purports to represent already has Co-Lead Class Counsel appointed to represent its interests, a consolidated complaint filed on October 30, 2024 that enumerates its claims, and already includes municipal entities already, such as the City of Omaha and Water District No. 1 of Johnson County (Kansas). *Id.*

Nevertheless, Ms. Fegan relayed her intention to seek appointment to lead a purported subclass of private and public municipal drinking water and sewer providers. *Id.* ¶ 5. Ms. Fegan noted that such plaintiffs have been grouped together in unrelated non-antitrust litigation in the personal

4

injury/mass tort context regarding per- and polyfluoroalkyl substances ("PFAS"), so-called "forever chemicals." *Id*. And in a later conversation on November 14, Ms. Fegan admitted that the grouping together of the entities she seeks to represent was based on an Environmental Protection Agency definition regarding water and sewer providers that happened to be used in PFAS litigation (*Id.* ¶ 7)—a grouping that has *nothing* to do with PVC Pipe market realities.

Ms. Fegan also pointed to a motion that her former firm filed in *Broilers* that suggested conflicts within a class where one portion of the class resold the price-fixed product to the next level of purchasers. *Id.* at ¶ 6; *see Broilers*, No. 16-cv-08637, ECF No. 218 (Nov. 30, 2016). Co-Lead Class Counsel Mr. Clark and Karin Garvey had a further conversation with Ms. Fegan on November 14, 2024, in which she maintained this position and declined to abide by the Court's prior orders regarding leadership. Clark Decl., ¶ 7. Therefore, it is clear to Co-Lead Class Counsel that this issue must be promptly raised with and resolved by the Court to avoid any delay in the efficient prosecution of this case.

### B. Public and Private Water and Sewer Providers Purchase PVC Pipe Either Directly (First Level) from a Non-Converter Seller or Indirectly (Second Level) from Another Entity that Purchased from a Non-Converter Seller.

Public and private entities providing drinking water and sewer services generally purchase PVC Pipe in one of two different ways[4]: (1) as first-level purchases directly from non-converter sellers (*i.e.*, distributors like Core & Main, Ferguson, and Fortiline) or (2) as second-level purchases from another entity that purchased PVC Pipe from a non-converter seller. Figure 1 below shows how drinking water and sewer providers purchase PVC Pipe.

---

[4] There may be a third way by which larger private and public drinking water and sewer service providers purchase PVC Pipe. Some may purchase directly from Defendant Converters, but discovery will be necessary to confirm whether or not that is the case.

**Figure 1: Drinking Water and Sewer Service Provider Methods of Purchasing PVC Pipe**



Similarly, if one looks at the entire PVC Pipe market, including retail home improvement stores, the existence of the two levels of purchases from non-converter sellers is similarly apparent, as shown below in Figure 2.

**Figure 2: Structure of PVC Pipe Market Purchases**



6

Figures 1 and 2 demonstrate that the PVC Pipe market includes some purchases from non-converter sellers that are end purchases as well as other purchases from non-converter sellers where the PVC Pipe is subsequently resold to a city or county or to a home or business owner.

## II. NOTICE OF RELATED ACTION

Similar to the actions consolidated in *In re PVC Pipe Antitrust Litigation*, the Fegan Scott Complaint is a putative class action alleging price fixing of PVC pipe, and it contains similar questions of fact and law that are common and premised on the same core issues. Like the instant action, the Fegan Scott Complaint alleges violations of both federal and state antitrust laws based on a price-fixing scheme involving the same group of Defendants (except three of the five members of the Mitsubishi/Shin-Etsu Defendant group). Pursuant to this Court's Order, the Fegan Scott action should therefore be automatically reassigned to and consolidated with the above-captioned action. *See* Amended Case Management Order (ECF No. 165), at ¶ 11 ("Additional related cases, including those designated by a plaintiff through filing a Notice of Related Action or so indicating through an entry on the civil cover sheet, shall be reassigned to and consolidated with the above-captioned action.").[5] As noted above, both Fegan Scott and Defendants consent to this reassignment.

