**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re PVC Pipe Antitrust Litigation* | Case No. 1:24-cv-07639 |
| This Document Relates to: | Hon. LaShonda A. Hunt |
| Non-Converter Seller Purchaser Class | |

**JOINT DECLARATION OF BRIAN D. CLARK AND KARIN E. GARVEY IN
SUPPORT OF NON-CONVERTER-SELLER PURCHASER CLASS PLAINTIFFS'
MOTION—UNOPPOSED BY SETTLING DEFENDANT OIL PRICE INFORMATION
SERVICE, LLC ("OPIS")— FOR PRELIMINARY APPROVAL OF SETTLEMENT
<u>AGREEMENT WITH DEFENDANT OPIS AND RELATED RELIEF</u>**

Pursuant to 28 U.S.C. §1746, I, Brian D. Clark, declare as follows:

1. I am a partner at the law firm of Lockridge Grindal Nauen PLLP ("Lockridge Grindal Nauen"). This Court appointed Lockridge Grindal Nauen and Scott+Scott Attorneys at Law LLP as Interim Co-Lead Class Counsel for the Non-Converter Seller Purchaser Class in this Action. This Declaration is based upon my personal knowledge and experience, and, if called on to do so, I could and would testify competently thereto.

Pursuant to 28 U.S.C. §1746, I, Karin E. Garvey, declare as follows:

2. I am a partner at the law firm of Scott+Scott Attorneys at Law LLP ("Scott+Scott"). This Court appointed Lockridge Grindal Nauen and Scott+Scott as Interim Co-Lead Class Counsel for the Non-Converter Seller Purchaser Class in this Action. This Declaration is based upon my personal knowledge and experience, and, if called on to do so, I could and would testify competently thereto.

Pursuant to 28 U.S.C. §1746, we, Brian D. Clark and Karin E. Garvey, declare as follows:

3. Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Long-Form Settlement Agreement, dated May 16, 2025 ("Settlement Agreement" or "Settlement"), which is attached as **Exhibit 1** to this Joint Declaration. Unless otherwise noted, ECF cites are to the docket in this Action, and all internal citations and quotations are omitted.

4. We submit this Joint Declaration in support of Plaintiffs' Motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of the Settlement with between Plaintiffs George Bavolak, City of Omaha, Delta Line Construction Co., TC Construction, Inc., Water District No. 1 of Johnson County (Kansas), Blake Wrobbel, and James Corsey (collectively, the "NCSPs" or "Plaintiffs") and Defendant Oil Price Information Service, LLC ("OPIS," and together with NCSPs, the "Parties").

5. The Settlement provides for a total of $3,000,000 in cash and OPIS's agreement to provide extensive cooperation, which we believe will assist NCSPs in pursuing their claims against the remaining Defendants. If approved, the Settlement will resolve the Action against OPIS.

## I. LITIGATION BACKGROUND

6. Co-Lead Counsel's extensive pre-suit investigation, done without any knowledge of the parallel investigation by the U.S Department of Justice ("DOJ"), led to the filing of the first three class action complaints in this consolidated action, alleging an industry-wide conspiracy involving Converter Defendants, OPIS, and certain named and unnamed co-conspirators.

7. On September 30, 2024, the Court granted NCSPs' motion (i) appointing Lockridge Grindal Nauen and Scott+Scott as Interim Co-Lead Counsel for a putative class consisting of "all purchasers of PVC Pipes through a non-converter seller" and (ii) consolidating all actions alleging such purchases under Interim Co-Lead Counsel's leadership. ECF No. 122, *as amended*, ECF No. 164.

8. Since filing the initial complaints in this Action, Interim Co-Lead Counsel have appeared at multiple in-person hearings, coordinated with all parties on consolidation and case deadlines, ensured service of the complaints, held a discovery conference with all defense counsel, served discovery, and vetted potential class representatives.

