# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| *In re PVC Pipe Antitrust Litigation* | Case No. 1:24-cv-07639 |
| THIS DOCUMENT RELATES TO: | Hon. LaShonda A. Hunt |
| ALL NON-CONVERTER SELLER PURCHASER CLASS PLAINTIFF ACTIONS |  |

## LONG-FORM SETTLEMENT AGREEMENT BETWEEN NON-CONVERTER SELLER PURCHASER CLASS PLAINTIFFS AND DEFENDANT OIL PRICE INFORMATION SERVICE, LLC

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of May 16, 2025 ("Execution Date"), by and between the Non-Converter Seller Purchaser Plaintiffs ("NCSPs", as hereinafter defined), through Interim Co-Lead Counsel (as hereinafter defined) for the proposed NCSP Class (as hereinafter defined), and Oil Price Information Service, LLC (as hereinafter defined) (referred to as "OPIS" or "Settling Defendant"). NCSPs, on behalf of themselves and the proposed classes, and OPIS are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, NCSPs on behalf of themselves and as representatives of the proposed NCSP Class of similarly situated persons or entities allege in the Action (as hereinafter defined), among other things, that OPIS participated in a conspiracy—with other Defendants and alleged non-Defendant co-conspirators—beginning January 1, 2021 and continuing thereafter, to fix, raise, maintain, and stabilize the price of polyvinyl chloride pipe ("PVC Pipe") (as hereinafter defined);

WHEREAS, the Court appointed Interim Co-Lead Counsel to represent the proposed NCSP Class of non-converter seller purchasers of PVC Pipe (ECF No. 164);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against OPIS in any way arising out of the purchase from a non-converter seller of PVC Pipe produced, processed, or sold by any of the Defendants or their alleged named or unnamed co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the Settlement (as hereinafter defined);

WHEREAS, Interim Co-Lead Counsel have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of the proposed NCSP Class to enter into this Settlement Agreement with OPIS to avoid the uncertainties of further complex litigation, and to obtain the significant early benefits described herein for the proposed NCSP Class, and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of NCSPs and the proposed NCSP Class, given the uncertainties, risks, and costs of continued litigation, and given the fact that if approved, this Settlement will be the initial icebreaker settlement in a case with many remaining Defendants;

WHEREAS, NCSPs and Interim Co-Lead Counsel believe the cooperation and other relief by OPIS (as set forth in Paragraphs 10 and 11 herein) and the Settlement Fund (as hereinafter defined) reflects fair, reasonable, and adequate consideration for the proposed NCSP Class to release, settle, and discharge the claims against OPIS covered by the release herein, including their claims that they were overcharged in connection with the alleged anticompetitive conduct of which OPIS is accused;

WHEREAS, OPIS has neither conceded nor admitted liability in the Action; and notwithstanding its belief that it has legitimate defenses to the claims that are asserted or could have been asserted by the NCSPs against it in the Action, OPIS enters into this Settlement

Agreement to avoid the costs, expenses, disruptions, and uncertainties of this complex litigation, and thereby put this controversy to rest;

WHEREAS, NCSPs, notwithstanding their belief that they would ultimately prevail at trial and establish liability by OPIS for the conspiracy they have alleged, enter into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation;

WHEREAS, all Parties preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by NCSPs, in the event this Settlement Agreement does not obtain Final Approval (as hereinafter defined) or otherwise is terminated as provided in Paragraph 19 herein;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the NCSPs and the NCSP Class be settled, compromised, and dismissed on the merits with prejudice as to OPIS, subject to Court approval, and that OPIS be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

1.  <u>General Definitions</u>.  The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

   a.  "Action" means the consolidated litigation proceeding captioned *In re: PVC Pipe Antitrust Litigation*, 1:24-cv-07639 ("*PVC*"), which is currently pending in the United States District Court for the Northern District of Illinois.

   b.  "NCSP Class" or "NCSP Settlement Class" means the class as defined in Paragraph 4(a) below, excluding all persons who file a valid request for exclusion from the settlement class.

   c.  "Class Notice" means any notice sent to the NCSP Class pursuant to

3

Preliminary Approval of this Settlement Agreement and in conjunction with the notices approved by the Court pursuant to Federal Rule of Civil Procedure 23.

       d.      "Class Period" for the NCSP Settlement Class means January 1, 2021 through the Execution Date of this Settlement Agreement.

       e.      "Complaint" and "NCSP Complaint" means the NCSPs' Consolidated Class Action Complaint filed with the Court in the Action on October 30, 2024 (ECF No. 179).

       f.      "Court" means the United States District Court for the Northern District of Illinois and the Honorable Lashonda A. Hunt or her successors, or any other court in which the Action is proceeding.

       g.      "Days," when used in this Settlement Agreement to specify a deadline or time period by which some event will occur, means the number of calendar days stated, excluding the day that triggers the period, except that if the last day is a Saturday, Sunday, or legal holiday, the period shall continue to run until the next day that is not a Saturday, Sunday, or legal holiday.

       h.      "Defendant" means any named defendant in the Action; and "Converter Defendant" means the named Defendants in the Action other than OPIS (which does not make, sell or distribute PVC Pipe).

