**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re PVC Pipe Antitrust Litigation* | Case No. 24 C 07639 |
| | Hon. LaShonda A. Hunt |
| THIS DOCUMENT RELATES TO: | |
| *The Direct Purchaser Plaintiff Class* | |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFF BILL
WAGNER & SON, INC.'S MOTION – UNOPPOSED[1] BY SETTLING DEFENDANT
OIL PRICE INFORMATION SERVICE, LLC ("OPIS") – FOR PRELIMINARY
<u>APPROVAL OF SETTLEMENT WITH DEFENDANT OPIS AND RELATED RELIEF</u>**

---

[1]OPIS, the Settling Defendant, does not oppose DPP's motion. Because the Settlement Agreement required the terms of DPP's settlement with OPIS to remain confidential until this motion was filed, it was not possible to conduct a pre-filing meet-and-confer with other parties. As detailed herein, on May 29, 2025, Interim Lead Counsel wrote to the non-settling Defendants asking them to provide, on a confidential basis, Interim Lead Counsel with their customer lists in order to effectuate individual, direct notice of the settlement to members of the DPP Settlement Class. The non-settling Defendants responded on June 4, 2025 that they were not in a position to evaluate the request for customer lists until after they had seen DPP's preliminary approval filings and until other issues were resolved, and advised that they intended to inform DPP of their position on the motion once they are able to review the papers. Therefore, as of the time of this filing, Interim Lead Counsel does not know whether the non-settling Defendants will oppose the part of DPP's motion requesting that the Court order the non-settling Defendants to produce their customer information. If, after reviewing this filing, the non-settling Defendants oppose that part of DPP's motion, Interim Lead Counsel will, pursuant to this Court's procedures, promptly confer with non-settling Defendants and submit an agreed proposed briefing schedule with respect to the request that non-settling Defendants produce their customer information in order to facilitate notice.

### TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. iii

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ........................................................................................................ 3

III.   SUMMARY OF THE SETTLEMENT AGREEMENT ............................................ 3

IV.    ARGUMENT ............................................................................................................. 5

     A.  The Proposed Settlement Satisfies the Standard for Preliminary Approval ............ 5

          1.  The Strength of the DPP Case Compared to the Settlement Amount Favors Approval ................................................................................... 6

          2.  The Settlement Will Reduce the Complexity, Length, and Expense of Further Litigation ............................................................................. 7

          3.  The Arm's-Length Negotiations Resulted in a Settlement Lead Counsel Believes is in the Best Interests of the DPP Settlement Class .................................................................................................... 7

          4.  This "Ice-Breaker" Settlement at the Early Stages of the Case Supports Approval ............................................................................... 8

     B.  The Court Should Certify the Proposed DPP Settlement Class ............................... 8

          1.  The DPP Settlement Class Satisfies Rule 23(a)'s Requirements .............. 10

              a.  Numerosity ................................................................................... 10

               b.  Commonality ................................................................................ 10

               c.  Typicality ..................................................................................... 11

               d.  Adequacy ...................................................................................... 11

           2.  The Proposed DPP Settlement Class Satisfies Rule 23(b)(3) ................... 12

     C.  The Proposed Form and Manner of Class Notice Are Appropriate, and Will Be Effectuated by JND Legal Administration, an Experienced Settlement Administrator ......................................................................................... 13

          1.  Form of Notice ......................................................................................... 14

2.      Manner of Notice ..................................................................................... 15

D.      The Proposed Schedule Is Fair and Should be Approved........................................ 15

V.      CONCLUSION ...................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ........................................................................... 8, 9, 13

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.,*
784 F.2d 1325 (7th Cir. 1986) ................................................................... 8

*Brown v. Cook County,*
332 F.R.D. 229 (N.D. Ill. 2019) ............................................................... 11

*Gautreaux v. Pierce,*
690 F.2d 616 (7th Cir. 1982) ..................................................................... 5

*In re American Int'l. Group, Inc. Securities Litig.,*
689 F.3d 229 (2d Cir. 2012) ...................................................................... 9

*In re Domestic Airline Travel Antitrust Litig.,*
322 F. Supp. 3d 64 (D.D.C. 2018) ........................................................... 15

*In re HealthSouth Corp. Sec. Litig.,*
334 F. App'x. 248 (11th Cir. 2009) ............................................................ 4

*In re TikTok Inc., Consumer Privacy Litig.,*
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ................................................... 5, 6

*In re Vitamin C Antitrust Litig.,*
279 F.R.D. 90 (E.D.N.Y. 2012) ............................................................... 13

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ................................................................. 5, 7

