UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re PVC Pipe Antitrust Litigation* | Case No. 1:24-cv-07639 |
| | |
| THIS DOCUMENT RELATES TO: | Hon. LaShonda A. Hunt |
| | **SECOND CONSOLIDATED CLASS ACTION COMPLAINT** |
| Non-Converter Seller Purchaser Class Plaintiffs | |
| | JURY TRIAL DEMANDED |
| | **[PUBLIC REDACTED VERSION]** |

## TABLE OF CONTENTS

I.    NATURE OF THE ACTION ........................................................................... 1
II.   JURISDICTION AND VENUE .................................................................... 7
III.  PARTIES. ....................................................................................................... 8
    A.   Plaintiffs ............................................................................................... 8
    B.   Defendants ........................................................................................... 11
IV.  AGENTS AND CO-CONSPIRATORS ..................................................... 24
V.   BACKGROUND ON PVC PIPE SYSTEMS AND OPIS ......................... 28
    A.   PVC Pipes and Fittings Are a Combination of PVC Resin and
        Additives ............................................................................................. 28
        1.   A Description of PVC Pipe Systems ...................................... 29
        2.   The Relative Size of Each PVC Pipe Systems Application
            Category ................................................................................... 37
        3.   Imports and Exports of PVC Pipe Systems Do Not Have a
            Major Impact on the Market in the United States ................. 38
        4.   Pricing in the PVC Pipe Systems Industry ........................... 39
        5.   An Overview of Which PVC Pipes and Fittings Each
            Converter Defendant Manufactures ...................................... 42
    B.   OPIS Provided the Converter Defendants with the Means to
        Increase and Stabilize PVC Pipe System Prices ............................. 44
        1.   OPIS, Which Specializes in Non-Public Commodity Price
            Reporting, Is No Stranger to Antitrust Litigation ................ 44
        2.   Todd's Methodology for Compiling OPIS's PVC & Pipe
            Weekly Became the Backbone of the Conspiracy ................ 46
        3.   Todd's Communications and Setting of PVC Pipe System
            Market Prices with Converter Defendants and Co-
            Conspirator Distributors Provide Direct Evidence of a *Per
            Se* Price-Fixing Conspiracy.................................................. 51
        4.   OPIS's PVC & Pipe Weekly, by Itself, Constitutes an
            Information Exchange Conspiracy that Is Illegal under the
            Sherman Act ............................................................................ 53
VI.  THE PRICE-FIXING CONSPIRACY DEFENDANTS USED TO REAP RECORD
       PROFITS FROM 2020-2025 WAS OPERATIONAL DATING BACK TO AT
       LEAST 2017 ................................................................................................ 57
    A.   Each Defendant Took Substantial Steps in Furtherance of the
        Conspiracy ........................................................................................ 60
    B.   2017: Defendants Worked to Push PVC Pipe System Prices Up But
        Failed to Do So ................................................................................. 62
    C.   2018: Defendants Worked to Build the Conspiracy and Began
        Recognizing that with Direct Price Coordination They Could Yield
        Higher Margins than by Simply Tracking Resin Prices ................. 64
    D.   2019: Prices Steadily Declined While Converters Fine Tuned Their
        Conspiracy ........................................................................................ 68
    E.   2020: The Onset of the COVID-19 Pandemic Provided the Perfect
        Opportunity and Pretext for the Conspiracy to Succeed ................. 73

1. Converter Defendants Began 2020 with a Coordinated Price Increase and Continued the Year with Hundreds of Emails, Calls, and Texts to Coordinate a Dramatic Increase in Conduit Pipe Prices ............................................................ 73

2. Municipal Pipe Prices Increased Dramatically in 2020, as Producers Used the Pretext of COVID to Rapidly Increase Prices through Coordinated Price-Fixing ................................ 83

3. Plumbing Pipe Prices Skyrocketed in 2020 through Coordinated Price Increases by Converters ........................ 88

4. In Sum, 2020 Saw Historic Increase in All PVC Pipe Systems through Defendants' Coordinated Price Fixing Efforts ............................................................................ 92

F. **2021: Converter Defendants' Coordinated Price Increases Sent PVC Pipe System Prices to Historic Highs .................................... 92**

1. Municipal Pipe Prices Skyrocketed in 2021 as Defendants Conspired to Increase Prices by Over 330% by Pretextually Blaming Supply Shortages .............................................. 94

2. Plumbing Pipe Prices Rose Roughly 200% During 2021 Following Converters' Coordinated Price Increases .............. 103

3. During 2021, Conduit Prices Increased by More than 200% ............ 108

4. In Sum, Using the Pretext of PVC Resin Supply Shortages Caused by Weather and COVID, Defendants Increased the Profit Margin Spread to Historic Levels and Enjoyed Record Profits ................................................................ 119

G. **2022: Defendants Fought to Stabilize PVC Pipe System Prices at Historic Levels .............................................................. 120**

1. Converter Defendants Worked to Stabilize Historically High Municipal Pipe Prices During 2022 .......................... 121

2. During 2022, Plumbing Prices Increased for Part of the Year, But Declined Towards the End of the Year Even as Plumbing Pipe Converters Worked to Stabilize Prices ................ 125

3. During 2022, Conduit Prices Stayed Near Their Historic Highs, as Defendants Worked to Stabilize Prices ................ 126

4. In Sum, During 2022 Prices Continued to Rise for Most of the Year, and Defendants Fought to Stabilize Them Against Decreasing ...................................................................... 135

H. **2023: Defendants Announced Numerous Price Increases to Stabilize Prices and Continued to Reap Record Profits Throughout the Year .......................................................................... 136**

1. Defendants Worked Throughout 2023 to Stabilize Municipal Pipe Prices Near Their Record High Levels ........................ 136

2. Conduit Pipe Prices in 2023 Remained Near Their Record Highs, as Converters Used Coordinated Price Increases to Stabilize Prices from Dropping in Response to Market Conditions ........................................................................ 144

3. Plumbing Pipe Prices in 2023 Fell from Their Historic Highs as Converters Coordinated Closely to Issue Price Increases Meant to Stabilize Prices........................ 157

4. In Sum, 2023 Saw Constant Efforts to Announce Parallel Price Increases to Stabilize Prices at Artificially High Levels, Leading to Continued Record Profits for the Converter Defendants .......................................... 163

I. **January through July 2024: Defendants Implement Multiple Price Increases to Stabilize PVC Prices** .......................................... **165**

   1. A Strong Push to Raise Municipal Pipe Prices in Early 2024 Was Successful, and Defendants Closely Coordinated Announcement Dates through July 2024 .......................... 165

   2. Conduit Converters Announced Multiple Price Increases in 2024.......................................................................... 168

   3. There Were a Series of Plumbing Pipe and Fittings Increases During 2024 ................................................... 179

J. **Defendants' Reactions to Discovery of the Conspiracy in Late July 2024 Show a Consciousness of Guilt** ............................... **184**

VII. **OTHER ASPECTS OF THE CONSPIRACY SUPPORT ITS PLAUSIBILITY AND THE PARTICIPATION OF THE CO-CONSPIRATOR DISTRIBUTORS** ......... **189**

A. **The Uncoupling of the Historic Relationship of the Prices of PVC Resin and PVC Pipe Systems, as well as the Abnormally High and Persistent High Price of PVC Pipe Systems Price Since 2020, Support the Plausibility of the Conspiracy** ............................... **189**

B. **The Converter Defendants Directly Communicated to Implement Defendants' Conspiracy** .......................................................... **190**

C. **Defendants' Conspiracy Was Very Successful** ........................... **191**

D. **The Co-Conspirator Distributors' Active Participation in the Conspiracy Was Critical and Was Motivated by a Desire Not to Incur Financial Harm If Their Inventory Was Devalued by Prices Decreasing from Record Levels** ................................................... **192**

E. **Plus Factors Support the Plausibility of the Conspiracy** ............... **195**

   1. PVC Pipe Systems Are Largely Commoditized ..................... 195

   2. The Demand for PVC Pipe Systems Is Inelastic .................. 196

   3. The PVC Pipe Systems Industry Is Highly Concentrated and Consolidated........................................................ 198

   4. The PVC Pipe Systems Industry Has High Barriers to Entry............ 199

   5. The Converter Defendants Had Numerous Opportunities to Collude.................................................................. 200

   6. Defendants' History of Prior Accusations of Anticompetitive Conduct.............................................. 205

   7. Common Ownership of the Converter Defendants, Including by PVC Resin Manufacturers, Facilitated the Conspiracy ........................................................... 206

VIII.    **DEFENDANTS ACTIVELY CONCEALED THEIR CONSPIRACY, AND PLAINTIFFS COULD NOT HAVE DISCOVERED DEFENDANTS' ANTICOMPETITIVE CONDUCT ................................................................ 209**

IX.    **PLAINTIFFS ALLEGE VIOLATIONS UNDER BOTH THE PER SE AND RULE OF REASON STANDARDS OF THE SHERMAN ACT. ...................................... 212**

X.    **CLASS ACTION ALLEGATIONS ........................................................................ 214**

XI.    **ANTITRUST INJURY ........................................................................................... 217**

XII.    **CLAIMS FOR RELIEF ........................................................................................ 218**

XIII.    **VIOLATIONS OF STATE ANTITRUST LAWS FOR INDIRECT PURCHASES ... ................................................................................................................................ 223**

XIV.    **PRAYER FOR RELIEF ....................................................................................... 264**

XV.    **JURY TRIAL DEMANDED ................................................................................. 265**

## GLOSSARY OF TERMS

| TERM | DEFINITION |
|---|---|
| ASTM | The American Society of Testing and Materials ("ASTM"), now known at ASTM International, is an organization that develops and publishes industry standards for a range of materials and products, including PVC Pipes and Fittings. Each ASTM standard designation considers material composition, physical properties, performance criteria, and testing methodologies. Several ASTM standards apply specifically to PVC Pipe Systems. |
| AWWA | The American Water Works Association ("AWWA") publishes industry standards covering products and processes related to areas of water treatment and supply. AWWA publishes standards specific to PVC pressurized pipes and fabricated fittings. |
| Blocks | Blocks are an industry-specific tiered pricing system that functions as shorthand for communicating market prices. The PVC Pipe Systems industry discusses Municipal Pipe pricing in terms of Blocks. |
| CDI | Chemical Data Inc. ("CDI") is a reporting service focused on the U.S. petrochemical industry. It covers PVC resin prices but not PVC Pipe System prices. |
| Class Period | January 1, 2020, to the present. |
| Co-Conspirator Distributors | Core & Main Inc., Ferguson Enterprises, Inc., Fortiline Waterworks, Hajoca Corporation, Porter Pipe & Supply Co., and United Pipe & Steel Corp. |
| Conduit Pipe | "Conduit Pipe" refers to PVC electrical conduit pipe. It is used to insulate and protect wires, typically electrical wires and is manufactured to the UL651 standard, or its equivalent. It is predominately grey in color but can also be red and/or orange. The PVC Pipe System industry uses 100-foot lengths of 4-inch diameter solid wall Schedule 40 conduit as a shorthand to discuss Conduit Pipe pricing. |
| Conspiracy | The term "Conspiracy" refers to the overarching conspiracy by Defendants and Co-Conspirators to fix, maintain, increase, and stabilize the price of PVC Pipe Systems, including through OPIS's Donna Todd and PVC & Pipe Weekly. Conspiracy also refers to the conscious commitment to a common scheme shared by all Defendants with respect to PVC Pipe Systems. |
| Converter | The industry term for manufacturers who convert PVC resin into finished PVC Pipe Systems is "converter." |
| Converter Defendants | The term "Converter Defendants" refers to Atkore, Inc., Atkore International, Inc., Atkore Plastic Pipe Corp. d/b/a Heritage Plastics, Atkore RMCP, Inc., Queen City Plastics, Inc., Ridgeline Pipe Manufacturing, Allied Tube & Conduit Corporation; Cantex, Inc.; Charlotte Pipe & Foundry, Cresline Plastic Pipe Co., Inc., Diamond Plastics Corporation; IPEX USA LLC; PipeLife Jetstream, Inc.; J-M Manufacturing Company, Inc. d/b/a JM Eagle; Multi Fittings |

| TERM | DEFINITION |
|---|---|
|  | Corporation; National Pipe & Plastics, Inc.; Northern Pipe Products, Inc.; Otter Tail Corporation; Prime Conduit, Inc.; Sanderson Pipe Corporation; Southern Pipe, Inc.; Westlake Corporation; Westlake Pipe & Fittings Corporation; and Vinyltech Corporation. These entities are also referred to in the Complaint as the "Converters." |
| Defendants | The Converter Defendants and Oil Price Information Service, LLC ("OPIS") are collectively referred to as "Defendants." |
| Discount Rate | Expressed as a percentage, the Discount Rate is the amount Converters would reduce the price given on the current price sheets in effect. Defendants would often agree in advance on where to set the discount rate when issuing new sheets. |
| ■■■■■■ | ■■■■■■■■■■■■■■■■ |
| DWV | This term is a common initialism in the PVC Pipe Systems industry referring to drain, waste, or vent pipe. DWV pipes are part of the Plumbing Pipe application. |
| ■■■ | ■■■■■■■■■■■■ |
| Immediate Sales Price or Immediate Purchase Price | For Municipal Pipe, the equivalent of the market price or "spot" price. This is a type of price is different from "Quoted Price," which is defined below. Converters generally publish an Immediate Sales Price for Municipal Pipes. |
| Municipal Pipe | Municipal Pipe" refers to PVC municipal water pipe (blue pipe), PVC municipal sewer pipe (green pipe), and non-potable water for irrigation, reclaimed water systems, and aerobic septic systems (purple pipe). |
| PVC | This term is an initialism that stands for "polyvinyl chloride." It is a synthetic plastic polymer derived from chlorine and ethylene that is widely used in a variety of products and applications. Its raw form is PVC resin, the main raw material used to make PVC Pipe Systems. |
| OPIS | Oil Price Information Service, LLC |
| Plain End | A plain end pipe is one that ends as a straight cut-off of the extruded PVC Pipe rather than one with some type of coupling extruded onto the end of the pipe to connect to the next pipe without need for a PVC Fitting. |
| Plumbing Pipe | "Plumbing Pipe" refers to PVC plumbing pipe or DWV pipe. It is typically white in color and is manufactured to the ASTM D1785 and/or ASTM 2665 industry standards or their equivalent. It is used in residential, commercial, and industrial plumbing applications. The PVC Pipe Systems industry uses foot-long lengths of Schedule 40 solid wall 4-inch DWV plain end pipe as a shorthand to discuss Plumbing Pipe pricing. |

| TERM | DEFINITION |
|---|---|
| Price Protection | "Price Protection" refers to the practice of Converters offering a discount off current price sheets for a specific period of time, usually a month, to certain customers. |
| PVC Fittings | As used herein, "PVC Fittings" refers to detachable pieces of PVC plastic that connect two or more PVC pipes, including couplings, elbows, tees, crosses, caps, plugs, adapters, bushings, nipples, and flanges. |
| PVC Schedule | "PVC Schedule" refers to the thickness of the PVC Pipe wall. Conduit and Plumbing Pipe are often described by references to Schedule 40, Schedule 80, or Schedule 120. Each successively higher Schedule has a thicker wall and thus greater structural durability and resilience to strain and pressure. |
| Price Sheet(s) | For Conduit and Plumbing Pipe, new prices are issued via increase letters that attach price sheets for certain geographical regions. These price sheets list out each product. Price sheets typically have a single benchmark price upon which all other prices in the price sheets are based. |
| PVC Municipal Drinking Water Pipe | This term refers to blue pipes that carry municipal potable water, manufactured to AWWA C900 or ASTM D2241 standards. |
| PVC Municipal Sewer Pipe | This term refers to green pipes that carry wastewater to sewage treatment plants, manufactured to ASTM D3034 or ASTM F679 standards. |
| PVC Pipe Systems | PVC Pipe Systems consist of two necessary and complementary components: (1) PVC Pipes and (2) PVC Fittings that connect PVC Pipe segments into piping systems. Neither component has meaningful economic value or practical use without the other—pipes need fittings to create functional systems, and fittings serve no purpose without pipes to connect. |
| PVC resin | PVC resin is the raw form of PVC, serving as the primary raw material used in the production of PVC Pipe Systems, constituting approximately 70% of input costs. |
| Quote Price | The "Quoted Price" is the price offered for pipe purchased under specific terms (quantity and duration), usually under a contract. This type of price is different from the "Immediate Purchase Price," which is defined above. Converters generally publish a Quoted Price for Municipal Pipes. |

Plaintiffs bring this civil antitrust action on behalf of themselves individually and on behalf of proposed Classes of all persons and entities who purchased PVC Pipes and the PVC Fittings necessary to connect PVC Pipes (collectively, "PVC Pipe Systems") manufactured by the Converter Defendants, through a non-converter PVC Pipe Systems seller, in the United States beginning at least as early as January 1, 2020, to the present (the "Class Period"). Defendants in this action consist of the Converter Defendants and OPIS. As explained more fully below, some of Plaintiffs' claims may sound as indirect claims or direct claims depending on the Court's eventual findings, after discovery, regarding the involvement of distributors in the Conspiracy alleged herein; therefore, Plaintiffs allege claims for relief under Section 1 of the Sherman Act and under various state antitrust, consumer protection, and unjust enrichment laws.

## I.  NATURE OF THE ACTION.

1.  PVC Pipe System[1] prices exploded in 2020. The nation's leading PVC Pipe System manufacturers—the Converter Defendants—blamed COVID-19 and supply chain chaos. They were lying. The astronomical price increases resulted from an elaborate price-fixing Conspiracy, not pandemic disruptions. Working hand-in-glove with industry reporting service, Defendant OPIS, Converter Defendants weaponized temporary shocks to the supply of PVC resin—the primary raw material in PVC Pipe Systems—as cover to orchestrate a brazen scheme. The results were staggering: PVC Pipe System prices quadrupled, generating windfall profits while devasting pipe purchasers nationwide.

2.  The Converter Defendants dominate America's PVC Pipe Systems market. They collectively control over 90% of PVC Pipe System market share.

---

[1] Throughout this Complaint, capitalized words have the meaning described in the Glossary above, which is hereby incorporated by reference each time such terms are used herein.

3.      At the Conspiracy's center sits OPIS and its employee Donna Todd. For over a decade, OPIS published "PVC & Pipe Weekly" every Friday—billing itself as "the only source for pricing on finished PVC pipe: municipal, conduit, and plumbing." Todd served as the report's architect, editor, and sole reporter. When Plaintiffs exposed Defendants' scheme in August 2024,

██████████████████████████████████████████████████████████

████████████████████████████████████████

4.      ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████

5.      Access to PVC & Pipe Weekly was deliberately restricted—available only to paying subscribers or individuals Todd deemed essential to the Conspiracy's success. Todd cultivated an exclusive network of PVC Converters' senior executives and C-suite leaders, each of whom clearly understood her value. These were not casual business relationships; Todd spoke with key players multiple times weekly, creating what one Converter CEO (Maverick Pipe) candidly described as "a good old boys [*sic*] club."

6.      Every Converter Defendant and Co-Conspirator Distributor did not merely consume OPIS's reports—████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████

2

7.      Years before COVID provided their cover story, the Converter Defendants methodically constructed their Conspiracy apparatus. Todd evolved from information broker to active coordinator, establishing real-time communication channels for Defendants to exchange forward-looking price information. Confidential price increase letters were routinely distributed by Todd to all Converter Defendant within minutes of her receipt from the issuing Converter Defendant.

8.      Todd's role transcended mere reporting—she became an integral decision-maker, helping Converter Defendants orchestrate pricing strategies, discount policies, and determine the precise timing of price increases. When COVID struck in early 2020, Defendants were perfectly positioned to exploit 'supply chain disruptions' to fix PVC Pipe System prices.

9.      From at least as early as January 1, 2020, Todd coordinated the nationwide Conspiracy through thousands of text messages, phone calls, emails, video conferences, and face-to-face meetings with Converter Defendants and their Co-Conspirators. The evidence is overwhelming and damning. A small preview is provided here:

a.      

b.

c. █████████████████████████████████████████

d. █████████████████████████████████████████

e. █████████████████████████████████████████

10.     These examples represent just the tip of the iceberg—dozens more follow throughout this Complaint.

11.     The Conspiracy followed a predictable, damning pattern: ████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

12.    ████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

13.    Six major distributors—Hajoca Corporation, Fortiline Waterworks, Ferguson Enterprises, Inc., Core & Main Inc., United Pipe & Steel Corp., and Porter Pipe & Supply Co. (the "Co-Conspirator Distributors")—███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████    It appears that Charlotte Pipe, which had been under a recent DOJ consent decree related to anti-competitive activity, was more cautious about pricing conversations with competitors than the other Converter Defendants, but still actively participated in the Conspiracy as described herein.

14.    These six distributors control over 70% of the direct PVC Pipe Systems purchases in the United States. Their participation in the Conspiracy was driven by pure financial self-interest. First, higher PVC Pipe System prices meant higher profits on their own sales. Second, the 2020 price explosion tripled or quadrupled their inventory values overnight—a sudden price collapse would force devastating write-downs that could imperil their financial stability.

15.     Todd's January 2023 report captured the Co-Conspirator Distributors' mindset:

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████     Co-Conspirator Distributors contributed to the PVC & Pipe Weekly and used the information, price signals, and confirmations contained in the report to stabilize the value of their inventories.

16.     The Conspiracy unraveled in late July 2024 when an investor report highlighting Defendants' price-fixing went viral throughout the industry. The transformation was immediate—

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

When Plaintiffs filed suit in August 2024, things got worse for Defendants: multiple publicly traded Converter Defendants disclosed that they had received criminal grand jury subpoenas from the U.S. Department of Justice seeking documents related to PVC Pipe Systems.

17.     This case transcends typical antitrust allegations. While courts generally find conspiracy allegations plausible when competitors announce parallel price increases within a month or two of each other,[2] ████████████████████████████████████████████

████████████████████████████████████████████████████████

18.     Defendants' Conspiracy exemplifies the conduct the Sherman Act prohibits. The Conspiracy artificially inflated PVC Pipe System prices and caused higher costs for everything

---

[2] See *Kleen Products, LCC v. Packaging Corp. of Am.*, 775 F. Supp. 2d 1071, 1081-82 (N.D. Ill. 2011) (holding that consistent and closely timed price increases, in addition to other factors, is enough to plead an antitrust claim).

from plumbing repairs and electrical upgrades to construction projects. Plaintiffs seek to halt Defendants' price-fixing and recover damages for themselves and the NCSP Class members— including plumbers, electricians, homeowners, contractors, and developers—who paid the inflated PVC Pipe System prices.

## II.     JURISDICTION AND VENUE.

19.     Plaintiffs bring this action under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26), to recover treble damages and the costs of this suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiffs and the members of the Classes by virtue of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to enjoin further violations.

20.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

21.     Venue is appropriate in this District under Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391(b), (c), and (d), because one or more Defendants resided or transacted business in this District, is licensed to do business or is doing business in this District (*e.g.*, Defendant Atkore is headquartered at 16100 S. Lathrop Ave., Harvey, Cook County, IL) and because a substantial portion of the anticompetitive conduct described herein was carried out in this District.

22.     This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) has manufactured, sold, shipped, and/or delivered substantial quantities of PVC Pipe Systems throughout the United States, including this District; (c) has substantial contacts with the United States, including this District; and/or (d) engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of

7

persons residing in, located in, or doing business throughout the United States, including in this District.

23.     The activities of Defendants and the Co-Conspirator Distributors, as explained in this Complaint, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on the interstate commerce of the United States.

24.     No other forum would be more convenient for the parties and witnesses to litigate this case.

### III.     PARTIES.

#### A.     <u>Plaintiffs.</u>

25.     Plaintiff George Bavolak ("Bavolak") was a resident at all relevant times of Minneapolis, Minnesota. Bavolak was the owner of Metropolitan Energy Service Inc., a Minnesota corporation that provides residential and commercial electrical services, until July 1, 2024. During the Class Period, Metropolitan Energy Services, Inc. purchased PVC Pipe Systems produced by one or more of the Converter Defendants in Minnesota through a non-converter PVC Pipe Systems seller. Bavolak suffered injury as a result of Defendants' conduct as alleged herein.