## III. FEGAN SCOTT'S REQUEST TO DIVIDE PLAINTIFFS INTO FURTHER SUB-GROUPS AT THIS TIME IS UNWARRANTED AND INEFFICIENT.

Fegan Scott's erroneous argument regarding conflict boils down to this: there is a conflict in representing both first-level and second-level purchasers because the first-level purchaser would have an incentive to show 100% pass through for their upstream purchase, and so would the second-level purchaser for their upstream purchase from the first-level purchaser. Therefore, Fegan

---

[5] The *Erie County* Civil Cover Sheet indicated that action is related to this one.

Scott argues, because the first-level purchaser does not want Defendants to argue they passed their full overcharge down to the second-level purchaser, there is a conflict between the first-level and second-level purchasers because they want to show a different level of pass through between the first-level and second-level purchase. Fegan Scott contends that this purported (and hypothetical) conflict precludes Co-Lead Class Counsel from representing the public and private drinking water and sewer service providers in the NCPS Class, as it erroneously presumes private and public drinking water and sewer providers are all indirect, second-level purchasers. Moreover, Fegan Scott asserts that this purported (hypothetical) conflict will be resolved if the Court appoints Fegan Scott to represent all public and private drinking water and sewer service providers in this action for all of their purchases of PVC Pipe.

Co-Lead Class Counsel take seriously their obligations under the ethical rules to avoid conflicts of interest. *See* ABA Model Rules of Professional Conduct Rule 1.7 (adopted by Local Rule 83.50). But, as explained in greater detail below, no such conflicts exist at this time.

Indeed, Fegan Scott's conflict argument and proposed "solution" to the purported conflict issue fails for at least three reasons. First, the purported conflict is hypothetical and need not be addressed at this time. Second, the proposal does not actually resolve the purported conflict but merely creates a new one that Fegan Scott would suffer from as well. Third, this proposal is inefficient and costly for the NCPS Class, the parties, and the Court.

### A. Any Purported Conflict in the NCSP Class Is Hypothetical and, If It Becomes Necessary, Can Be Addressed Later in the Litigation.

The purported conflict Fegan Scott identifies is hypothetical because it depends, in part, on whether the NCPS Class's claims sound as direct or indirect claims. *See* NCSP Class Complaint ¶¶ 264, 281. The Court will ultimately make this determination based on the distributors' involvement in the alleged conspiracy after the close of discovery. Instead of waiting for the Court

8

to make its ruling about the role of distributors, Fegan Scott improperly presupposes that the NCPS Class's claims sound exclusively as indirect claims. In the hypothetical situation in which the NCPS Class's claims sound exclusively as indirect claims, Fegan Scott suggests that there is a conflict in representing both first-level and second-level purchasers because both types of purchasers would have an incentive to show 100% pass through. However, the likelihood of this hypothetical conflict manifesting is minimized to the extent that the Court determine that some or all of the NCPS Class's claims sound as direct claims.

A key fact meriting not splitting up the NCPS Class is that Plaintiffs' complaint alleges that the three major PVC Pipe distributors—Core & Main, Ferguson, and Fortiline—are co-conspirators in the price-fixing of PVC Pipe. *See* NCPS Class Complaint, ¶¶ 165-176, 264. Under the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), if Plaintiffs succeed in proving the distributors are co-conspirators in the Defendant Converters' price-fixing conspiracy, then the first-level non-converter purchaser claims as to the distributors would become direct purchases, and there would be no pass-on defense available to Defendants for sales from the first-level to second-level Non-Converter Purchasers. *See also Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 342 (7th Cir. 2022) (recognizing "a conspiracy 'exception' to *Illinois Brick*, in which plaintiffs who purchase from one member of an antitrust conspiracy may bring suit against any member of the conspiracy"). If the first-level purchaser is a direct purchaser, then there is no need for them to show pass-on, and the second-level purchaser is not in conflict with the first-level purchaser. Therefore, at this time, prior to discovery into the role of PVC Pipe distributor co-conspirators in the conspiracy, it is speculative for Fegan Scott to suggest a conflict about pass-on would exist between first and second level non-converter purchasers.