9. On October 30, 2024, NCSPs filed the First Consolidated Class Action Complaint ("Complaint"). ECF Nos. 179 (sealed version) and 180 (public redacted version). The depth and detail of the allegations in the Complaint showcase Interim Co-Lead Counsel's extensive investigation which spanned numerous fronts—legal, factual, and economic—and entailed substantial resources, in both attorney time and monetary expense. Interim Co-Lead Counsel held

discussions with class members and other industry participants, developed sources, collected relevant information, retained expert economists, and conducted considerable industry research.

10. On November 7, 2024, DOJ's inquiry into price-fixing in the PVC Pipe industry was publicly disclosed for the first time when defendant Otter Tail[1] revealed that it had received a federal criminal grand jury inquiry into price-fixing in the PVC pipe industry. Subsequently, Defendants Atkore[2] and Westlake[3] have also confirmed that they too received a criminal grand jury subpoena.

## II. SETTLEMENT NEGOTIATIONS

11. NCSPs' settlement posture was informed by Interim Co-Lead Counsel's extensive factual investigation that preceded the Settlement, including discussions with class members and other industry participants, developing sources, collecting relevant information, retaining expert economists, and conducting considerable industry research. Interim Co-Lead Counsel comprehensively vetted the factual record, analyzed OPIS's arguments and contrary facts, and thoroughly considered the costs and risks of ongoing litigation. Interim Co-Lead Counsel, who have extensive experience litigating antitrust class actions, were well informed of the strengths and weaknesses of the claims and defenses in this Action and conducted the settlement negotiations seeking to achieve the best possible result for the Settlement Class in light of the risks, costs, and delays of continued litigation.

12. The Parties negotiated the Settlement over the course of nearly four months, beginning in mid-January 2025 when OPIS, through its experienced and respected counsel at

---

[1] https://www.nasdaq.com/articles/otter-tail-lower-after-disclosing-receipt-doj-subpoena-pvc-pipe-probe (last visited June 2, 2025)
[2] https://www.msn.com/en-us/money/companies/atkore-receives-doj-subpoena-over-product-pricing/ar-AA1z5lcP (last visited June 2, 2025)
[3] https://www.ft.com/content/de2ac6e1-c5ef-4b0a-aa70-c936c46fe9f3 (last visited June 2, 2025)

3

Dentons US LLP (Brian K. O'Bleness and Natalie J. Spears) initially approached NCSP Interim Co-Lead Counsel and expressed an interest in exploring a potential resolution of the case. Interim NCSP Co-Lead Counsel led negotiations with OPIS's counsel for over seven weeks before negotiations advanced to a point that OPIS requested that Interim Lead Counsel for DPPs be brought into settlement negotiations as well to permit OPIS to have full resolution of the case. Once both classes were at the table with OPIS, further negotiations continued for nearly two months before settlement agreements were reached fully resolving both classes' claims against OPIS, in exchange for a combination of monetary relief and substantial non-monetary consideration. The negotiations were hard-fought over both the monetary and non-monetary (e.g., cooperation) components of the settlement. Over the course of more than a dozen Zooms, plus numerous additional telephone calls, the Parties reached an agreement which was initially memorialized in a term sheet executed on May 5, 2025. At all times, the negotiations were at arm's length, and counsel zealously advocated for their respective clients.

13. Prior to completing negotiations, Interim Co-Lead Counsel, and relevant NCSP class counsel, communicated with the proposed NCSP named representatives regarding the proposed settlement terms. The response of all named representatives was positive and supportive. Attached are the following declarations from each named representative confirming their support for the Settlement Agreement:

    a. **Exhibit 2**: Declaration of Austin Camerson, President, TC Construction, Inc.

    b. **Exhibit 3**: Declaration of Jeremy Bridges, City Maintenance Superintendent, City of Omaha.

    c. **Exhibit 4**: Declaration of James Corsey.

    d. **Exhibit 5**: Declaration of Eric R. Arner, General Counsel, Water District No. 1 of Johnson County (Kansas).

    e. **Exhibit 6**: Declaration of Blake Wrobbel.

  f. **Exhibit 7**: Declaration of Susan Houde, Secretary & Treasurer, Delta Line Construction Co.

  g. **Exhibit 8**: Declaration of George Bavolak.