       i.      "Escrow Account" means the escrow account established with the escrow agent at a bank designated by Interim Co-Lead Counsel ("Escrow Agent") to receive and maintain funds contributed by OPIS for the benefit of the proposed NCSP Class.

       j.      "Escrow Agreement" means that certain agreement between the Escrow Agent that holds the Settlement Fund and NCSPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the NCSP Class, as set forth in Paragraphs 8 and 9 below.

       k.      "Fairness Hearing" means a hearing by the Court to determine whether the

Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

l.      "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses OPIS with prejudice from the Action.

m.      "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) no appeal or petition to seek permission to appeal the Court's Final Approval has been made within the time for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) Days after entry of the order of Final Approval; or (2) if any timely appeals from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise, or (ii) the date the Final Approval is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

n.      "Interim Co-Lead Counsel" means Lockridge Grindal Nauen PLLP and Scott+Scott Attorneys at Law LLP as appointed by the Court (ECF No. 164) to represent the proposed NCSP Class of non-converter seller purchasers of PVC Pipe in the Action.

o.      "Oil Price Information Service, LLC" ("OPIS") and "OPIS Released Parties" or "Released Parties," collectively and individually, means OPIS, together with any and all of OPIS's past, current, and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities, affiliates, associates, divisions, joint ventures, predecessors, successors, assigns and each of their respective past or present, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members, employees, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns,

heirs, legal or other representatives. Notwithstanding the foregoing, "OPIS Released Parties" does not include any Defendant or other entity other than OPIS (as defined above) named by NCSPs in the Action, either explicitly or as a third-party beneficiary.

p.      "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

q.      "PVC Pipe" means all polyvinyl chloride pipe, as described in the NCSP Complaint (ECF No. 179), including, without limitation, all PVC pipe and piping products used in plumbing, electrical conduit, and municipal piping systems that are manufactured by combining chlorine and ethylene. PVC Pipe does not include the market for resin. "PVC Pipe Market" means the United States market for PVC Pipe, as that term is defined herein.

r.      "Released Claims" shall have the meaning set forth in Paragraphs 15 and 16 of this Settlement Agreement.

s.      "Releasing Parties" means, collectively and individually, NCSPs, the NCSP Class, and all members of it, including the NCSPs, each on behalf of themselves and their respective predecessors, successors, and all of their respective past, present and future (i) direct and indirect parents, subsidiaries, associates and affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and also means, to the full extent of the power of the signatories hereto to release past, present, and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer, or any other capacity, whether or not they object to the Settlement and whether or not they make a claim for payment from the Settlement Fund.

t.      "Settlement" means the settlement of all claims that were or could have been asserted by NCSPs and the proposed NCSP Class in the Action according to the terms set forth in this Settlement Agreement.

u.      "Settlement Administrator" means the firm retained to disseminate the Class Notice, maintain the settlement website, handle communications related to claims, and to administer the payment of the Settlement Sum from the Settlement Fund (as hereinafter defined) to the NCSP Class, subject to approval of the Court.

v.      "Settlement Fund" means $3,000,000.00 (three million U.S. dollars) (the "Settlement Sum"), which includes up to $250,000.00 (U.S. dollars) in non-refundable class notice and administration costs to the NCSP Class, and is inclusive of all Class recovery amounts, fees (including attorneys' fees and any other fees), and costs, which is the absolute amount OPIS shall pay or cause to be paid into a non-reversionary settlement fund.  The Settlement Fund will be held in an interest-bearing Escrow Account maintained by an Escrow Agent on behalf of the NCSP Class, pursuant to Paragraphs 8 and 9 below, and shall include any interest accruing within the interest-bearing Escrow Account.  The Settlement Fund will be used to pay all valid settlement claims submitted by NCSP Class members at a future date, as well as all settlement Class Notice and administration costs, and all attorneys' fees and any service awards approved by the Court.  For the avoidance of doubt, the Settlement Sum is the maximum amount that OPIS will be obligated to pay in consideration of the Settlement, and under no circumstances will OPIS be obligated to provide any additional monetary consideration in connection with the Settlement.

2.      The Parties' Efforts to Effectuate this Settlement Agreement.  The Parties will cooperate in good faith and use reasonable efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement, including cooperating in promptly seeking the Court's approval of the Settlement Agreement consistent with the terms contained within this

Settlement Agreement, the giving of appropriate Class Notice under Federal Rule of Civil Procedure 23, and securing the prompt, complete, and final dismissal with prejudice as to OPIS.

3.    Litigation Standstill.

a.    Upon execution of this Settlement Agreement, NCSPs shall cease all litigation activities with respect to OPIS except to the extent expressly authorized in the Settlement Agreement, and OPIS shall cease all litigation activities with respect to NCSPs and the proposed NCSP Class except to the extent expressly authorized in the Settlement Agreement or as it pertains to any cooperation terms or as set forth in Paragraph 10(g)(iii) herein, or to the extent any member of any NCSP Class who has validly excluded itself from the NCSP Class files a direct action complaint against OPIS ("Direct Action Plaintiff") or in any other action or claim filed by Parties other than the NCSP Class.[1]  Nor shall any of the foregoing provisions be construed to prohibit NCSPs and the proposed NCSP Class from (1) seeking appropriate discovery from non-settling Defendants or alleged co-conspirators or any other person other than OPIS and (2) seeking to prove the conspiracy alleged in this Action.  None of the foregoing provisions shall be construed to prohibit OPIS from defending itself in proceedings outside of this Action.

b.    The Parties' litigation standstill shall cease in the event that the Settlement does not receive Preliminary Approval from the Court or this Settlement Agreement is terminated for any reason set forth in the Termination Events defined in Paragraph 19.