*Kaufman v. Am. Express Travel Related Servs. Co.,*
877 F.3d 276 (7th Cir. 2017) ..................................................................... 6

*Kohen v. Pacific Inv. Mgmt.,*
571 F.3d 672 (7th Cir. 2009) ................................................................... 11

*Lechuga v. Elite Eng'g., Inc.,*
559 F. Supp. 3d 736 (N.D. Ill. 2021) ......................................................... 5

*Lucas v. Vee Pak, Inc.,*
2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ........................................... 6, 7

*Moehrl v. Nat'l Ass'n of Realtors*,
　2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) ................................................................ 10, 11

*Paper Sys. Inc. v. Nippon Paper Indus.*,
　281 F.3d 629 (7th Cir. 2002) ............................................................................................... 6

*Saltzman v. Pella Corp.*,
　257 F.R.D. 471 (N.D. Ill. 2009) ................................................................................... 11, 12

*Schmidt v. Smith & Wollensky LLC*,
　268 F.R.D. 323 (N.D. Ill. 2010) ...................................................................................... 10

*Schulte v. Fifth Third Bank*,
　805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................................ 8

*Smith v. Sprint Comms. Co.*,
　387 F.3d 612 (7th Cir. 2004) ............................................................................................... 9

*Suchanek v. Sturm Foods, Inc.*,
　764 F.3d 750 (7th Cir. 2014) ............................................................................................. 10

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) ........................................................................................................... 10

*Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assoc. Props., Inc.*,
　2019 WL 13037030 (M.D. Fla. Apr. 24, 2019) ................................................................ 4

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

**Other Authorities**

Manual for Complex Litigation, § 21.312, 21.633 (4th ed. 2005) ............................................ 13

## I.     INTRODUCTION

Direct Purchaser Plaintiff Bill Wagner & Son, Inc. ("DPP") respectfully moves the Court to preliminarily approve a proposed settlement between DPP and Defendant Oil Price Information Service, LLC ("OPIS," which does not oppose this motion). The Settlement[2] satisfies the standards for preliminary approval.   This first, "ice-breaker" settlement furthers the public policy of efficiently resolving claims on a class-wide basis, and provides the DPP Settlement Class (hereinafter "DPPs" or "DPP Settlement Class") with cash and extensive cooperation that will, at this early stage of the litigation, jump-start the case and enable the parties to litigate more effectively and efficiently.   Based on the cooperation OPIS has agreed to provide, assuming the Court grants preliminary approval, DPPs intend to amend their existing complaint to expand the scope of the alleged conspiracy and add additional allegations of price fixing.

Pursuant to this "ice-breaker" settlement, OPIS will pay $3,000,000 in cash into an interest-bearing Settlement Fund maintained by a Court-approved Escrow Agent, for the benefit of the DPP Settlement Class.   As detailed below, OPIS has provided and will continue to provide substantial cooperation through (among other things) documents and a proffer of material facts relevant to allegations in DPP's First Amended Class Action Complaint (the "Complaint," with sealed and redacted versions filed on October 30, 2024, at ECF Nos. 183 and 184, respectively). At this early stage of the litigation – before motions to dismiss have been filed, and having received no discovery from Defendants – OPIS' extensive cooperation is particularly valuable to the DPP Settlement Class in their continued prosecution of their claims against the non-settling Defendants.

---

[2] The May 16, 2025 Settlement Agreement between DPP and OPIS (the "Settlement" or "Settlement Agreement") is attached as Exhibit A to the June 6, 2025 Declaration of Robert N. Kaplan in Support of DPP's Motion for Preliminary Approval of Settlement with Defendant OPIS (the "Kaplan Decl."), filed concurrently herewith.  Unless stated otherwise, all capitalized words or terms herein are those defined and used in the Settlement Agreement.

At this point, DPPs are not requesting approval to distribute the cash portion of the Settlement to members of the DPP Settlement Class. Court-appointed Interim Lead Counsel's ("Lead Counsel") experience is that it will be more efficient, cost-effective and practical to wait until after Lead Counsel has the opportunity to explore additional settlements with the other Defendants, before distributing settlement funds to eligible members of the DPP Settlement Class.[3]

Through Court-appointed Lead Counsel and Liaison Counsel, DPP now moves the Court to preliminarily approve the Settlement Agreement, certify for settlement purposes only the proposed DPP Settlement Class, approve the form of notice and proposed plan for notifying members of the proposed DPP Settlement Class of the Settlement, approve the appointment of JND Legal Administration ("JND") as Settlement Administrator and The Huntington National Bank ("Huntington") as Escrow Agent, appoint Kaplan Fox & Kilsheimer, LLP ("Kaplan Fox") as Settlement Counsel for the DPP Settlement Class and DPP Bill Wagner & Son, Inc. as named representative for the DPP Settlement Class, and order the Converter Defendants to furnish Lead Counsel with lists containing the names and addresses of their customers in order to effectuate notice to the members of the proposed DPP Settlement Class. If the Court preliminarily approves the Settlement Agreement, Settlement Counsel will at the Fairness Hearing request entry of a final order and judgment dismissing OPIS with prejudice from the litigation and retaining jurisdiction