26.     Plaintiff Delta Line Construction Co. ("Delta Line Construction") is a New Jersey company located in Egg Harbor Township, New Jersey. It provides commercial electrical construction services. During the Class Period, Delta Line Construction purchased PVC Pipe Systems produced by one or more of the Converter Defendants in New Jesey through a non-converter PVC Pipe Systems seller. Delta Line Construction suffered injury as a result of Defendants' conduct as alleged herein.

27.     Plaintiff TC Construction, Inc. ("TC Construction") is a California corporation headquartered in Santee, California. During the Class Period, TC Construction provided residential and commercial construction services and purchased PVC Pipe Systems produced by one or more

of the Converter Defendants in California through a non-converter PVC Pipe Systems seller. TC Construction suffered injury as a result of Defendants' conduct as alleged herein.

28.     Plaintiff Blake Wrobbel ("Wrobbel") was a resident at all relevant times of Gallatan, Tennessee. During the Class Period, Wrobbel purchased PVC Pipe Systems produced by one or more of the Converter Defendants in Tennessee through a non-converter PVC Pipe Systems seller. Wrobbel suffered injury as a result of Defendants' conduct as alleged herein.

29.     Plaintiffs Advanced Electrical Contracts, Inc. and AEC Electrical LLC ("AEC") are privately held Connecticut corporations, headquartered in Cromwell, Connecticut. Advanced Electrical Contracts, Inc. is operational in the states of Connecticut and Massachusetts. AEC is operational in the states of Connecticut, New Jersey, New York, Florida and Massachusetts. During the Class Period, Advanced Electrical Contracts, Inc. and AEC provided residential and commercial construction services and purchased PVC Pipe Systems produced by one or more of the Converter Defendants in Connecticut, Massachusetts, New Jersey, New York, and Florida through a non-converter PVC Pipe Systems seller. Advanced Electrical Contracts, Inc. and AEC suffered injury as a result of Defendants' conduct as alleged herein.

30.     Plaintiff Stephen Bell ("Bell") is owner of Plaintiff Bell Electric, LLC, ("Bell Electric") a privately held Maine corporation, that provides residential and commercial electrical services. Bell Electric is headquartered in Portland, Maine. During the Class Period, Bell and Bell Electric purchased PVC Pipe Systems produced by one or more of the Converter Defendants in Maine through a non-converter PVC Pipe Systems seller. Bell suffered injury as a result of Defendants' conduct as alleged herein.

31.     Plaintiff Russell Jacobs ("Jacobs") was a resident at all relevant times of Moreno Valley, CA. Jacobs is the owner of Plaintiff RJI, Inc. ("RJI"), a privately held California

corporation, headquartered in Moreno Valley, California. RJI is operational in the states of Arizona and California. During the Class Period, Jacobs and RJI provided residential and commercial electrical services and purchased PVC Pipe Systems produced by one or more of the Converter Defendants in Arizona and California through a non-converter PVC Pipe Systems seller. Jacobs and RJI suffered injury as a result of Defendants' conduct as alleged herein.

32.     Plaintiff Kecia Newton ("Newton") was a resident at all relevant times of Kansas City, MO. Newton is the owner of Plaintiff Alpha and Omega Development Company LLC ("Alpha and Omega"), a privately held Missouri company, headquartered in Kansas City, MO. Alpha and Omega is operational in the states of Missouri and Kansas. During the Class Period, Newton and Alpha and Omega provided residential and commercial electrical and plumbing services. Newton purchased PVC Pipe Systems produced by one or more of the Converter Defendants in Arkansas, Kansas, and Missouri through a non-converter PVC Pipe Systems seller. Alpha and Omega purchased PVC Pipe Systems produced by one or more of the Converter Defendants in Kansas and Missouri through a non-converter PVC Pipe Systems seller. Newton and Alpha and Omega suffered injury as a result of Defendants' conduct as alleged herein.

33.     Plaintiff Eric Wasman ("Wasman") was a resident at all relevant times of Coatesville, PA. During the Class Period, Wasman purchased PVC Pipe Systems produced by one or more of the Converter Defendants in Pennsylvania through a non-converter PVC Pipe Systems seller. Wasman suffered injury as a result of Defendants' conduct as alleged herein.

34.     Plaintiff Adam Kennedy ("Kennedy") was a resident at all relevant times of Onalaska, WI. During the Class Period, Kennedy purchased PVC Pipe Systems produced by one or more of the Converter Defendants in Wisconsin through a non-converter PVC Pipe Systems seller. Kennedy suffered injury as a result of Defendants' conduct as alleged herein.

35.     Plaintiff My Flooring, Inc. is a privately held Hawaii corporation, headquartered in Honolulu, HI. During the Class Period, My Flooring, Inc. provided residential plumbing services and purchased PVC Pipe Systems produced by one or more of the Converter Defendants in the state of Hawaii through a non-converter PVC Pipe Systems seller. My Flooring, Inc. suffered injury as a result of Defendants' conduct as alleged herein.

36.     Plaintiff Victor Silva ("Silva") was a resident at all relevant times of Melrose, MA. During the Class Period, Silva purchased PVC Pipe Systems produced by one or more of the Converter Defendants in the state of Massachusetts through a non-converter PVC Pipe Systems seller. Silva suffered injury as a result of Defendants' conduct as alleged herein.

**B.      Defendants.**

**1.      The Atkore Defendants.**

37.     Atkore, Inc. ("Atkore") is a publicly traded Delaware corporation headquartered in Harvey, IL. Originally founded in 1959 as Allied Tube & Conduit, the company was renamed Atkore International in 2010 and later streamlined its name to Atkore, Inc. in 2021. Atkore expanded through several acquisitions, as noted below. Atkore has agents and/or sales representatives located in this District in Elk Grove Village, IL, Bensenville, IL, and Hillside, IL. Atkore's common stock is listed and traded on the New York Stock Exchange under the trading symbol ATKR. Atkore operates under several trade names, including Heritage Plastics, Cor-Tek, Queen City Plastics, and Allied Tube & Conduit. During the Class Period, Atkore, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

38.     Atkore International, Inc. is a direct subsidiary of Atkore Inc., its sole stockholder. As of September 20, 2022, Atkore Inc. was the sole stockholder of Atkore International Holdings

Inc., which in turn was the sole stockholder of Atkore International Inc. On December 28, 2022, Atkore International Holdings Inc. merged into Atkore International Inc., with Atkore International Inc. being the surviving entity. During the Class Period, Atkore International, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

39.     Atkore Plastic Pipe Corp. d/b/a Heritage Plastics is a subsidiary of Atkore Inc. In 2013, Atkore Plastic Pipe Corporation acquired Heritage Plastics, Inc., Heritage Plastics Central, Inc. and Heritage Plastics West, Inc. (collectively "Heritage Plastics"). Heritage Plastics is currently listed a brand of various Atkore products, described as "high-quality rigid PVC conduit, fittings, pipes, and utility ducts. Whether your work is in plumbing, irrigation, electrical, or municipal sectors, our products are suitable for your commercial, industrial, and utility usage." During the Class Period, Atkore Plastic Pipe Corp. d/b/a Heritage Plastics and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

40.     Atkore RMCP, Inc. is an intermediate subsidiary of Atkore Inc. In August 2019, Atkore acquired the assets of Rocky Mountain Colby Pipe, which went by the trade name Cor-Tek. Rocky Mountain Colby Pipe is now owned through the intermediate subsidiary Atkore RMCP, Inc. Atkore sells and markets Cor-Tek as one of its brands of PVC Pipe Systems. During the Class Period, Atkore RMCP, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

41.     Ridgeline Pipe Manufacturing ("Ridgeline") was a subsidiary of Atkore Inc. and Atkore International, Inc. Ridgeline was headquartered in Eugene, OR. In 2013, Atkore acquired Ridgeline Pipe Manufacturing. As of 2014, Ridgeline manufactured approximately 125 types of PVC products. According to a 2018 Oregon state filing, Ridgeline Pipe Manufacturing was listed as a subsidiary of Atkore Plastic Pipe Corp. and its authorized representative for service was an address listed as Atkore International, Inc. As of 2025, Ridgeline Pipe Manufacturing is listed as "deleted" by the Oregon Secretary of State. "Ridgeline" is now a brand of various Atkore PVC products. During the Class Period, Ridgeline and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

42.     Queen City Plastics, Inc. ("Queen City") is a subsidiary of Atkore Inc. Queen City is headquartered in Fort Mill, SC. Queen City manufactured a "wide-ranging line of PVC Pipe System products, including Schedule 40 and Schedule 80 rigid PVC conduit as well as conduit for encased or direct burial." Queen City was acquired by Atkore in October 2020. The subsidiary was dissolved in December 2024, and "Queen City Plastics" is now a brand of various Atkore PVC Pipe System products. During the Class Period, Queen City and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

43.     Allied Tube & Conduit Corporation ("Allied") is a subsidiary of Atkore Inc. Allied's principal place of business is Harvey, IL. Allied describes itself as "a manufacturing leader of steel, PVC, and aluminum conduit as well as mechanical, safety, and traffic solutions." Atkore treats Allied as a brand of Atkore PVC Pipe Systems. During the Class Period, Allied and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in

interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

44.     There is substantial overlap between the officers and directors of Atkore and its subsidiaries, particularly at the senior leadership level. For example: (1) William "Bill" Waltz is the President and Chief Executive Officer of Atkore. As of August 5, 2025, Bill Waltz informed the Atkore Board of Directors of his decision to retire. Waltz will serve in his role until a successor is appointed. He also serves as President and Chief Executive Officer of Allied and a Director of Atkore Plastic Pipe Corp.; (2) John Pregenzer is President-Electrical of Atkore, and was recently named to also hold the role of Chief Operating Officer in January 2025. He also serves as Vice President of Allied, President of Atkore Plastic Pipe Corp. and President of Atkore RMCP, Inc.; (3) John Deitzer is Vice President and Chief Financial Officer of Atkore. He also serves as Vice President, Chief Financial Officer, and Director of Allied, and is a Director of Atkore Plastic Pipe Corp.; (4) James Alvey serves as Chief Accounting Officer of Atkore. Prior to this promotion, he worked as Corporate Controller of Atkore. He also serves as Vice President/Chief Accounting Officer of both Allied and Atkore Plastic Pipe Corp.; (5) Daniel Kelley is Vice President, General Counsel and Secretary of Atkore. He also serves as Secretary of Allied, Atkore Plastic Pipe Corp., and Atkore RMCP.

45.     Defendants Atkore, Inc., Atkore International, Inc., Atkore Plastic Pipe Corp. d/b/a Heritage Plastics, Atkore RMCP, Inc., Queen City Plastics, Inc., Ridgeline Pipe Manufacturing, Allied Tube & Conduit Corporation are referred to collectively as "Atkore" or the "Atkore Defendants" in this Complaint. The Atkore Defendants are converters of PVC Pipe Systems in the United States including, but not limited to, Conduit Pipe, Municipal Pipe, Plumbing Pipe, and all types of PVC Fittings. During the Class Period, Atkore and/or its predecessors, wholly owned or

controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, Atkore supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributors Hajoca, which has branch locations in this District in Itasca, IL, Chicago, IL, Morton Grove, IL, and Mokena, IL, and United Pipe, which has a branch location in this District in Belvidere, IL.

### 2. The Mitsubishi/Shin-Etsu Defendants.

46. Five Converter Defendants are jointly owned by Mitsubishi Corporation ("Mitsubishi") and Shin-Etsu Chemical Co. Ltd. ("Shin-Etsu"): Cantex, Inc.; Diamond Plastics Corporation; Prime Conduit, Inc.; Sanderson Pipe Corporation; and Southern Pipe, Inc.[3] As of the date of this Complaint, these five Defendants are also all represented by the Axinn, Veltrop & Harkrider firm in this litigation. Plaintiffs sometimes refer to these five Defendants in this Complaint as "the Mitsubishi/Shin-Etsu Defendants," but each is named separately below.

47. Defendant Cantex, Inc. ("Cantex") is a Delaware corporation headquartered in Fort Worth, TX. Cantex has agents and/or sales representatives located in this District in Wood Dale, IL and Naperville, IL. Cantex is a converter of PVC Pipe Systems in the United States including, but not limited to, Conduit Pipe and Conduit Fittings. Cantex is jointly owned by Mitsubishi and Shin-Etsu. During the Class Period, Cantex and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, Cantex supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributor

---

[3] *See* Notice of Affiliates, ECF Nos. 96, 97, 98, and 99; *see also* Notice of Affiliates, ECF No. 43, *Wrobbel v. Atkore Inc. et al.*, No. 24-cv-0812 (N.D. Ill. Sep. 3, 2024).

Ferguson, which has more than 20 locations in this District including in Chicago, IL, Niles, IL, Addison, IL, Gurnee, IL, Rockdale, IL, Crystal Lake, IL, Rockford, IL, and Loves Park, IL.

48.    Defendant Diamond Plastics Corporation ("Diamond") is a Delaware corporation headquartered in Grand Island, NE. Diamond is jointly owned by Mitsubishi and Shin-Etsu. Diamond is a converter of PVC Pipe Systems in the United States including, but not limited to, Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. During the Class Period, Diamond and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Diamond has agents and/or sales representatives assigned to service Illinois. Upon information and belief, Diamond supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributor Core & Main, which has branch locations in this District in Bedford Park, IL, Mokena, IL, Lake Bluff, IL, St. Charles, IL, and Belvidere, IL.

49.    Defendant Prime Conduit, Inc. ("Prime Conduit") is a Delaware corporation headquartered in Cleveland, OH. Prime Conduit has agents and/or sales representatives located in this District in Lemont, IL. Prime Conduit is jointly owned by Shin-Etsu Chemical Co. Ltd. and Mitsubishi Corporation. Prime Conduit is a converter of PVC Pipe Systems in the United States including, but not limited to, Conduit Pipe and Conduit Fittings. During the Class Period, Prime Conduit and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

50.    Defendant Sanderson Pipe Corporation ("Sanderson") is a privately held Delaware corporation headquartered in Clarksville, TN. Sanderson is jointly owned by Mitsubishi and Shin-Etsu. Sanderson is a converter of PVC Pipe Systems in the United States including, but not limited

to, Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. During the Class Period, Sanderson and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Sanderson has agents and/or sales representatives assigned to service Illinois. Upon information and belief, Sanderson supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributor Core & Main, which has branch locations in this District in Bedford Park, IL, Mokena, IL, Lake Bluff, IL, St. Charles, IL, and Belvidere, IL. Upon information and belief, Sanderson supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributor Hajoca, which has branch locations in this District in Itasca, IL, Chicago, IL, Morton Grove, IL, and Mokena, IL.

51.     Defendant Southern Pipe, Inc. ("Southern Pipe") is a Delaware corporation headquartered in New London, NC. Southern Pipe is jointly owned by Mitsubishi and Shin-Etsu. Southern Pipe is a converter of PVC Pipe Systems in the United States including, but not limited to, Conduit Pipe and Conduit Fittings. During the Class Period, Southern Pipe and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Southern Pipe has agents and/or sales representatives assigned to service Illinois.

### 3.     The IPEX Defendants.

52.     IPEX USA LLC ("IPEX") is a Delaware company headquartered in Pineville, NC. IPEX has agents and/or sales representatives located in this District in Lombard, IL. It is a wholly owned subsidiary of Aliaxis SA, a Belgian corporation. IPEX is a converter of PVC Pipe Systems in the United States including, but not limited to, Conduit Pipe, Municipal Pipe, Plumbing Pipe, and PVC Fittings. On November 15, 2019, IPEX closed on its purchase of PVC Pipe Systems Converter Silver Line. During the Class Period, IPEX and/or its predecessors, wholly owned or

controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, IPEX supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributors Ferguson, which has more than 20 locations in this District including in Chicago, IL, Niles, IL, Addison, IL, Gurnee, IL, Rockdale, IL, Crystal Lake, IL, Rockford, IL, and Loves Park, IL; Core & Main, which has branch locations in this District in Bedford Park, IL, Mokena, IL, Lake Bluff, IL, St. Charles, IL, and Belvidere, IL; Hajoca, which has branch locations in this District in Itasca, IL, Chicago, IL, Morton Grove, IL, and Mokena, IL; and United Pipe, which has a branch location in this District in Belvidere, IL.

53.     Multi Fittings Corporation ("Multi Fittings") is a privately held company headquartered in Pineville, NC. Multi Fittings has a distribution center in this District located in Joliet, IL. In 1995, Multi Fittings was acquired by IPEX USA LLC. Multi Fittings is now a controlled subsidiary of Aliaxis SA. Kraloy Fittings is a division of Multi Fittings and a converter of PVC Conduit Fittings. Multi Fittings is a Converter of PVC Fittings in the United States for PVC Pipe Systems. During the Class Period, Multi Fittings and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, Multi Fittings supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributors Ferguson, which has more than 20 locations in this District including in Chicago, IL, Niles, IL, Addison, IL, Gurnee, IL, Rockdale, IL, Crystal Lake, IL, Rockford, IL, and Loves Park, IL, and Hajoca, which has branch locations in this District in Itasca, IL, Chicago, IL, Morton Grove, IL, and Mokena, IL.

18

### 4. Defendant PipeLife JetStream, Inc.

54. PipeLife Jetstream, Inc. ("PipeLife") is a privately held Delaware corporation headquartered in Siloam Springs, AR. PipeLife is the United States division of Austria-based PipeLife Group, one of the world's largest manufacturers of plastic pipe and systems. PipeLife is a converter of PVC Pipe Systems in the United States including, but not limited to, Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. During the Class Period, PipeLife and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, PipeLife supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributor Core & Main, which has branch locations in this District in Bedford Park, IL, Mokena, IL, Lake Bluff, IL, St. Charles, IL, and Belvidere, IL.

### 5. Defendant J-M Manufacturing, Inc., d/b/a JM Eagle.

55. J-M Manufacturing, Inc. d/b/a JM Eagle ("JM Eagle") is a privately held California corporation headquartered in Los Angeles, CA. JM Eagle is a converter of PVC Pipe Systems in the United States including, but not limited to, Conduit Pipe, Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. During the Class Period, JM Eagle and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, JM Eagle supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributors Ferguson, which has more than 20 locations in this District including in Chicago, IL, Niles, IL, Addison, IL, Gurnee, IL, Rockdale, IL, Crystal Lake, IL, Rockford, IL, and Loves Park, IL; Core & Main, which has branch locations in this District in Bedford Park, IL, Mokena, IL, Lake Bluff, IL, St. Charles, IL, and Belvidere, IL; and Hajoca, which has branch locations in this District in Itasca, IL, Chicago, IL, Morton Grove, IL, and Mokena, IL.

19

### 6. Defendant National Pipe and Plastics, Inc.

56.     National Pipe and Plastics, Inc. ("National Pipe") is a Delaware corporation headquartered in Endicott, NY. It is a wholly owned subsidiary of CRH PLC, an Irish public limited company. National Pipe is a converter of PVC Pipe Systems in the United States including, but not limited to, Conduit Pipe, Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. During the Class Period, National Pipe and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, National Pipe supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributors Ferguson, which has more than 20 locations in this District including in Chicago, IL, Niles, IL, Addison, IL, Gurnee, IL, Rockdale, IL, Crystal Lake, IL, Rockford, IL, and Loves Park, IL, and Core & Main, which has branch locations in this District in Bedford Park, IL, Mokena, IL, Lake Bluff, IL, St. Charles, IL, and Belvidere, IL.

### 7. The Otter Tail Defendants.

57.     Defendant Otter Tail Corporation ("Otter Tail") is a publicly traded Minnesota corporation headquartered in Fergus Falls, MN. Otter Tail's common stock is listed and traded on the NASDAQ stock exchange under the trading symbol OTTR. Otter Tail and/or its predecessors, wholly owned or controlled subsidiaries, or affiliated are converters of PVC Pipe Systems in the United States including, but not limited to, the Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. During the Class Period, Otter Tail and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

58.     Defendant Northern Pipe Products, Inc. ("Northern Pipe") is a North Dakota corporation. It is a wholly owned subsidiary of Otter Tail and located in Fargo, ND. Along with

Defendant Vinyltech, it comprises Otter Tail's plastics segment. Northern Pipe is a converter of PVC Pipe Systems in the United States including, but not limited to, Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. During the Class Period, Northern Pipe sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Northern Pipe has agents and/or sales representatives assigned to service Illinois. Upon information and belief, Northern Pipe supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributor Core & Main, which has branch locations in this District in Bedford Park, IL, Mokena, IL, Lake Bluff, IL, St. Charles, IL, and Belvidere, IL.

59.     Defendant Vinyltech Corporation ("Vinyltech") is an Arizona corporation. It is a wholly owned subsidiary of Otter Tail and located in Phoenix, AZ. Along with Northern Pipe, it comprises Otter Tail's plastics segment. Vinyltech is a converter of PVC Pipe Systems in the United States including, but not limited to, Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. Vinyltech typically took all direction on pricing of PVC Pipe Systems, and discussions with OPIS regarding such pricing, from Northern Pipe and Otter Tail. ████████

████████████████████████████████████████████████████████

████████ During the Class Period, Vinyltech sold PVC Pipe Systems in interstate commerce directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, Vinyltech supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributor Core & Main, which has branch locations in this District in Bedford Park, IL, Mokena, IL, Lake Bluff, IL, St. Charles, IL, and Belvidere, IL.

60.     Defendants Otter Tail Corporation, Northern Pipe Products, Inc., and Vinyltech Corporation are referred to collectively as "the Otter Tail Defendants."

### 8. The Westlake Defendants.

61. Defendant Westlake Corporation is a publicly traded Delaware corporation headquartered in Houston, TX. Westlake Corporation has a location in this District in Bedford Park, IL. Westlake Corporation's common stock is listed and traded on the New York Stock Exchange under the trading symbol WLK. Westlake is a converter of PVC Pipe Systems in the United States including, but not limited to, Conduit Pipe, Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. During the Class Period, Westlake Corporation and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

62. Defendant Westlake Pipe & Fittings Corporation is a Delaware corporation headquartered in Houston, TX. It is a wholly owned subsidiary of Westlake Corporation. Westlake Pipe & Fittings has a distribution center in this District in Bolingbrook, IL. Westlake Pipe & Fittings Corporation is a converter of PVC Pipe Systems in the United States including, but not limited to, Municipal Pipe, Conduit Pipe, Plumbing Pipe, and corresponding PVC Fittings. Westlake Pipe & Fittings Corporation was known as "NAPCO Pipe & Fittings" prior to May 2022. Prior to 2019, Westlake Pipe & Fittings was known as "North American Pipe Corporation" ("NAPCO")." During the Class Period, Westlake Pipe & Fittings Corporation and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Defendant Westlake Pipe & Fittings Corporation, and its predecessor NAPCO Pipe & Fittings, are collectively called "Defendant Westlake Pipe & Fittings." Upon information and belief, Westlake Pipe & Fittings Corporation supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributors Ferguson, which has more than 20 locations in this District

22

including in Chicago, IL, Niles, IL, Addison, IL, Gurnee, IL, Rockdale, IL, Crystal Lake, IL, Rockford, IL, and Loves Park, IL; Core & Main, which has branch locations in this District in Bedford Park, IL, Mokena, IL, Lake Bluff, IL, St. Charles, IL, and Belvidere, IL; and Hajoca, which has branch locations in this District in Itasca, IL, Chicago, IL, Morton Grove, IL, and Mokena, IL.

63.    Defendants Westlake Corporation and Westlake Pipe & Fittings, and their predecessors, are referred to collectively as "the Westlake Defendants."