A number of courts have considered the question of establishing a single class of diverse indirect purchasers and concluded that that the same counsel can represent resellers and end user indirect purchasers. *See, e.g.*, *In re Parking Heaters*, 310 F.R.D. 54, 58-59 (E.D.N.Y. 2015) (concluding there was no conflict if one counsel represented resellers and end user indirect purchasers); *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD, ECF No. 319 (N.D. Cal. 2014) (appointing single law firm as lead counsel for all indirect purchasers, including both resellers and end purchasers) (Clark Decl., Ex. A).[6]

Where a potential conflict could arise later in a case, the Court may decide to later appoint separate allocation counsel for the reseller and end purchasers upon a successful trial verdict or upon a settlement being reached. For instance, in *In re DRAM Antitrust Litig.*, MDL No. 1486, ECF No. 2132 (N.D. Cal. Jan. 8, 2013), the Court appointed a single leadership structure for a class of all indirect purchasers of DRAM, a type of computer memory. Subsequently, upon obtaining the first settlement in the class for all indirect purchasers, a process was set up to appoint allocation counsel for the resellers. *Id.* at 2-3. Each group obtained separate experts to analyze pass-through, and a Special Master ultimately held that a "plan of allocation and distribution was the result of arm's length negotiations between counsel representing the interests of resellers and end-buyers." *Id.* at 14; *see also In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD, ECF No. 319, at 2 (N.D. Cal. 2014) (noting that if "based on hard evidence, a conflict arise[s] on recovery issues between various indirect purchasers, the issues can be raised to the court at that time").

---

[6] Where a firm not selected to interim class leadership chooses not to join the effort to litigate on behalf of the class, but instead creates a "false distinction" about distinct parts of the class, courts have denied such motions, finding that such an attempt "needlessly complicates [the] litigation and leads to an inefficient prosecution of [the] action." *In re: Disposable Contact Lenses Antitrust Litig.*, 15-md-2626, ECF No. 242 (M.D. Fla. June 6, 2016) (Clark Decl., Ex. B).

As noted above, Fegan Scott points to the *Broilers* litigation as a circumstance where a court has found that a potential conflict merited splitting a class into two parts. In that case, certain counsel (including Ms. Fegan, at her former firm) claimed that restaurant purchasers and consumer grocery store purchasers had a conflict, and therefore separate counsel needed to be appointed for each class. The court ultimately appointed separate restaurant class counsel (called Commercial & Institutional Indirect Purchaser Plaintiffs) and separate consumer grocery store class counsel (called Consumer Indirect Purchaser Plaintiffs). The situation in *Broilers*, however, is distinguishable from the current situation, as explained above, because the non-converter seller distributors in this case are alleged to have taken part in the conspiracy (thus claims by first-level purchasers from non-converter sellers may sound as direct claims, and hence pass-through from non-converter sellers will not be a defense for Defendants). No analogous market reality existed in the *Broilers* case. Further, in *Broilers* the original indirect class never included any consumers as named class representatives but focused only on commercial/restaurant purchasers of chicken. In this case, to the contrary, the NCSP Class Complaint includes both the City of Omaha and Water District No. 1 of Johnson County (Kansas), so there is no issue that it was not contemplated that the Class included such entities.

In sum, the speculative, hypothetical conflict that Fegan Scott raises does not merit further subdivision of classes. Should a conflict arise once discovery is underway and further information is known, then Co-Lead Counsel will raise that issue with the Court, including proposing that allocation counsel be separately appointed for second-level purchasers from non-converter sellers.