14. There is a complete absence of any suggestion of impropriety with respect to this Settlement, which, was heavily negotiated between experienced counsel on both sides—namely, the undersigned, on behalf of NCSPs, and Brian K. O'Bleness and Natalie J. Spears of Dentons US LLP, on behalf of OPIS. Further, assuming preliminary approval of the Settlement is granted, the Settlement will allow NCSPs to amend their complaint substantially with additional specific allegations of price-fixing.

## III. COOPERATION

15. In addition to agreeing to pay $3,000,000 in monetary consideration, OPIS has agreed to provide NCSPs as part of the Settlement extensive cooperation in their ongoing prosecution of claims against the remaining Defendants. OPIS's cooperation includes providing NCSPs with: (a) an attorney proffer, the first session of which to occur within 10 days of execution of the Settlement Agreement regarding material facts known to OPIS's counsel relating to NCSPs' Complaint; (b) three depositions; (c) three live trial witnesses, in the event that NCSPs' claims against any of the remaining Defendants proceed to trial; (d) documents produced by OPIS to DOJ in connection with its investigation (as well as to any other governmental entity investigating the PVC Pipe market), including structured data; PVC & Pipe Weekly reports; all messages or communications to or from Donna Todd[4] and employees of PVC converters and distributors; other documents to be provided pursuant to search terms to be negotiated by the parties; and other

---

[4] Donna Todd is OPIS's senior PVC editor. NCSPs allege that OPIS (via Ms. Todd) served as the primary facilitator of the alleged conspiracy by directly calling PVC pipe buyers and sellers to collect confidential pricing information, which enabled Defendants to coordinate their pricing strategies and monitor the conspiracy.

materials related to the DOJ's subpoena, such as interrogatory responses and privilege logs; and (e) declarations to establish the authenticity and admissibility of OPIS's documents.

16. An initial attorney proffer meeting has already occurred between OPIS and Interim Co-Lead Counsel.

17. Substantively, the value of OPIS's cooperation cannot be overstated. The Complaint alleges that the conspiracy involved a coordinated information exchange among competitors through OPIS, which allowed competitors to share competitively sensitive pricing data, coordinate price increases, and signal future pricing intentions. OPIS's cooperation provides valuable insights into to how the alleged information exchange functioned among Converter Defendants through OPIS's reporter Donna Todd and resulted in the alleged anticompetitive behavior.

18. OPIS's cooperation to date, including the production of thousands of documents and an initial in-person attorney proffer meeting, has already substantially advanced NCSPs' understanding of this case. Based on the agreed-upon cooperation by OPIS, assuming preliminary approval of the Settlement is granted, NCSPs will be far better positioned to litigate this case on behalf of the class, and NCSPs intend to move to amend their complaint to expand the scope of the alleged conspiracy to add substantial details regarding allegations of price fixing. Further, NCSPs will be able to streamline discovery and go into discovery knowing far more than usual about the who, what, where, and when of the alleged conspiracy.

## IV. SELECTION OF ESCROW AGENT AND SETTLEMENT ADMINISTRATOR

19. Interim Co-Lead Counsel propose Huntington National Bank ("HNB") to serve as Escrow Agent, having the duties and responsibilities as described in the Settlement Agreement. HNB was established in 1866, holds over $60 billion in assets, and has more than 700 branches

nationwide. HNB's National Settlement Team has handled more than 1,000 settlements for law firms, claims administrators, and regulatory agencies. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 2:17-md-02785, ECF No. 2590-1 (D. Kan.) (preliminary approval motion seeking appointment of Huntington Bank as escrow agent) (Joint Decl., Ex. 14); *id*. at ECF No. 2594 (order granting preliminary approval) (Joint Decl., Ex. 15); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503, ECF No. 1145 (D. Mass. Apr. 5, 2018) (appointing Huntington Bank as escrow agent) (Joint Decl., Ex. 16). Interim Co-Lead Counsel believe HNB is qualified to serve as Escrow Agent and request that the Court approve our selection.