4.    Motion for Preliminary Approval.  No later than twenty-one (21) Days after the Execution Date, NCSPs will move the Court for Preliminary Approval of this Settlement.

---

[1] For the avoidance of doubt, "Direct Actions" includes all actions by plaintiffs who validly opt-out of the NCSP Settlement Class and file a direct action lawsuit against OPIS based on factual allegations that are substantially similar to those asserted in NCSPs' Complaint filed in the Action.

a.   <u>NCSP Settlement Class Certification</u>.  NCSPs shall seek, and OPIS shall not object to, appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement, and certification in the Action of a NCSP Settlement Class, for settlement purposes only, defined as:

> All persons and entities who purchased PVC Pipe manufactured by a Defendant and subsequently sold through a non-converter PVC Pipe seller in the United States between January 1, 2021 through the Execution Date of this Settlement Agreement.
>
> Specifically excluded from the Class are Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant. Also excluded from the Class are any federal government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, any business majority-owned by any such person, and any Co-Conspirator identified in this Action.

b.   <u>Preliminary Approval Papers</u>.  A reasonable time, no less than four (4) business Days, in advance of submission to the Court, the papers in support of the motion for Preliminary Approval, including any proposed orders and the proposed Class Notices and notice plan, shall be provided by Interim Co-Lead Counsel to OPIS for its review.  To the extent that OPIS objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and confer in good faith to resolve any such objection.  The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval.

c.   <u>Restrictions Prior to Preliminary Approval</u>.  Until Preliminary Approval of the Settlement is granted by the Court, NCSPs and the NCSP Class shall not file with the Court, disseminate to any entity or person not a Party to this Settlement Agreement, or quote from any of the information or materials provided by OPIS pursuant to this Settlement Agreement under Paragraph 10 herein, unless agreed to in writing by OPIS, or said information and materials otherwise has become available through discovery in the Action.

5.     <u>Class Action Fairness Act ("CAFA") Notice</u>.  Within ten (10) Days of filing of this Settlement Agreement in Court with the above-mentioned motion for Preliminary Approval, OPIS, at its sole discretion and expense, shall serve (or cause to be served) upon appropriate Federal and State officials all materials required pursuant to CAFA, and shall confirm to NCSPs' Interim Co-Lead Counsel via a filing on ECF that such notices have been served.

6.     <u>Settlement Class Notices</u>.  Along with the Motion for Preliminary Approval, and subject to approval by the Court of the means for dissemination, the Parties shall submit:

a.     <u>Notices to the Settlement Class</u>: At a reasonable time, no less than four (4) business days, in advance of submission to the Court for approval, along with the Motion for Preliminary Approval, proposed communications to the NCSP Class regarding the Settlement (including, but not limited to, short-form and long-form notices and advertisements) shall be provided by Interim Co-Lead Counsel to OPIS for its review.  To the extent that OPIS has objections to, or has edits or comments to, the proposed Class Notice, it shall communicate such objections, edits and/or comments to Interim Co-Lead Counsel and the Parties shall meet and confer in good faith to resolve them.  Each Party reserves all rights in the event that disputes as to form or contents of proposed Class Notice cannot be resolved informally, in good faith, and for the avoidance of doubt, any litigation or disputed motion practice arising between the Parties concerning such disputes shall not be subject to the litigation standstill obligations set forth in Paragraph 3.

b.     Notice shall be reasonable under the circumstances based on information that the Parties have available.  The Parties will also request that the Court approve a publication notice plan calculated to reach the greatest possible number of class members.  Reasonable efforts shall also be made to provide individual notice of this Settlement to NCSP Settlement Class members, which shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the NCSP Class, in conformance with a notice

plan to be approved by the Court, including a required provision in the Class Notice that members of the proposed NCSP Class who wish to opt out and exclude themselves from the NCSP Class must submit an appropriate and timely request for exclusion.

      c.      The Notice shall include a provision stating that requests to opt out of the NCSP Settlement Class can be made only by individuals or an individual entity on behalf of themselves (and subsidiaries) and personally signed by each individual person or entity requesting exclusion.

      d.      The Parties recognize that NCSPs and Interim Co-Lead Counsel will seek at the same time as filing of the Preliminary Approval Motion and notice plan, permission from the Court to obtain customer lists from non-settling Defendants, and that the NCSP Class will seek such information from larger direct purchasers in order to provide where feasible direct notice to the class, in addition to publication notice. NCSPs and Interim Co-Lead Counsel will seek to limit any delay caused by obtaining such customer lists from non-settling Defendants.

      e.      The NCSP class will seek an order from the Court approving service of non-party discovery with a deadline for responses to such discovery thirty (30) Days after such an order for the production of customer data.

      f.      Neither the NCSPs, the proposed NCSP Class, Interim Co-Lead Counsel, nor OPIS shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the NCSP Class or obtaining approval of the Settlement or administering the Settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

      g.      Subject to Court approval and CAFA requirements, Class Notice to the proposed NCSP Class shall be issued promptly. Interim Co-Lead Counsel will seek to send Class Notice to the proposed NCSP Class within 14 Days of the production of customer data by non-party

direct purchasers from whom they request the Court's permission to obtain NCSP Class contact information.

h.     Any costs of notice actually incurred that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund up to $250,000.00, either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, this Settlement Agreement is terminated according to its terms or is not granted Final Approval by the Court.

i.     The Settlement Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Settlement Fund in accordance with the plan of distribution at a future date, under the continued supervision of the Court.