---

[3] Courts in this District have preliminarily approved antitrust settlements where distribution of settlement funds obtained early in the case is deferred until later in the litigation. *See, e.g.*, Kaplan Decl., Exs. B (*In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637, ECF No. 462, at 2 (N.D. Ill. Aug. 18, 2017) (Durkin, J.) (Order granting preliminary approval of icebreaker settlement and deferral of Notice and distribution plans: "Co-Lead Counsel for Plaintiffs shall submit for the Court's approval a Motion to Approve a Plan of Notice of Settlement for this and any other settlements at an appropriate time prior to moving for final approval of the Fieldale Farms Settlement Agreement.")) and C and D (*In re Surescripts Antitrust Litig.*, 1:19-cv-06627, (N.D. Ill.) (Tharp, J.) ECF Nos. 126 (Motion) and 175 (Preliminary Approval Order) (approving notice advising class members that funds from partial settlement would not be distributed until later in the case)).

for the implementation and enforcement of the Settlement Agreement.

## II.     BACKGROUND

This is an antitrust class action filed against the country's largest producers of PVC Pipe. DPPs allege that the Defendants, including OPIS, combined and conspired to fix, raise, elevate, maintain or stabilize prices of PVC Pipe sold to direct purchasers in the United States, beginning at least as early as April 1, 2021.  OPIS published until November, 2024 the (now-discontinued) *PetroChem Wire PVC & Pipe Weekly* (the "OPIS Report," *see* Complaint, ¶¶ 4-7)  DPPs allege that Defendants implemented this conspiracy in various ways, including the sharing of competitively-sensitive pricing and customer information, both directly and using OPIS as a mechanism to do so. DPP Bill Wagner & Son, Inc. filed the first direct-purchaser class action complaint on September 26, 2024 (ECF No. 1 in *Bill Wagner & Son, Inc. v. Atkore, Inc. et al.*, Case No. 24-cv-8991).

On October 17, 2024, the Court appointed Kaplan Fox as Lead Counsel, and Sperling Kenny Nachwalter, LLP ("Sperling") as Liaison Counsel, for the proposed DPP Class (ECF No. 163), and DPP filed the Complaint on October 30, 2024.  Defendants have not yet answered or moved to dismiss the Complaint. While DPP (along with a proposed class of indirect purchasers) conducted a pre-discovery conference with Defendants and served them with document requests, interrogatories, and a proposed protective order and ESI protocol, due to the discovery stay, Defendants have not yet responded to those discovery requests, and the Converter Defendants have not produced any documents.  *See* 11/13/2024 Joint Status Report, ECF No. 205, at 4-7.

## III.    SUMMARY OF THE SETTLEMENT AGREEMENT

After  more than  two months of extensive and contentious arms-length negotiations between Lead Counsel and counsel for OPIS, DPPs agreed to settle with OPIS in return for its substantial non-monetary cooperation discussed in greater length immediately below and its

agreement to pay $3 million into a Settlement Fund (including up to $250,000 in non-refundable class notice and administration costs) for distribution at a future date to eligible members of the DPP Settlement Class who did not request exclusion from that class.  *See* Settlement Agreement, ¶¶ 1(v), 9, 10.[4]  In consideration, DPP and the proposed DPP Settlement Class agree to release claims against OPIS related to the PVC Pipe Market which were, or could have been, asserted in this litigation. *Id.*, at ¶ 14. This release does not extend to any other Defendants.

OPIS' extensive cooperation provides the DPP Class with significant non-monetary compensation that is of substantial value to the DPP Settlement Class in their continued prosecution of their claims, particularly at this very early stage of the litigation. The Settlement obligates OPIS to provide, through its outside counsel, up to seven hours of an attorney proffer regarding the material facts regarding the antitrust violations alleged in DPP's Complaint, including alleged price-fixing in the PVC Pipe Market.  *Id.*, ¶ 10(a).  OPIS is also required under the Settlement Agreement to use reasonable efforts to make available for depositions up to three current or former OPIS employees – including Donna Todd, the longtime editor of the OPIS Report, *see* Complaint, ¶¶ 4-7, 49-59 – as well as up to three current or former OPIS employees to testify live at DPPs' trial. Settlement Agreement, ¶¶ 10(b)-(c).