### 9.    Defendant Oil Price Information Service LLC.

64.    Oil Price Information Service LLC ("OPIS") is a Delaware corporation headquartered in Rockville, MD. It is a wholly owned subsidiary of News Corp. OPIS is a price reporting agency that focuses its analysis on numerous commodity industries. OPIS suspended one of its industry reports, PVC & Pipe Weekly, following the commencement of this litigation. Prior to that, PVC & Pipe Weekly provided regular updates to its paid subscribers detailing current and forward-looking PVC Pipe Systems pricing data and industry information. Throughout the Class Period, through its employee Donna Todd, OPIS conspired with the Converter Defendants, and its reports on PVC Pipe Systems facilitated the exchange of confidential, proprietary, and competitively sensitive data between and among the Converter Defendants and the Co-Conspirator Distributors.

### 10.    Defendant Charlotte Pipe & Foundry.

65.    Defendant Charlotte Pipe & Foundry ("Charlotte") is a North Carolina corporation headquartered in Charlotte, NC. Charlotte has agents and/or sales representatives located in this District in Carol Stream, IL. Charlotte is a converter of PVC Pipe Systems in the United States including, but not limited to, Municipal Pipe, Plumbing Pipe, and corresponding PVC Fittings. During the Class Period, Charlotte and/or its predecessors, wholly owned or controlled

23

subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, Charlotte supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributor Ferguson, which has more than 20 locations in this District including in Chicago, IL, Niles, IL, Addison, IL, Gurnee, IL, Rockdale, IL, Crystal Lake, IL, Rockford, IL, and Loves Park, IL.

### 11. Defendant Cresline Plastic Pipe Co., Inc.

66. Defendant Cresline Plastic Pipe Co., Inc. ("Cresline") is an Indiana corporation headquartered in Evansville, IN. Cresline has agents and/or sales representatives located in this District in Wheeling, IL. Cresline is a converter of PVC Pipe Systems in the United States including, but not limited to, Municipal Pipe, Conduit Pipe, and corresponding PVC Fittings. During the Class Period, Cresline and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Upon information and belief, Cresline supplied PVC Pipe Systems to distributors, including Co-Conspirator Distributors Hajoca, which has branch locations in this District in Itasca, IL, Chicago, IL, Morton Grove, IL, and Mokena, IL, and Porter Pipe, which has branch locations in this District in Addison, IL, Chicago, IL, and Rockford, IL.

### IV. AGENTS AND CO-CONSPIRATORS.

67. Core & Main, Inc. ("Core & Main") is a publicly traded corporation headquartered in St. Louis, MO. Core & Main's common stock is listed and traded on the New York Stock Exchange under the trading symbol CNM. Core & Main is a wholesale distributor of PVC Pipe Systems. During the Class Period, Core & Main and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or

24

through its wholly owned or controlled affiliates, to purchasers in the United States. Core & Main is the largest distributor of PVC Pipe Systems in the United States.

68. Ferguson Enterprises, Inc. ("Ferguson") is a publicly traded Virginia corporation headquartered in Newport News, VA. Ferguson's common stock is listed and traded on the New York Stock Exchange under the trading symbol FERG. Ferguson PLC merged with Ferguson Enterprises, Inc. in 2024. Ferguson is a wholesale distributor of PVC Pipe Systems. During the Class Period, Ferguson and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Ferguson is one of the largest distributors of PVC Pipe Systems in the United States.

69. Fortiline Waterworks ("Fortiline") is a North Carolina corporation headquartered in Concord, NC. Fortiline is a wholesale distributor of PVC Pipe Systems. It is a wholly owned subsidiary of MORSCO, Inc. During the Class Period, Fortiline and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Fortiline is one of the largest distributors of PVC Pipe Systems in the United States.

70. United Pipe & Steel Corp. ("United Pipe") is a Delaware corporation headquartered in Ipswich, MA. United Pipe is a wholesale distributor of PVC Pipe Systems. During the Class Period, United Pipe and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. United Pipe is one of the largest distributors of PVC Pipe Systems in the United States.

71.     Hajoca Corporation ("Hajoca") is a Pennsylvania corporation headquartered in Ardmore, PA. Hajoca is one of the country's largest privately-held wholesale distributors of PVC Pipe Systems, including plumbing, heating & cooling, pool, and industrial supplies. Founded in 1858, Hajoca currently consists of 450+ locally-managed locations operating with 60+ different regionally established trade names all committed to serving our customers with a best-in-class experience. During the Class Period, Hajoca and/or its predecessors, wholly owned or controlled subsidiaries, affiliates, and brands, including Able, All-Tex Pipe & Supply, Apex Supply Company, Aqua Draulics Plumbing Supply, Artisan Kitchen and Bath Gallery, Best Plumbing Tile & Stone, Blodgett Supply, Center State Pipe & Supply, Conestoga Heating & Air Conditioning Supply, Covenant Plumbing Supply, Cowan Supply, Crawford Supply, Dahl, Decker Plumbing Supply, DOC Savage Supply, Eastern Penn Supply Company (EPSCO), European, Facets, Fire Protect & Fab SVC, Flatirons Kitchen & Bath, Gustave A. Larson, Gloucester Plumbing & Supply, Gorman Co., GP Norton, Green Art (GA), Heieck Supply, Hughes, Inland Supply, J&H Aitcheson Plumbing and Heating, Keenan Supply, Kelly's Pipe & Supply, Kohler Experience Center, Kohler Signature Store, LCR, LL Dopkin, Luxart, Mainline, Martz, McDonald Supply, McMillan Sales, Modern Supply, Moore Supply Co., New Britain Plumbing Supply, Peabody Supply Co., Penstan, Ram Pipe & Supply, Rex Pipe & Supply Co., Richard Plumbing and Heating Supply, Rohaco, Sandale Utility Products, State Supply Plumbing & Heating Supplies, Tammany Supply, The Appliance Warehouse (LCR), The Majestic Bath, The Plumbing Warehouse (LCR), Thorson Keenan, Treaty Supply, United Plumbing Supply, Visalia Pipe & Supply, Weinstein Supply, Welker McKee, and WHCI Plumbing Supply Company, sold PVC Pipe Systems in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

26

72. Porter Pipe & Supply Co. ("Porter Pipe") is an Illinois corporation headquartered in Addison, IL. Porter Pipe is wholesale distributor of PVC Pipe Systems. During the Class Period, Porter Pipe and/or its predecessors, wholly owned or controlled subsidiaries, affiliates, and brands, including Bulldog Cartage and Porterfab. Porter Pipe is one of the largest distributors of PVC Pipe Systems in the United States.

73. Throughout the Class Period, Core & Main, Ferguson, Fortiline, United Pipe, Hajoca, and Porter Pipe acted as agents and/or co-conspirators of Defendants by facilitating and participating in the price-fixing Conspiracy alleged herein.

74. Various other persons, firms and corporations not named as Defendants have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the Conspiracy. Defendants are jointly and severally liable for the acts of their co-conspirators whether or not the co-conspirators are named as Defendants in this Complaint.

\* \* \* \* \* \*

75. Whenever reference is made to any act of any corporation, the allegation means that the corporation engaged in the act by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

76. Each Defendant named herein acted as the agent or joint venturer of, or on behalf of, the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

77. Defendants are also liable for acts done in furtherance of the alleged Conspiracy by companies they acquired through mergers and acquisitions.

## V. BACKGROUND ON PVC PIPE SYSTEMS AND OPIS.

### A. PVC Pipes and Fittings Are a Combination of PVC Resin and Additives.

78.     "PVC" stands for polyvinyl chloride, a synthetic plastic polymer derived from chlorine and ethylene. PVC resin is the raw form of this plastic and serves as the primary building block for PVC Pipe Systems. Manufacturing these systems requires combining PVC resin with specialized additives through a process called compounding. These additives determine critical pipe characteristics—*e.g.*, mechanical properties, weather fastness, and color. Common additives include heat stabilizers, lubricants, and plasticizers. Crucially, PVC resin represents approximately 70% of total manufacturing costs, making it the dominant cost factor in PVC Pipe System production.

79.     PVC resin production follows five steps: (1) extracting salt and hydrocarbon resources, (2) producing ethylene and chlorine, (3) combining these chemical to create vinyl chloride monomer ("VCM"), (4) converting VCM into PVC resin polymerization, and finally, (5) compounding with additives. The Figure below shows the basic PVC resin production process.

### FIGURE 1
### PVC RESIN PRODUCTION PROCESS



### 1. A Description of PVC Pipe Systems.

80. PVC Pipe Systems consist of two necessary and complementary components: (1) PVC Pipes and (2) PVC Fittings that connect PVC Pipe segments into piping systems. Neither component has meaningful economic value or practical use without the other—pipes need fittings to create functional systems, and fittings serve no purpose without pipes to connect. The industry centers on three major applications: (1) Municipal Pipe, for drinking water and sewer systems (blue and green pipes), (2) Plumbing Pipe, for residential and commercial drain, waste, or vent ("DWV") pipe systems (typically white pipes), and (3) Conduit Pipe, for protecting electrical wires (usually gray pipes). Common PVC Fittings include couplings and unions, elbows, tees, crosses, caps and plugs, adapters and bushings, nipples, and flanges. All components use standardized sizing systems, ensuring compatibility between pipes and fittings of matching dimensions. PVC Pipes and PVC Fittings are described in more detail below.

### a) PVC Pipes.

81. Manufacturing PVC Pipes—called "converting" in the industry—involves a pipe extrusion-style operation, where PVC resin is melted and shaped into a pipe or fitting. However, PVC's chemical properties create unique manufacturing challenges. PVC resin generates high amounts of friction and stress during processing, making PVC extrusion distinctly different from other plastic pipe manufacturing. Converters must use specialized twin screw extruders built with robust materials to withstand these harsh operating conditions. PVC extruders cannot manufacture other types of plastic pipe.

82. A typical PVC Pipe production line includes mixers, feeders, hoppers, extruders, extrusion dies, vacuum tanks, haul-off units, printers, cutters, and stackers. The process begins by combining raw materials in mixers, then feeding the mixture through hoppers to extruders. Extruders heat and pressurize the mixture while propelling it forward. The heated and pressurized

mixture passes through extrusion dies that form the pipe's cross-sectional shape and internal diameter. Vacuum tanks cool the pipes, while haul-off units control wall thickness by adjusting pulling speed. Printers stamp essential information—internal diameter, length, schedule or type, and manufacturer name— before cutters section the pipes to required lengths. Production lines can manufacture virtually all commercially viable diameters, lengths, and schedules by adjusting these components.

### (1)    Municipal Pipe.

83.    Municipal Pipe represents the largest PVC Pipe System application. This Complaint refers to PVC municipal water pipe (blue pipe), PVC municipal sewer pipe (green pipe), and purple pipe as "Municipal Pipe," as described below.

84.    **PVC Municipal Drinking Water Pipe:** These pipes carry municipal potable water from sources like reservoirs, lakes, or rivers to treatment facilities through water mains distributing water throughout communities. PVC Municipal Drinking Water Pipe is a pressure pipe application—pipes engineered and tested to withstand high internal and external pressures while ensuring safety and longevity. Pipe diameters vary significantly: large-diameter pipes transport water from sources to treatment centers and main distribution lines, while smaller pipes deliver water to neighborhoods and individual properties. For purposes of this Complaint, PVC Municipal Drinking Water Pipes refers to pipes manufactured to the AWWA C900[4] or ASTM D2241[5] industry standards, or their equivalent, that are used in PVC Municipal Drinking Water applications.

---

[4] As of August 2016, the provisions of the AWWA C905 standard have been replaced by and included in the AWWA C900 standard.

[5] ASTM D2241 covers PVC pipes intended for use with the distribution of pressurized liquids.

FIGURE 2
PVC MUNICIPAL DRINKING WATER PIPE



85.     As noted above, PVC municipal drinking water pipes are manufactured to AWWA C900 or ASTM D2241 industry standards, or their equivalent. Purple pipes use essentially identical manufacturing processes as blue Municipal Pipes but serve different purposes. Purple coloring indicates these pressurized pipes carry non-potable water for irrigation, reclaimed water systems, and aerobic septic systems. Throughout this Complaint, references to Municipal Pipe include references to purple PVC pipe.

86.     Municipal Pipe dominates water infrastructure in America. It serves approximately 66% of municipal water distribution applications and accounts for approximately two-thirds of total PVC Pipe Systems sales in the United States. More than 70% of new buried water distribution pipes installed nationwide use PVC Pipe Systems. Alternative materials used in water distribution applications include cast iron, ductile iron, concrete pressure pipe, steel, cement, and asbestos. Municipal Pipe outperforms these alternatives through reduced failure, lower pumping rates for most applications, longer service life, minimal environmental impact over life cycle phases

(production, transport, installation, and use), and reduced energy requirements for manufacturing, shipping, and installation due to its low weight. PVC Municipal Drinking Water Pipe is a commodity product.

87.     **PVC Municipal Sewer Pipe:** PVC Municipal Sewer Pipes (green pipe) transport wastewater to treatment plants and storm runoff to designated outlets including irrigation and well applications. Most sewer applications use non-pressurized, gravity-driven systems.[6] PVC dominates sewer applications over alternatives like concrete, clay, corrugated iron, and ductile iron pipe due to superior resistance to hydrogen sulfide gas corrosion and substantially lower installation costs. For purposes of this Complaint, PVC municipal sewer pipes refer to pipes manufactured to the ASTM D3034 or ASTM F679, or their equivalent, that are used in municipal sewer applications. PVC Municipal Sewer Pipe is a commodity product.

**FIGURE 3**
**PVC MUNICIPAL SEWER PIPE**



---

[6] For simplicity, throughout the remainder of this Complaint, references to green PVC sewer pipe or sewer applications utilizing green PVC Pipe Systems should be understood to include the use of green PVC Pipe Systems in the transportation of either sewage or stormwater.

88.     PVC Municipal Sewer Pipe accounts for over 85% of new sewer pipe installations. While typically suited for low pressure applications, this limitation rarely matters since approximately 90% of sewer and drain systems operate through gravity flow.

### (2)     Plumbing Pipe.

89.     PVC Plumbing Pipe, also called DWV (drain-waste-vent) pipe, typically appears white though other colors exist. These pipes serve potable water systems, irrigation, and drainage applications. Plumbing Pipe offers durability, corrosion and chemical resistance, and lightweight handling. It is also usually "dual rated" for both drain-waste-vent and pressure applications. Manufacturers produce different wall thicknesses—PVC Schedule 40, PVC Schedule 80, or PVC Schedule 120— with the latter two having thicker walls for pressure applications. For purposes of this Complaint, Plumbing Pipe refers to pipes manufactured to the ASTM D1785 and/or ASTM 2665 industry standards, or their equivalent, that are used in residential, commercial and industrial plumbing applications, and includes all Plumbing Pipes sold by the Converter Defendants. Plumbing Pipe is a commodity product.

**FIGURE 4**
**PLUMBING PIPE**



### (3) <u>Conduit Pipe.</u>

90.    PVC electrical Conduit Pipe protects and insulates wires, typically electrical wires (hereinafter, "Conduit" or "Conduit Pipe"). For the purposes of this Complaint, Conduit refers to PVC Pipes manufactured to the UL651 standard, or its equivalent. While predominately gray, Conduit Pipe also comes in red and orange colors, indicating the type of electrical wires the Conduit Pipe is carrying. Red Conduit Pipe typically marks buried high voltage power lines, while orange indicates lower voltage cables. Conduit Pipe is a commodity product.

91.    Conduit Pipe is resistant to burning, corrosion, moisture, and sunlight, making it ideal for outdoor installations. It is also typically lighter than its common alternatives. For example, Conduit Pipe is one-fifth the weight of steel and half the weight of aluminum. Further, as the FTC previously found, "the cost disparity between PVC and steel in electrical conduit is so great that PVC Conduit will remain substantially more cost-effective than steel, even after a substantial PVC resin price increase." *Matter of Occidental Petroleum Corp.*, 115 F.T.C. 1010, 1125 (1992).

**FIGURE 5**
**PVC ELECTRICAL CONDUIT PIPE**



### b) <u>PVC Fittings.</u>

92.    PVC Fittings are detachable pieces of PVC plastic connecting two or more pipes to create complete PVC Pipe Systems. Most PVC Fittings are manufactured by high-pressure

injection molding—a repetitive process where molten PVC resin fills precision molds. Each mold is designed for the specific type of PVC Fitting and has two halves: an injection side and cavity side. PVC resin, either in powder or granular compound form, is fed into hoppers and then into heated barrels containing rotating screws to be mixed. Heat and pressure "plasticize" the material into its molten form. High pressure injection forces molten plastics into the mold, where cooling solidifies the fitting before ejection. New fittings undergo trimming, finishing, and quality inspection. The molding process is graphically represented in the Figure below.

FIGURE 6
THE PVC FITTINGS INJECTION MOLDING PRODUCTION PROCESS



93. A less common way to manufacture PVC Fittings is by fabrication. Fabrication methods involve cutting, welding, and bending PVC to construct fittings that cannot be easily molded. Fabricated PVC Fittings typically cost more than molded alternatives and usually serve large diameter or specialized applications. Fabricated PVC Fittings often carry "F" designations in their part number, while molded PVC Fittings do not. Builders and contractors generally prefer molded fittings because they are made from single PVC pieces with more precise dimensions.

94. PVC Fittings are manufactured to standards that are compatible with the PVC Pipes they connect. For example, PVC Fittings used in potable water, force main, pressure irrigation, and reclaimed water applications are generally manufactured to meet AWWA C900 or AWWA C907 standards. Plumbing PVC Fittings typically meet ASTM D2464-66, ASTM D2665, and

ASTM F1866 standards, which are compatible with PVC Pipes manufactured to the ASTM D1785 standard. Conduit Fittings generally meet the UL651 standard.

95.     Converter Defendants and Co-Conspirator Distributors market PVC Fittings alongside corresponding pipes in the same catalogs and webpages. For instance, Prime Conduit's catalog advertises both Conduit Pipe and Conduit Fittings in the same brochure entitled "Schedule 40 and Schedule 80 ETL Listed PVC Rigid Nonmetallic Conduit and Elbows." Similarly, Charlotte's webpage concerning its Plumbing Pipe products is entitled "PVC Schedule 40/80 Pipe/Fittings System" and covers both Plumbing Pipe and Plumbing Fittings.

96.     PVC Fittings are completely complementary to PVC Pipes. Fittings have no economic value apart from connecting PVC pipe sections. Builders and contractors almost invariably order PVC Fittings simultaneously with PVC Pipes from identical sources. PVC Fitting types and quantities depend entirely on specific installation requirements.

97.     **Couplings and Unions** (together, "Couplings") join pipe segments end-to-end, connect misaligned pipes, and attach pipes to other fittings while ensuring leak-proof connections. Couplings are used in municipal, plumbing, and electrical applications.

98.     **Elbow and Bend Fittings** (together, "Elbows") connect pipe lengths at angles, enabling direction changes so pipes can navigate obstacles and align with system layouts. Elbows typically offer 90-degree or 45-degree angles, and serve all major PVC Pipe System applications.

99.     **Tee Fittings** ("Tees") provide T-shaped intersections with three openings—one inlet and two—allowing pipeline branching for distributing or diverting materials. Tees serve municipal, plumbing, and electrical applications.

100.   **Cross Fittings** ("Crosses") create four-way "plus" shaped connection joining four pipe sections. Similar to Tees, Crosses divide flow in different directions, primarily serving municipal and plumbing applications.

101.   **Caps and Plugs** ("Caps" and "Plugs") seal pipe ends, stopping the flow of fluids or gases. Caps mount on pipe exteriors to terminate pipelines, while Plugs insert into fittings' interior spaces. Plugs have male spigots to fit inside Tees, Elbows, or Crosses. Caps and Plugs serve municipal, plumbing, and electrical applications.

102.   **Adapters and Bushings** ("Adapters" and "Bushings") connect pipes of different types and different diameters, respectively. Adapters and Bushings are commonly used in municipal, plumbing, and electrical applications.

103.   **Nipples** ("Nipples") are short pipe sections with male threads on both ends, securely joining two female-threaded PVC Pipes or Fittings. Nipples primarily serve plumbing applications.

104.   **Flanges** ("Flange" or "Flanges") are protruding rims or edges that connect pipe segments through fasteners such as bolts and nuts. Flanges offer more robust and rigid connections than Couplings; designed for high pressure applications requiring secure leak-proof joints. Flanges are primarily used in plumbing applications.

105.   All of these PVC Fittings are made to work with Municipal Pipes, Conduit Pipes, and Plumbing Pipes. PVC Fittings are commodity products with standardized specifications.

**2.    The Relative Size of Each PVC Pipe Systems Application Category.**

106.   An approximation of market size distribution for each PVC Pipe System application, as presented by Westlake in a June 13, 2024, investor presentation, is shown below.

FIGURE 7
WESTLAKE INVESTOR PRESENTATION SLIDE



107.    By revenue, the United States PVC Pipe Systems market was worth approximately $36 billion in 2024 according to the same Westlake investor presentation. Of that total, Municipal Pipe constituted roughly 64% ($23 billion), Plumbing Pipe, including PVC irrigation pipe, represented about 31% ($11.2 billion), and Conduit Pipe accounted for approximately 5% ($1.8 billion).

### 3.    Imports and Exports of PVC Pipe Systems Do Not Have a Major Impact on the Market in the United States.

108.    Imported PVC Pipe Systems minimally impact the domestic United States PVC Pipe Systems industry. The General Manager of distributor Linear Solutions, Inc. explained this dynamic in a December 14, 2022, interview. "Unlike steel conduit, PVC is a conduit that actually is very hard to import from like, let's say, China or another low-cost country overseas because its like shipping air." Transportation and import costs, combined with quality concerns, eliminate any savings from overseas purchasing. A Regional Vice President for distributor J.D. Martin confirmed

38

in a December 16, 2022, interview that imported PVC Pipe Systems have minimal market presence.

109.    PVC Pipe System exports are also extremely low. While the United States represents the world's second-largest PVC Pipe Systems market behind China, it controls only 13% of global market share compared to China's 46% dominance. Consequently, most domestically produced PVC Pipe Systems serve United States customers.

### 4.    Pricing in the PVC Pipe Systems Industry.

110.    PVC Pipe System pricing generally correlates with finished product weight, reflecting PVC resin content. Pricing decisions are highly centralized among top executives, with input from lower-level management. For example, Diamond's corporate office approves all pricing decisions, while JM Eagle CEO Walter Wang personally authorizes every price determination.

111.    **Conduit Pipe:** Industry participants use 100-foot lengths of 4-inch diameter solid wall Schedule 40 conduit as pricing benchmarks. Prices typically convert from this benchmark's price per foot to a price per pound of PVC. For instance, if 4-inch Schedule-40 pipe weighs 2.1 pounds per foot and sells for $340 per 100 feet, this translates to $1.619 per pound. PVC converters then use standard converting these per-pound prices to various pipe sizes on price sheets. Defendants used this industry benchmark to coordinate their unlawful price increases.

112.    **Plumbing Pipe**: The industry uses Schedule 40 solid wall 4-inch DWV[7] plain end pipe as its pricing benchmark, typically quoted in dollars per foot. Alternative pricing uses dollars per pound. OPIS developed a formula comparing these metrics: approximate dollars per foot equals price per pound multiplied by 2.029, plus 2 cents per pound for freight costs. Regardless of

---

[7] DWV means "Drain, Waste, Vent," a reference to the purposes for which such a plumbing pipe may be used.

methods, all Converter Defendants used price sheets that translated the benchmark prices to various pipe dimensions. Defendants used this benchmark to coordinate unlawful price increases.

113. **Municipal Pipe:** Converter Defendants sell Municipal Pipe by the price per foot. However, the industry discusses Municipal Pipe prices using "Blocks"—an industry-specific tiered pricing system that functions as shorthand for communicating market prices. All Municipal Pipe Converters use identical multi-hundred page "Block" price books. Block 1 contains value lists for various pipe types and diameters. Block 2 duplicates Block 1 with roughly 1-1.5% higher values. Block 3 repeats Block 2 with another incremental increase, continuing through hundreds of Blocks.