### B. Fegan Scott's Proposed Solution Perpetuates the Hypothetical Conflict that It Seeks to Resolve.

Fegan Scott's proposed solution does nothing to solve the hypothetical conflict it seeks to resolve. The entities Fegan Scott seeks to represent are identified in Figure 3, below, with blue

11

dotted lines. As is readily apparent, Fegan Scott has carved these entities out from two different levels of the PVC Pipe purchaser supply chain and thus has not fixed any potential conflict. Indeed, as noted above, Ms. Fegan admitted that this grouping of entities arises out of an EPA definition, not from any sort of market analysis relevant to an antitrust case or specific to the PVC Pipe market.

As Figure 3 demonstrates, one of the class members that the Fegan Scott Complaint purports to represent could have, hypothetically, paid another class member for price-fixed PVC Pipe. This is exactly the hypothetical conflict Fegan Scott claims to have identified with the NCPS Class.

**Figure 3: Fegan Scott's proposed class composition**



As Figure 3 plainly depicts, even if the Court were to determine that the purported conflict identified by Fegan Scott could exist, Fegan Scott's proposed solution fails to solve the hypothetical problem. Instead, all that the purported solution does is cobble together purchasers at different levels of the chain of commerce for no valid reason.

12

### C. Fegan Scott's Proposal Is Inefficient and Will Be Costly to the Class.

Fegan Scott's self-serving proposal would require an incredible amount of duplicative work that will be costly to the class. Most obviously, the Fegan Scott proposal would require a completely separate class certification track and would come with the attendant costly expert analysis involved in class certification. Further, the creation of the proposed (and unnecessary) class that Fegan Scott wants to represent will result in increased costs and decreased efficiencies throughout the litigation. There would be an additional complaint that will be moved against by Defendants at both the motion to dismiss and summary judgment stages. And through discovery, not only will there be additional work caused by this unnecessary class, but there will be additional counsel participating in every phase. Such unnecessary duplication of efforts would dilute the potential recovery to all non-converter seller purchasers for little reason and less benefit.

Moreover, as mentioned above, private and public drinking water and sewer service providers make first- and second-level purchases of PVC Pipe. However, without the benefit of discovery, it is unclear how much PVC Pipe these entities purchase at each level. Therefore, at this point in the litigation, it is more efficient and cost-effective for private and public drinking water and sewer service providers to be a part of the NCPS Class to litigate their claims.

Far more efficient, should it be necessary, would be for allocation counsel, appointed after a settlement or trial verdict is reached, to retain an expert to analyze the overcharge for second-level purchasers. This would avoid the need to file separate class certification reports, have multiple sets of counsel attend dozens of depositions separately, and otherwise generate millions of dollars in costs for the NCPS Class that could otherwise be avoided.

In sum, Fegan Scott's argument to divide the NCPS Class into sub-groups is meritless. Co-Lead Counsel are able to represent the interests of all purchasers through non-converter sellers, including both first and second-level purchasers. There is no efficiency created by dividing

plaintiffs further into sub-groups based on a self-serving hypothetical conflict, adding a brand new firm to this litigation, and slowing down the progress of the litigation.

### IV. IN THE ALTERNATIVE, IF THE COURT CONCLUDES IT NEEDS TO ADDRESS THE ISSUE RAISED BY FEGAN SCOTT NOW, THEN THE PROPER REMEDY IS APPOINTING COUNSEL FOR A CLASS OF SECOND-LEVEL PURCHASERS THROUGH A NON-CONVERTER SELLER.

For all the reasons noted above, Co-Lead Counsel do not agree that there is a conflict that needs to be addressed at this time. Nevertheless, if the Court determines otherwise, the solution presented by Fegan Scott of creating a private and public drinking water and sewer class makes little sense, as explained above and depicted in Figures 1-3. Instead, the logical solution is to appoint separate counsel for a class of second-level purchases through a non-converter seller.