20. Interim Co-Lead Counsel propose Kroll Settlement Administration ("Kroll") to serve as Settlement Administrator, having the duties and responsibilities as described in the Settlement Agreement. Interim Co-Lead Counsel previously selected Kroll after reviewing the available options and undertaking a rigorous bidding process consisting of bids from four experienced settlement administration firms. As indicated in the Reed Declaration, Kroll has been in the business of administering class action settlements for decades and has administered hundreds of class action settlements, including many well-known antitrust settlements. Interim Co-Lead Counsel believe Kroll is qualified to serve as Settlement Administrator and request that the Court approve our selection.

**V.     MISCELLANEOUS**

21. On May 30, 2025, NCSPs requested that Non-Settling Defendants agree to produce to NCSPs their customer information, including both "bill to" and "ship to" information, as it may assist in identifying downstream customers. Further, such information will also assist in

identifying the direct purchasers of PVC Pipe from which NCSPs can target subpoenas for NCSP Class contact information.

22. In the *Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (TMD) (N.D. Ill.) the first settlement reached by each class was with Defendant Fieldale Farms and was described as an ice-breaker settlement, as it provided a relatively small amount of monetary relief, but was paired with substantial early cooperation by the settling defendant. In addition to the cooperation, Fieldale Farms provided monetary to each class as follows: Direct Purchaser Plaintiff Class ($2,250,000), Commercial IPP Class ($1,400,000), and End User Class ($1,700,000).

23. This Declaration and the Memorandum attach a number of relevant unpublished cases, which are attached as exhibits to this declaration as noted below:

    a. **Exhibit 9:** *In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637 (TMD), ECF No. 7134 (N.D. Ill. Jan. 10, 2024).

    b. **Exhibit 10:** *In re Turkey Antitrust Litig.*, 1:20-cv-02295 (VMK), ECF No. 206 (N.D. Ill. Oct. 4, 2021).

    c. **Exhibit 11:** *In re Surescripts Antitrust Litig.*, 1:19-cv-06627 (JJT), ECF No. 126 (N.D. Ill. Jul. 29, 2020).

    d. **Exhibit 12:** *In re Surescripts Antitrust Litig.*, 1:19-cv-06627 (JJT), ECF No. 175 (N.D. Ill. Apr. 19, 2021).

    e. **Exhibit 13:** *In re Turkey Antitrust Litig.*, No. 1:19-cv-08318 (KLH), ECF No.1100-1 (N.D. Ill. Jan. 15, 2025).

    f. **Exhibit 14:** *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 2:17-md-02785, ECF No. 2590-1 (D. Kan.).

    g. **Exhibit 15:** *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 2:17-md-02785, ECF No. 2594 (D. Kan.).

    h. **Exhibit 16:** *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503, ECF No. 1145 (D. Mass. Apr. 5, 2018).

    i. **Exhibit 17:** *In re Broiler Antitrust Litigation,* 1:16-cv-08637, ECF No. 980 (N.D. Il. June 22, 2018).

   j. **Exhibit 18:** *In re Broiler Antitrust Litigation,* 1:16-cv-08637, ECF No. 462 (N.D. Il. Aug. 8, 2017).

24. Attached hereto as **Exhibit 19** is an email chain dated May 6-7, 2025, with Beth Fegan, counsel for Erie County.

### VI. CONCLUSION

25. For the reasons set forth herein, in Plaintiffs' motion for preliminary approval of the Settlement, and in the documents filed in support thereof, we believe the Settlement is fair, reasonable, and adequate and will substantially advance NCSPs knowledge of acts taken in furtherance of the conspiracy by the remaining Converter Defendants. As such, we believe that the Court should grant Plaintiffs' motion for preliminary approval of the Settlement and to certify, for purposes of effectuating the Settlement, the Settlement Class.

* * *

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct. Executed on the 6th day of June, 2025 in Minneapolis, Minnesota.

                 */s Brian D. Clark*
                 BRIAN D. CLARK

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct. Executed on the 6th day of June, 2025 in New York, New York.

                 */s Karin E. Garvey*
                 Karin E. Garvey