7.    <u>Motion for Final Approval and Entry of Final Judgment</u>.  If the Court grants Preliminary Approval, then NCSPs, through Interim Co-Lead Counsel—in accordance with the schedule set forth in the Court's Preliminary Approval—shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court.  At a reasonable time, no less than four (4) business Days, in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to OPIS for its review.  To the extent that OPIS objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection.  The motion for Final Approval shall seek entry of an order and Final Judgment:

a.     Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the NCSP Class within the meaning of Federal Rule of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and

conditions;

b. Determining that the Class Notice provided to the NCSP Settlement Class constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all persons entitled to receive notice;

c. Dismissing NCSPs' Complaint, and all other complaints, asserted by Releasing Parties in the Action with prejudice as to OPIS, only, without further costs or fees;

d. Discharging and releasing the OPIS Released Parties from all Released Claims;

e. Enjoining the Releasing Parties from suing any of the OPIS Released Parties for any of the Released Claims;

f. Finding that OPIS has provided the appropriate notice pursuant to the CAFA, 28 U.S.C. §1711 *et seq.*

g. Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

h. Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to OPIS shall be final and appealable and entered forthwith.

The Parties shall use all reasonable efforts available to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions

8. <u>Escrow Account</u>. The Escrow Account shall be administered by the Escrow Agent pursuant to this Agreement and subject to the supervision of Interim Co-Lead Counsel for the NCSPs and proposed NCSP Class, under the Court's continuing supervision, jurisdiction, and control pursuant to the Escrow Agreement.

9.    <u>Settlement Consideration</u>.  In consideration for the release of Released Claims, the dismissal of the Action under the terms herein, and the other material terms and conditions herein, within forty-five (45) Days after Preliminary Approval is granted by the Court, OPIS will pay the Settlement Sum into the Escrow Account by wire transfer pursuant to instructions from the Escrow Agent and/or Interim Co-Lead Counsel, and will provide the cooperation set forth in Paragraph 10.  In addition, subject to the provisions hereof, as further injunctive relief, and in full, complete, and final settlement of the Action as provided herein, OPIS further agrees to the compliance set forth in Paragraph 11 below.

10.    <u>Cooperation</u>.  Cooperation by OPIS is a material term of the Settlement Agreement and shall include the following once the Settlement is executed:

a.    <u>Attorney Proffer</u>.  OPIS's outside counsel will provide up to seven (7) hours of an attorney proffer that may be conducted in multiple sessions regarding the material facts known to OPIS's counsel regarding alleged violations of the antitrust laws, including alleged price-fixing in the PVC Pipe Market, pled in NCSPs' Complaint.  The first attorney proffer will take place within ten (10) Days of the Execution Date by video conference and/or in person at a mutually convenient location, at Interim Co-Lead Counsel's election.  This provision does not require counsel to provide information protected by the attorney-client privilege or attorney work product doctrine, nor is OPIS waiving any such privileges.  By agreement of the Parties, any statements made by counsel as part of the Attorney Proffer contemplated by this Paragraph shall be inadmissible as evidence.

b.    <u>Depositions</u>.  OPIS will use reasonable efforts to make up to three (3) current or former employees available for depositions, including Donna Todd.

c.    <u>Trial Witnesses</u>.  OPIS will use reasonable efforts to provide up to three current or former employees to provide testimony live at trial of the NCSPs' claims in the Action.

      d.    <u>Documents</u>.  OPIS will produce, electronically, documents and data that were already (or that are in the future) produced by OPIS to the Department of Justice Antitrust Division ("DOJ") pursuant to the DOJ subpoena served on OPIS as part of the DOJ's investigation into alleged antitrust violations in the PVC Pipe Market ("DOJ Subpoena"), and to any other governmental entity pursuant to a government investigation into alleged antitrust violations in the PVC Pipe Market ("Governmental PVC Pipe Market Investigation"), within (3) Days after the Execution Date.  Such document and data productions will be treated as CONFIDENTIAL or HIGHLY CONFIDENTIAL[2] and will include at a minimum:

        i.    The structured pricing data OPIS maintains regarding PVC Pipe and resin from January 1, 2012 to November 2024, in a structured data format, such as a .csv file.

        ii.    Copies of all draft and final PVC & Pipe Weekly reports from January 2017 through November 2024.

        iii.    All messages or communications to or from Donna Todd at OPIS and the work account, user handle, or phone number of an employee of a PVC converter without