OPIS will produce to DPP all documents subpoenaed by and produced to the grand jury

---

[4] In addition to the Settlement Agreement, the Parties executed a confidential side letter, which the Parties can provide upon the Court's request for its *in-camera* review, pursuant to which OPIS, in its sole discretion, may terminate the Settlement if the opt-outs exceed a certain threshold.  *Id.*, at ¶ 18(c).  Confidential side letters specifying such "blow" provisions are routinely used in class action settlements, with courts finding that they encourage settlement and do not impact the fairness of the proposed settlement.  *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x. 248, 250 n.4 (11th Cir. 2009) (details of blow provision "is typically not disclosed and is kept confidential to encourage settlement"); *Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assoc. Props., Inc.*, 2019 WL 13037030, at *9 (M.D. Fla. Apr. 24, 2019) (confidential side letter "does not impact the fairness" of the proposed settlement "because it does not contain any relevant information for the Settlement Class").

empaneled by the U.S. Department of Justice, Antitrust Division, or any other governmental entity investigating the PVC Pipe Market, including structured pricing data regarding PVC Pipe and resin from 2012 through 2024, drafts and final editions of OPIS Reports, along with all messages or communications between Donna Todd and any employee of a PVC converter, and centralized sources of ESI related to the PVC Pipe Market. *Id.*, at ¶¶ 9(d), 10(d). Finally, OPIS will provide DPPs with declarations, affidavits and/or testimony to establish the authenticity and admissibility of its documents, which will save the DPP Settlement Class time and streamline their trial preparation against the remaining Defendants. *Id.*, at ¶ 9(e).

## IV.     ARGUMENT

### A.     The Proposed Settlement Satisfies the Standard for Preliminary Approval

As the Seventh Circuit has recognized, federal courts "naturally favor the settlement of class action litigation," *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996), because such settlements further the public policy of efficient and dispositive resolution of complex, costly disputes. *See Lechuga v. Elite Eng'g., Inc.*, 559 F. Supp. 3d 736, 744 (N.D. Ill. 2021) (settlement minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources).

When assessing whether to grant preliminary approval to a proposed settlement, a court should "not conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *In re TikTok Inc., Consumer Privacy Litig.,* 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021). The court instead need assess only whether the settlement is "within the range of possible approval," *Gautreaux v. Pierce,* 690 F.2d 616, 621, n.3 (7th Cir. 1982), and "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *TikTok,* 565 F. Supp. 3d at 1083. At the preliminary approval stage, courts in the Seventh Circuit consider: (1) the strength of the plaintiffs' case compared to the settlement

amount; (2) the complexity, length, and expense of the litigation; (3) the opinion of competent counsel; and (4) the stage of the proceedings (including the amount of discovery completed) at the time of the settlement. *Id.*, at 1084. Consideration of the relevant factors supports preliminarily approving the Settlement and authorizing notice to the DPP Settlement Class.[5]

      1.    <u>The Strength of the DPP Case Compared to the Settlement Amount Favors Approval</u>

The proposed settlement provides a monetary payment of $3 million to the DPP Settlement Class, plus the material benefit of OPIS's cooperation in the prosecution of the case against the Converter Defendants. Additionally, the overall recovery to the DPP Settlement Class will not be reduced by the Settlement because OPIS did not participate in the market as a producer or seller of PVC Pipe, and all non-settling Converter Defendants, which did sell and profit from the sale of PVP Pipe, remain jointly and severally liable for injuries resulting from their alleged cartel. *See Paper Sys. Inc. v. Nippon Paper Indus.,* 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output.").

The Seventh Circuit has held that the "evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indications that the settlement reasonably reflects the relative merits of the case." *Kaufman v. Am. Express Travel Related Servs. Co.,* 877 F.3d 276, 285 (7th Cir. 2017). One such reliable indicator here is the cooperation OPIS must provide under the Settlement Agreement, which will, among other benefits, save time and resources. *See, e.g., Lucas v. Vee Pak, Inc.,* 2017 WL 6733688, at *10 (N.D. Ill. Dec. 20, 2017) (noting that a "cooperation agreement will save the plaintiffs from trying to determine the right

---

[5] An additional factor – any class member opposition to the settlement – is inapplicable here. Putative class members have not yet been given notice and therefore have yet to have an opportunity to object.

6

questions to ask the right people"). This factor strongly weighs in favor of approval.