114. Blocks don't list customer prices—they contain price multipliers that sales representatives use for final quotations. When pricing a 20-foot Municipal Pipe section, representatives use the pipe's weight, raw material content, and a "multiplication factor" from the designated Block. Sales directors specify which Block to use for each quotation.

115. Many Converter's Block Books are publicly available. An example of a page from PipeLife's Block Book is shown in the Figure below:

**FIGURE 8**
**PIPELIFE BLOCK 422 PRICING**

| Block 422 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1.5" | 2" | 2.5" | 3" | 4" | 6" | 8" | 10" | 12" | 15" |
| **D-2241 Pressure Pipe** | | | | | | | | | | |
| SDR-17 | | 1.620 | | 3.420 | 5.660 | 12.250 | 20.860 | | | |
| SDR-21 | .890 | 1.320 | .950 | 2.660 | 4.410 | 9.310 | 15.610 | 24.160 | 34.010 | |
| SDR-26 | | 1.73 | 1.600 | 2.200 | 3.540 | 7.570 | 12.910 | 20.020 | 28.090 | |
| **C-900 (BLUE)** | | | | | | | | | | |
| DR-14 | | | | | 7.310 | 14.760 | 25.440 | 38.780 | 54.820 | |
| DR-18 | | | | | 5.850 | 11.950 | 20.480 | 30.730 | 43.280 | |
| DR-25 | | | | | 4.130 | 8.800 | 13.900 | 22.301 | 31.350 | |
| **D-3034 Sewer Pipe (Green)** | | | | | | | | | | |
| SDR-35 | | | | | 2.310 | 5.340 | 9.710 | 15.090 | 21.720 | 32.050 |
| SDR-26 | | | | | 3.170 | 7.140 | 12.860 | 20.010 | 28.770 | 43.210 |
| **PIP Pressure Pipe** | | | | | | | | | | |
| 80 psi (SDR-51) | | | | | | | 8.300 | 9.440 | 16.080 | 22.800 |

116. Standardized Block pricing facilitated Defendants' price fixing. When Converters want to raise prices with competitors, they simply announce pricing at 'Block 123,' (for instance) and all competitors understand what price that represents for every Municipal Pipe type and sizes sold on that Block page. Notably, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants used Block pricing as shorthand to coordinate their unlawful price increases.

117. When setting Municipal Pipe prices, typically a Converter will ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



118.     **Fittings for Municipal, Conduit, and Plumbing Pipes:** PVC Fitting prices generally track corresponding pipe prices. When pipe prices increase, complementary fitting prices rise proportionally. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ Indeed, even the Federal Reserve does not differentiate between PVC Pipe and PVC Fittings prices in its plastic pipe price published data series.

### 5.     An Overview of Which PVC Pipes and Fittings Each Converter Defendant Manufactures.

119.     The following Figure provides an overview of the types of PVC Pipes that each Converter Defendant manufactures. As noted above, each Converter Defendant made the corresponding PVC Fitting for the PVC Pipe types they manufactured.

**FIGURE 9**
**PVC PIPES MANUFACTURED BY EACH CONVERTER DEFENDANT**

| Converter | | PLUMBING | CONDUIT | MUNICIPAL |
|---|---|:---:|:---:|:---:|
| Atkore (Allied, Heritage) | Atkore | ✓ | ✓ | ✓ |
| Atkore (Cor-Tek) | Atkore | | ✓ | |
| Atkore (Queen City) | Atkore | | ✓ | |
| Cantex | CANTEX | | ✓ | |
| Charlotte | CHARLOTTE PIPE AND FOUNDRY COMPANY | ✓ | | |
| Cresline | CRESLINE CRESLINE PLASTIC PIPE CO., INC. | ✓ | | |
| Diamond Plastics | DIAMOND PLASTICS CORPORATION | | | ✓ |
| IPEX / Multi Fittings | IPEX MULTI FITTINGS | ✓ | ✓ | ✓ |
| JM Eagle | JM Eagle | ✓ | ✓ | ✓ |
| National Pipe | NATIONAL PIPE | ✓ | ✓ | ✓ |
| Northern Pipe / Otter Tail | northern pipe products | ✓ | | ✓ |
| Pipelife / Jetstream | JETSTREAM | | | ✓ |
| Prime Conduit | Prime Conduit | | ✓ | |
| Sanderson | SANDERSON PIPE | ✓ | | ✓ |
| Southern Pipe | SOUTHERN PLASTICS & Rubber Co. by inPLAS | | ✓ | |
| Vinyl Tech / Otter Tail | vt VINYLTECH | ✓ | | ✓ |
| Westlake | Westlake Pipe & Fittings | ✓ | ✓ | ✓ |

### B. OPIS Provided the Converter Defendants with the Means to Increase and Stabilize PVC Pipe System Prices.

120. OPIS not only facilitated, it *directly participated in*, the fixing of PVC Pipe System prices. Until recently, casual observers might have viewed OPIS as simply providing information exchange of *data* and signaling between competitors. However, as discussed below, the production of thousands of pages of handwritten notes, over 8,000 text messages, and thousands of emails from OPIS employee Donna Todd reveals classic antitrust violations: direct evidence of communications among Converter Defendants'—ostensibly competitors—to agree on and fix PVC Pipe System prices.

#### 1. OPIS, Which Specializes in Non-Public Commodity Price Reporting, Is No Stranger to Antitrust Litigation.

121. OPIS markets itself as the world's leading provider of news, data, and analysis for the energy, chemical, and environmental commodity markets. It provides pricing and market intelligence across various industries,[8] including the PVC Pipe Systems industry. OPIS claims to "uniquely price[] commodities throughout the supply chain—from the spot market to the wholesale rack or terminal market and ultimately to more than 400,000 retail locations across North America and Europe."

122. OPIS has faced previous antitrust litigation. According to the California Attorney General, OPIS's price reporting services were used to manipulate gasoline prices in California. In 2020, California sued energy companies, Vitol and SK, alleging, in part, that they reported manipulated gasoline trades to OPIS to drive up the regular and premium gasoline benchmark

---

[8] *See, e.g.*, *Charleston W. 76 Auto/Truckstop, Inc. v. Nat'l Auto/Truckstops, Inc.*, No. 3:97-CV-25, 1997 WL 528491 at *3 n.3 (N.D.W. Va. May 21, 1997) ("Most major petroleum suppliers subscribe to OPIS in setting their diesel fuel prices."); *Nat'l Petroleum Mktg., Inc. v. Phoenix Fuel Co.*, 902 F. Supp. 1459, 1462 (D. Utah 1995) ("Virtually all individuals and entities significantly involved in the oil industry are subscribers to the OPIS bulletin.").

prices in the OPIS spot market reports. On July 11, 2024, California reached a $50 million settlement with Vitol and SK Energy, resolving these allegations.

123.     Despite this recent litigation, OPIS remains largely unknown outside the industries it serves. Importantly, many of OPIS's products, including its PVC Pipe System pricing and market intelligence services, are unavailable to the public. Subscription access requires approval of applications, and OPIS does not even list subscription fees publicly. Prospective subscribers can ask OPIS for pricing information only after application approval. Few, if any, Class Members had access to OPIS's PVC Pipe System services, including PVC & Pipe Weekly. This information asymmetry benefitted Defendants at Plaintiffs' and Class Members' expense.

124.     Even within the PVC Pipe Systems industry, OPIS's reporting and services are not well known. Many industry veterans—executives at smaller distributors and lower-level employees of Converter Defendants—remained unaware of OPIS or PVC & Pipe Weekly during the Conspiracy. This low profile is startling given that the publication focused on the PVC Pipe Systems industry and would undoubtedly have been relevant to any industry participant.

125.     For industry insiders, however, OPIS provides valuable services. OPIS publishes daily price and market trends across the entire United States petrochemical chain. OPIS describes its methodology as rigorous and consistent,[9] performing "due diligence on every number and explain[ing] every price movement." OPIS reports also "establish[] unique two-way relationships with players at the heart of the action" and maintain "a daily inflow of prices and transactions from active traders every day, who in turn, benchmark off our numbers. Many major players don't report to anyone but [OPIS]."

---

[9] *Our Methodology*, PETROCHEM WIRE, https://www.petrochemwire.com/our-methodology/ (last visited Oct. 29. 2024).

126. PVC & Pipe Weekly, ████████████████████████ offered subscribers "access to timely information on pricing and supply/demand in the PVC pipe market." Each issue contained (1) narrative summaries of the past week's PVC Pipe Systems market, including statements often attributed to specific Converter Defendants regarding market conditions and events, (2) High, Low, and Midpoint prices for Municipal, Plumbing, and Conduit Pipes, and (3) PVC resin prices. OPIS described PVC & Pipe Weekly as "***the only source for pricing on finished PVC pipe: municipal, conduit, and plumbing.***"

127. Every Converter Defendant and Co-Conspirator Distributor subscribed to or received PVC & Pipe Weekly. The only exception to this is Co-Conspirator Distributor Fortiline, which at this time Plaintiffs cannot confirm was a subscriber to PVC & Pipe Weekly. However, on information and belief, Plaintiffs believe Fortiline received the information contained in PVC & Pipe Weekly, ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ as detailed in Section VI.

### 2. Todd's Methodology for Compiling OPIS's PVC & Pipe Weekly Became the Backbone of the Conspiracy.

128. ████████████████████████████████████████

██████████████████████████████████ True to its word, Todd worked extensively—and effectively—to collect confidential pricing information from Converter Defendants and distribute it to the other Defendants and Co-Conspirators.

129. To create PVC & Pipe Weekly by Friday each week, ████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████

130.   ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

131.   According to Todd, ██████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████   Todd also frequently communicated with converters and distributors via text message, and messaging apps like WhatsApp with various contacts.

132.   Todd obtained confidential and proprietary pricing information from all Converter Defendants, either through direct communication with upper management or via the Co-Conspirator Distributors. Below is a partial list of individuals with whom she maintained regular contact.

    a. **Atkore:**





    iii.

    iv.

b. **Cantex:**

    i.

    ii.

    iii.

c. **Diamond:**

    i.

d. **IPEX:**

    i.

    ii.

    iii.

e. **JM Eagle:**

    i. ███████████████████████████████████

    ii. ███████████████████████████████████

f. **Maverick Pipe:**

    i. ███████████████████████████████████

g. **National Pipe:**

    i. ███████████████████████████████████

h. **Northern Pipe, Vinyltech, & Otter Tail:**

    i. ███████████████████████████████████

    ii. ███████████████████████████████████

    iii. ███████████████████████████████████

i. **PipeLife:**

    i. ███████████████████████████████████

j. **Prime Conduit:**

    i. ███████████████████████████████████

k. **Sanderson:**

    i. ███████████████████████████████████



ii.

l. **Southern Pipe:**

    i.

    ii.

m. **Westlake:**

    i.

    ii.

    iii.

n. **Hajoca and Affiliated Brands**:

    ii.

o. **Core & Main**:

    ii.

p. **United Pipe**:

    i. 

q. **Ferguson:**

    i.

r. **Fortiline:**

    i.

s. **Porter Pipe:**

    i.

    ii.

133. Though substantial information flowed between the Converters and Co-Conspirator Distributors and Todd, she was no passive conduit. Todd was integral to the Conspiracy, actively participating in and furthering its goals daily.

> **3. Todd's Communications and Setting of PVC Pipe System Market Prices with Converter Defendants and Co-Conspirator Distributors Provide Direct Evidence of a *Per Se* Price-Fixing Conspiracy.**

134. Donna Todd was a key Conspiracy participant. Her role as the sole PVC & Pipe Weekly reporter and editor, combined with numerous weekly phone calls, texts, emails, and meetings with Defendant Converters and Co-Conspirators, enabled Defendants to increase and stabilize PVC Pipe System prices. While thousands of communications exist between Todd and the Defendant Converters and Co-Conspirators, they fall into these regularly-occurring categories:

a.

b.



c.

d.

e.

f.

g.

h.

i.

j.

k.

135. These represent *categories* of communications that occurred repeatedly—not isolated examples. Through these various means, Todd served a remarkable and critical role as a direct Conspiracy participant that transcended the role of a mere information "conduit" between conspirators. Instead, Todd was an active participant whose daily work to align, increase, and stabilize pricing made her a core Conspiracy participant.

136.     Notably, once the Conspiracy was discovered in July 2024, OPIS ████████ ████████████████████████████ A chronological narrative of the period from 2017 to 2024 follows below.

### 4.     OPIS's PVC & Pipe Weekly, by Itself, Constitutes an Information Exchange Conspiracy that Is Illegal under the Sherman Act.

137.     Even without the direct evidence of Defendants' Conspiracy detailed above, OPIS's PVC & Pipe Weekly and Defendants' use of this report sufficiently proves an anticompetitive and illegal conspiracy.

138.     PVC & Pipe Weekly published net transaction prices based on the data and information that Todd collected from industry contacts. OPIS stated that "[*t*]*he valuations published in this report reflect each week's current market realities*." These current market realities included not only current pricing information but also current plans for future pricing strategies. All Converter Defendants named in this Complaint understood that exchanging of such information through PVC & Pipe Weekly enabled them to take collective action that increased and stabilized artificially inflated PVC Pipe System prices instead of pursuing separate economic interests. ████████████████████████████████ ████████████████████████████████ ████████████████████████████ This exemplifies a classic information exchange price fixing conspiracy that violates the Sherman Act.

139.     Price fixing conspiracies are facilitated by the exchange of competitively sensitive information between conspirators to monitor whether conspirators are taking actions consistent with the conspiracy. To avoid antitrust scrutiny, such information exchanges almost always occur outside public view—historically in proverbial "smoke-filled rooms." Over time, though, conspiracy participants have become much more sophisticated, generally moving away from

focusing solely on in-person meetings and direct phone calls or emails, as such direct communications vastly increase the risk of discovery. Increasingly, antitrust conspiracies focus on exchanging competitively sensitive information through intermediaries.

140. The increased prominence and sophistication of information exchanges in antitrust cases has resulted in increased government enforcer scrutiny. Indeed, recognizing the increasing dangers information exchange poses to competitive markets, the DOJ has taken the position that "(1) information sharing alone can violate Section 1 of the Sherman Act, even without proof of an agreement to fix prices, and (2) information exchanges that report only aggregated data can violate the antitrust laws, even where the information is not linked to specific competitors." *See* DOJ Statement of Interest, *In Re Pork Antitrust Litig.*, No. 18-cv1776-JRT-JFD, ECF No. 2616 (D. Minn. Oct. 1, 2024). The DOJ's position makes clear that Defendants' information exchange through PVC & Pipe Weekly plausibly undermines competition in the PVC Pipe System market. Moreover, the information Defendants exchanged through PVC & Pipe Weekly, which includes "current price information," is exactly the type of exchange the United States Supreme Court has recognized as having "the greatest potential for generating anticompetitive effects." *See Todd v. Exxon Corp.*, 275 F.3d 191, 201 (2d Cir. 2001) (Sotomayor, J.) (quoting *United States v. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978)). More recently, on February 23, 2023, Doha Mekki, the Principal Deputy Assistant Attorney General for the DOJ's Antitrust Division noted that "exchanges facilitated by intermediaries can have the same anticompetitive effect as direct exchanges among competitors." Doha Mekki, Principal Deputy Assistant Attorney Gen., Dep't. of Justice, Antitrust Div., Remarks as Prepared for Delivery at GCR Live: Law Leaders Global 2023 (Feb. 2, 2023).

141. ████████████████████████████████████████████████

████████████████████████████ Both the narrative commentary regarding the PVC Pipe Systems market and the PVC Pipe Systems pricing in PVC & Pipe Weekly were used regularly by Converter Defendants' senior executives. For example, one Converter's CEO commented that OPIS's PVC & Pipe Weekly is a "[g]reat resource. The way pricing hits the market, it is a good old boys [*sic*] club."

142. Similarly, a former national sales director at JM Eagle described how certain JM Eagle executive employees reviewed PVC & Pipe Weekly to determine whether JM Eagle's pricing aligned with the pricing reported in the publication. This sharing of pricing information and specific signaling and forward-looking statements, not available to the broader PVC Pipe Systems market, allowed Converter Defendants to ensure that PVC Pipe System prices in 2020 and beyond were elevated and maintained at historically high levels.

143. Defendant Charlotte also believed that OPIS's PVC & Pipe Weekly was a critical industry tool. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

144. The information Converter Defendants exchanged through OPIS was both current and forward-looking (*e.g.*, telling competitors current plans for future pricing strategies), and as described in Section VI below, the information was specific to individual Converters. An example of the portion of the PVC & Pipe Weekly report focused on PVC Pipe Systems is provided below:



145.   OPIS's antitrust policy states that it █████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████ OPIS provided the Converter Defendants with the means
to unlawfully exchange information with the purpose and effect of increasing and stabilizing PVC
Pipe System prices and harming competition. OPIS was fully aware of its role in the Conspiracy.

146.   However, the Defendants went far beyond publishing current prices and future
pricing strategies unavailable to the Classes, as well as signaling statements between Converter
Defendants. In doing so, Defendants not only committed *per se* and rule of reason violations of
the Sherman Act but also engaged in a direct price-fixing Conspiracy, as described below.

## VI.    THE PRICE-FIXING CONSPIRACY DEFENDANTS USED TO REAP RECORD PROFITS FROM 2020-2025 WAS OPERATIONAL DATING BACK TO AT LEAST 2017.

147.    It is clear ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

148.    That story, in 2017, was one of a growing number of Converter Defendants ████

███████████████████████████████████████████████████████

████████████████████████████

149.    Despite the coordination described below in this Section, the 2017 (and presumably pre-2017) Conspirators were having difficulty making their parallel price increase announcements "stick" in the market.

150.    Historically, PVC resin and PVC Pipe System prices maintained a close relationship—logical given PVC resin is the primary raw material and constitutes approximately 70% of total manufacturing costs associated. As discussed above, all else equal, heavier pipes require more PVC resin, directly affecting production costs and final prices.

151.    Prior to 2017, PVC Pipe System pricing moved in lockstep—*i.e.*, together in the same direction and proportion. As often occurs when a single input cost constitutes a large percentage of the finished good cost (*e.g.*, oil refining, beef, or lumber production) the markup from PVC resin to finished PVC Pipe Systems is known as the converter's "spread." This spread maintained a consistent ratio historically, meaning profit margins remained fairly stable, rarely exceeding 10-12%.

152.   Converter Defendants' customers knew of this relationship, and PVC resin prices were published and known in the marketplace. Accordingly, for years customers disciplined the Converter Defendants against price increases that did not correspond to increases in PVC resin.

153.   By 2017, Converter Defendants were coalescing around an idea: The roadmap to getting their coordinated price increases to "stick" was to "break" the relationship between finished PVC Pipe Systems and PVC resin. What they needed was a pretext to sever the relationship and sufficient discipline amongst all the Converter Defendants to fully exploit that pretext.

154.   In 2018 and 2019, there were opportunities to use resin production disruptions as a pretext for breaking the relationship between resin prices and PVC Pipe System prices, but the Conspiracy still lacked the discipline necessary to break customers' expectation that PVC Pipe System prices would follow an eventual drop in resin prices.

155.   In 2020, it all came together. The Converter Defendants already had an effective system to coordinate price increases. That coordination, combined with market consolidation, now gave the Converter Defendants the discipline necessary to not just raise prices nationwide, but stick with them even when customers held out for lower. All they needed was the right pretextual excuse. That arrived in 2020 in the form of COVID-19. The chart below from an Otter Tail investor presentation demonstrates the complete breakdown of the PVC resin to PVC Pipe System price relationship in 2020.

**FIGURE 11**
**OTTER TAIL 2023 INVESTOR PRESENTATION**



156.    Beginning at least as early as January 1, 2020, Defendants' price manipulation efforts succeeded spectacularly, causing substantial harm and inflated prices for Conspiracy victims. The Figure below demonstrates that compared to average OPIS-reported prices for Municipal Pipe, Conduit Pipe, and Plumbing Pipe from 2012-2016, prices for those same pipes from 2020-2024 skyrocketed.



157.    The chronological narrative below explains how Defendants worked, from at least 2017, to build the tools that could raise PVC Pipe System prices and break the resin-pipe relationship, eventually striking gold when COVID-19's onset in 2020 finally gave them the ability to reap the rewards of their price coordination.

**A.  <u>Each Defendant Took Substantial Steps in Furtherance of the Conspiracy.</u>**

158.    This Complaint provides extensive detail regarding each Defendant's specific acts in furtherance of the Conspiracy—acts which are summarized in five categories here:



159. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████

**B.** **2017: Defendants Worked to Push PVC Pipe System Prices Up But Failed to Do So.**

160. During 2017, Defendants worked to increase PVC Pipe System prices but were not successful. The following example concerning Conduit Pipe pricing illustrates their efforts.

161. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

162. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

163. ████████████████████████████████████

████████████████████████████████████████████

164. ████████████████████████████████

165. ████████████████████████████████

166. ████████████████████████████████████

**C.** **2018: Defendants Worked to Build the Conspiracy and Began Recognizing that with Direct Price Coordination They Could Yield Higher Margins than by Simply Tracking Resin Prices.**

167. ████████████████████████████████████

conditions that COVID would create in 2020. For instance, Conspirators became comfortable

168. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

169. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

170. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ Following

the acquisitions of Cor-Tek in August 2019 and Queen City in October 2020, Atkore made unified

decisions to increase prices, but it issued individual sheets for each brand or subsidiary within

Atkore. There is no evidence after October 2020 that any of Atkore's subsidiaries exercised any

autonomy on pricing decisions with all such decisions being directed at the corporate level through

Atkore by a pricing manager for the given product category.

171. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

172. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

173.

**D.**     <u>**2019: Prices Steadily Declined While Converters Fine Tuned Their Conspiracy.**</u>

174.     While prices continued dropping in 2019, Todd and the Conspirators continued fine-tuning the tools and organizational structure necessary to effectuate their Conspiracy.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████

175.   ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████

176.   ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

177. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████

178. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

179. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

180. ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████

181. ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

182. ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████

183. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

184. ████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

185. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████

**E.**   **2020: The Onset of the COVID-19 Pandemic Provided the Perfect Opportunity and Pretext for the Conspiracy to Succeed.**

186.   ██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

**1.**   **Converter Defendants Began 2020 with a Coordinated Price Increase and Continued the Year with Hundreds of Emails, Calls, and Texts to Coordinate a Dramatic Increase in Conduit Pipe Prices.**

187.   ██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

188. ███████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████

189. ███████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

190. ███████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

191.

192.

a.

b.



c.

d.

193.

a.

b.

c.

d.

e.

f. 

g.

h.

194.

a.

b.

c. 

d.

195.

196.

197.

198. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

199. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████

200. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

201. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



202. ████████████████████████████████████

203. ████████████████████████████████████

204. ████████████████████████████████████

205. ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

206. ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████

207. █████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

208. █████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

209. █████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████

2.    **Municipal Pipe Prices Increased Dramatically in 2020, as Producers Used the Pretext of COVID to Rapidly Increase Prices through Coordinated Price-Fixing.**

210. █████████████████████████████████████

██████████████████████████████████

a.    ███████████████████████████████████

███████████████████████████████████████████

████████████████████████████

b. 

c.

211.

212.

213. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

214. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████

215. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

216. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

217. █████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████

218. █████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

219. █████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

220. █████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████

221. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

222. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

223. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

224. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

225. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

    **3.**    **Plumbing Pipe Prices Skyrocketed in 2020 through Coordinated Price Increases by Converters.**

226. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

227. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

228. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████

229. ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

230. ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

231. ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

232. ████████████████████████████████████

███████████████████████████████████████████████

233.