That said, we respectfully submit that should the Court determine that that separate counsel should be appointed for a class of second-level purchases through a non-converter seller, the Court should invite any counsel who is interested in that role to apply for the position. Many talented antitrust attorneys have been engaged in this litigation since the summer. These attorneys have supported and assisted Co-Lead Counsel in prosecuting this action to date, long before news of a Department of Justice criminal grand jury inquiry came to light.

### CONCLUSION

For all the reasons discussed above, the Court should reject Fegan Scott's attempt to split up the NCPS Class, as doing so is unnecessary for a hypothetical conflict at this time, is inefficient, and will slow down the progress this case has already made. Accordingly, Plaintiffs ask the Court to (1) order that the Fegan Scott Complaint is related to the NCSP Class Complaint and (2) enforce its leadership and orders to deny Fegan Scott's request to carve out a new class from certain portions of the Non-Converter Seller Purchaser Class.

Dated: November 14, 2024    Respectfully submitted,

| | |
|---|---|
| **LOCKRIDGE GRINDAL NAUEN PLLP** | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** |
| /s/ *Brian D. Clark* | */s/ Brian M. Hogan* |
| Brian D. Clark (MN #0390069) | Brian M. Hogan (N.D. Ill. Bar No. 6286419) |
| Simeon A. Morbey (MN #0391338) | Karin E. Garvey (N.D. Ill. Bar No. 2997831) |
| Eura Chang (MN #0403526) | Donald A. Broggi *(pro hac vice pending)* |
| Consuela Abotsi-Kowu (MN #0505682) *(pro hac vice forthcoming)* | The Helmsley Building |
| 100 Washington Avenue South, Suite 2200 | 230 Park Ave., 24th Floor |
| Minneapolis, Minnesota 55401 | New York, NY 10169 |
| (612) 339-6900 | (212) 223-6444 |
| bdclark@locklaw.com | brian.hogan@scott-scott.com |
| samorbey@locklaw.com | kgarvey@scott-scott.com |
| echang@locklaw.com | dbroggi@scott-scott.com |
| cmabotsi-kowu@locklaw.com | |
| | Patrick J. Coughlin (N.D. Ill. Bar No. 90785466) |
| Kyle J. Pozan (IL Bar No. 6306761) | Daniel J. Brockwell (admitted *pro hac vice*) |
| 1165 N. Clark Street, Suite 700 | 600 W. Broadway, Suite 3300 |
| Chicago, IL 60610 | San Diego, CA 92101 |
| (312)205-8968 | (619) 233-4565 |
| kjpozan@locklaw.com | pcoughlin@scott-scott.com |
| | dbrockwell@scott-scott.com |
| Stephen J. Teti | |
| 265 Franklin Street, Suite 1702 | Patrick McGahan *(*admitted *pro hac vice)* |
| Boston, MA 02110 | Michael Srodoski (admitted *pro hac vice*) |
| (617)-456-7701 | 156 South Main Street |
| sjteti@locklaw.com | P.O. Box 192 |
| | Colchester, CT 06415 |
| | (860) 537-5537 |
| | pmcgahan@scott-scott.com |
| | msrodoski@scott-scott.com |

*Co-Lead Class Counsel for Non-Converter Seller Purchasers*

15

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Carol V. Gilden*
Carol V. Gilden (ARDC No. 6185530)
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
cgilden@cohenmilstein.com

Sharon K. Robertson
Jared A. Dummitt
Silvie Saltzman *(pro hac vice forthcoming)*
88 Pine Street, 14th Floor
New York, NY 10005
srobertson@cohenmilstein.com
jdummitt@cohenmilstein.com
ssaltzman@cohenmilstein.com

Brent W. Johnson
1100 New York Avenue NW
Fifth Floor
Washington, D.C. 20005
bjohnson@cohenmilstein.com

*Liaison Counsel for Non-Converter Seller Purchasers*