---

[2] NCSPs, Interim Co-Lead Counsel, and other counsel and persons retained or acting at the direction of NCSPs or Interim Co-Lead Counsel, will treat the documents and data produced by OPIS as CONFIDENTIAL or HIGHLY CONFIDENTIAL as indicated in the specific documents and under the terms of and subject to the protective order that will be subsequently entered in the Action.  Until such time as such protective order is entered, and if no protective order has been entered at the time of the Final Approval and Final Judgment as to OPIS, the documents and data produced by OPIS will be treated, at a minimum and by agreement, in accordance with the protection for HIGHLY CONFIDENTIAL documents in the draft proposed protective order circulated by Plaintiffs' counsel on October 16, 2024, until the Court enters a protective order in the case, after which the protective order entered by the Court governs confidentiality.  OPIS will not be obligated to re-review or redesignate a confidentiality designation; provided however, NCSPs and Interim Co-Lead Counsel are not precluded from making particularized requests to OPIS to redesignate specific documents, which OPIS shall consider in good faith.

any relevance review. [3] OPIS has represented that only Donna Todd engaged in such communications, therefore, based on that representation, only her communications are to be searched at this time. The Parties agree that if further factual information changes the understanding that only Donna Todd has relevant communications with PVC converter employees, then the Parties will meet in good faith to address any production deficiencies. OPIS has also represented that Donna Todd does not use personal accounts for such communications. The Parties agree that if further factual information changes the understanding that Donna Todd does not use personal accounts for relevant communications with PVC converter employees, then the Parties will meet in good faith to address any production deficiencies.

iv. In addition to the prior provision, OPIS will also run search terms on the remaining ESI for Donna Todd relating to the names of each PVC converter and distributors Core & Main Inc., Ferguson Enterprises, Inc., and Fortiline Waterworks; their relevant employees (both full names and shorthand names); and names of the relevant products. OPIS will apply a relevance review to these and will produce any non-privileged document related to the PVC Pipe Market.

v. All documentation of communications with or between Donna Todd and PVC converters and distributors Core & Main, Inc., Ferguson Enterprises, Inc., and Fortiline Waterworks, such as call notes, whether in electronic or hard copy format.

vi. Materials produced from centralized sources of ESI provided to the DOJ pursuant to the DOJ Subpoena or a governmental entity in response to a Governmental PVC

---

[3] To the extent available to OPIS, this includes text messages and includes the log of both text messages and phone calls from Donna Todd's cellular device(s). Donna Todd's communications with any Westlake employees were reviewed for relevance and will be produced as indicated in Paragraph 10(d)(iv).

Pipe Market Investigation.

                vii.        Any written analysis, interrogatory response, or other written submission provided to the DOJ pursuant to the DOJ Subpoena or a governmental entity in response to a Governmental PVC Pipe Market Investigation.

                e.        <u>Declaration</u>.    OPIS will provide declarations and/or affidavits and/or testimony necessary to establish the authenticity and admissibility of its documents under the Federal Rules of Evidence to NCSPs, the NCSP Class, and Interim Co-Lead Counsel.

                f.        NCSPs and Interim Co-Lead Counsel will not share any materials or information provided by OPIS through the cooperation terms herein with any other plaintiff or plaintiff group in any other action, unless authorized by OPIS in writing or directed to do so by the Court.

                g.        <u>Other Terms</u>.

                i.        On the Execution Date of this Settlement Agreement, OPIS will withdraw from any joint defense group in this Action, if any, and will not voluntarily share this Settlement Agreement with the other Defendants until such time as it is publicly filed by the Parties in connection with the Motion for Preliminary Approval of the Settlement.

                ii.        OPIS will not cooperate with the other Defendants further in this Action, but if OPIS is asked to do so, OPIS may seek permission from NCSPs to cooperate, and NCSPs will consider such requests in good faith. Nothing in this Paragraph prevents OPIS from fully defending itself if a Direct Action is filed by a plaintiff who opts-out of this Settlement, or prevents OPIS from coordinating with non-settling Defendants in the joint defense of claims against OPIS in such other Direct Actions, including retention of experts for use in such Direct Actions. However, if such a case is filed, OPIS in its sole discretion will not provide any more information to other Defendants than necessary to defend itself in those actions.

iii.      Until the Parties agree or the Court orders otherwise, no cooperation materials which OPIS produces under this Settlement Agreement may be shared with any other Defendant or alleged co-conspirators, except as authorized under this Agreement in connection with the defense of a Direct Action filed against OPIS or in defense of any other action or claim filed by parties other than the NSCP Class.

iv.      OPIS will provide NCSPs any privilege log it provides to DOJ pursuant to the DOJ Subpoena or any other private or governmental party in response to a Governmental PVC Pipe Market Investigation within seven (7) Days of the Execution Date, or no later than seven (7) Days after such privilege log is served.  Any document that OPIS identifies on such privilege log and which OPIS subsequently produces in a less redacted or unredacted format will be produced to NCSPs' within seven (7) Days of production to any other entity.  Both Parties wish to avoid any dispute regarding documents withheld on the privilege log.  Should NCSPs have any specific concerns with the privilege log, they will raise such concerns with OPIS, and OPIS will respond in good faith to those concerns.