   2. <u>The Settlement Will Reduce the Complexity, Length, and Expense of Further Litigation</u>

  The Settlement will end the Settlement Class' claims against OPIS, narrowing the field of adversaries, and OPIS' cooperation will both assist in prosecuting the DPPs' claims against the Converter Defendants (perhaps leading to additional settlements) and help reduce the costs and risks of litigating this action. *See, e.g.*, *Lucas,* 2017 WL 6733688, at \*12 (cooperation "will serve to minimize the costs and challenges" against remaining defendants). This favors preliminary approval of the Settlement.

   3. <u>The Arm's-Length Negotiations Resulted in a Settlement Lead Counsel Believes is in the Best Interests of the DPP Settlement Class</u>

  At preliminary approval, there is an initial presumption that a proposed settlement is fair and reasonable and satisfies Rule 23(e) when it results from arm's-length negotiations between experienced, competent counsel, whose opinions on the settlement factor into approving it. *See Isby*, 75 F.3d at 1200 (district court "entitled to give consideration to the opinion of competent counsel" that settlement was fair). Here, the Settlement Agreement stems from extensive arms-length negotiations, over more than two months, between attorneys who were sufficiently informed of the relative strengths and weaknesses of their positions. Kaplan Decl., at ¶¶ 4-5.

  DPP believes that the case is strong – even stronger if the Court approves the Settlement – but complex antitrust litigation is inherently risky, and the outcome of any trial is naturally uncertain. To that end, OPIS, which has not conceded or admitted liability concerning DPP's allegations, has made clear to DPP that it would vigorously defend the claims asserted against it absent the Settlement, including moving to dismiss at the pleading stage, asserting various defenses to fact discovery, class certification (including a potential interlocutory appeal to the Seventh Circuit), summary judgment, and ultimately trial (where OPIS would undoubtedly mount a strong

defense), post-trial motions, and appeal. *See Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc*., 784 F.2d 1325, 1333 (7th Cir. 1986) (noting that "[a]ntitrust cases are notoriously extended"). In contrast, if approved, the Settlement would resolve the DPP Settlement Class's claims against OPIS and provide not only a monetary benefit, but extensive and valuable cooperation to the Settlement Class. Further, this Settlement does not affect the potential full recovery of damages for the Class because, as noted above, OPIS did not and does not produce any PVC Pipe, so all damages relating to sales by Converter Defendants remain in the case even after this Settlement.

The Settlement thus both benefits and protects the DPP Settlement Class by eliminating litigation risk as to OPIS, and mitigating the risks of continued litigation against the Converter Defendants. Lead Counsel believes the Settlement to be in the best interests of the DPP Settlement Class, and that it should be preliminarily approved.

4.    This "Ice-Breaker" Settlement at the Early Stages of the Case Supports Approval

The stage of the case strongly supports approval of the Settlement. Even at the early stage of the case, Lead Counsel had – as evidenced by the detailed allegations in the Complaint – "access to sufficient information such that they could effectively represent the class" during settlement negotiations; that is all that is required for preliminary approval. *See Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 588 (N.D. Ill. 2011) (negotiation of fair settlement "evidence that [counsel] had enough information to effectively represent the class").

**B.    The Court Should Certify the Proposed DPP Settlement Class**

The proposed DPP Settlement Class should be certified for settlement purposes only. Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). While certification of a settlement class must satisfy Rule 23's requirements, there is a lower threshold for certification of a settlement class than

for certification of a litigation class, because there will not be a trial against the settling defendant (here, OPIS), and therefore the Settlement obviates the manageability problems of trying the case on a class-wide basis. *See Smith v. Sprint Comms. Co.*, 387 F.3d 612, 614 (7th Cir. 2004) (when faced with "'a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'") (quoting *Amchem*, 521 U.S. at 620)). Indeed, other courts have found that the lack of a trial also assists the predominance requirement, *see, e.g.*, *In re American Int'l. Group, Inc. Securities Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) (class settlement that "eliminates manageability problems" resolved predominance concerns that doomed litigation class).

Therefore, courts in this District routinely certify settlement-only classes before certifying a litigation class, including settlements reached in the early stages of antitrust cases. *See, e.g.*, Kaplan Decl., Exs. B, and D – G (collection of preliminary approval orders from *In re Broiler Antitrust Litigation,* 1:16-cv-08637, certifying settlement-only direct purchaser classes in 2017 (Fieldale), 2019 (Peco/George's/Amick), and 2021 (Tyson/Pilgrims and Mar-Jac/Harrison) well before Judge Durkin certified a direct purchaser litigation class on May 27, 2022) and H (Judge Kendall's order from *In re Turkey Antitrust Litig.*, 1:20-cv-02295, ECF No. 196 (N.D. Ill., July 28, 2021), preliminarily approving "ice-breaker" settlement and certifying settlement-only class before merits litigation class certification proceedings).