████████████████████████████████████████████████████

██████

234.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████

235.    ████████████████████████████████████████

██████████████████████████████████

236.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

237.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████

### 4. In Sum, 2020 Saw Historic Increase in All PVC Pipe Systems through Defendants' Coordinated Price Fixing Efforts.

238. As depicted in the graph below, ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

### F. 2021: Converter Defendants' Coordinated Price Increases Sent PVC Pipe System Prices to Historic Highs.

239. Defendants' disciplined implementation of coordinated price increases drove prices up by triple-digit percentages in 2021. ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████



240. ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████

1. **Municipal Pipe Prices Skyrocketed in 2021 as Defendants Conspired to Increase Prices by Over 330% by Pretextually Blaming Supply Shortages.**

241. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

a. ████████████████████████████████████████████████

b. ███████████████████████████████████████████████████

c. ███████████████████████████████████████████████████

d. ███████████████████████████████████████████████████

e. ███████████████████████████████████████████████████

f. ███████████████████████████████████████████████████

g. ███████████████████████████████████████████████████

h. ███████████████████████████████████████████████████

i. ███████████████████████████████████████████████████

j. ███████████████████████████████████████████████████

k. ███████████████████████████████████████████████████

l. ███████████████████████████████████████████████████

m. ███████████████████████████████████████████████████

n. ███████████████████████████████████████████████████

o. ███████████████████████████████████████████████████

242. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

243. ███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████



a.

b.

c.

d.

e.

f.

244. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

245. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

246.

247.

a.

b.

c.

248. 

a.

b.

249.

250.

251.



252.

    a.

    b.

    c.
    d.

    e.

253.

    a.

    b.

    c.



d.

254.

255.

a.

b.

c.

d.

e.

256.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████

257.  █████████████████████████████████

█████████████████████████████████████████

258.  █████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████

259.  █████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

260.  ██████████████████████████████

████████████████████████████████████



261.

a.

b.

c.

262.

263.

264.

265.

266.

267.

268.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

269.    █████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

270.    █████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

**2.    Plumbing Pipe Prices Rose Roughly 200% During 2021 Following Converters' Coordinated Price Increases.**

271.    █████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

a.

b.

c.

d.

e.

f.

g.

h.

███████████████████████████████████████████

103



i.

j.

k.

l.

272.

273.

274.



275.

276.

a.

b.

c.

d.

277.

278.

279.

280.

281. ███████████████████████████████████████████
████████████████████████████████████

282. ███████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████

283. ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████

284. ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████

285. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

286. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

287. ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

**3.       During 2021, Conduit Prices Increased by More than 200%.**

288.    Defendants' Conspiracy resulted in numerous parallel price increases for Conduit

Pipes and Conduit Pipe Fittings during 2021. ████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

289. █████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████

290. █████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████

291. █████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

292. ████████████████████████████████████████

293. ████████████████████████████████████████

294. ████████████████████████████████████████

295. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████

296.　████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

297.　████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████

298.　████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

299. 

300.

301.



302.

303.

304.

305. 

306.

307.

308.

309.

310. █████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████

311. █████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████

312. █████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████

313. ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

314. ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

315. ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████

316. ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████

317. ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

318. ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

**4.** **In Sum, Using the Pretext of PVC Resin Supply Shortages Caused by Weather and COVID, Defendants Increased the Profit Margin Spread to Historic Levels and Enjoyed Record Profits.**

319.

320.

321.

██████████████████████████████████████████████████

████████████████████████████████████

G. **2022: Defendants Fought to Stabilize PVC Pipe System Prices at Historic Levels.**

322.　████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

323.　████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

120

██████████████████████████████████████████████████████

████████

324. ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

1.     **Converter Defendants Worked to Stabilize Historically High Municipal Pipe Prices During 2022.**

325. ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

326. ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████



327.

328.

329.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

330. █████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

331. █████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

332. █████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



333.

334.

335.

336.

**2.** **During 2022, Plumbing Prices Increased for Part of the Year, But Declined Towards the End of the Year Even as Plumbing Pipe Converters Worked to Stabilize Prices.**

337. ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████

338. ███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

339. ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

340. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

**3.** **During 2022, Conduit Prices Stayed Near Their Historic Highs, as Defendants Worked to Stabilize Prices.**

341. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

342. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████

343. ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████

344. ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████

345. ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████

346. ███████████████████████████████

█████████████████



a.

b.

c.

d.

347. 

348.

349.

350.

351. ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████

352. ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

353. ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████

354. ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████

355. 

356.

357.

358.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████

359.  ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

360.  ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████

361.  █████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

362.  █████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

363.



364.

365.

366.

367.

████████████████████████████████████████████████

████████████████████

368. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

369. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

370. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████

### 4. In Sum, During 2022 Prices Continued to Rise for Most of the Year, and Defendants Fought to Stabilize Them Against Decreasing.

371.     After hitting historically high price levels in 2021, overall 2022 was a year during

the Conspiracy characterized by efforts to keep prices stabilized and from decreasing substantially.

As shown below based on ████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

**H.**     **2023: Defendants Announced Numerous Price Increases to Stabilize Prices and Continued to Reap Record Profits Throughout the Year.**

372.     Defendants' goal in 2023 was to maintain the supracompetitive price levels they had achieved in 2020-2022, often by announcing price increase that did not actually raise prices but rather stabilized them and avoided significant decreases from the record price levels.

**1.**     **Defendants Worked Throughout 2023 to Stabilize Municipal Pipe Prices Near Their Record High Levels.**

373.

374.

375.

376. ██████████████████████████████████████████

377. ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

378. ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

379. ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

380. ███████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████

381. ███████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████

382. ███████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

383. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████

384. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████

385.  ███████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████

386.  ███████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

387. 

388.

389.

390.

391. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

392. ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████

393. ████████████████████████████████████

███████████████████████████████████████████



a.

b.

c.

d.

394.

**2.** **Conduit Pipe Prices in 2023 Remained Near Their Record Highs, as Converters Used Coordinated Price Increases to Stabilize Prices from Dropping in Response to Market Conditions.**

395.



396.

397.

398.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████

399. ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

400. ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████

401. ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

402. ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████

403. ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

147

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

404.     ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████

405.     ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

406. ███████████████████████████████████

████████████████████████████████████████████████

███

407. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

408. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

409. ████████████████████████████████

410. ████████████████████████████████



a.

b.

c.

d.

e.

f.



411.

412.

413. █████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████

414. █████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

415. █████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

416. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

417. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

418. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

419.    ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

420.    ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████

421.    ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████

422.  ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

423.  ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████

424. █████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████

425. █████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████

426. █████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

427.     ████████████████████████████████████████

██████████████████████████

**3.      Plumbing Pipe Prices in 2023 Fell from Their Historic Highs as Converters Coordinated Closely to Issue Price Increases Meant to Stabilize Prices.**

428.     ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

429. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████

430. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████████

431. ███████████████████████████████████
████████████████████████████

432. ███████████████████████████████████
███████████████████████████████████████
███

433. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████

434. ███████████████████████████████████
██████████████████████████████████

435. ███████████████████████████████████
███████████████████████████████████████

436.

437.

438.

439.

440. █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

441. █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

442. █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

443. ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

444. ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████

445. ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████

446.   ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

447.   ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

448.   ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████

449.   ████████████████████████████████████████████

██████████████████████████████████████████████████████

162



450.  ████████████████████████████████████████████████

████████████████████

**4.      In Sum, 2023 Saw Constant Efforts to Announce Parallel Price Increases to Stabilize Prices at Artificially High Levels, Leading to Continued Record Profits for the Converter Defendants.**

451.    Although prices declined during 2023 for all PVC Pipe Systems, Defendants and the Co-Conspirator Distributors were able to maintain them far above historic—and competitive—levels. ████████████████████████████████████



452.    Executives acknowledged throughout 2023 that high prices were being maintained for PVC Pipe Systems. On May 2, 2023, during Otter Tail's first quarter earnings call, Chuck MacFarlane (Otter Tail President and CEO) stated, "We continue to benefit from elevated PVC pipe pricing despite resin costs receding from historic heights. PVC pipe prices remained higher than estimated for the first quarter of the year and into the second quarter." On November 17, 2023, during Atkore's fourth quarter earnings call, President & CEO Bill Waltz stated that "2023 was a great year for Atkore. We delivered financial results well ahead of our expectations." During the same earnings call, Atkore CFO David Johnson noted that with respect to its PVC Pipe Systems business, "profitability on both adjusted EBITDA and EPS basis was much stronger than originally anticipated."

453.    Notably, the elevated prices for PVC Pipe Systems did not correlate to strong demand for the products throughout the Class Period. To the contrary, this was a period of falling demand for PVC Pipe Systems. For example, Otter Tail reported in its Form 10-K filings with the Securities and Exchange Commission that its *revenue* from its PVC Pipe Systems business increased by 155% between 2019 and 2023, but the total *volume* of PVC Pipe Systems the Otter Tail Defendants sold decreased by 19% and 14% in 2022 and 2023 respectively. Similarly, Defendant Atkore reported that its *prices* for PVC Pipe Systems increased by 86%, but the *volume* sold decreased by 9% from 2019-2023. In short, despite weak demand, prices went up significantly. This is not consistent with the laws of supply and demand—*i.e.*, when demand goes down, price should go down as well, absent coordination among commodity sellers.

I.    **January through July 2024: Defendants Implement Multiple Price Increases to Stabilize PVC Prices.**

454.    Between January and July 2024, Defendants moved to implement multiple price increases for PVC Pipe Systems nationwide. Even where the efforts did not succeed in increasing the already extremely elevated prices, they stabilized prices above where they would have otherwise been.

1.    **A Strong Push to Raise Municipal Pipe Prices in Early 2024 Was Successful, and Defendants Closely Coordinated Announcement Dates through July 2024.**

455.    During January 2024, there was a strong push to increase or stabilize the price of Municipal Pipe. ███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

456. ███████████████████████████████████

███████████████████████████████████████████

███████

457. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

458. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████



a.

b.

c.

d.

e.

f.

459. ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████

460. ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████

461. ███████████████████████████████████████
█████████████████████████████





d.

e.

f.

g.

**2. Conduit Converters Announced Multiple Price Increases in 2024.**

462.

a) *January 2024 Coordinated Price Increase.*

463. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████

464. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████

a. ████████████████████████████████████
████████████████████

b. ████████████████████████████████████
████████████████████████████████████████



c.

d.

e.

f.

g.

h.

465.

a.

b.

c.

d.

e.

f.

g.

h.

466.



467. █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████



a.

b.

c.

d.

      b)    *March 2024 Coordinated Price Increase.*

468. █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

469. ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

470. ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

471. ████████████████████████████████████████

██████████████████████████████████████████████

173

██████████████████████████████████████████████

████████████████████████████████████

       c)     *Late March and April 2024 Continued Coordinated Efforts at Price Increases.*

472.   ███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████

473.   ███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

       d)     *May 2024 Coordinated Price Increase.*

474.   ███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████"

475. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

476. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

477. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

478. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

479. ██████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████

480. ██████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████

    a. ████████████████████████████████

    b. ██████████████████████████████



    i. 

    ii. 

    iii. 

    iv. 

    c. ████████████████████████████████

d. ██████████████████████████████████████████

481. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

482. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

483. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████

484. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████

        e)      *June 2024 Continued Coordinated Efforts at Price Increases and Stabilization.*

485. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

486. ██████████████████████████████████████

██████████████████████████████████████████

████████████

487. ██████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

488.   ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

**3.**   **There Were a Series of Plumbing Pipe and Fittings Increases During 2024.**

489.   ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████

490.   ████████████████████████████████████

███████████████████████████████████████████

491.

492.

493. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

494. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

495. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

496. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

497.   ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

498.   ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

499.   ██████████████████████████████████

██████████████████████████

182

a.

b.

c.

d.

e.



███████████████████████████████████████

500. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

**J.** **Defendants' Reactions to Discovery of the Conspiracy in Late July 2024 Show a Consciousness of Guilt.**

501. In late July 2024, the Converter Defendants learned that there was heightened attention on *why* PVC Pipe pricing had increased so much and not fallen like PVC resin prices. On July 23, 2024, an investor, called "ManBear," released a report entitled "Pipe Price Fixing," suggesting the possibility that PVC Pipe Systems were being price fixed through OPIS. ██████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████

502. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

503.    ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

504.    On August 23, 2024, the Non-Converter Seller Purchaser ("NCSP") Classes filed the first antitrust complaint relating to the price-fixing of PVC pipe. ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████

505. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

506. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

████████████

507.    ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████

508.    ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

509. ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████

510. ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████



## VII.   OTHER ASPECTS OF THE CONSPIRACY SUPPORT ITS PLAUSIBILITY AND THE PARTICIPATION OF THE CO-CONSPIRATOR DISTRIBUTORS.

**A.**   **The Uncoupling of the Historic Relationship of the Prices of PVC Resin and PVC Pipe Systems, as well as the Abnormally High and Persistent High Price of PVC Pipe Systems Price Since 2020, Support the Plausibility of the Conspiracy.**

511.   PVC resin is PVC Pipe Systems' primary input cost production. Historically, the spread between PVC Pipe Systems and PVC resin prices had remained constant. However, as detailed at Paragraphs 147-157 and 323 above, that spread widened dramatically in 2020 and remains extremely elevated today. ███████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

512.   The decoupling of the price of PVC Pipes from PVC Resin is aptly demonstrated by the Figure below tracking ████████████████████████████████████████



**B.** **The Converter Defendants Directly Communicated to Implement Defendants' Conspiracy.**

513.     As detailed throughout this Complaint, the Converter Defendants regularly communicated directly with each other to coordinate pricing, often bypassing Todd when immediate coordination was necessary. *See, e.g.¸ supra* ¶¶ 2277, 491.

514.     Further, Converter's employees frequently moved jobs among the co-conspirators. These movements facilitated Defendants' communications and monitoring. For instance: Jean-Marc Gilson was CEO, President, and Representative Director at Mitsubishi Chemical Group, one of the owners of the Mitsubishi/Shin-Etsu Defendants, from 2021-2024. In July 2024, he moved to a purported competitor, becoming President and CEO of Defendant Westlake. Similarly, Matt Siegel was Director National Sales PVC Pipe Systems for Westlake from 2004-2011 and then switched jobs to become the President of National Pipe & Plastics. Wayne Voorhees, currently Vice-President of Manufacturing at PipeLife, also spent his professional career working for several Defendants. Between 2010-2013, Voorhees was Vice President at National Pipe. Before that, between 1979-2008, Voorhees was the President of Northern Pipe.

515.     █████████████████████████████████████

███████████████████████████████████████████

███████  ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

## C.    Defendants' Conspiracy Was Very Successful.

516.    The Conspiracy's extraordinary success is undeniable. Defendants have publicly acknowledged their record-breaking profits.

517.    Otter Tail reported in May 2022, that, "Plastics segment operating revenues and net income increased primarily due to a 125% increase in the price per pound of polyvinyl chloride (PVC) pipe sold in the first quarter of 2022, compared to the first quarter of 2021."

518.    On November 18, 2022, Bill Waltz (Atkore President and CEO) stated, "2022 was a fantastic year across all facets of the organization." Waltz also stated that Atkore "**benefited significantly from the outperformance driven by elevated prices of our plastic pipe and conduit products**."

519.    IPEX's former Director of Corporate Development expressed Defendants' success more colorfully: "I'm sure you see it with Otter Tail, but you'd see it with any of the PVC players, they made an absolute killing and IPEX is no different than that."

520.    On August 6, 2024, Chuck MacFarlane (Otter Tail President and CEO) stated that PVC Pipe System prices "continue to decline but at a slower rate than we anticipated." Previously, on August 2, 2022, then-CFO Kevin Moug announced that Otter Tail's "plastics segment quarterly earnings increased $41.4 million over Q2 2021, which was primarily due to an 86% increase in the price per pound of PVC pipe sold." Moug also stressed that PVC Pipe System prices "continue[d] to increase at a rate higher than raw material price increases."

521.    During Westlake's first quarter earnings call in 2021, when asked about the steadily rising price of PVC Pipe Systems, then-President and CEO Albert Chao responded, "We see that PVC price [*sic*] remain to be very strong." In the third quarter of 2021, M. Steven Bender, CFO of Westlake, noted that the dramatic $85 million increase in net income from the previous quarter "was largely attributable to higher sales prices and higher margins in PVC and polyethylene."

191

522.    On September 22, 2023, Doung Kanet (Cresline, Director of Purchasing) stated, "**2021 pushed records for the industry. 2022 were just under the records. '23, is going to finish underneath those records, but over the last 10 years, the third best year we've had**."

**D.      The Co-Conspirator Distributors' Active Participation in the Conspiracy Was Critical and Was Motivated by a Desire Not to Incur Financial Harm If Their Inventory Was Devalued by Prices Decreasing from Record Levels.**

523.    Most PVC Pipe Systems sales by Converters in the United States are made directly to distributors. PVC Pipes Systems are sold through a relatively consolidated group of distributors, with at least 70% of the market controlled by Co-Conspirator Distributors Core & Main, Ferguson, Fortiline, Hajoca, Porter Pipe, and United Pipe. As noted in Paragraph 14 above, the Co-Conspirator Distributors shared a powerful economic interest with the Converter Defendants in artificially inflating PVC Systems prices: enhanced profits and financial stability.

524.    In December 2022, a regional Vice President of JD Martin Company (a distributor of electrical products including PVC Pipe Systems) stated, "[I]**f you are a distributor, the last thing you want to see is the price drop too fast if you are sitting on a bunch of inventory because if it doesn't sell, then you got to write that inventory down**. So I think that's the biggest concern of distribution." This executive also explained that distributors and Converters, such as Cantex and Atkore, worked together to keep prices high to move inventory without price collapse.

525.    According to the former Director of Markets, Product Management, and Product Development at North American Pipe Corp. (renamed Westlake Pipe & Fittings), **distributors directly asked Converters not to lower their prices** "because of the exposure they had on the **cost of writing down inventories if PVC pipe prices started coming down**." This executive further confirmed prices that Converters maintained elevated PVC Pipe Systems and enjoyed increased margins as a result.

526. 

527.    The Distributor Co-Conspirators successfully passed on the historic PVC Pipe Systems price increases by Converters to their customers. For example, in late 2022, the former Chief Financial Officer at Ferguson stated, "I think [Ferguson] had significant price increases over the last two years. They were able to pass on all of those" to their customers, enabling distributors to enjoy inflated profits during the Class Period.

528.    Distributors spoke openly of these profits at time. During Core & Main's fourth quarter 2022 earnings call, Steve LeClair, CEO, emphasized, "We have seen pricing stabilize and remain elevated for several months across our municipal pipe products." LeClair also stated that Core & Main would "continue to monitor the cost of our municipal pipe products closely, but we have been pleased to see the cost of these products remain firm at higher levels over the past few quarters." In Core & Main's 2024 first quarter earnings call, Mark Witkowski, CFO, noted that "[m]unicipal PVCs [*sic*] off of, I'd say the record highs we saw in 2022, but overall, it's been pretty stable here in the last several months." Witkowski went on to say that Core & Main would "continue to fight to hold down some of those margins."

529.    The Co-Conspirator Distributors purchased PVC Pipe Systems directly from the Converter Defendants. For instance, according to the Director of Sourcing at Ferguson, Ferguson purchased Municipal Pipes from Defendants Westlake, Otter Tail, IPEX, and JM Eagle. Core and

Main purchased PVC Pipe Systems from Converters, including Defendants Diamond Plastics, Southern Pipe, IPEX, Multi Fittings, PipeLife, JM Eagle, National Pipe, Vinyltech, and Westlake. Fortiline purchased PVC Pipe Systems from Converters, including Defendants Atkore, Diamond Plastics, Sanderson Pipe, IPEX, Multi Fittings, PipeLife, JM Eagle, National Pipe, Northern Pipe, Vinyltech, Westlake, and Charlotte. Hajoca purchased PVC Pipe Systems from Converters, including Defendants Atkore, IPEX, Multi Fittings, JM Eagle, Westlake, Charlotte, and Cresline. Porter Pipe purchased PVC Pipe Systems from Converters, including Defendants IPEX, Westlake, and Cresline. United Pipe purchased PVC Pipe Systems from Converters, including Defendants Atkore, Cantex, IPEX, and JM Eagle.

530. Moreover, many Defendant Converters only sold PVC Pipe Systems to distributors. For example, Westlake sells PVC Pipe Systems in the United States exclusively to national and regional distributors, including the distributors Core & Main, Ferguson, Fortiline, Hajoca, and Porter Pipe. In Florida, during the last three to five years, Westlake terminated its relationships with third parties that previously assisted in marketing its PVC Pipe Systems to distributors. Westlake now deals exclusively with distributors in Florida.

531. Diamond sells PVC Pipe Systems exclusively to distributors. Diamond's largest customers are Core & Main, Ferguson, and Fortiline. According to a former manufacturer's representative for Diamond, Diamond does not sell PVC Pipe Systems directly to end-users because "[y]ou have to stay true to the distributors."

532. JM Eagle, too, sells PVC Pipe Systems exclusively to distributors, including Core & Main, Ferguson, Fortiline, Hajoca, and United Pipe, and big-box stores such as Home Depot and Lowes. Distributors contact JM Eagle directly to order PVC Pipe Systems for their customers. JM Eagle's sales of PVC Pipe Systems represent approximately 55% of the company's business.

533.    Charlotte sells its PVC Pipe Systems directly to retailers, wholesalers, and distributors, including Ferguson, Fortiline, and Hajoca. It does not sell its products directly to the public.

534.    Cresline sells its PVC Pipe Systems exclusively to distributors, including Hajoca and Porter Pipe.

535.    Similarly, Northern Pipe/Vinyltech/Otter Tail sells PVC Pipe Systems exclusively to distributors, including Ferguson.

### E.    Plus Factors Support the Plausibility of the Conspiracy.

536.    "Plus factors are economic actions and outcomes, above and beyond parallel conduct by oligopolistic firms, that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." William E. Kovacic, Robert C. Marshall, Leslie M. Marx & Halbert L. White, Plus Factors and Agreement in Antitrust Law, 110 MICH. L. REV. 393, 393 (2011) (*Available at: https://repository.law.umich.edu/mlr/vol110/iss3/1*).  Beyond the exchange of competitive information through OPIS (*see infra*), additional plus factors include:

### 1.    PVC Pipe Systems Are Largely Commoditized.

537.    When a product is characterized as a commodity, market participants primarily compete based on price. Where competition occurs principally on price, implementing and monitoring collusive agreements becomes easier because price is more objectively measurable than non-price factors.

538.    In the United States, PVC Pipe System manufacturing is highly regulated by long-established industry standards, leading to limited product differentiation. The technology and processes for manufacturing PVC Pipe Systems are well established.

539.    PVC Pipe Systems are mass produced through standardized manufacturing processes and designed to meet standardized technical and operational characteristics (*e.g.*,

AWWA C900, ASTM D2241, or other standards). No defining characteristics differentiate one Converter Defendant's PVC Pipe Systems from another's.

540.     The Converter Defendants acknowledge the interchangeability of their products. Indeed, the Converter Defendants include the standardized technical and operational characteristics on their respective websites, in product catalogues, and/or in other materials distributed to PVC Pipe Systems purchasers. Further, according to a former credit analyst at Westlake Corporation, Diamond purchased Municipal Pipe from the Westlake Defendants when short. Similarly, the Converter Defendants buy Conduit Pipe from each other when short on supply. According to a former technical sales manager at Atkore, "Our industry is so incestuous. We all buy from each other."

## 2.     The Demand for PVC Pipe Systems Is Inelastic.

541.     Inelastic demand means that price increases result in limited declines in quantity demanded. For a cartel to profit from raising prices above competitive levels, demand must be sufficiently inelastic that cartel members can raise prices without triggering a decline in sales revenue that would make the artificial price increase unprofitable. Demand is inelastic when the loss in volume from a price increase is small relative to the magnitude of the price increase, allowing higher prices to increase revenues and profits despite reduced sales quantity.

542.     PVC Pipe Systems are not interchangeable with other pipes, including thermoplastic pipes like Polyethylene pipe ("PE pipe"), Polypropylene pipe ("PP pipe"), Acrylonitrile butadiene styrene ("ABS pipe"), and Polystyrene pipe ("PS pipe"). PE and PP pipes are much more flexible than PVC Pipe Systems and are not as durable. ABS pipe is more flexible and less likely to deform due to high temperatures compared to PVC Pipe Systems, but ABS has higher levels of a harmful chemical called BPA. PS pipe is more brittle, has a lower temperature and chemical resistance, and is less durable than PVC Pipe Systems.