v.      OPIS will not assert any reporter's privilege with respect to the materials agreed to be produced in this Settlement Agreement.  OPIS is not waiving any reporter's privilege in the event this Settlement is not consummated, or for other materials, products, or documents that are not required to be produced under this Settlement Agreement.  Nor is OPIS waiving the attorney-client privilege or attorney work product doctrine Further, for the avoidance of doubt, notwithstanding any other provision in this Settlement Agreement, OPIS shall not be deemed to have waived any privileges in the event that this Agreement does not receive Preliminary or Final Approval from the Court, or is otherwise terminated in accordance with this Agreement.

vi.    To the extent that OPIS responds to discovery, produces documents, or provides proffers or other cooperation or information to any other plaintiff or government entity regarding the PVC Pipe Market during the pendency of the Action, it will provide the same information to NCSPs within ten (10) Days thereof.  For the avoidance of doubt, OPIS will provide NCSPs and the NCSP Class with no less cooperation than it provides any other plaintiff or government entity including, without limitation, witnesses, declarations, affidavits, proffers, witness interviews, or documents and data regarding the PVC Pipe Market.

h.    In the event that the Court does not grant either Preliminary or Final Approval, or the Settlement is terminated, including without limitation for any reason set forth in the Termination Events defined in Paragraph 19, all documents produced pursuant to this Settlement Agreement shall be returned to OPIS within fourteen (14) Days and all documents and information provided by OPIS deemed inadmissible, unless otherwise made available through discovery in the Action.

11.    <u>Compliance with Antitrust Laws</u>.  OPIS has neither conceded nor admitted liability in the Action.  OPIS agrees that OPIS will not, for a period of two years from the date of the entry of the Final Approval Order and Final Judgment, engage in conduct that is determined in a final non-appealable judgment to constitute a per se violation of Section 1 of the Sherman Act in the PVC Pipe Market (as defined herein).  The Parties agree that any claim asserted by plaintiffs of non-compliance with this provision shall not alter or affect the Release in Paragraph 15 and/or the Waiver in Paragraph 16.

12.    <u>Qualified Settlement Fund</u>.  The Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  In addition, Interim Co-Lead Counsel shall

timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.4688-1. Interim Co-Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. OPIS shall not be responsible for the filing of any tax returns or payment of any taxes of any kind or expenses connected to the Qualified Settlement Fund. The members of the NCSP Settlement Class shall be responsible for paying any and all federal, state, or local taxes due on any distribution made to them pursuant to the Settlement provided herein.

13.    Distribution of Settlement Fund to Settlement Class. After Final Approval, the Settlement Fund shall be distributed in accordance with a plan of distribution and plan of allocation to be approved by the Court at a future date; the timing of the motion to approve a plan of distribution and plan of allocation shall be in the discretion of Co-Lead Settlement Counsel. After paying the Settlement Sum, OPIS shall have no responsibility or liability whatsoever for the allocation or distribution of the Settlement Fund or the determination, administration, or calculation of claims, and OPIS shall not be responsible for any disputes relating to the allocation or distribution of any amounts, fees, or expenses, including attorneys' fees. Any issues or

proceedings related to the distribution plan shall not impact this Settlement Agreement or the finality of the Final Approval or Final Judgment entered pursuant to this Agreement. Members of the NCSP Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the Settlement Agreement or in connection with any of the Released Claims against the OPIS Released Parties and shall not be entitled to any other payment or relief from the OPIS Released Parties. Except as provided by order of the Court, no NCSP Class member shall have any interest in the Settlement Fund or any portion thereof. NCSPs, members of the NCSP Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the NCSP Class. OPIS and the other OPIS Released Parties shall not be liable for any costs, fees, or expenses of any of NCSPs' and Interim Co-Lead Counsels' attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

14. <u>Fee Awards, Costs and Expenses, and Service Awards to NCSPs</u>. Subject to Interim Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel will apply for a fee award from the Settlement Fund and payment of litigation expenses and costs (plus any interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid), and service awards to the NCSPs to be paid from the Settlement Fund. OPIS shall have no responsibility, financial obligation, or liability for any such fees, costs, expenses, or awards, which shall be paid exclusively from the Settlement Sum.

15. <u>Settlement Release</u>.

a. Upon Final Judgment, the Releasing Parties shall be deemed to have fully, finally, and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the OPIS Released Parties from any and all claims, demands, actions,

injuries, losses, damages, suits, and causes of action relating to the PVC Pipe Market, including but not limited to all claims that have been asserted, or could have been asserted, in the Action, whether class, individual, or otherwise in nature that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, through the Execution Date of this Settlement Agreement (the "Released Claims"), except for claims to enforce any of the terms of this Settlement Agreement. This release of the Released Claims is binding on the Releasing Parties regardless of whether or not any member of the NCSP Class has objected to the Settlement or makes a claim in the Settlement, whether directly, representatively, derivatively or in any other capacity.

16. _Further Release_. In addition to the provisions of Paragraph 15, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including without limitation 20-7-11 of the South Dakota Codified Laws (providing:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR").

Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraphs 15 and 16, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraphs 15 and 16 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual and not a mere recital.