DPP seeks certification of the DPP Settlement Class defined in ¶ 4(a) of the Settlement Agreement as follows:

> All persons and entities who purchased PVC Pipes in the United States directly from one or more of the Converter Defendants (or from any of the Converter Defendants' parents, predecessors, subsidiaries or affiliates) at any time between April 1, 2021 through May 16, 2025. Excluded from the Class are Defendants, and their parents, predecessors, subsidiaries, and affiliate, and all federal government entities and instrumentalities of the federal government.

As detailed below, the proposed DPP Settlement Class meets the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy – as well as the requirements of Rule 23(b)(3) – predominance and superiority – and should be preliminarily approved for settlement purposes.

1.  The DPP Settlement Class Satisfies Rule 23(a)'s Requirements

    a.  **Numerosity**

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies this requirement, but a class with 40 or more members is "generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (cleaned up). While the precise number of probable Settlement Class members is currently known only to the Converter Defendants, based on their extensive investigation, Lead and Liaison Counsel believe there are at least several hundred persons and entities within the DPP Settlement Class definition. Thus, joinder would be impracticable, and Rule 23(a)(1) is satisfied here.

    b.  **Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that resolution of an issue of law or fact be "central to the validity" of each class member's claim— "even a single" common question of law or fact will satisfy the commonality requirement. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). A central allegation in the Complaint is that Defendants illegally conspired to fix, raise and maintain prices that the DPP Settlement Class paid for PVC Pipe. This alone satisfies commonality, because "where an antitrust conspiracy has been alleged, courts have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199,

at *11 (N.D. Ill. Mar. 29, 2023) (cleaned up). Here, the existence of the alleged conspiracy, how it operated, whether the conspiracy caused the Settlement Class to pay supracompetitive prices, and the appropriate measure of damages are all questions that will be common to all class members, satisfying Rule 23(a)(2)'s commonality requirement.

### c.    Typicality

Rule 23(a)(3) requires that a class representative's claims be "typical" of class members' claims. "Typicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (cleaned up). Typicality "does not require perfect identity of claims," but rather requires that they share the "same essential characteristics." *Brown v. Cook County*, 332 F.R.D. 229, 241 (N.D. Ill. 2019). If, as is the case here, a proposed class representative must prove a conspiracy, its effectuation, and resultant damages – *i.e.*, exactly what absent class members would need to prove – then the representative claims are typical. *See Moehrl*, 2023 WL 2683199, at *12 (in the antitrust context, "typicality will be established by plaintiffs and all class members alleging the same antitrust violation by the defendants."). Here, the claims arise from the same alleged illegal anticompetitive conduct, are based on the same alleged theories, and require the same kinds of evidence to prove those theories. Rule 23(a)(3)'s typicality requirement is thus satisfied.

### d.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," and the Court must determine whether: (1) the named plaintiff's claims conflict with those of other class members; and (2) the named plaintiff and proposed class counsel can demonstrate their ability to litigate the case vigorously and competently on behalf of the named and absent class members alike. *Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009). Both requirements are satisfied here.

11

First, DPP and Lead Counsel have already demonstrated their ability to vigorously and competently represent both the named and absent class members alike through their actions in this case to date, including their thorough investigation, leading to the detailed allegations set forth in the Complaint. Further, Lead Counsel have appeared at multiple in-person conferences, coordinated with Defendants on consolidation and case deadlines, served discovery, and vetted potential class representatives. These facts, and Lead Counsel's financial ability to fund this litigation, led the Court to appoint Lead Counsel, *see* ECF No. 163. The DPP Settlement Class will likewise be well served by Lead Counsel as their advocates.

Bill Wagner & Son, Inc., as a direct purchaser of allegedly price-fixed PVC Pipes, shares with all DPP Class members an overriding interest in obtaining the largest possible cash recovery and as extensive cooperation as possible to diligently press the case against the Converter Defendants. Further, as demonstrated at the time they sought appointment, Lead and Liaison Counsel are qualified, experienced, and will continue to vigorously prosecute this case and efficiently litigate this matter for the best possible result for the DPP Class. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

2. The Proposed DPP Settlement Class Satisfies Rule 23(b)(3)

The proposed Settlement Class also satisfies Rule 23(b)(3), which requires that "[q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Court have observed that "[a] finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484. Moreover, in this particular context, the Supreme Court has recognized that "predominance is a test readily met in certain cases alleging

12

… violations of the antitrust laws." *Amchem*, 521 U.S. at 625. The DPP Settlement Class satisfies the predominance requirement because the core of this case involves common questions of law and fact, including whether Defendants' conduct violated antitrust laws and resulted in supracompetitive prices. *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (stating that in price-fixing conspiracy cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class") (citing cases). In addition, as noted above, there will not be a trial against OPIS, which provides further support for finding the predominance factor is met here.