543.    A Federal Trade Commission ("FTC") administrative law judge has found that "pipes made from materials other than PVC are not close substitutes for PVC pipes" after specifically considering whether pipes made from ductile iron, steel, and other materials are substitutes for PVC Pipe Systems, including Municipal and Conduit Pipe. *Matter of Occidental Petroleum Corp.,* 115 F.T.C. 1010, 1125 (1992).

544.    Addressing PVC municipal drinking water pipe specifically, the FTC's administrative law judge found that demand is inelastic for at least two reasons. First, in many situations the choice of pipe material is based on factors other than price. These factors include the needs of a municipality for the distinctive properties of one kind of pipe over another to meet the use conditions of a particular area. When the pipe product is selected on the basis of factors other than price, changes in Municipal Pipe price will not affect the purchase decision. Second, in a case where price is an important consideration for pipe material selection, the total installed cost of a Municipal Pipe system is often substantially less than that of ductile iron or other materials.

545.    The FTC's administrative law judge also found that demand for PVC municipal sewer pipe is inelastic as there are no other close substitutes due to PVC Pipe Systems' "distinct properties." These distinct properties set PVC Pipe Systems apart from other materials such as concrete, clay, and corrugated iron. Importantly, PVC Pipe Systems are "not subject to attack and corrosion from hydrogen sulfide gas" and "the corrosion resistance of PVC Pipe Systems makes it particularly well suited for certain types of soils."

546.    Addressing Conduit Pipe specifically, the FTC's administrative law judge found that the cost disparity between Conduit Pipe and other types of electrical conduit (*e.g.*, steel) is so great that the demand for Conduit Pipe is inelastic.

### 3. The PVC Pipe Systems Industry Is Highly Concentrated and Consolidated.

547.     Market concentration is a plus factor in analyzing the plausibility of an antitrust conspiracy. The PVC Pipe Systems industry is highly concentrated. As noted previously Converter Defendants have a substantial market share across each application. The Converter Defendants collectively control over 90% of PVC Pipe System market share.

548.     According to the former Director of Corporate Development at Defendant IPEX, speaking in November 2023, the PVC Pipe Systems industry "has been consolidating over the last few years." This executive further stated that more consolidation was likely because the major U.S. players were incentivized to acquire the medium-sized players to extend geographic reach or increase product variety, and avoid the approximately four-year lead time required to produce PVC Pipe Systems from a new plant. *See* Section VII(E)(4).

549.     Over the past decade Atkore purchased the assets of many smaller PVC Pipe Systems converters, including Heritage Plastics (2013), Ridgeline Pipe Manufacturing (2013), Rocky Mountain Colby Pipe Company (2019), and Queen City Plastics, Inc. (2020). As a result of this consolidation, Atkore alone produces approximately 35-40% of the Conduit Pipe in the United States.

550.     In 2019, IPEX acquired Converter Silver-Line Plastics. Since 2019, IPEX has acquired Converter Harrington Corporation (Harco) (2022) and Valencia Pipe Company's manufacturing division (2023).

551.     In 2018, Sanderson merged with Vinylplex, Inc., a company that manufactured Municipal Pipe. And in 2019, Sanderson merged with Texas United Pipe, Inc., with Texas United Pipe becoming a wholly owned subsidiary of Sanderson.

### 4.    The PVC Pipe Systems Industry Has High Barriers to Entry.

552.    The existence of high barriers to entry is one factor that makes a market susceptible to collusion. A collusive arrangement that raised product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supracompetitive pricing. However, where significant barriers to entry exist, new entrants are less likely. Thus, barriers to entry help facilitate the formation and maintenance of a cartel.

553.    The PVC Pipe Systems industry has high barriers to entry. Three-to-four years are required to bring a brand-new PVC Pipe Systems facility online. Even with available floor space in an existing PVC Pipe Systems manufacturing facility, it can take approximately 12 months to add new supply capacity. A new entrant into the market would face costly and lengthy start-up costs, including multi-million-dollar costs associated with building production facilities. For example, in October 2023, IPEX announced that it would build a new PVC Pipe Systems production facility in Pineville, NC. IPEX reported that the initial cost to open the plant was $200 million. Thus, according to the former Director of Corporate Development at IPEX, "the supply side of the equation here is extremely rigid."

554.    Another barrier to entry for new Converters is structural. New Converters find it difficult to obtain the licenses necessary to meet applicable building codes. According to the former Director of Corporate Development at IPEX, the PVC Pipe Systems industry was "not prone to new players coming up. There are, call it, structural barriers to entry that make it difficult for new players to come in, not least of which is the sort of licensing and engineering of products to make sure they meet codes . . . . There is huge investment required in bricks and mortar to stand up a facility than can actually produce the products we are talking about. It's not an easy industry to get into one day. I think I would be accurate in saying that new players are essentially a nonstarter in this industry . . . . So when we look at the competitive set, whatever players are in the

market today are generally the ones that will be in the market tomorrow. And so from a M&A perspective, the focus here really was on consolidation."

### 5. The Converter Defendants Had Numerous Opportunities to Collude.

555. Opportunities for competitors to meet directly with one another to organize and maintain a conspiracy constitutes another plus factor. Through regular trade association and industry meetings, the Converter Defendants had numerous opportunities to collude.

### a) *Uni-Bell PVC Pipe Systems Association.*

556. The Uni-Bell **PVC Pipe Systems Association ("PVCPA")** is one of the most prominent PVC Pipe Systems trade associations in the United States. Atkore, the Mitsubishi/Shin-Etsu Defendants (including Diamond and Sanderson Pipe), IPEX, JM Eagle, National Pipe, the Otter Tail Defendants (including Vinyltech and Northern Pipe), PipeLife, and the Westlake Defendants are members of PVCPA. PVCPA hosts multiple events each year, including an annual meeting.

557. Atkore, the Mitsubishi/Shin-Etsu Defendants, IPEX, JM Eagle, National Pipe, the Otter Tail Defendants, PipeLife and the Westlake Defendants also had representation on the PVCPA board of directors during the Class Period.

558. Numerous Converter Defendant executives currently sit on the Board of Directors for PVCPA, including Chuck Clark (JM Eagle), Andre Battistin (Westlake), John Britton (Diamond), Matt Siegel (National Pipe), Travis Lutes (IPEX), Wayne Voorhees (PipeLife), Eric Howard (Sanderson Pipe), and Jeff Sherman (Atkore). Howard is the Chair; Clark is Vice Chair; Battistin is Treasurer; and Siegel is Past Chair. In 2023, Howard, Clark, Battistin, Siegel, Britton, and Lutes sat on the PVCPA Board of Directors. Howard was the Chair; Clark was Vice Chair; Battistin was Treasurer; and Siegel Past Chair. In 2022, Siegel, Clark, Britton, Battiston, and Lutes

sat on the PVCPA Board of Directors. Siegel was Chair; Clark was Treasurer; and Britton was Past Chair.

559. The Converter Defendants regularly attended each PVCPA meeting. In 2022, the PVCPA annual meeting was held on April 4-6, 2022, at the Ponte Vedra Inn & Club in Ponte Vedra Beach, Florida. In 2023, the annual meeting was held March 20-22, 2023, at the Curio Collection by Hilton in Key West, Florida.

560. High-level executives from the Converter Defendants regularly attend the PVCPA's Annual Conferences. For example, the following high-level executives attended the February 2024 PVCPA Annual Meeting in Costa Rica: Jeff Sherman (Vice President and General Manager) and Michael Deneen (VP of Sales for PVC and HDPE products) attended for Atkore; Skip Yents (VP of Sales and Marketing) and John Britton (CEO) attended for Diamond; Travis Lutes (Management President) and Larry Gill (manager of codes and standards) attended for IPEX; Chuck Clark (Vice President of Operations) attended for JM Eagle; Matt Siegel (President) and Josh Funderburk (Head of Strategic Sourcing) attended for National Pipe; Terry Mitzel (President of Plastic Segment) and John Abbott (Senior Vice President) attended for Otter Tail; Chad Wilkson (General Manager) and Wayne Voorhees (Vice President of Manufacturing) attended for PipeLife; Eric Howard (President) attended for Sanderson Pipe; and Andre Battistin (Vice President of Pipe and Fittings), Keith Moggach (National Manger for Specification Engineering), and Veso Sobot (Director of Corporate Affairs) attended for Westlake. In addition, Greg Nahrgang attended on behalf of Charlotte (Vice President, Technical Services and Product Development).

b)      *Plastic Pipe and Fittings Association.*

561. The Plastic Pipe and Fittings Association ("PPFA") is a trade association for the PVC Pipe Systems industry focused on plumbing and piping applications for buildings. Membership includes Defendants Atkore, Cantex, IPEX, PipeLife, Westlake, Prime Conduit,

National Pipe, and Sanderson Pipe are members. Charlotte and Cresline are also members of the PPFA.

562.    The PPFA holds two meetings per year. In 2021, the spring meeting was held from March 7-9, 2021, at the Loews Ventana Canyon Resort in Tucson, Arizona, while the 2021 fall meeting was held October 3-5, 2021, at the Ritz Carlton on Amelia Island, Florida. In 2022, the spring meeting was held March 6-8, 2022, at the Hyatt Regency in Indian Wells, California, while the fall 2022 meeting was held October 2-4, 2022, at The Broadmoor in Colorado Springs, Colorado. In 2023, the spring meeting was held March 5-7, 2023, at the Loews Ventana Canyon Resort in Tucson, Arizona, while the fall 2023 meeting was held October 1-3, 2023, at the Ritz Carlton in Naples, Florida. In 2024, the spring meeting was held March 3-5, 2024, at Rancho Mirage, California, while the fall 2024 meeting was held October 6-8, 2024, in Monterrey, California.

c)    *Plastics Pipe Institute.*

563.    The Plastics Pipe Institute ("PP Institute") is the major North American Converter trade association for advocacy and education regarding plastics use in pipe, conduit, and infrastructure. Defendants Atkore, JM Eagle, and IPEX are members, as well as Co-Conspirator Core & Main and Ferguson, and resin manufacturer Formosa. Charlotte and Cresline are also listed as members.

564.    PP Institute holds two meetings per year—a "semi-annual" meeting in the fall, and an "annual" meeting in the spring. The PP Institute members listed above attend each meeting. In 2021, the annual meeting was September 26-29, 2021, in Plano Texas. In 2022, the annual meeting was May 15-18, 2022, in Scottsdale, Arizona, and the semi-annual meeting was October 16-19, 2022, in Louisville, Kentucky. In 2023, the annual meeting was May 9-12, 2023, in Maui, Hawaii, and the semi-annual meeting was October 15-18, 2023, in Nashville, Tennessee. In 2024, the

annual meeting was May 13-16 in Manalapan, Florida, and the semi-annual meeting was October 21-24 in Irving, Texas.

d) *Vinyl Institute.*

565. The Vinyl Institute was founded in 1982 and is a United States trade organization representing the leading manufacturers of vinyl, vinyl chloride monomer, and vinyl additives and modifiers. The four "full" members of the Vinyl Institute are Defendant Westlake, Shintech (a joint owner of the Mitsubishi/Shin-Etsu Defendants), Formosa (owned by the Wang family, which owns JM Eagle), and Oxy Chemical Corporation. A subsidiary of PVC resin manufacturer Orbia Advance Corporation, Wavin, is also a member of the Vinyl Institute.

566. The Vinyl Institute also hosts an annual conference titled Vinyl360, "where the Vinyl Institute will share research and discuss the megatrends . . . that can impact the vinyl industry's future." The Converter Defendants participate heavily in the conference and are recognized for their contributions to the industry: at the 2020 meeting, the Vinyl Institute recognized the T.T. Chao family, owners of Westlake, with the VI Lifetime Achievement Award, and granted the same award to Richard Mason, advisor to the President of Shintech, in 2021. The Vinyl Institute has also held an annual meeting in November for its members. The 2022 meeting, which celebrated the Vinyl Institute's 40-year anniversary, took place in Washington, D.C., and the 2023 meeting took place in New York City. In 2023, the Vinyl Institute named Wayne Voorhees (PipeLife) the winner of its Lifetime Achievement Award, describing him as an exemplary leader and mentor in the industry.

e) *Irrigation Association.*

567. The Irrigation Association was established in 1949 and claims to be the leading membership organization for irrigation equipment and system manufacturers, dealers, distributors,

designers, consultants and contractors in the United States. Defendants Atkore, Westlake Pipe & Fittings, JM Eagle, and IPEX USA are members.

568.    The Irrigation Association hosts regular conferences and seminars for its members, including the Irrigation Show and Education Week, which "brings the brightest minds and latest innovations in irrigation to one place." In 2021, Defendants JM Eagle and IPEX USA attended and were exhibitors at the annual trade show which took place from December 6-10 in San Diego, California. In 2022, Defendants JM Eagle, IPEX USA, and Westlake Pipe & Fittings attended and were exhibitors at the trade show which took place from December 5-9 in Las Vegas, Nevada. In 2023, Defendants Atkore, JM Eagle, IPEX USA, and Westlake Pipe & Fittings all attended and were exhibitors at the trade show which took place from November 27-December 30 in San Antonio, Texas.

f)    *National Electrical Manufacturers Representatives Association.*

569.    The National Electrical Manufacturers Representatives Association ("NEMRA") was founded in 1926 and is a trade association of electrical equipment manufacturers in the United States. Defendants Atkore, Cantex, IPEX USA, and Southern Pipe are members. NEMA hosts over 100 in-person and virtual events every year, including its members-only on-site annual conference.

g)    *National Association of Electrical Distributors.*

570.    The National Association of Electrical Distributors ("NAED") was founded in 1969 and is a trade association of companies involved in the distribution of electrical equipment in the United States. Defendants Atkore, Cantex, IPEX USA, Prime Conduit, and Southern Pipe are members. According to NAED, its association is the "dominate source of networking for the nation's distributors and their affiliates" and provides these networking opportunities through approximately 20 meetings and conferences a year, including an on-site annual conference.

h)    *Plastics Industry Association.*

571.    The Plastics Industry Association ("PLASTICS"), "the only association that supports the entire plastics supply chain," was founded in 1937. It is also "the largest trade association representing plastic product manufacturers in the US"PLASTICS does not make its member list available to the public, but it does deem its "Processors Council" as "the champion and primary point of engagement for processors and converters." Further, in 2016, Westlake Chemical announced that its companies, "including North American Pipe Company (NAPCO [Westlake]) and Westech Building Products" were recognized by PLASTICS (then, SPI) as a member company that had achieved "exceptional safety performance."

572.    In December 2023, PLASTICS co-hosted the second annual "Vinyl Week" with the Vinyl Institute, a "gathering [of] industry leaders for a robust three-day agenda." Previous attendees of Vinyl Week include Formosa Plastics Corp. USA, Orbia/Vestolit, Shintech Inc., and Westlake. PLASTICS also hosted NPE: The Plastics Show, a triennial convention, on May 6-10, 2024 in Orlando, Florida. Westlake Corporation, Formosa Plastics, Vestolit GmbH, and Shin-Etsu Silicones of America were listed as exhibitors.

i)    *Other Meeting Opportunities.*

573.    Defendants also took advantage of other industry-related meetings to speak directly and coordinate on PVC Pipe prices. For instance, TDG (a distributor group) holds annual meetings each January, which are attended by many of the Converter Defendants. On information and belief, other similar industry events provided opportunities for the Defendants to meet and conduct the business of the Conspiracy.

**6.    Defendants' History of Prior Accusations of Anticompetitive Conduct.**

574.    Several Defendants have faced prior antitrust enforcement actions. For example, Charlotte Pipe was subject to a 2010 DOJ consent decree stemming from allegations that it

engaged in anticompetitive conduct in the ductile iron pipe market. In that case, the FTC found that Charlotte Pipe invited a competitor to collude on pricing. Similarly, Fortiline settled charges in 2016 by the FTC that it had invited a competitor to collude on the price of iron pipe and fittings. Mitsubishi and its subsidiaries have a long history of antitrust accusations and violations both in the United States and globally, particularly in relation to various auto-parts. *See, e.g.*, *U.S. v. Mitsubishi Elec. Corp.*, No. 2:13-cr-20710, Criminal Plea Agreement, ECF No. 9 (E.D. Mich. Nov. 6, 2013). Such prior anticompetitive conduct constitutes a plus factor supporting the plausibility of the current Conspiracy.

### 7. Common Ownership of the Converter Defendants, Including by PVC Resin Manufacturers, Facilitated the Conspiracy.

575. Common ownership among competitors can facilitate anticompetitive coordination.. In this case, not only is there extensive common ownership of Converters themselves but also ownership by PVC resin manufacturers of Converters. Certain Converter Defendants are vertically integrated with PVC resin producers, meaning the owner of the Converter Defendant and PVC resin producer is the same. Defendant JM Eagle and Formosa Plastics are both owned by members of the Wang family. Mitsubishi and Shin-Etsu jointly own both resin producer Shintech and Defendants Cantex, Diamond, Prime Conduit, Sanderson, and Southern Pipe. Westlake also manufactures PVC resin.

576. The ownership relationship of the Shin-Etsu Defendants is shown in the diagram below:

**FIGURE 22**
**MITSUBISHI/SHIN-ETSU DEFENDANTS CORPORATE STRUCTURE**



577.     This common ownership structure was not widely known before this litigation and the filing of the five Mitsubishi/Shin-Etsu Defendants' Notices of Affiliates (*see infra*), and purchasers of PVC Pipe Systems reasonably believed these companies were actually competitors, not commonly-owned subsidiaries of Mitsubishi/Shin-Etsu.

578.     With respect to resin manufacturing, there is extensive vertical integration (*i.e.*, resin companies owning PVC converters). As shown in the diagram below, the Wang family has an ownership interest in resin converter Formosa Plastics Corp., as well as JM Eagle (which is led by a CEO from the Wang family). Westlake also owns both a resin manufacturing business and a PVC converter.



**FIGURE 23**
**PVC PIPE SYSTEMS VERTICAL INTEGRATION**



579. Prior to the Class Period, PVC resin producers affiliated with the Converter Defendants were expanding their PVC resin production capacity. For example, in 2016, Westlake Corporation acquired Axiall Corporation, making Westlake the second largest PVC resin producer in North America. In 2018, Shintech began construction of a new $1.49 billion PVC resin manufacturing plant next to its existing production facility in Plaquemine, LA. In 2019, Formosa Plastics announced a $332 million expansion of its PVC plant in Baton Rouge, LA. That expansion resulted in a 20% increase in PVC resin production capacity for Formosa Plastics.

580. Upon information and belief, the common ownership of entities that manufacture resin and convert PVC facilitated the Conspiracy by minimizing the PVC resin available to those

converters not participating in the Conspiracy and monitoring the ordering of PVC resin by PVC converters. In other words, ownership of the primary bottleneck ingredient for PVC Pipe Systems—PVC resin—provided an enforcement mechanism for the Mitsubishi/Shin-Etsu Defendants, Formosa/JM Eagle, and the Westlake Defendants.

## VIII. DEFENDANTS ACTIVELY CONCEALED THEIR CONSPIRACY, AND PLAINTIFFS COULD NOT HAVE DISCOVERED DEFENDANTS' ANTICOMPETITIVE CONDUCT.

581.    Plaintiffs and members of the Classes had neither actual nor constructive knowledge of the facts constituting their claim for relief. Plaintiffs and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the Conspiracy alleged herein until shortly before filing this Complaint. The Converter Defendants engaged in secret price signaling, information exchanges, and direct communications that did not reveal facts that would have Plaintiffs or the Classes on inquiry notice that there was an anticompetitive agreement to exchange information regarding PVC Pipe Systems pricing and sales. Throughout the Class Period, Defendants effectively, affirmatively, and fraudulently concealed their anticompetitive agreement from Plaintiffs and members of the Classes.

582.    The Classes had no access to the thousands of text messages, thousands of pages of handwritten notes of Todd's price-fixing calls with the Converter Defendants and Co-Conspirator Distributors, or numerous other secret communications. Even with respect to PVC & Pipe Weekly, the publication was not widely known even within the PVC industry, and few if any NCSP Class members were even aware it existed or had access to it. Not until NCSPs settled with OPIS in May 2025 and received access to these extensive secret communications was the depth and scope of Defendants' price-fixing Conspiracy apparent.

583.    Defendants took numerous active steps to conceal their Conspiracy. First, PVC & Pipe Weekly was a subscription-only publication that few knew existed. Second, ████████

584. ███████████████████████████████████████████████

585.     The Converter Defendants had numerous pretextual explanations for their success in raising prices starting in 2020. After the onset of the COVID-19 pandemic in March 2020, the Converter Defendants observed the record profit margins described above and came to realize that returning to the old way of competing for market share would put an end to their ever-increasing profits. As stated by the former Director of Markets, Product Management, and Product Development for Westlake Pipe & Fittings, "I think the **pipe manufacturers have finally gotten, for lack of a better term, smart, maybe wise [is] a better term, about making money**. Historically, especially the big guys have always sharpened their pencil, if you will, and **definitely competed on price** and always looking to be the lowest price to get those big quarterly orders. I think there's maybe some rationality that's entered the marketplace in terms of people saying, '**You know what? I'd rather hold my price than give it up and just continue to feed that race to the bottom, if you will, on pricing**.'"

586.    The Converter Defendants also spoke to their investors about the shift from a "chasing market share" mentality to a profit margin focus. In September 2023, Otter Tail made a presentation at the Sidoti Small-Cap Investor Conference regarding its PVC Pipe Systems business, including Northern Pipe and Vinyltech's role in the PVC Pipe Systems industry. On behalf of Northern Pipe and Vinyltech, Otter Tail presented Figure 11 (see above) regarding the spread between PVC resin and PVC Pipe System prices. Notably, Otter Tail calls the period from 2014-2017 one of "chasing volume." After that period, Otter Tail noted that margins moved slightly higher. In providing this implicit criticism of the PVC Pipe Systems industry's prior "mistake" of "chasing volume," Otter Tail (and Northern Pipe and Vinyltech, which Otter Tail was speaking on behalf of), acknowledged that the record profits it touted in the same presentation were due to the shift to "competing" for margin, which is the price-fixing agreement described in this Complaint.

587.    Similarly, according to the former CEO of Atkore, John Williamson, the Converters realized during 2020 that their pricing power had substantially increased and decided to "act more responsibly instead of just trying to take market share from each other." By "act[ing] more responsibly," Williamson meant that competitors would no longer compete for market share by, for instance, lowering price to win business from competitors. The only responsibility any corporation has is to legally maximize its profits for its owners. In a competitive PVC Pipe Systems market, including historically in the PVC Pipe Systems market, that would be achieved through competition in which the Converters sought to increase their market shares at the expense of competitors' market shares. As a result of the Conspiracy, though, Converters agreed to shift their focus away from competition and towards maintaining elevated industry profit margins through price fixing.

### IX. PLAINTIFFS ALLEGE VIOLATIONS UNDER BOTH THE PER SE AND RULE OF REASON STANDARDS OF THE SHERMAN ACT.

588. This action alleges that Defendants' agreement to unreasonably restrain competition in the PVC Pipe Systems industry is a *per se* violation of the federal and state antitrust laws and consumer protection laws.

589. In the alternative, Plaintiffs also allege that Defendants' agreement to unlawfully exchange competitively sensitive business information, including recent, current, and future pricing information, violates the antitrust laws even under the rule of reason because it harms and suppresses competition in the PVC Pipe Systems market.

590. The Converter Defendants ostensibly compete to sell PVC Pipe Systems in the United States; however, their agreement to exchange competitively sensitive business information through OPIS has enabled them to reduce competition in the PVC Pipe Systems industry.

591. The Converter Defendants understood that collective action was necessary to artificially inflate, increase, and stabilize the price of PVC Pipe Systems. For example, on May 3, 2024, OPIS reported, "Converters said the price hikes won't work unless everyone is working together to implement them."