17. <u>Covenant Not to Sue</u>. NCSPs and each member of the NCSP Class covenant not to sue any of the OPIS Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

18. <u>No Admission</u>.

a. This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability or any violation of any statute, law, rule, or regulation, or of any liability or wrongdoing, by OPIS, or of the truth of the allegations against it, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

b. In the event this Agreement is terminated for any reason set forth in the Termination Events defined in Paragraph 19, then the pre-Settlement status of this Action shall be restored, and the Agreement shall have no effect on the rights of NCSPs and the NCSP Class or OPIS to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses,

which rights OPIS specifically and expressly retains, and there shall be no admission of any kind as to the certifiability of a litigation class or any other legal issue. For avoidance of doubt, by stipulating for purposes of only this Settlement to the proposed NCSP Settlement Class, OPIS does not admit that the Rule 23 requirements are met for purposes of certifying a litigation class, or that antitrust injury or damages are provable on a classwide basis, or that the NCSP Settlement Class, as they are defined herein, would be appropriate for a litigation class.

19.     <u>Termination Events and Rights</u>.  The Settlement is conditioned upon Preliminary and Final Approval of the Parties' Settlement Agreement, and all terms and conditions thereof, without material changes, material amendments, or material modifications (except to the extent such changes, amendments, or modifications are agreed to in writing by the Parties).

a.     <u>Termination Based on Lack of Preliminary or Final Approval.</u>  Either Party may elect to terminate the Settlement upon written notice to the other Party, within twenty-one (21) Days of any of the following "Termination Events":  (i) if the Court refuses to grant Preliminary Approval or Final Approval of the Settlement Agreement; (ii) if the Court's order(s) granting Preliminary Approval or Final Approval of the Settlement Agreement include(s) substantial or material changes, amendments, or modifications of the terms and conditions of the Settlement Agreement; (iii) if the Court's order(s) granting Preliminary Approval or Final Approval of the Settlement Agreement is (are) substantially or materially modified, reversed or vacated on appeal; or (iv) if the Court refuses to enter a Final Judgment as to OPIS in any substantial or material respect.

b.     <u>No Termination Due to Attorneys' Fees or Award.</u>  Notwithstanding the preceding subsection, and for the avoidance of doubt, the Parties may not terminate this Settlement because of the amount of any attorneys' fees or costs awards authorized by the Court; and any modification, reduction or rejection of the attorneys' fees or costs awarded by the Court, or any appellate court, shall not be a Termination Event, or in any way a basis for termination or rescission of

24

this Agreement.

    c. <u>Termination Based on Exclusion Limit</u>. Further, as an additional Termination Event to those defined in Paragraph 19(a), OPIS may in its sole discretion terminate this Settlement if the number of individual members of the NCSP Class exceeds a numeric threshold provided for in the Parties' Confidential Letter Agreement (available to the Court under seal upon request).

    d. <u>Termination Based on DPP Settlement Termination.</u> The Parties acknowledge that, as of the Execution Date of this Settlement Agreement, OPIS also has reached a settlement with the DPP Class, as defined by the DPP Amended Class Action Complaint filed on October 30, 2024 (ECF No. 183) and led by Interim Lead Counsel from Kaplan Fox & Kilsheimer LLP, pursuant to the Court's October 17, 2024 Order (ECF No. 163).  The Parties to this Settlement Agreement agree that full and final approval of OPIS's settlement agreement with the DPP Class is a material term and condition of this Settlement Agreement, and the Court's entry of Final Approval and Final Judgment concerning this Settlement Agreement is a material term and condition of OPIS's settlement agreement with the DPP Class.  As additional Termination Events to those defined in Paragraphs 19(a) and (c), if OPIS's separate DPP Settlement Agreement with the DPP Class is terminated for any reason and/or any of the following events occur, then OPIS may in its sole discretion terminate this Settlement with the NCSPs and NCSP Class:  (i) if Preliminary Approval or Final Approval of OPIS's separate DPP Settlement Agreement with the DPP Class is not granted by the Court, or (ii) if the Court's order(s) granting Preliminary Approval or Final Approval of the DPP Settlement Agreement include substantial or material changes, substantial or material amendments, or substantial or material modifications of the terms and conditions of the DPP Settlement Agreement; or (iii) if the Court's order(s) granting Preliminary Approval or Final Approval of the DPP Settlement Agreement are substantially or materially modified, reversed or vacated on appeal; or (iv) if the Court refuses to enter a Final Judgment as to OPIS in

connection with the DPP Settlement in any substantial or material respect, or (v) if the trigger for termination based on opt-out claims provided in the DPP Settlement Agreement is met and OPIS terminates the DPP Settlement Agreement.

20.     <u>Effect of Disapproval or Termination</u>.  In the event that the Settlement is terminated by either Party in accordance with any of the Termination Events set forth in Paragraph 19, the Settlement Agreement shall become null and void, any Preliminary Approval entered by the Court and all of its provisions shall be vacated by its own terms, any certification of a NCSP Settlement Class for settlement purposes will be vacated, and the Parties will be restored to their respective positions as if no Settlement had occurred, unless the Parties mutually agree in writing to proceed with the Settlement Agreement or to modify the Settlement Agreement to cure the reason for any rejection, denial, modification, non-affirmance, or alteration by the Court or any appellate court. Further, in the event of termination by either Party under the terms of Paragraph 19 of this Agreement, no term of the Settlement Agreement or any draft thereof, or any aspect of the negotiation, documentation, or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence for any purpose in any proceeding, and all funds in the Escrow Account shall be returned to OPIS within ten (10) Days of written notice of termination, except any Settlement Funds used for Notice and Administration purposes that are nonrefundable pursuant to Paragraph 6(h), and the Parties' positions shall be returned to the status quo ante.