This Settlement likewise satisfies the superiority factor because it will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Here, any given Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism, and settling the claims against OPIS on a class-wide basis saves both judicial and private resources, speeds along Settlement Class member's recovery, and provides substantial assistance to the Settlement Class in pursuing their claims against the Converter Defendants. The DPP Settlement Class meets Rule 23(b)(3)'s predominance and superiority requirements.

**C.      The Proposed Form and Manner of Class Notice Are Appropriate, and Will Be Effectuated by JND Legal Administration, an Experienced Settlement Administrator**

Under Rule 23(e), class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court, and to notice of the final Fairness Hearing. *See* Manual for Complex Litigation, § 21.312, 21.633 (4th ed. 2005). For 23(b)(3) classes like this, pursuant to Rule 23(c)(2)(B), the Court must "direct to class members the best notice that is practicable

under the circumstances, including individual notice to all members who can be identified through reasonable effort." The two components of notice are: (1) the form of the notice, and (2) the manner in which notice is sent to class members.  Both are satisfied here.

          1.     Form of Notice

The proposed forms of notice are based on notices approved by courts in this District in antitrust class actions, such as *Broilers*.[6]  The proposed long-form notice (Ex. B to the Declaration of Gina Intrepido-Bowden Regarding Settlement Notice Plan[7] (the "Intrepido-Bowden Decl.")) is designed to alert DPP Settlement Class members to the proposed Settlement by using a bold headline, and the plain-language text gives important information regarding the Settlement's terms, clearly stating that distribution will occur in the future, the method of objecting or excluding oneself from the Settlement and the consequences of doing so, and the binding effect of a final judgment on members of the DPP Settlement Class.  Intrepido-Bowden Decl., at ¶¶ 11-21.  The proposed Summary Notice – the centerpiece of an extensive digital notice effort targeting likely members of the DPP Settlement Class – will take readers to a comprehensive settlement website and toll-free number where readers can get more detailed information about the Settlement, including (on the website) the Settlement Agreement itself and filings and pleadings relevant to the DPP litigation.  *Id.*, at Ex. C, and ¶¶ 22-33.

---

[6] *See* Kaplan Decl. Exs. E - F.

[7] JND's experience and success as a court-appointed class settlement administrator is outlined at Intrepido-Bowden Decl., ¶¶ 3-8.  As several courts in this District have recognized, the company and its team are well-qualified to be the court-appointed Settlement Administrator here.  The costs of Class Notice will be drawn from the Settlement Fund maintained by proposed Escrow Agent Huntington, whose experience and qualifications are detailed in Kaplan Decl., Ex. I, and who DPP and Lead Counsel respectfully request be appointed as Escrow Agent for the Settlement.

2.     Manner of Notice

The proposed notice plan will, in addition to the digital notice effort summarized above, give direct, individual notice by U.S. mail to potential members of the DPP Settlement Class identified by name and mailing address in the customer lists the Converter Defendants have been asked (and, if necessary, ordered by the Court) to furnish to Settlement Counsel to effectuate notice. *Id.*, at ¶¶ 16-20.[8] Numerous courts have approved near-identical notice plans as appropriately satisfying both Due Process and Rule 23, *see* footnote 6, *supra*. DPP and Lead Counsel respectfully suggest the Court do the same for this Settlement.

**D.     The Proposed Schedule Is Fair and Should be Approved**

If the Court grants the motion, DPP and Lead and Liaison Counsel propose the following schedule for the Settlement approval process, which is pegged to the date of the Court's preliminary approval order (abbreviated below as the "PAO"):

---

[8] The Converter Defendants' customer contact information is necessary for Class Notice, as OPIS neither makes nor sells PVC Pipe to any person or entity, including any member of the DPP Settlement Class. Courts within this District have ordered non-settling antitrust defendants to produce customer contact information to effectuate notice in early settlements. *See, e.g.*, Kaplan Decl., Ex. J, *In re Broiler Antitrust Litigation,* 1:16-cv-08637, ECF No. 980 (N.D. Ill. June 22, 2018) ("Each Defendant to produce customer names, addresses, phone numbers and email addresses, to the extent the Defendant has that information in its structured transactional data or other sources as agreed, to Direct Purchaser Plaintiffs and the Settlement Administrator"). Lead Counsel wrote on May 29, 2025 to the Converter Defendants' counsel, requesting production of their clients' customer lists to effectuate reasonable notice, as non-settling defendants in other antitrust class actions have complied with similar requests to effectuate notice. *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 68 (D.D.C. 2018) (granting class plaintiffs' request to order non-settling defendants "to provide Plaintiffs with e-mail customer contact information in order that Plaintiffs may give notice to possible class members," noting that the "Non-Settling Defendants 'do not object to providing the e-mail addresses associated with the relevant tickets in their transactional data" so long as they had 30 days from the court's order to do so). The Converter Defendants responded that they were unable to evaluate Lead Counsel's request before seeing DPP's preliminary approval papers, and until other issues were resolved, and advised that they intended to inform DPP of their position on the motion once they are able to review the papers.