592. OPIS presented an invitation to the Converter Defendants to participate in the sharing of competitively sensitive business information—including recent, current, and future information regarding current pricing and future pricing plans for PVC Pipe Systems—and the Converter Defendants accepted that invitation. Each of the Converter Defendants knew that its competitors were presented with the same invitation. Each Converter Defendant subscribed to PVC & Pipe Weekly. That each of the Converter Defendants had accepted the invitation was confirmed when OPIS published the pricing information in the PVC & Pipe Weekly.

593. One tool that courts use to assess the competitive effects of collective action is defining a relevant market—the zone of competition among the agreeing rivals in which the agreement may affect competition. A relevant market contains both a product dimension (the "product market") and a geographic dimension (the "geographic market").

594. As described in detail above, there is a single product market for PVC Pipe Systems, with different application categories allowing for different end uses.

595. The relevant geographic market for PVC Pipe Systems is the United States.

596. As alleged above, high barriers to entry into the PVC Pipe Systems industry exist, precluding other entrants or would-be competitors from entering the market.

597. As alleged above, the Converter Defendants and their Co-Conspirators exert significant market power in the PVC Pipe Systems market.

598. Competition is likely to be harmed when competitors with market power in concentrated markets, such as the market at issue here, exchange strategic business information about current and forward-looking plans for prices. The information exchanged between and among the Converter Defendants was competitively sensitive and a material factor in sales negotiations with customers. When companies that are competing for the same customers exchange their strategic plans, comfort replaces uncertainty and reduces incentives to compete on price.

599. The Converter Defendants' information exchange took place in non-public settings and involved the exchange of confidential, non-public information.

600. Given a number of attributes of the PVC Pipe Systems industry, the type of information exchange facilitated by OPIS is highly likely to have anticompetitive effects. In

particular, as alleged above, the PVC Pipe Systems industry features few sellers, commoditized products, price-based competition, and inelastic demand.

601. The Converter Defendants' unlawful information exchanges through OPIS were not reasonably necessary to further any procompetitive purpose.

## X.    CLASS ACTION ALLEGATIONS.

602. Plaintiffs bring this action on behalf of themselves and under Federal Rule of Civil Procedure 23(a), (b)(1), and (b)(2) as representatives of a Class of purchasers seeking, under federal law, injunctive and equitable relief for indirect claims or, in the alternative, injunctive and equitable relief and damages for direct claims (the "Nationwide Class") defined as:

> All entities and persons who purchased PVC Pipe Systems in the United States between January 1, 2020 through the present (1) directly from a seller that purchased PVC Pipe Systems from a Converter Defendant that was (2) manufactured by a Converter Defendant.

603. Plaintiffs also bring this action on behalf of themselves and all others similarly situated as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3), seeking damages as well as equitable relief, on behalf of the following classes (the "State Law Classes"):

> All entities and persons who purchased PVC Pipe Systems in the United States between January 1, 2020 through the present (1) directly from a seller that bought the PVC Pipe System from a Converter Defendant that was (2) manufactured by a Converter Defendant, and (3) sold in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and/or Wisconsin.

604. Specifically excluded from the Nationwide Class and State Law Classes are (1) all public water systems, public wastewater systems, and suppliers of public energy or electricity, (2) Defendants; the officers, directors, or employees of any Defendant; any entity in which any

Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant, and (3) any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, any business majority-owned by any such person, and any Co-Conspirator identified in this Action.

605.    Both Classes are so numerous as to make joinder impracticable. Plaintiffs do not know the exact number of Class members but the above-defined Classes are readily identifiable and are ones for which records should exist. Plaintiffs believe that due to the nature of the PVC Pipe Systems industry there are at least hundreds of thousands of members of both Classes in the United States.

606.    Common questions of law and fact exist as to all members of both Classes. Plaintiffs and both Classes were injured by the same unlawful price-fixing Conspiracy, and Defendants' anticompetitive conduct was generally applicable to all the members of the Classes. Relief to both Classes as a whole is appropriate. Common issues of fact and law include, but are not limited to, the following:

   a. Whether Defendants and their Co-Conspirators engaged in a Conspiracy to artificially inflate, increase, and stabilize PVC Pipe System prices;

   b. The identity of the participants in the Conspiracy;

   c. The duration of the Conspiracy and the acts performed by Defendants and their Co-Conspirators in furtherance of the Conspiracy;

   d. Whether the conduct of Defendants and their Co-Conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and other members of the Classes;

   e. The effect of Defendants' Conspiracy on the price of PVC Pipe Systems sold in the United States during the Class Period; and

   f. The amount of class-wide damages.

607.    These and other questions of law or fact, which are common to the members of the Classes, predominate over any questions affecting only individual members of the Classes.

608.     Plaintiffs' claims are typical of the claims of members of the Classes, and Plaintiffs will fairly and adequately protect the interests of both Classes. Plaintiffs and all members of both Classes are similarly affected by Defendants' unlawful conduct in that they paid artificially inflated, increased, and stabilized prices of PVC Pipe Systems sold in the United States, resulting from price-fixing in the PVC Pipe Systems industry by Defendants.

609.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with and typical of, and not antagonistic to, those of the other members of the Classes.

610.     Plaintiffs have retained counsel with substantial experience litigating complex antitrust class actions in myriad industries and courts throughout the nation.

611.     As described herein, Defendants acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

612.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action. Moreover, the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

613. Plaintiffs know of no difficulty likely to be encountered in the maintenance of this action as a class action under Federal Rule of Civil Procedure 23.

## XI. ANTITRUST INJURY.

614. Defendants' anticompetitive conduct had the following effects, among others:

    a. Price competition has been restrained or eliminated with respect to PVC Pipe Systems;

    b. PVC Pipe System prices have been fixed, raised, stabilized, or maintained at artificially inflated levels;

    c. Plaintiffs and the Classes have been deprived of free and open competition; and

    d. Plaintiffs and the Classes paid artificially inflated PVC Pipe System prices.

615. The PVC Pipe Systems that Plaintiffs and members of the Classes purchased was in substantially the same form as when they were initially sold by the Converter Defendants. As a result, PVC Pipe Systems follows a traceable physical chain from the Converter Defendants to Plaintiffs and members of the Classes, and the overcharges on PVC Pipe Systems can be traced from the Converter Defendants to Plaintiffs and members of the Classes.

616. As discussed in detail, as a matter of economic principle, firms must recover the short-run variable costs of production when they price their products for the market, which ultimately get passed to purchasers here, to Plaintiffs and members of the Classes, in the form of higher prices. When demand is inelastic, as it is for PVC Pipe Systems, the pass-through rate to purchasers from non-converter PVC Pipe Systems sellers is at or near 100 percent.

617. Consequently, while direct purchasers were the first to pay supra-competitive prices, the overcharge was passed along the distribution chain and absorbed by Plaintiffs and members of the Classes when they purchased PVC Pipe Systems through a non-converter PVC Pipe Systems seller.

618.     Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive price paid by Plaintiffs and the members of the Classes. Thus, the economic harm to Plaintiffs and the members of the Classes can be quantified.

619.     The purpose of the collusive conduct of Defendants and their Co-Conspirators is to raise, fix, stabilize, or maintain the price of PVC Pipe Systems and, as a direct and foreseeable result, Plaintiffs and the members of the Classes paid supra-competitive PVC Pipe System prices during the Class Period.

620.     By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher PVC Pipe System prices than they would have paid in the absence of Defendants' illegal contract, combination, or Conspiracy, and as a result, have suffered damages.

621.     This is an antitrust injury of the type that federal and state antitrust laws were meant to punish and prevent.

## XII.     CLAIMS FOR RELIEF.

### COUNT 1
### Violation of Section 1 of the Sherman Act (15 U.S.C. § 1) for Restraint of Trade
**(On Behalf of Nationwide Class for Injunctive and Equitable Relief Related to Indirect Claims or, in the Alternative, Injunctive and Equitable Relief, and Damages for Direct Claims)**

622.     Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

623.     Beginning on or around January 1, 2021, the exact date being unknown to Plaintiffs and the Nationwide Class and exclusively within the knowledge of Defendants, and continuing through the present, Defendants and their Co-Conspirators entered into a continuing agreement to unlawfully and unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or eliminating price competition for PVC Pipe Systems.

624. In particular, Defendants and their Co-Conspirators have combined and conspired to raise, fix, maintain, or stabilize the price of PVC Pipe Systems sold to United Sates purchasers during the Class Period.

625. As a result of Defendants' and their Co-Conspirators' unlawful and unreasonable conduct and acts taken in furtherance of their Conspiracy, the price of PVC Pipe Systems sold to purchasers in the United States during the Class Period was raised, fixed, maintained, or stabilized at artificially inflated levels.

626. The combination or conspiracy among Defendants and their Co-Conspirators consisted of a continuing agreement, understanding, and concerted action between and among Defendants and their Co-Conspirators.

627. For purposes of formulating and effectuating their combination or conspiracy, Defendants and their Co-Conspirators did those things they combined or conspired to do, including:

   a. Participating in meetings and conversations to discuss their respective prices, discounts, freight terms, and other pricing terms for PVC Pipe Systems and how they effectively coordinate their actions to restrain trade for these products;

   b. Communicating in writing and orally to raise, fix, maintain, and stabilize price of PVC Pipe Systems;

   c. Agree to coordinate and manipulate the price of PVC Pipe Systems directly sold to United States purchasers in a manner that deprived those purchasers of free and open price competition;

   d. Issuing or signaling to each other price announcements and price quotations for PVC Pipe Systems in accordance with the agreements Defendants and their Co-Conspirators reached among themselves;

   e. Selling PVC Pipe Systems to United States purchasers at non-competitive and artificial prices that Defendants and their Co-Conspirators collusively determined; and

   f. Providing pretextual justifications to purchasers and the public to explain any rises, maintenance, or stabilization of the prices for the Converter Defendants' PVC Pipe Systems.

628. As a result of Defendants' and their Co-Conspirators' anticompetitive conduct, Plaintiffs and the Nationwide Class have been injured in their business and property in that they have paid more for PVC Pipe Systems they purchased during the Class Period than they otherwise would have paid but for Defendants' conduct.

629. Because of the Nationwide Class definition and the allegations against PVC distributors contained herein, the claims of Plaintiffs and the Nationwide Class may sound as direct claims or indirect claims depending on the Court's eventual finding after discovery regarding the distributors' involvement in the Conspiracy. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) (discussing the co-conspirator exception to the indirect purchaser rule); *see also Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 342 (7th Cir. 2022) (recognizing "a conspiracy 'exception' to Illinois Brick, in which plaintiffs who purchase from one member of an antitrust conspiracy may bring suit against any member of the conspiracy").

630. For indirect claims, Plaintiffs and the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein, and equitable relief.

631. Alternatively, for direct claims, Plaintiffs and the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein, equitable relief, and damages.

**COUNT 2**
**Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)**
**for Conspiracy to Exchange Competitive Information**
**(On Behalf of Nationwide Class for Injunctive and Equitable Relief Related to Indirect Claims or, in the Alternative, Injunctive and Equitable Relief and Damages Related to Direct Claims)**

632. Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

633. On or around January 1, 2021, and continuing through the present, the exact dates being unknown to Plaintiffs and the Nationwide Class, Defendants and their Co-Conspirators entered into a continuing agreement to regularly exchange detailed, timely, competitively sensitive and non-public information about their operations. This agreement is concerted action and an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

634. PVC Pipe Systems is the relevant product market, and the geographic market is the continental United States.

635. The Converter Defendants possessed market power in the relevant product market during the Class Period. On information and belief, the Converter Defendants collectively control over 90% of PVC Pipe System market share.

636. An increase in the price of PVC Pipe Systems could be imposed collectively by the Converter Defendants without causing many customers to switch their purchases to another product. PVC Pipe Systems constitutes a unique product market.

637. Defendants view PVC Pipe Systems as a fungible commodity product. For instance, PVC municipal drinking water pipes are generally interchangeable, permitting the Converter Defendants to readily compare and match each other's pricing. The same is true for the other PVC Pipe System applications.

638. The information regularly exchanged by the Converter Defendants pursuant to the agreement consisted of detailed, competitively sensitive and non-public information about pricing plans regarding PVC Pipe Systems. The Converter Defendants' information exchanges specifically include the exchange through OPIS of weekly reports regarding the Converter Defendants' PVC Pipe System pricing that allowed them to compare their prices with their competitors and collectively raise prices.

639. Each of the Converter Defendant's regular information exchanges through OPIS reflected the concerted action between and among horizontal competitors in the PVC Pipe Systems industry.

640. Each Converter Defendant furnished competitively sensitive information, including recent, current, and future pricing information, to other Converter Defendants with the understanding that it would be reciprocated.

641. The agreement to regularly exchange detailed and non-public information about recent, current, and future pricing suppressed competition between and among the Converter Defendants and enabled them to coordinate and maintain their price increases.

642. When companies competing for the same customers exchange competitively sensitive information, including recent, current and future pricing information, it reduces the incentives to compete on price. Here, the Converter Defendants used the data obtained through OPIS to reduce the uncertainty that they each should have faced from not knowing what their competitors were offering and providing in the PVC Pipe System industry. This strategic information was a material factor in the Converter Defendants' parallel decisions to inflate the price that Plaintiffs paid for PVC Pipe Systems during the Class Period.

643. The Converter Defendants' unlawful agreements to exchange, and the actual exchanges of the non-public, timely, and detailed data were not reasonably necessary to further any procompetitive purpose. The information exchanged between and among the Converter Defendants was current, easily traceable to its source, confidential, and related to a core characteristic of competition.

644. The information exchange agreement has had the effect of (1) suppressing competition among the Converter Defendants in the PVC Pipe Systems industry in the United

States and (2) inflating, increasing, and stabilizing the price of PVC Pipe Systems during the Class Period.

645. As a result of the unlawful agreement alleged herein to exchange information, Plaintiffs and members of the Nationwide Class have been injured in their business or property by paying artificially inflated prices for PVC Pipe Systems during the Class Period.

646. Because of the Nationwide Class definition and the allegations against the Co-Conspirator Distributors contained herein, the claims of Plaintiffs and the Nationwide Class may sound as direct claims or indirect claims depending on the Court's eventual finding after discovery regarding the distributors' involvement in the Conspiracy. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) (discussing the co-conspirator exception to the indirect purchaser rule); *see also Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 342 (7th Cir. 2022) (recognizing "a conspiracy 'exception' to *Illinois Brick*, in which plaintiffs who purchase from one member of an antitrust conspiracy may bring suit against any member of the conspiracy").

647. For indirect claims, Plaintiffs and the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein, and equitable relief.

648. Alternatively, for direct claims, Plaintiffs the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein, equitable relief, and damages.

## XIII.  <u>VIOLATIONS OF STATE ANTITRUST LAWS FOR INDIRECT PURCHASES.</u>

649. Plaintiffs repeat and reallege, as if fully set forth herein, each allegation, and each of the state-specific causes of action described below incorporates the allegations as if fully set forth therein.

650.     During the Class Period, Defendants and their Co-Conspirators entered and engaged in a contract, combination, or conspiracy to fix, raise, maintain, and stabilize the price of PVC Pipe Systems in various states to unreasonably restrain trade and commerce and harm consumers in violation of the various state antitrust and consumer protection laws set forth below.

651.     In formulating and effectuating this Conspiracy, Defendants and their Co-Conspirators performed acts in furtherance of the combination and conspiracy, including: agreeing to fix, raise, maintain, and stabilize the price of PVC Pipe Systems which injured Plaintiffs and members of the Classes; exchange of competitively sensitive information between and among Defendants; and participating in meetings conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

652.     Defendants and their Co-Conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize PVC Pipe System prices at artificially high levels. As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Classes were deprived of free and open competition and paid more to purchase PVC Pipe Systems than they otherwise would have in the absence of Defendants' unlawful conduct. This injury is of the type that the antitrust and consumer protection laws of the below states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

653.     In addition, Defendants have profited significantly from the Conspiracy. Defendants' profits derived from their anticompetitive conduct and come at the expense of and to the detriment of Plaintiffs and members of the Classes.

654.     Accordingly, Plaintiffs and the members of the State Law Damages Class in each of the following jurisdictions seek damages (including statutory damages where applicable), to be

trebled or otherwise increased as permitted by each particular jurisdiction's law, injunction (where applicable), and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

655.    Defendants' anticompetitive acts described above were knowing and willful and constitute violations of the following state antitrust and consumer protection statutes. Plaintiffs have also sent the applicable notices required under these state antitrust and consumer protection statutes.

656.    In the Claims for Relief that follow, a reference to the "Class" is a reference to the State Law Class unless otherwise specified.

**COUNT 3: ALABAMA**
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Alabama)**

657.    Defendants' agreement was an unlawful agreement to restrain trade in the State of Alabama in violation of ALA. CODE §6-5-60 *et seq.* Defendants' unlawful conduct caused (1) competition for PVC Pipe Systems was restrained, suppressed, and eliminated within Alabama; (2) PVC Pipe System prices in the State of Alabama were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals in Alabama have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected Arizona commerce and caused Class members in Arizona to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and the Class members in Alabama seek all forms of relief available under ALA. CODE §6-5-60 *et seq.*

**COUNT 4: ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION**
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Alaska)**

658.    Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Alaska Unfair Trade Practices and Consumer Protection Act, ALASKA STATUTE § 45.50.471, et seq. Defendants agreed to, and did in fact, act in restraint of trade or

commerce in Alaska, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Alaska. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Alaska; (2) PVC Pipe System prices in the State of Alaska were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Alaska commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STATUTE § 45.50.471 et seq., and, accordingly, Plaintiffs and Class members in Alaska seek all relief available under that statute.

## COUNT 5: ARKANSAS DECEPTIVE TRADE PRACTICES ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Arkansas)

659. Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Arkansas Deceptive Trade Practices Act, ARKANSAS CODE ANN., §4-88-101, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Arkansas, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Arkansas. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Arkansas; (2) PVC Pipe System prices in the State of Arkansas were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Arkansas commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair

competition or unfair or deceptive acts or practices in violation of ARKANSAS CODE ANN., §4-88-101, et seq., and, accordingly, Plaintiffs and Class members in Arkansas seek all relief available under that statute.

## COUNT 6: ARIZONA ANTITRUST ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Arizona)

660.     Defendants' agreement was an unlawful agreement to restrain trade in the State of Arizona in violation of ARIZ. REV. STAT. §44-1401 et seq. Defendants' unlawful conduct caused: (1) competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout Arizona; (2) PVC Pipe System prices in the State of Arizona were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals in Arizona have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected Arizona commerce and caused Class members in Arizona to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Arizona seek all forms of relief available under ARIZ. REV. STAT. §44-1401 et seq.

## COUNT 7: ARIZONA CONSUMER FRAUD ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Arizona)

661.     Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Arizona Consumer Fraud Act, ARIZ. REV. STAT. §44-1521 et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Arizona, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Arizona. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC

Pipe Systems was restrained, suppressed, and eliminated throughout the State of Arizona; (2) PVC Pipe System prices in the State of Arizona were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Arizona commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. §44-1521 et seq., and, accordingly, Plaintiffs and Class members in Arizona seek all relief available under that statute.

## COUNT 8: CALIFORNIA CARTWRIGHT ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in California)

662. Defendants have entered into an unlawful agreement in restraint of trade in violation of CAL. BUS. & PROF. CODE §16700 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout California; (2) PVC Pipe System prices in the State of California were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected California commerce and caused Class members in California to pay

supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in California seek all forms of relief available under CAL. BUS. & PROF. CODE §16700 et seq.

## COUNT 9: CALIFORNIA UNFAIR COMPETITION LAW
### (On Behalf of Class Members that Purchased PVC Pipe Systems in California)

663.    Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the California Unfair Competition Law, CAL. BUS. & PROF. CODE §17200 et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in California, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in California. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of California; (2) PVC Pipe System prices in the State of California were raised, fixed, maintained, and stabilized at artificially high levels in violation of both the Sherman and Clayton Acts and California's Cartwright Act; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected California commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC

Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE §17200 et seq., and, accordingly, Plaintiffs and Class members in California seek all relief available under that statute.

**COUNT 10: COLORADO ANTITRUST ACT**
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Colorado)**

664.    Defendants have entered into an unlawful agreement in restraint of trade in violation of COLO. REV. STAT. §6-4-101 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout Colorado; (2) PVC Pipe System prices in the State of Colorado were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected Colorado commerce and caused Class members in Colorado to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Colorado seek all forms of relief available under COLO. REV. STAT. §6-4- 101, et seq.

**COUNT 11: COLORADO CONSUMER PROTECTION ACT**
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Colorado)**

665.    Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Colorado Consumer Protection Act, COLO. REV. STAT. §6-1-101 et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Colorado, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Colorado. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning

Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Colorado; (2) PVC Pipe System prices in the State of Colorado were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Colorado commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of COLO. REV. STAT. §6-1-101 et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

### COUNT 12: CONNECTICUT ANTITRUST ACT
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Connecticut)**

666.    Defendants have entered into an unlawful agreement in restraint of trade in violation of CONN. GEN. STAT. §35-24 *et seq.* Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout Connecticut, and (2) PVC Pipe System prices in the State of Connecticut were fixed,

controlled, and maintained at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected Connecticut commerce and caused Class members in Connecticut to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Connecticut seek all forms of relief available under Conn. Gen. Stat. §35-24 *et seq.*

## COUNT 13: DISTRICT OF COLUMBIA ANTITRUST ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in the District of Columbia)

667.    Defendants have entered into an unlawful agreement in restraint of trade in violation of D.C. CODE §28-4501, et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the District of Columbia; (2) PVC Pipe System prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; and (3) Plaintiffs and members of the Class, including those who resided in the District of Columbia and Purchased PVC Pipe Systems in the District of Columbia, paid supra-competitive, artificially inflated prices for PVC Pipe Systems. During the Class Period, Defendants' unlawful conduct substantially affected the District of Columbia's commerce and caused Class members in the District of Columbia to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in the District of Columbia seek all forms of relief available under D.C. CODE §28-4501, et seq.

## COUNT 14: DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in the District of Columbia)

668.    Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the District of Columbia Consumer Protection Procedures Act, D.C. CODE, §28-3901 et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in the

District of Columbia, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in the District of Columbia. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the District of Columbia; (2) PVC Pipe System prices in the District of Columbia were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected the District of Columbia's commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. CODE §28-3901, et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

## COUNT 15: FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Florida)**

669.     Defendants' unfair competition or unfair, and unconscionable acts or practices violated the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. §501.201 et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Florida, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Florida. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Florida; (2) PVC Pipe System prices in the State of Florida were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Florida commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. §501.201 et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

## COUNT 16: HAWAII
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Hawaii)**

670.     Defendants have entered into an unlawful agreement in restraint of trade in violation of HAW. REV. STAT. ANN. §480-1 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout Hawaii; (2) PVC Pipe System prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; and (3) Plaintiffs and members of the Class, including those who resided in the Hawaii and Purchased PVC Pipe Systems in Hawaii, paid supra-

competitive, artificially inflated prices for PVC Pipe Systems. During the Class Period, Defendants' unlawful conduct substantially affected Hawaii commerce and caused Class members in Hawaii to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Hawaii seek all forms of relief available under HAW. REV. STAT. ANN. §480-1 et seq.