21.     <u>Choice of Law and Dispute Resolution</u>.

a.      Any disputes relating to this Settlement Agreement shall be governed by Illinois law without regard to conflicts of law provisions.  Any and all disputes regarding this Settlement Agreement, including any aspect of its breadth, scope or interpretation and applicability, or the finalization of settlement documentation, will be mediated in good faith before a mutually

agreed-upon mediator before any suit, action, proceeding, or dispute, may be filed in the Court pursuant to Paragraphs 17 and 22.

       b.    To the extent that the Court does not grant Preliminary Approval, the Parties will negotiate in good faith to modify the Settlement Agreement directly or with the assistance of a mutually agreed settlement mediator, and will endeavor in good faith to resolve any issues to the satisfaction of the Court.

      22.    <u>Consent to Jurisdiction</u>.  The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement, or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 15–17, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 15–17 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement.  In the event that the provisions of Paragraphs 15–17 are asserted by any OPIS Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such OPIS Released Party shall be entitled to a stay of that suit, action, or proceeding until the mediation required by Paragraph 21 is complete.  Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court.  Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

23. <u>Costs Relating to Administration</u>. The OPIS Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Fund.

24. <u>Binding Effect</u>. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, NCSP Class members, the Releasing Parties, and the OPIS Released Parties. Without limiting the generality of the foregoing, upon Final Approval, each and every covenant and agreement herein by the NCSPs shall be binding upon all members and potential members of the NCSP Class, and Releasing Parties who have not validly excluded themselves from the NCSP Class.

25. <u>Sole Remedy</u>. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any OPIS Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any OPIS Released Party.

26. <u>Counsel's Express Authority</u>. Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

27. <u>Admissibility to Enforce Agreement</u>. It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

28. <u>Notices</u>. All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to NCSPs or the NCSP Settlement Class, or any of their members, to:

> Brian D. Clark
> LOCKRIDGE GRINDAL NAUEN PLLP
> 100 Washington Avenue South, Suite 2200
> Minneapolis, Minnesota 55401
> T: (612) 339-6900
> Email: bdclark@locklaw.com
>
> Karin E. Garvey
> Scott+Scott Attorneys at Law LLP
> The Helmsley Building, 230 Park Ave., 24th Floor
> New York, New York 10168
> T: (212) 223-6444
> Email: kgarvey@scott-scott.com

If directed to OPIS, to:

> Brian O'Bleness
> DENTONS US LLP
> 1900 K. St. NW
> Washington, D.C. 20006
> T: (202) 408-3255
> Email: brian.obleness@dentons.com
>
> AND
>
> Natalie J. Spears
> DENTONS US LLP
> 233 South Wacker Drive, Suite 5900
> Chicago, Illinois 60606
> T: (312) 876-8000
> Email: natalie.spears@dentons.com

or such other address as the Parties may designate, from time to time, by giving notice to all Parties hereto in the manner described in this Paragraph. The Parties shall also provide courtesy copies of all notices by electronic mail.

29.     No Admission. Whether or not Preliminary Approval is granted, Final Judgment is entered, or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and

discussions associated with it, are not and shall not be deemed or construed to be an admission of liability or wrongdoing by any Party or OPIS Released Party.

30.    <u>No Unstated Third-Party Beneficiaries</u>.  Except as expressly stated in this Settlement Agreement, no provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a OPIS Released Party, NCSP, NCSP Class member, or Interim Co-Lead Counsel.

31.    <u>No Party Is the Drafter</u>.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation, or construction that would or might cause any provision to be construed against the drafter hereof.

32.    <u>Amendment and Waiver</u>.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement. This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement.

33.    <u>Execution in Counterparts</u>.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  DocuSign, Facsimile, or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

34.    <u>Integrated Agreement</u>.  This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous

undertakings, communications, representations, understandings, negotiations, drafts, term sheets, and discussions, either oral or written, between the Parties, and reflects the final and binding agreement between the Parties.  The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

35.     <u>Voluntary Settlement</u>.  The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

36.     <u>Confidentiality of Agreement</u>.  The Parties agree to keep the terms of the Settlement Agreement confidential until such time as NCSPs seek Preliminary Approval of the Settlement in the Action.  The Parties further agree to continue to maintain the confidentiality of all settlement discussions and communications exchanged in the course of reaching and entering into this Settlement.

*       *       *       *       *

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

**[SIGNATURES ON NEXT PAGE]**



Brian D. Clark
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401-2179
Email: bdclark@locklaw.com

*Interim Co-Lead Counsel for the Non-Converter Seller Purchaser Class*

Dated: 5/16/25



*Defendant Oil Price Information Service, LLC*

**By:** Brian Crotty

**Its:** General Manager

Dated: 5/16/25



Karin E. Garvey
Scott+Scott Attorneys at Law LLP
The Helmsley Building, 230 Park Ave., 24th Floor
New York, New York 10168
T: (212) 223-6444
Email: Kgarvey@scott-scott.com

*Interim Co-Lead Counsel for the Non-Converter Seller Purchaser Class*

Dated: 5/16/25

130357209