| Event | Proposed Timing |
|---|---|
| Converter Defendants Produce Customer Lists | 10 days after POA |
| Notice Plan Begins | 14 days after Converter Defendants' production of sufficient customer data |
| Objection and Exclusion Deadline | 84 days after Notice Plan begins |
| Motion for Final Approval Filings | 14 days before Fairness Hearing |
| Fairness Hearing | 40 days from the last day for class members to request exclusion from the DPP Settlement Class, or as soon thereafter as the Court's schedule permits |

This schedule is fair to DPP Settlement Class members since it provides ample time for consideration of the Settlement and to determine the course of action that they believe is best for themselves. The schedule also allows the full statutory period for OPIS to serve its Class Action Fairness Act notices, and for regulators to review the proposed Settlement and advise the Court of their view should they choose to do so.

## V. CONCLUSION

For the reasons stated above, DPP respectfully requests that the Court preliminarily approve the Settlement Agreement, certify, for settlement purpose only, the proposed DPP Settlement Class, order the Converter Defendants to produce to Settlement Class Counsel their customer lists to effectuate Class Notice, approve the proposed form and content of the Class Notice and the plan for issuing it, and enter the proposed schedule for implementing notice and setting final approval. DPP also respectfully requests that the Court appoint Kaplan Fox as Settlement Class Counsel, Bill Wagner & Son, Inc. as the representative of the DPP Settlement Class, JND Legal Administration as the Settlement Administrator, and The Huntington National Bank as the Escrow Agent.

Dated: June 6, 2025

Respectfully submitted,

By: */s/ Robert N. Kaplan*
Robert N. Kaplan

Matthew P. McCahill
Elana Katcher
Brandon Fox
Carihanna Morrison
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, New York 10022
Tel: (212) 687-1980
rkaplan@kaplanfox.com
mmccahill@kaplanfox.com
ekatcher@kaplanfox.com
bfox@kaplanfox.com
cmorrison@kaplanfox.com

Gary L. Specks
**KAPLAN FOX & KILSHEIMER LLP**
681 Prestwick Lane
Wheeling, Illinois 60090
Tel: (847) 831-1585
gspecks@kaplanfox.com

*Lead Counsel for the Direct Purchaser Plaintiff Class*

Joseph M. Vanek
Allison Margolies
David Germaine
John P. Bjork
**SPERLING KENNY NACHWALTER, LLC**
321 N Clark Street, Suite 2500
Chicago, Illinois 60654
Tel: (312) 641-3200
jvanek@sperlingkenny.com
amargolies@sperlingkenny.com
dgermaine@sperlingkenny.com
jbjork@sperlingkenny.com

Phillip F. Cramer
**SPERLING KENNY NACHWALTER, LLC**
1221 Broadway, Suite 2140
Nashville, Tenn. 37212
Tel: (312) 641-3200
pcramer@sperlingkenny.com

17

James Almon
**SPERLING KENNY NACHWALTER, LLC**
1616-D Metropolitan Cir.
Tallahassee, Florida 32308
Tel: (850) 942-4334
jalmon@sperlingkenny.com

*Liaison Counsel for the Direct Purchaser Plaintiff Class*

Dianne M. Nast
Joseph Roda
Michael Ford
Michele Burkholder
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, Penn. 19107
Tel: (215) 923-9300
dnast@nastlaw.com
jnroda@nastlaw.com
mford@nastlaw.com
mburkholder@nastlaw.com

Joshua H. Grabar
Julia Varano
**GRABAR LAW OFFICE**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, Penn. 19103
Tel: (267) 507-6085
jgrabar@grabarlaw.com
jvarano@grabarlaw.com

*Counsel for Direct Purchaser Plaintiff Bill Wagner & Son, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on June 6, 2025, I caused true and correct copies of this brief and its accompanying declarations and exhibits to be served via the Court's CM/ECF system on all counsel of record.

*/s/ Robert N. Kaplan*
Robert N. Kaplan