## COUNT 17: ILLINOIS ANTITRUST ACT & 16: ILLINOIS
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Illinois)

671. Defendants have entered into an unlawful agreement in restraint of trade in violation of 740 Ill. Comp. Stat. 10/1, et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the Illinois; (2) PVC Pipe System prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; and (3) Plaintiffs and members of the Class, including those who resided in the Illinois and Purchased PVC Pipe Systems in Illinois, paid supra-competitive, artificially inflated prices for PVC Pipe Systems. During the Class Period, Defendants' unlawful conduct substantially affected Illinois commerce and caused Class members in Illinois to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Illinois seek all forms of relief available under 740 Ill. Comp. Stat. 10/1 *et seq.*

## COUNT 18: ILLINOIS CONSUMER FRAUD &
## DECEPTIVE BUSINESS PRACTICES ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Illinois)

672. Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Illinois, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in

Illinois. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Illinois; (2) PVC Pipe System prices in the State of Illinois were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Illinois commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. 505/1, et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

## <u>COUNT 19: IOWA</u>
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Iowa)

673. Defendants have entered into an unlawful agreement in restraint of trade in violation of IOWA CODE §553.1, *et seq.* Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout

the State of Iowa, and (2) PVC Pipe System prices were raised, fixed, maintained and stabilized at artificially high levels throughout the State of Iowa. During the Class Period, Defendants' unlawful conduct substantially affected Iowa commerce and caused Class members in Iowa to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Iowa seek all forms of relief available under IOWA CODE §553.1, *et seq.*

## COUNT 20: KANSAS RESTRAINT OF TRADE ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Kansas)

674.    Defendants have entered into an unlawful agreement in restraint of trade in violation of KAN. STAT. ANN. §50-101, *et seq.* Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Kansas; (2) PVC Pipe System prices in the State of Kansas were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected Kansas commerce and caused Class members in Kansas to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Kansas seek all forms of relief available under KAN. STAT. ANN. §50-101, *et seq.*

## COUNT 21: MAINE ANTITRUST LAW
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Maine)

675.    Defendants have entered into an unlawful agreement in restraint of trade in violation of ME. STAT. TIT. 10, §1101, et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Maine; and (2) PVC Pipe System prices in the State of Maine were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' unlawful conduct substantially affected Maine commerce and caused Class members in Maine to

pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Maine seek all forms of relief available under ME. STAT. TIT. 10, §1101, et seq.

## COUNT 22: MARYLAND ANTITRUST ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Maryland)

676.    Defendants have entered into an unlawful agreement in restraint of trade in violation of MD. CODE ANN., COM. LAW §11-201 *et seq.* Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Maryland; and (2) PVC Pipe System prices in the State of Maryland were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' unlawful conduct substantially affected Maryland commerce and caused Class members in Maryland to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Maryland seek all forms of relief available under MD. CODE ANN., COM. LAW §11-201 *et seq.*

## COUNT 23: MARYLAND CONSUMER PROTECTION ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Maryland)

677.    Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §13-101 *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Maryland, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Maryland. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State

of Maryland; (2) PVC Pipe System prices in the State of Maryland were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Maryland commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code Ann., Com. Law §13-101, et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

## COUNT 24: MASSACHUSETTS CONSUMER PROTECTION ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Massachusetts)

678.    Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A §1, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Massachusetts, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Massachusetts. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems.

240

Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the Commonwealth of Massachusetts; (2) PVC Pipe System prices in the Commonwealth of Massachusetts were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Massachusetts commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. Laws Ann. ch. 93A §1, et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

### COUNT 25: MICHIGAN ANTITRUST REFORM ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Michigan)

679.   Defendants have entered into an unlawful agreement in restraint of trade in violation of MICH.COMP. LAWS §445.771 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Michigan; and (2) PVC Pipe System prices in the State of

Michigan were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' unlawful conduct substantially affected Michigan commerce and caused Class members in Michigan to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Michigan seek all forms of relief available under MICH.COMP. LAWS §445.771 et seq.

### COUNT 26: MICHIGAN CONSUMER PROTECTION ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Michigan)

680.    Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Michigan Consumer Protection Act, MICH. COMP. LAWS §445.903, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Michigan, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Michigan. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Michigan; (2) PVC Pipe System prices in the State of Michigan were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Michigan commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including

their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS §445.903 et seq, and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

## COUNT 27: MINNESOTA ANTITRUST LAW
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Minnesota)

681.     Defendants have entered into an unlawful agreement in restraint of trade in violation of MINN. STAT. §325D.49 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Minnesota; and (2) PVC Pipe System prices in the State of Minnesota were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' unlawful conduct substantially affected Minnesota commerce and caused Class members in Minnesota to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Minnesota seek all forms of relief available under MINN. STAT. §325D.49 et seq.

682.     Defendants have violated the MINN. STAT. §325D.49 et seq., through their anticompetitive actions. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under MINN. STAT. §325D.49 et seq.

## COUNT 28: MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Minnesota)

683.     Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Minnesota Uniform Deceptive Trade Practices Act, MINN. STAT.

§325d.43-48, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Minnesota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Minnesota. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Minnesota; (2) PVC Pipe System prices in the State of Minnesota were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Minnesota commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. §325d.43-48 et seq, and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

## COUNT 28: MISSISSIPPI
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Mississippi)

684.     Defendants have entered into an unlawful agreement in restraint of trade in violation of MISS. CODE ANN. §75-21-1 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Mississippi; and (2) PVC Pipe System prices in the State of Mississippi were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' unlawful conduct substantially affected Mississippi commerce and caused Class members in Mississippi to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Mississippi seek all forms of relief available under MISS. CODE ANN. §75-21-1 et seq.

## COUNT 29: MISSOURI MERCHANDISING PRACTICES ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Missouri)

685.     Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Missouri Merchandising Practices Act, MO. REV. STAT. §407.020, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Missouri, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Missouri. Plaintiffs and members of the Damages Class purchased PVC Pipe Systems for personal or household purposes. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Missouri; (2) PVC Pipe System prices in the State of Missouri were raised, fixed,

maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Missouri commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' conduct, as described herein. Upon information and belief, Defendants also directed advertising and marketing efforts for PVC Pipe Systems in the State of Missouri. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. §407.020 et seq, and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

### COUNT 30: MONTANA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION ACT
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Montana)**

686. Defendants' unfair, unconscionable, or deceptive acts or practices violated the Montana Unfair Trade Practices and Consumer Protection Act, MONT. CODE, §§30-14-101 et seq., and §30-14-201, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Montana, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Montana. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Montana; (2)

PVC Pipe System prices in the State of Montana were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Montana commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE, §§30-14-101 et seq. §30-14-201, et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

## COUNT 31: NEBRASKA JUNKIN ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Nebraska)

687.    Defendants have entered into an unlawful agreement in restraint of trade in violation of NEB. REV. STAT. §59-801 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Nebraska; and (2) PVC Pipe System prices in the State of Nebraska were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' unlawful conduct substantially affected Nebraska commerce and caused Class members in Nebraska to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Nebraska seek all forms of relief available under NEB. REV. STAT. §59-801 et seq.

## COUNT 32: NEBRASKA CONSUMER PROTECTION ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Nebraska)

688.    Defendants' unfair competition or unfair, and unconscionable acts or practices violated the Nebraska Consumer Protection Act, NEB. REV. STAT. §59-1601 et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Nebraska, by affecting, fixing,

controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Nebraska. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Nebraska; (2) PVC Pipe System prices in the State of Nebraska were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Nebraska commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. §59-1601 et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

## COUNT 33: NEVADA ANTITRUST ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Nevada)

689.    Defendants have entered into an unlawful agreement in restraint of trade in violation of NEV. REV. STAT. ANN. §598A.210 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Nevada; and (2) PVC Pipe System prices in the State of Nevada were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' unlawful conduct substantially affected Nevada commerce and caused Class members in Nevada to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Nevada seek all forms of relief available under NEV. REV. STAT. ANN. §598A.210 et seq.

## COUNT 34: NEVADA DECEPTIVE TRADE PRACTICES ACT
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Nevada)**

690.     Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Nevada Deceptive Trade Practices Act, NEV. REV. STAT. § 598.0903, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Nevada, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Nevada. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Nevada; (2) PVC Pipe System prices in the State of Nevada were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Nevada commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or

unfair or deceptive acts or practices in violation of NEV. REV. STAT. § 598.0903, et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

## COUNT 35: NEW HAMPSHIRE ANTITRUST LAW
### (On Behalf of Class Members that Purchased PVC Pipe Systems in New Hampshire)

691.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.H. REV. STAT. ANN. §356:1 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of New Hampshire; and (2) PVC Pipe System prices in the State of New Hampshire were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' unlawful conduct substantially affected New Hampshire commerce and caused Class members in New Hampshire to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in New Hampshire seek all forms of relief available under N.H. REV. STAT. ANN. §356:1 et seq.

## COUNT 36: NEW HAMPSHIRE CONSUMER PROTECTION ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in New Hampshire)

692.    Defendants' unfair competition or unfair, and unconscionable acts or practices violated the New Hampshire Consumer Protection Act, N.H. REV. STAT. ANN. §358-A:1 et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Nebraska, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in New Hampshire. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of New Hampshire; (2) PVC Pipe System prices in the State of New Hampshire were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected New Hampshire commerce and

consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. §358-A:1 et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

**COUNT 37: NEW JERSEY ANTITRUST ACT**
**(On Behalf of Class Members that Purchased PVC Pipe Systems in New Jersey)**

693.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.J. STAT. ANN. §56:9-1 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of New Jersey; (2) PVC Pipe System prices in the State of New Jersey were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected New Jersey commerce and caused Class members in New Jersey to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in New Jersey seek all forms of relief available under N.J. STAT. ANN. §56:9-1 et seq.

**COUNT 38: NEW MEXICO ANTITRUST ACT**
**(On Behalf of Class Members that Purchased PVC Pipe Systems in New Mexico)**

694.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.M. STAT.ANN. §57-1-1 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of New Mexico; (2) PVC Pipe System prices in the State of New Mexico were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful

conduct substantially affected New Mexico commerce and caused Class members in New Mexico to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in New Mexico seek all forms of relief available under N.M. STAT.ANN. §57-1-1 et seq.

### COUNT 39: NEW MEXICO UNFAIR PRACTICES ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in New Mexico)

695.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the N.M. STAT. §57-12-1, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which PVC Pipe Systems were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and New Mexico Class members. The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M. STAT. §57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and members of the Damages Class and the prices paid by them for generic PVC Pipe Systems as set forth in N.M. STAT. §57-12-2E. Plaintiffs and members of the Damages Class were not aware of Defendants' price-fixing Conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. Defendants had the sole power to set that price, and Plaintiffs and New Mexico Class members had no power to negotiate a lower price. Moreover, Plaintiffs and New Mexico Class members lacked any meaningful choice in purchasing PVC Pipe Systems because they were unaware of the unlawful overcharge, and there was no alternative source of supply through which Plaintiffs and New Mexico Class members could avoid the overcharges. Defendants' conduct with regard to sales of PVC Pipe Systems, including their illegal conspiracy to secretly fix the price of PVC Pipe Systems at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited

252

Defendants at the expense of Plaintiffs and New Mexico Class members. Defendants took grossly unfair advantage of Plaintiffs and New Mexico Class members. The suppression of competition that has resulted from Defendants' Conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for PVC Pipe Systems. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of New Mexico; (2) PVC Pipe System prices in the State of New Mexico were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers. As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and New Mexico Class members have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. § 57-12-1, et seq., and, accordingly, Plaintiffs and New Mexico Class members seek all relief available under that statute.

## COUNT 40: NEW YORK DONNELLY ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in New York)

696.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.Y. GEN. BUS. LAW §340 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of New York; (2) PVC Pipe System prices in the State of New York were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected New York commerce and caused Class members in New York to pay

supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in New York seek all forms of relief available under N.Y. GEN. BUS. LAW §340 et seq.

## COUNT 41: NORTH CAROLINA ANTITRUST LAW
### (On Behalf of Class Members that Purchased PVC Pipe Systems in North Carolina)

697.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.C. GEN. STAT. §75-1 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of North Carolina; (2) PVC Pipe System prices in the State of North Carolina were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected North Carolina commerce and caused Class members in North Carolina to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in North Carolina seek all forms of relief available under N.C. GEN. STAT. §75-1 et seq.

## COUNT 42: NORTH DAKOTA UNIFORM STATE ANTITRUST ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in North Dakota)

698.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.D. CENT. CODE §51-08.1-01 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of North Dakota; (2) PVC Pipe System prices in the State of North Dakota were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected North Dakota commerce and caused Class members in North Dakota to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class

members in North Dakota seek all forms of relief available under N.D. CENT. CODE §51-08.1-01 et seq.

## COUNT 43: OREGON ANTITRUST LAW
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Oregon)**

699. Defendants have entered into an unlawful agreement in restraint of trade in violation of OR. REV. STAT. §646.725 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Oregon; (2) PVC Pipe System prices in the State of Oregon were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected Oregon commerce and caused Class members in Oregon to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Oregon seek all forms of relief available under OR. REV. STAT. §646.725 et seq.

## COUNT 44: OREGON UNFAIR TRADE PRACTICES ACT
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Oregon)**

700. Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Oregon Unfair Trade Practices Act, OR. REV. STAT. §646.605, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Oregon, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Oregon. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Oregon; (2) PVC Pipe

255

System prices in the State of Oregon were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Oregon commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. §646.605, et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

### COUNT 45: PENNSYLVANIA UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Pennsylvania)**

701.    Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 P.S. §201-1, et seq. The PUTPCPL prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. Ann. § 201-3. Among other things, the PUTPCPL prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 Pa. Stat. Ann. § 201-2(4)(xxi). Plaintiffs and Pennsylvania Class members purchased PVC Pipe Systems

primarily for personal or household use. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Pennsylvania, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Pennsylvania. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the Commonwealth of Pennsylvania; (2) PVC Pipe System prices in the Commonwealth of Pennsylvania were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Pennsylvania commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 P.S. §201-1, *et seq.,* and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

## COUNT 46: RHODE ISLAND ANTITRUST ACT
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Rhode Island)**

702.    Defendants have entered into an unlawful agreement in restraint of trade in violation of R.I. GEN. LAWS §6-36-7 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Rhode Island; (2) PVC Pipe System prices in the State of Rhode Island were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected Rhode Island commerce and caused Class members in Rhode Island to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Rhode Island seek all forms of relief available under R.I. GEN. LAWS §6-36-7 et seq.

## COUNT 47: RHODE ISLAND UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION ACT
**(On Behalf of Class Members that Purchased PVC Pipe Systems in Rhode Island)**

703.    Defendants' unfair competition or unfair, unconscionable, or deceptive acts or practices violated the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. GEN. LAWS §6-13.1-1, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed, or obtained in Rhode Island. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Rhode Island; (2) PVC Pipe System prices in the State of Rhode

Island were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected Rhode Island commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS §6-13.1-1, et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

### COUNT 48: SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in South Carolina)

704. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. CODE ANN. §39-5-10, et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of South Carolina; (2) PVC Pipe System prices in the State of South Carolina were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce and consumers. As a direct and proximate result of Defendants'

unlawful conduct, Plaintiffs and South Carolina Class members have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE ANN. §39-5-10, et seq., and, accordingly, Plaintiffs and the South Carolina Class members seek all relief available under that statute.

## COUNT 49: SOUTH DAKOTA ANTITRUST LAW
### (On Behalf of Class Members that Purchased PVC Pipe Systems in South Dakota)

705. Defendants have entered into an unlawful agreement in restraint of trade in violation of S.D. CODIFIED LAWS §37-1-3.1 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of South Dakota; (2) PVC Pipe System prices in the State of South Dakota d were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected South Dakota commerce and caused Class members in South Dakota to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in South Dakota seek all forms of relief available under S.D. CODIFIED LAWS §37-1-3.1 et seq.

## COUNT 50: SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION STATUTE
### (On Behalf of Class Members that Purchased PVC Pipe Systems in South Dakota)

706. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. CODIFIED LAWS §37-24-1 et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in South Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PVC Pipe Systems were sold, distributed,

or obtained in South Dakota. Defendants deliberately failed to disclose material facts to Plaintiffs and Class members concerning Defendants' unlawful activities and artificially inflated prices for PVC Pipe Systems. Defendants misrepresented to all purchasers during the Class Period that Defendants' PVC Pipe Systems prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of South Dakota; (2) PVC Pipe System prices in the State of South Dakota were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' illegal conduct substantially affected South Dakota commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and Class members suffered an ascertainable loss of money or property because of Defendants' use of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PVC Pipe Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PVC Pipe Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information material to Plaintiffs and Class members as they related to the cost of PVC Pipe Systems they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS §37-24-1, et seq., and, accordingly, Plaintiffs and Class members seek all relief available under that statute.

### COUNT 51: TENNESSEE FAIR TRADE PRACTICE ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Tennessee)

707. Defendants have entered into an unlawful agreement in restraint of trade in violation of TENN. CODE ANN. §47-25-101 et seq. Defendants' unlawful conduct had the

following effects: (1) price competition for the sale of PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Tennessee; (2) prices for PVC Pipe Systems, tangible goods, in the State of Tennessee were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected Tennessee commerce and caused Class members in Tennessee to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Tennessee seek all forms of relief available under TENN. CODE ANN. §47-25-101 et seq.

## COUNT 52: UTAH ANTITRUST ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Utah)

708.    Defendants have entered into an unlawful agreement in restraint of trade in violation of UTAH CODE ANN. §76-10-3101 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for the sale of PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Utah; (2) prices for PVC Pipe Systems, tangible goods, in the State of Utah were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' unlawful conduct substantially affected Utah commerce and caused Class members in Utah to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Utah seek all forms of relief available under UTAH CODE ANN. §76-10-3101 et seq.

## COUNT 53: VERMONT ANTITRUST LAW
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Vermont)

709.    Defendants have entered into an unlawful agreement in restraint of trade in violation of VT. STAT. ANN. TIT. 9, §2453 et seq. Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Vermont; (2) PVC Pipe System prices in the State of Vermont

were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' Defendants' unlawful conduct substantially affected Vermont commerce and caused Class members in Vermont to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Class members in Vermont seek all forms of relief available under VT. STAT. ANN. TIT. 9, §2465 et seq.

## COUNT 54: WEST VIRGINA ANTITRUST ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in West Virginia)

710.    Defendants have entered into an unlawful agreement in restraint of trade in violation of W. VA. CODE §47-18-1 et seq. Defendants' Conspiracy had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of West Virginia; (2) PVC Pipe System prices in the State of West Virginia were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of West Virginia and caused Class members in West Virginia to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and West Virginia members of the Class seek all forms of relief available under W. VA. CODE §47-18-1 et seq.

## COUNT 55: WISCONSIN ANTITRUST ACT
### (On Behalf of Class Members that Purchased PVC Pipe Systems in Wisconsin)

711.    Defendants have entered into an unlawful contract and conspiracy in restraint of trade in violation of WIS. STAT. §133.03(1). Defendants' unlawful conduct had the following effects: (1) price competition for PVC Pipe Systems was restrained, suppressed, and eliminated throughout the State of Wisconsin; (2) PVC Pipe System prices in the State of Wisconsin were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct

substantially affected commerce in the State of Wisconsin and caused Class members in Wisconsin to pay supracompetitive prices for PVC Pipe Systems. Accordingly, Plaintiffs and Wisconsin members of the Class seek all forms of relief available under WIS. STAT. §133.03.

## XIV. PRAYER FOR RELIEF.

712. WHEREFORE, Plaintiffs, on behalf of themselves and the Classes of all others so similarly situated, respectfully request that:

a. The Court determine that this action may be maintained as a class action under Fed. R. Civ. P. 23(a) and (b)(3), appoint Plaintiffs as Class Representatives and the firms of Lockridge Grindal Nauen PLLP and Scott + Scott Attorneys at Law as Class Counsel, and direct that notice of this action, as provided by Fed. R. Civ. P. 23(c)(2) be given to the Classes, once certified;

b. The Court adjudge and decree that the acts of Defendants are illegal and unlawful, including the agreement, contract, combination, or conspiracy, and acts done in furtherance thereof by Defendants and their Co-Conspirators be adjudged to have been a *per se* violation (or alternatively illegal as a quick look or full-fledged rule of reason violation) of various state antitrust and competition laws as alleged above;

c. The Court permanently enjoin and restrain Defendants, their affiliates, successors, transferees, assignees, and other officers, directors, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect,

and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

d. The Court enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs and members of the Classes for treble the amount of damages sustained by Plaintiffs and the Classes as allowed by law, together with costs of the action, including reasonable attorneys' fees, pre- and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law; and

e. The Court award Plaintiffs and members of the Classes such other and further relief as the case may require and the Court may deem just and proper under the circumstances.

## XV.   JURY TRIAL DEMANDED.

713.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all the claims asserted in this Complaint so triable.

Dated: August 18, 2025

Respectfully submitted,

**LOCKRIDGE GRINDAL NAUEN PLLP**

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

/s/ *Brian D. Clark*
Brian D. Clark (IL Bar No. 6350416)
Simeon A. Morbey (MN #0391338)
Laura Matson (MN #396598)
Consuela Abotsi-Kowu (MN #0505682)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
bdclark@locklaw.com
samorbey@locklaw.com
lmmatson@locklaw.com
cmabotsi-kowu@locklaw.com

Kyle J. Pozan (IL Bar No. 6306761)
1165 N. Clark Street, Suite 700
Chicago, IL 60610
(312)205-8968
kjpozan@locklaw.com

Stephen J. Teti
265 Franklin Street, Suite 1702
Boston, MA 02110
(617)-456-7701
sjteti@locklaw.com

/s/ *Karin E. Garvey*
Karin E. Garvey (N.D. Ill. Bar No. 2997831)
Brian M. Hogan (N.D. Ill. Bar No. 6286419)
The Helmsley Building, 230 Park Ave.
24th Floor
New York, NY 10169
(212) 223-6444
kgarvey@scott-scott.com
brian.hogan@scott-scott.com

Patrick J. Coughlin (N.D. Ill. Bar No. 90785466)
Daniel J. Brockwell (admitted *pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
(619) 233-4565
pcoughlin@scott-scott.com
dbrockwell@scott-scott.com

Patrick McGahan (admitted *pro hac vice*)
Michael Srodoski (admitted *pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
(860) 537-5537
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

*Interim Co-Lead Class Counsel for the Non-Converter Seller Purchaser Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Carol V. Gilden*
Carol V. Gilden (ARDC No. 6185530)
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
cgilden@cohenmilstein.com

Sharon K. Robertson
Jared A. Dummitt
Silvie Saltzman (admitted *pro hac vice*)
88 Pine Street, 14th Floor
New York, NY 10005
srobertson@cohenmilstein.com
jdummitt@cohenmilstein.com
ssaltzman@cohenmilstein.com

Brent W. Johnson
1100 New York Avenue NW
Fifth Floor
Washington, D.C. 20005
bjohnson@cohenmilstein.com

*Liaison Counsel Non-Converter Seller Purchaser Class*

**SPECTOR ROSEMAN & KODROFF, P.C.**
Jeffrey J. Corrigan *(pro hac vice forthcoming)*
2001 Market Street, Suite 3420
Philadelphia, PA 19103
215-496-0300
jcorrigan@srkattorneys.com

**TOSTRUD LAW GROUP, P.C.**
Jon Tostrud
Anthony Carter
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (admitted *pro hac vice*)
Daniel C. Hedlund (admitted *pro hac vice*)
Michelle J. Looby (admitted *pro hac vice*)
Joshua J. Rissman (admitted *pro hac vice*)
Anthony J. Stauber (admitted *pro hac vice*)
Canadian Pacific Plaza
120 Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
tstauber@gustafsongluek.com

**GLANCY PRONGAY & MURRAY LLP**
Lee Albert (PA# 046852)
Brian D. Brooks
Brian Murray *(pro hac vice forthcoming)*
230 Park Ave., Suite 358
New York, NY 10160
212-682-5340
lalbert@glancylaw.com
bbrooks@glancylaw.com
bmurray@glancylaw.com

**WAYMAKER LLP**
Donald R. Pepperman *(pro hac vice forthcoming)*
515 S. Flower St., Suite 3500
Los Angeles, CA 90071
Tel: (424) 652-7800
dpepperman@waymakerlaw.com

**FINLEY PLLC**
Blaine Finley *(pro hac vice forthcoming)*
1455 Pennsylvania Avenue NW, Suite 400,
Washington, D.C. 20004
Tel: 281-723-7904
bfinley@finley-pllc.com

*Counsel for the Non-Converter Seller Purchaser Class*