**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *In re PVC Pipe Antitrust Litigation* | Case No. 1:24-cv-07639 |
| THIS DOCUMENT RELATES TO: | Hon. LaShonda A. Hunt |
| All Actions | |

**CRESLINE DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**RULE 12(b)(6) MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 5

III.  LEGAL STANDARD ......................................................................................... 9

IV.  ARGUMENT ..................................................................................................... 9

A.  PLAINTIFFS DO NOT ALLEGE CRESLINE'S INVOLVEMENT IN
    ANY CONSPIRACY .................................................................................. 10

    1.  Plaintiffs Do Not Allege That Cresline Ever Shared Confidential
        Pricing Information With Donna Todd, OPIS (Or Any Defendant) ......... 10

    2.  Group-pleaded Allegations Cannot Support Plaintiffs' Claims
        Against Cresline ................................................................................. 14

    3.  Plaintiffs' Cresline-specific Allegations Plead The Opposite Of An
        Agreement To Fix Prices. ................................................................... 14

    4.  Plaintiffs Allege That Cresline Sold PVC Plumbing Pipe, A
        Segment Where Plaintiffs' Factual Allegations Contradict The
        Existence of a Conspiracy ................................................................. 18

    5.  All Federal And State Law Claims Should Be Dismissed ...................... 21

B.  THE END USER PLAINTIFFS FAIL TO ALLEGE ANY CLAIMS
    AGAINST CRESLINE-WEST AND CRESLINE-NORTHWEST .................... 21

C.  THE COURT SHOULD DISMISS ALL CLAIMS AGAINST CRESLINE
    WITH PREJUDICE. .................................................................................. 22

V.  CONCLUSION ................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .........................................................12

*Bank of Am., N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ............................................................................................9, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).......................................2, 10, 17, 22

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) ....................................................................................10

*In re Broiler Chicken Antitrust Litig.*,
  702 F. Supp. 3d at 674 ........................................................................................................15

*Collins v. Kibort*,
  143 F.3d 331 (7th Cir. 1998) ................................................................................................22

*Foman v. Davis*,
  371 U.S. 178 (1962)..............................................................................................................23

*Gibson v. Cendyn Grp.*,
  LLC, 148 F.4th 1069 (9th Cir. 2025)......................................................................................13

*In re Granulated Sugar Antitrust Litig.*,
  No. 24-3110-JWB/DTS, 2025 WL 3012238 (D. Minn. Oct. 15, 2025) ............................13, 16

*Greco v. Mallouk*,
  No. 22-c-2661, 2024 WL 4119169 (N.D. Ill. Sept. 9, 2024)....................................................14

*Hansen v. Nw. Univ.*,
  No. 24-c-9667, 2025 WL 2731378 (N.D. Ill. Sept. 24, 2025)..................................................14

*In re Humira (Adalimumab) Antitrust Litig.*,
  465 F. Supp. 3d 811 (N.D. Ill. 2020) ....................................................................................22

*Kleen Prods., LLC v. Int'l Paper*,
  276 F. Supp. 3d 811 (N.D. Ill. 2017) ....................................................................................17

*Lee v. Ne. Ill. Reg. Commuter Rail Corp.*,
  912 F.3d 1049 (7th Cir. 2019) ........................................................................................22, 23

*Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*,
  29 F.4th 337 (7th Cir. 2022) ...................................................10

*McCauley v. City of Chicago*,
  671 F.3d 611 (7th Cir. 2011) ..................................................13

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
  629 F.3d 697 (7th Cir. 2011) ..................................................10

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  764 F. Supp. 2d 991 (N.D. Ill. 2011) .....................................18

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*,
  786 F.3d 510 (7th Cir. 2015) ..................................................23

*Warciak v. Subway Restaurants, Inc.*,
  949 F.3d 354 (7th Cir. 2020) ..................................................12

*Wash. Cnty. Health Care Authority, Inc. v. Baxter Int'l, Inc.*,
  No. 16-cv-10324, 2020 WL 1666454 (N.D. Ill. Apr. 3, 2020)................18

*Wash. Cty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
  328 F. Supp. 3d 824 (N.D. Ill. 2018) .....................................17

*Weit v. Cont'l Ill. Nat. Bank & Tr. Co.*,
  641 F.2d 457 (7th Cir. 1981) ...........................................15, 17

*Williams v. Ford Motor Co.*,
  990 F. Supp. 551 (N.D. Ill. 1997) ..........................................13

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...........................................1

Pursuant to the briefing schedule entered on September 23, 2025 (Dkt. No. 484), Defendants Cresline Plastic Pipe Co., Inc., Cresline-West, Inc., and Cresline-Northwest, LLC (for ease of reference, unless otherwise noted, collectively referred to herein as "Cresline") move, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing all of Plaintiffs' claims (as set forth in Dkt. Nos. 390 (the "DPP Compl."), 467 (the "NCSP Compl.") and 398 (the "EUP Compl.") (collectively, the "Complaints")) against the Cresline Defendants.

Cresline joins in full and incorporates by reference the arguments and precedent submitted in support of Certain Defendants' Motion to Dismiss as if fully set forth herein. *See* Dkt. No. 536 ("Pre-Existing Defendants' Motion") (including accompanying Appendices).

## I.     INTRODUCTION

Based in Evansville, Indiana, Cresline is a family-owned business.  It is the oldest continuously operating PVC pipe manufacturing company in the United States.

This litigation was commenced over a year ago.  And for that year—despite allegations of a far-reaching conspiracy to fix prices in a sprawling PVC pipe and/or fittings market— Cresline was never made a party to this case.  For good reason: any allegation of its participation in any sort of conspiracy is baseless.

Now, Plaintiffs attempt to lump Cresline into the alleged conspiracy—with more than a dozen other companies selling different types of PVC pipe across the United States.  The Complaints, however, fail to plead any facts to support a plausible—let alone well-pleaded— antitrust claim against Cresline.  Putting aside the utter implausibility of the alleged sprawling conspiracy—that the Complaints effectively concede includes different participants selling different kinds of PVC pipe with different price points—Plaintiffs' five-hundred pages of allegations do not identify facts supporting Cresline's involvement in any conspiracy; indeed, the three Complaints barely mention Cresline at all.  Cresline should not be forced to incur the

1

exorbitant costs to litigate a massive antitrust case in response to such threadbare pleadings. *Twombly* was written to address afterthought, "kitchen sink" claims like these.

As a prime example, Plaintiffs define their alleged conspiracy as an agreement to "share" or "exchange" forward-looking, sensitive pricing information to fix prices broadly across all different types of PVC pipe. Plaintiffs allege that Defendants did so by coordinating and communicating through a central hub—Oil Price Information Service LLC ("OPIS"), its *PVC & Pipe Weekly Report* (the "PPWR"), and communications with the PPWR's author, Donna Todd. Yet **none of the Plaintiffs allege that Cresline ever shared its pricing information with OPIS**— or any competitor. Plaintiffs plead the opposite, proffering specific allegations that ███████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████.

Plaintiffs' inability to allege that Cresline ever provided, or agreed to provide, its pricing to the alleged central "hub" of the conspiracy is particularly damning because, prior to filing their complaints, Plaintiffs were armed with the files and records from OPIS and Ms. Todd. Plaintiffs tout the fact that they had access to *all* of the documents and communications that would reflect Cresline's alleged sharing of its sensitive pricing information. Even after obtaining all of that information (surely a unique circumstance), Plaintiffs do not (and cannot) allege that Cresline ever shared its price sheets with Ms. Todd, OPIS (or any competitor).

This is a wholly independent ground for dismissal. It applies irrespective of any acceptance of Plaintiffs' allegations of the alleged conspiracy because Plaintiffs simply have not alleged facts sufficient to infer that Cresline participated in it. There are, however, several additional grounds to support dismissal of Plaintiffs' claims against Cresline.

*First,* it is well-settled that an antitrust plaintiff cannot rely on "group-pleading" to state a

cognizable Section 1 (or state law) antitrust claim.  Lumping Cresline with a large group of other "Converter Defendants," and then making broad, conclusory allegations about the group's supposed agreement and actions does not work.  Stripped of group-pleaded allegations, the Complaints—construed in their most favorable light—barely reference Cresline and make only the weakest of allegations about its conduct.  In the limited instances where Plaintiffs do so, they simply allege that: ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ Plaintiffs' allegations are inconsistent with any notion that Cresline participated in a price-fixing conspiracy that was coordinated through OPIS or otherwise.  In short, Plaintiffs allege the *opposite* of any agreement by Cresline to fix prices.

*Second,* the Complaints allege an ill-defined market that is contradicted by their own allegations.  This is of particular significance for Cresline because Plaintiffs only allege that Cresline is a seller of PVC plumbing pipe, but not municipal or conduit PVC pipe.  While the Complaints allege a broad PVC pipe product market, Plaintiffs' factual allegations show that PVC plumbing pipe has different applications, specifications, sizes, sellers and different pricing behavior than PVC municipal or conduit pipe.  This undermines Plaintiffs' entire conspiracy theory.  Any theory that Cresline sought to fix prices for PVC pipe that it was not selling is implausible on its face.  The failure to plead a market that makes any sense, or a plausible

conspiracy to fix prices in that alleged market, separately warrants dismissal of the Complaints in their entirety.

*Third*, the allegations concerning Cresline's role and the alleged conspiracy concerning PVC plumbing pipe are non-sensical, and Plaintiffs' concessions concerning historic pricing behavior negate any plausible inference of a conspiracy. Plaintiffs allege that ████████████

███████████████████████████████████████████████████████████

██████████████ But Plaintiffs do not allege that Charlotte shared its plumbing prices with OPIS or that Charlotte was on any of Ms. Todd's email lists. In other words, ████████████ did not participate in the alleged information sharing at the heart of the alleged conspiracy.

Plaintiffs' allegations concerning historical pricing behavior for PVC plumbing pipe further confirm the implausibility of the alleged conspiracy. ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████. There are no factual allegations of "plus factors" to suggest anything different.

*Finally*, one of the three Complaints baselessly asserts claims against Cresline affiliates Cresline-West and Cresline-Northwest. The pleading contains ***zero*** allegations specific to those entities, and instead lumps the two entities together with Cresline Plastic Pipe Co., Inc. Separate legal entities require separate allegations, and Plaintiffs must do more to allege claims against Cresline-West and Cresline-Northwest than lump them into a definition with Cresline Plastic Pipe Co., Inc. Plaintiffs' claims against these entities should be dismissed for the same reasoning and

authorities set forth in Defendant Atkore International, Inc. et al.'s Motion to Dismiss. Dkt. No. 551 at 2-6.

In sum, across three complaints, five-hundred pages, and more than 1,500 allegations (all of which were drafted after obtaining extensive discovery from the supposed hub of the conspiracy), and drawing all inferences in Plaintiffs' favor, the Complaints do not come close to alleging any cognizable claims against Cresline. Cresline was out of this case for a year; it should remain there.

## II.    BACKGROUND

A general summary of Plaintiffs' allegations and relevant background can be found in the Pre-Existing Defendants' Motion and Cresline incorporates them by reference. *See generally* Dkt. No. 536 at 3-18. For the Court's convenience and ease of reference, Cresline summarizes below the allegations specifically pertinent to its Motion. Plaintiffs allegations are assumed to be true for the purposes of this motion only.

Plaintiffs allege that Cresline and a host of other alleged PVC pipe[1] manufacturers engaged in a conspiracy to share pricing information and fix or maintain prices for PVC pipe above a competitive level. Plaintiffs allege that the members of this conspiracy exchanged sensitive and forward-looking pricing information through an industry newsletter, the PPWR, published by OPIS and was authored by Ms. Todd. *See* NCSP Compl. Glossary at v, ¶¶ 7, 9; DPP Compl. ¶ 70; EUP Compl. ¶¶ 4-8, 472.

According to Plaintiffs, there are three different types of PVC pipe that have different uses:

---

[1] Certain of the Complaints (DPP and NCSP) reference a distinction between PVC pipe and PVC pipe fittings, recognizing them as distinct products. All of the references and arguments in this brief concerning PVC plumbing pipe apply with equal force to PVC pipe fittings, a segment that Cresline does not participate in, but certain Plaintiffs nevertheless allege it does. Even assuming this incorrect allegation to be true for the purposes of this Motion, any PVC fittings claim fails for the same reasons as any PVC pipe claim.

(i) municipal; (ii) conduit; and (iii) plumbing. *E.g.,* DPP Compl. ¶ 2; NCSP Compl. Figure 9; EUP Compl. ¶ 473. In addition, certain Plaintiffs reference PVC pipe fittings as a distinct segment. *E.g.*, NCSP Compl. ¶¶ 92-96. Although Plaintiffs rely upon a generalized "PVC pipe" market[2] (*see, e.g.,* DDP ¶ 3, EUP Compl. ¶¶ 6, 444-45, NCSP Compl. ¶ 547), Plaintiffs allege that different Defendants manufacture different types of PVC pipe used in ███████████████████ *Id.* ¶ 473:



NCSP Compl. ¶ p. 43 (Figure 9 excerpt); *see also* EUP Compl. ¶ 432 (discussing concentration for municipal pipe and competitors in that market). ████████████████████ ████████████████████████████████ █████████████████████████

The alleged conspiracy began in or around January 2020, or 2017, depending upon the

---

[2] That alleged relevant product market is defective on its face and is another independent reason for dismissal in addition to those set forth herein. Dkt. 537 at 32-35.

three complaints.[3]  DPP Compl. ¶ 1 (2020); NCSP Compl. Glossary at v (2020); EUP Compl. ¶ 501 (2017).  The three Complaints' allegations focus on price behavior during a time period overlapping with the COVID-19 pandemic.  DPP Compl. ¶¶ 1, 247 (Fig. 2); NCSP Compl. ¶¶ 155 (Fig. 11), 233, 240; EUP Compl. ¶¶ 484 (Fig. 5), 501.  Apart from COVID 19, weather events adversely affected the already-fragile PVC supply chain.  Events like Winter Storm Uri and the Great Texas Freeze limited manufacturer access to critical production materials for PVC pipe. DPP Compl. ¶¶ 1, 247 Fig. 2; NCSP Compl. ¶¶ 155 (Fig. 11), 233, 240; EUP Compl. ¶¶ 484 (Fig. 5), 501.  PVC pipe manufacturers' ability to obtain critical inputs was constrained.  *See* NCSP ¶¶ 240, 326, 383.

Plaintiffs' allegations attribute PVC price increases from the Class Period not to the above exogenous factors, but to an alleged conspiracy centered on the PPWR, Donna Todd, and OPIS. But as detailed in the Complaints, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ Put differently, ███████████████████████████████ ███████████████████████ *See id*; *see also* NCSP Compl. ¶ 13.  According to Plaintiffs, ██ ████████████████████████████████████████████████████████████████ ████████████████ *Id.* ¶ 3. ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████

---

[3] Only the EUPs allege a class period beginning in 2017, but they present zero allegations with respect to Cresline's conduct for the period from 2017 through 2023.  *See* EUP Compl. ¶¶ 177-290.

7



*See* NCSP Compl. ¶ 512 (as annotated by Certain Defendants in Dkt. No. 536 at 16).).

Despite years of prior circulation of the PPWR, the central price increase allegations at issue here began in mid-2020, which coincided with an early high-point of COVID-19. NCSP Compl. ¶ 186 (Fig. 23); EUP Compl. ¶ 286; *see also* CDC Museum: Interactive COVID-19 Timeline, https://www.cdc.gov/museum/timeline/covid19.html (last accessed Nov. 4, 2025).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████

Plaintiffs filed their initial complaint in August 2024. Dkt. No. 1. Plaintiffs added Cresline and Charlotte as defendants approximately one year later. *See* Dkt Nos. 390, 394, 398. Plaintiffs allege that Cresline is only involved in the manufacturing of PVC plumbing pipe. NCSP Compl. ¶ 119, Figure 9.[4]

---

[4] The other Complaints recognize other distinct segments of PVC plumbing pipe and fittings, but only vaguely reference Cresline as a manufacturer of PVC pipe without identifying the segments where it is a significant manufacturer.

Cresline's addition to the case came after Plaintiffs settled with OPIS, the entity that published the PPWR. Dkt. Nos. 358, 360, 362. As part of that settlement, Plaintiffs obtained voluminous internal records from OPIS and Ms. Todd. Dkt. Nos. 358, 361. Information obtained from that discovery was included in the three Complaints, warranting their initial filing under seal. *See, e.g.,* Dkt. No. 296 ¶¶ 15-18; Dkt Nos. 390, 394, 398.

## III.    LEGAL STANDARD

Cresline incorporates by reference the legal standard from Certain Defendants' Motion to Dismiss. Dkt. No. 536 at 18-19; *see also id.* at 19-67. Of particular significance to Cresline's Motion is the well-settled principles that "it remains essential to [allege] that a particular defendant joined the conspiracy and knew of its scope," and "[a] complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

## IV.    ARGUMENT

The Complaints suffer from multiple, fatal deficiencies. *First*, Plaintiffs fail to allege that Cresline provided any information to OPIS, Donna Todd or any competitor. Plaintiffs rely almost exclusively on group-pleaded allegations to establish Cresline's participation in any agreement and those allegations cannot support a plausible claim as a matter of law. *Second*, Plaintiffs allege that Cresline only competed for the sale of PVC plumbing pipe, and present an implausible, internally inconsistent case for Cresline's involvement in any alleged conspiracy that involved municipal or conduit PVC pipe sales. *Finally*, the End Users' Complaint alone names Cresline-West and Cresline-Northwest as Defendants, but Plaintiffs fail to plead any non-group pleaded facts to support any claim against those entities. Cresline should not be required to shoulder the substantial cost and burden of defending an antitrust class case where its inclusion smacks of a "kitchen sink" afterthought and the allegations against Cresline are extraordinarily weak.

### A. PLAINTIFFS DO NOT ALLEGE CRESLINE'S INVOLVEMENT IN ANY CONSPIRACY.

The Complaints, viewed in their most favorable light, do not allege Cresline's "conscious commitment to a common scheme" to fix *any* PVC prices. *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 343 (7th Cir. 2022); *cf. In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 789 (N.D. Ill. 2017) (quoting *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 706 (7th Cir. 2011)) (noting same). It is not enough to allege that Cresline received industry pricing information from OPIS, and increased prices in response to industry conditions in a manner consitent with the rest of the industry. *See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007)*(reiterating "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement"); ("*Twombly* demonstrates that courts should dismiss antitrust conspiracy complaints for failure to state a claim when the allegations, taken as true, could just as easily reflect innocent conduct or rational self-interest."). Plaintiffs must allege Cresline-specific facts that support a plausible inference that Cresline entered into an agreement to fix prices. The Complaints allege the opposite.

### 1. Plaintiffs Do Not Allege That Cresline Ever Shared Confidential Pricing Information With Donna Todd, OPIS (Or Any Defendant).

All three Complaints rely upon a purported agreement between and among Defendants and/or OPIS to use OPIS and Ms. Todd to exchange sensitive, forward-looking price information and coordinate their price behavior. █████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

10

██████████████████████████████████████████████████████████████████

████████████

But none of the complaints plead that Cresline ever shared confidential pricing information with OPIS, Ms. Todd or any competitor. Nor do they ever allege a single instance where Cresline ever sought out to communicate with Ms. Todd.

**DPP Complaint:** The Direct Purchasers, when identifying Cresline Plastic Pipe Co. as a party, allege in conclusory fashion that ████████████████████████████████████ ███████████████████████████████████ but the Complaint does not contain any supporting factual allegations. Instead, the Direct Purchasers carefully plead that, █████████████ ██████████████████████████████████████ DPP Compl. ¶ 89 (emphasis added). Every single allegation concerning OPIS/Ms. Todd's alleged receipt of Cresline's pricing information *references only what Ms. Todd **received**, without ever referencing who sent it. Id.* ¶¶ 102, 118, 123, 125, 140, 179, 231. The absence of this allegation is damning given that Plaintiffs repeatedly allege that ████████████████████████████████████████ ████████████████████████████████████ *See., e.g., id.* ¶¶ 90-91, 96, 102). After having access to *all* of Ms. Todd and OPIS's files, the Direct Purchasers have no facts to support their conclusory assertion.

**NCSP Complaint:** The NCSP Complaint *concedes that Cresline never sent its pricing information to OPIS or Ms. Todd*—a fact that is confirmed by multiple allegations showing that Ms. Todd/OPIS did not receive and were regularly looking for pricing information from Cresline.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

11



The NCSP Complaint instead alleges that ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ NCSP Compl. ¶ 113(n); *see also id.* ¶ 430. Plaintiffs attempt to trace this dissemination to Cresline by alleging in conclusory fashion that ██ ████████████████████████████████████████████████████████████████████ ███████████████████████████████ *Id.* ¶ 339. But Plaintiffs identify no factual basis for this empty assertion of a mini-conspiracy, or for the assertion that ██████████████ ████████████████████████████

Empty allegations like this are entitled to no weight in considering the sufficiency of pleadings. *See Ashcroft v. Iqbal, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009)*. Moreover, the assertion is at odds with other allegations in the NCSP, most notably that Hajoca is a Cresline *customer. Id.* ¶ 529. It ignores both reason and default presumptions of law to infer that a customer is *de facto* authorized to speak on behalf of its vendor. *See, e.g., Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (unreasonable for courts to contrive an inference of agency without factual allegations sufficient to support existence of agency relationship). Such an inference would be doubly improper given the Complaint's allegations concerning the alleged individualized motivations of a distributor like Hajoca. *See* NCSP Compl. ¶¶ 14, 381, 488.[5] In order for the Court to make the inferential leap that Plaintiffs seek, Plaintiffs must plead factual allegations to support it. They do not. For sure, facts must be "construed in a light most favorable" on a motion to dismiss, but they cannot be inferred from conclusory

---

[5] The NPSC Complaint never alleges that Hajoca is a Cresline "agent." Nevertheless, to the extent the Complaint is construed as doing so, Cresline joins in and adopts the argument and authorities set forth in the Motion to Dismiss to be filed by Charlotte Pipe & Foundry concerning any such agency allegations.

allegations. *See McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011); *Williams v. Ford Motor Co.*, 990 F. Supp. 551, 554-55 (N.D. Ill. 1997). Finally, it bears noting that NCSP's Complaint fails to allege that there was anything commercially sensitive about any alleged price information that Plaintiffs allege ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ NCSP Compl. ¶ 113(n); *see also id.* ¶ 430. Plaintiffs do not allege anything "forward-looking" about these vaguely-referenced, "occasionally shared" pricing sheets: they were customer price sheets that already had been published.

**EUP Complaint:** Last, the End User Plaintiffs allege that



EUP Compl. ¶¶ 61, 290, 362, 364. In similar fashion to the NCSP Complaint, the EUP Plaintiffs allege facts showing that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 365 (alleging that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In sum, despite 500 pages, 1500+ allegations, and unique access to a robust discovery record from the supposed hub of the conspiracy, Plaintiffs do not and cannot allege that Cresline ever performed (or agreed to perform) a fundamental component of the alleged conspiracy: share confidential pricing information with Ms. Todd, OPIS or any competitor. This fatal flaw dooms Plaintiffs' claims. *See Gibson v. Cendyn Grp.*, LLC, 148 F.4th 1069, 1078 (9th Cir. 2025) (affirming dismissal of information-exchange claim because no allegation that intermediary conveyed confidential information from one submitting party to another); *See In re Granulated Sugar Antitrust Litig.*, No. 24-3110-JWB/DTS, 2025 WL 3012238, at *7 (D. Minn. Oct. 15, 2025) ("Allegations that others possessed or repeated [a defendant's] prices, without more, do not plausible allege agreement."); *see also* J-M Manufacturing Company, Inc's Motion to Dismiss,

Dkt. No. 547 at 4-7 (citing cases).

### 2. Group-pleaded Allegations Cannot Support Plaintiffs' Claims Against Cresline.

It is black-letter law that an antitrust plaintiff must tender ***defendant-specific allegations*** to establish agreement for an alleged conspiracy.[6] The Complaints do nothing of the sort. Indeed, the words "agree," "agreed," or "agreement" never appear in the same sentence as "Cresline." Instead, Plaintiffs define "Converter Defendants" to include Cresline and then allege things like, "The Converter Defendants knew, and intended, that their agreement [would] fix, raise, and maintain the price of PVCs" (DPP Compl. ¶ 12) or "Converter Defendants orchestrate[d] a brazen scheme . . . At the Conspiracy's center sits OPIS" (NCSP Compl. ¶ 5). But these factually unadorned, conclusory statements are meaningless as a matter of law. *See supra*, n. 3; *Knight*, 725 F.3d at 818 ("A complaint based on a theory of collective responsibility must be dismissed.").

### 3. Plaintiffs' Cresline-specific Allegations Plead The Opposite Of An Agreement To Fix Prices.

A review of Plaintiffs' sparse non-group-pleaded allegations against Cresline show that Cresline did not participate in any conspiracy.

**DPP Complaint:** The Direct Purchaser Plaintiffs allege that: (i) Cresline personnel were on Ms. Todd's BCC list (DPP Compl. ¶ 9, Ex. 1); and (ii) Cresline subscribed to and received

---

[6] *See Knight*, 725 F.3d at 818 ("[I]t remains essential to show that a particular defendant joined the conspiracy and knew of its scope . . . A complaint based on a theory of collective responsibility ***must be dismissed***.") (emphasis added); *Hansen v. Nw. Univ.*, No. 24-c-9667, 2025 WL 2731378, at *10 (N.D. Ill. Sept. 24, 2025) (dismissing antitrust claims that alleged "'concerted action' and 'collective effort' without providing details to flesh out these conclusory descriptions" for each defendant); *Greco v. Mallouk*, No. 22-c-2661, 2024 WL 4119169, at *7 (N.D. Ill. Sept. 9, 2024) ("[G]roup pleading . . . is particularly problematic where the Court must consider whether allegations about each Defendant's purported conduct is sufficient to infer an illegal agreement.").

OPIS reports (*id.* ¶ 40).[7] That's it; everything else is group-pleaded. That is insufficient to plead an antitrust violation, whether under a *per se* or rule of reason standard. *See In re Broiler Chicken Antitrust Litig.*, 702 F. Supp. 3d at 674 (holding benchmarking subscriptions cannot support antitrust liability, noting it would be "irrational" to "refrain from participation in [a benchmarking service] when all your competitors are doing so").

**EUP Complaint**: The End User Plaintiffs allege that: (i) "Cresline subscribed to, contributed to, and/or received the PVC & Pipe Weekly report;" (EUP ¶ 61); (ii) Cresline personnel were "on Ms. Todd's distribution list;" (*id.*); (iii) Cresline personnel were ████████ ████████████████████████ (*id.* ¶¶ 162-63); (iv) Cresline personnel ███████████ ████████████████████████████ (*id.* ¶ 168, p. 45 Table 2); and (iv) Cresline ██████████████████████████ (*Id.* ¶¶ 290, 35.) This too is insufficient as a matter of law to state a conspiracy claim. *See supra* at 10; *Weit v. Cont'l Ill. Nat. Bank & Tr. Co.*, 641 F.2d 457, 463 (7th Cir. 1981) ("parallel pricing or conduct *lacks probative significance* when the production question is [like PVC,] standardized or fungible"). Allegations that Cresline was included on any of Ms. Todd's "lists" are rendered meaningless due to Plaintiffs' inability to identify a single instance of communication between Cresline and Ms. Todd concerning pricing (or any matter at all). This failure further underscores Plaintiffs' failure to allege that Cresline participated in any alleged conspiracy.

**NCSP Complaint:** The NCSP Complaint contains the most Cresline-specific allegations. Cresline already has addressed NCSP Plaintiffs' allegations concerning ████████████ ████████████████ *See supra* p. 11-12. The remainder of the NCSP Plaintiff's

---

[7] The Direct Purchaser Plaintiffs also allege in conclusory fashion that Cresline directly sent pricing information to OPIS, but other allegations concede that it did not. *See supra* p. 10-13.

allegations can be summarized as follows:

- ██████████████████████████████████████████

██ ████████████████████████████████████████████

██ ████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████

██ ████████████████████████████████████████████
██ ████████████

██ ████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████

██ ████████████████████████████████████

██ ████████████████████████████████████████████

██ ████████████████████████████████████████████
████████████████

██ ████████████████████████████████████████████
██████████████████████

██ ████████████████████████████████████████████
████████████████████████████████
██████████

██ ██████████████████████████████████████

The above allegations do not suffice to allege Cresline was involved in any agreement to

coordinate pricing.  At most, the allegations allege ████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██ ████████████████████████████████████████████████████████████████████████████

██████████  That fails as a matter of law.  *See In re Granulated Sugar Antitrust Litig.*, No. 24-3110-

JWB/DTS, 2025 WL 3012238, at *7 (D. Minn. Oct. 15, 2025) ("Allegations that others possessed or repeated [a defendant's] prices, without more, do not plausible allege agreement."); *Kleen Prods., LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 819 (N.D. Ill. 2017) (dismissing similar claims, noting "follow-the-leader" price increases are rational "interdependent conduct" by competitors); *Wash. Cty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 832 (N.D. Ill. 2018)("[T]he mere fact that [defendants] restricted their own production of [] output after learning of output restrictions by other [defendants] sheds little light on the existence vel non of an unlawful arrangement.").

Notably, Plaintiffs readily admit that Cresline did not consistently follow price moves of other manufacturers (NCSP Compl. ¶ 449) and ████████████████████████████████████ The NCSP Plaintiffs do not allege that Cresline participated in approximately one third of the plumbing prices increases alleged. *See id.* ¶¶ 276, 337, 450, 490, 494, 497, 499(d), 499(e). These alleged actions (or lack of action) are irreconcilable with Plaintiffs' whole conspiracy theory.

The fact that Cresline at times changed prices in a manner that followed or was even identical to other plumbing pipe manufacturers shows nothing. Significant external events that Plaintiffs concede occurred—including the COVID-19 pandemic, weather and supply chain shortages that effected the PVC pipe manufacturing process—provide an equally plausible explanation for Cresline's pricing behavior. Plaintiffs cannot rely upon mere price movements to in support of their claims. *See Twombly*, 550 U.S. at 556 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice . . . and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Weit*, 641 F.2d at 462.

Finally, the alleged ████████████████████████████████████ ████████████████ does not, as Plaintiffs allege, provide an example of ████████████████

17



████████████ NCSP Compl. ¶¶ 9(b), 227; *see also id.* ¶ 573.  At most, the purported ████████

████████████. The allegation shows *the absence* of any agreement at all.  The fact

that the ████████████████████████████████████

████████████████—does not legitimize Plaintiff's claims against Cresline.  Nor

does any participation in trade associations or attending trades shows evince agreement to a

conspiracy.[8] *Wash. Cnty. Health Care Authority, Inc. v. Baxter Int'l, Inc.*, No. 16-cv-10324, 2020

WL 1666454, at *10 n.11 (N.D. Ill. Apr. 3, 2020) ("Merely pointing out that [] executives from

[accused] companies attended industry events . . . serves only to raise the question: why was [their]

attendance . . . probative of illicit agreement rather than indicative that they shared the same non-

collusive reasons that prompted [] others to attend?").

4.  **Plaintiffs Allege That Cresline Sold PVC Plumbing Pipe, A Segment Where Plaintiffs' Factual Allegations Contradict The Existence of a Conspiracy.**

Plaintiffs' Complaints allege at least three differing types of PVC pipe (plumbing,

municipal and conduit) each of which has different applications, specifications, uses, pricing and

converters.[9]  The different pipe types are not "reasonably interchangeable" and irreconcilable with

Plaintiffs' alleged relevant product market.  *See* Dkt. No. 536 at 5-6.  At a minimum, any claim

---

[8] *See, e.g.*, *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 995, 997 (N.D. Ill. 2011) (dismissing complaint with substantial allegations of closed-door meetings at industry association events and trade shows but no identified agreement, noting "conclusory assertions of conspiracy plus descriptions of parallel behavior are not sufficient to state a claim under . . . the Sherman Act where the alleged facts do not suggest that the defendants were acting pursuant to an agreement").

[9] Certain Plaintiffs also identify pipe fittings a distinct product.  *See supra* note 1, p. 6.

concerning an alleged conspiracy to fix prices for conduit or municipal pipe should be dismissed as to Cresline because Cresline is not a significant player in those segments. Plaintiffs do not target any of their Cresline allegations for the conduit or municipal pipe segments and do not provide any facts explaining Cresline's plausible participation in such a conspiracy.

Plaintiffs' PVC plumbing pipe-related allegations fare no better. When it comes to pricing actions, Plaintiffs allege that ████████████████████████████████████ ████████████████████████████████████████████████████████ *Id.* ¶ 231; *see also* ¶¶ 226, 277. But Plaintiffs do not allege that Charlotte *ever shared its plumbing prices with OPIS/Ms. Todd* (*id.* ¶¶ 271, 274). *Nor do Plaintiffs allege that Charlotte was ever on one of Ms. Todd's email lists where sensitive pricing information was allegedly shared.* (*id.* ¶¶ 274, 447). In other words, the alleged ██████████ is not alleged to have participated in the information sharing mechanism at the heart of the alleged conspiracy. Plaintiffs' own allegations show behavior that is fundamentally inconsistent with the existence of the alleged conspiracy.

A review of Plaintiffs' allegations concerning pricing behavior in the plumbing pipe segment also negates Plaintiffs' plumbing pipe conspiracy claims. Plaintiffs allege that, after the price spike of PVC-input resin caused by the COVID-19 pandemic and extreme weather occurrences receded, the prices for plumbing PVC pipe *decreased back to their pre-pandemic levels* due to the fierce competition among its manufacturers. In short, beyond failing to allege that PVC plumbing pipe prices were established by any joint conduct, the Complaints concede— as they must—that competition persisted through the relevant time period, and the brief price increase in PVC plumbing pipe prices was a one-time event that is equally explained by exogenous events beyond anyone's control.

The Complaints plead in detail how, even though numerous converters of plumbing PVC

19

pipe received PPWR since 2017, prices remained stable until the first half of 2020.  Prices did not increase until after March 2020, when the COVID-19 pandemic and related supply chain issues caused a dramatic increase in the price of PVC-input resin.  *See, e.g.,* NCSP ¶¶ 155 (Fig. 11), 240, 251 326, 383, 512 (Fig. 21); DPP Compl. ¶ 247 (Fig. 2); EUP Compl. ¶¶ 326, 484 (Fig. 5).  This event—not any agreement to fix prices—explains what caused the price of plumbing PVC pipe to increase.  Other externalities (acknowledged by Plaintiffs) also explain the need for price increases. These include Winter Storm Uri, Hurricane Laura, Hurricane Ida, and the Great Texas Freeze.  *See supra* p. 7; NCSP Compl. ¶¶ 233, 240.  None of those events had anything to do with the purported conspiracy; and Plaintiffs do not allege any specific facts with respect to Cresline to suggest that these events were not the cause of Cresline's price movements.

But even putting that aside, what separates plumbing PVC pipe (the only segment in which Cresline allegedly participates) is that, after these exogenous factors receded, the price of plumbing PVC pipe rapidly *decreased* to its historic pre-COVID-19 levels.

NCSP Compl. ¶ 156 (Fig. 12).

Furthermore, Plaintiffs allege how PVC plumbing pipe converters, including Cresline, *competed* with one another to reduce the price of plumbing PVC after the exogenous factors faded. For example, Plaintiffs allege that ███████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ NSCP Compl. ¶ 340. This continued into 2023, when Plaintiffs allege that the prices for plumbing PVC pipe fell even further due to competition from Cresline, Charlotte, and Sanderson, who were ████████████████ ███████████████████████████ NSCP Compl. ¶ 438-441 (emphasis added). While Plaintiffs broadly describe this obvious price competition as ████████████████ ███████████ the actual facts alleged—along with the numbers—are plainly inconsistent with the existence of a price-fixing conspiracy.

In sum, Plaintiffs allege facts that contradict the very conspiracy that they allege. Plaintiffs fail to plead any "plus factors" as to Cresline that would support any inference of a conspiratorial agreement because there never was any such agreement. *See Twombly*, 550 U.S. at 553-54.

### 5. All Federal And State Law Claims Should Be Dismissed.

The same standards apply to both state-law and Sherman Act claims. Accordingly, all of Plaintiffs' state-law claims should be dismissed for the reasons set forth above. *See, e.g., In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 847 (N.D. Ill. 2020) (collecting cases); Dkt. No. 536 at 54-58.

### B. THE END USER PLAINTIFFS FAIL TO ALLEGE ANY CLAIMS AGAINST CRESLINE-WEST AND CRESLINE-NORTHWEST.

Only the EUP Complaint names Cresline-West and Cresline-Northwest as Defendants. *See* EUP Compl. ¶¶ 60-61. Cresline incorporates by reference the Atkore Defendants' Motion (Dkt.

No. 551) and authorities holding that mere inclusion of affiliated legal entities in the "definition" of a defendant cannot support a claim against such entities. The EUP Complaint does not include a ***single allegation unique*** to Cresline-West or Cresline-Northwest (or even Cresline Plastic Pipe Co.). Plaintiffs simply insert the two companies into the "definition" of Cresline. It is black-letter law that "[a] plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, Plaintiffs claims against Cresline-West and Cresline-Northwest should be dismissed in their entirety.

### C. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST CRESLINE WITH PREJUDICE.

While courts typically dismiss without prejudice at the pleadings stage, this does not apply where a plaintiff has pleaded their "best case." *Lee v. Ne. Ill. Reg. Commuter Rail Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019). If a Plaintiff has pleaded its "best case" and still not pleaded cognizable claims, amendment is "futile" and "dismissal with prejudice is warranted." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("There is a presumption that a plaintiff should have an opportunity to test a claim on the merits, but this presumption may be overcome if the court finds . . . futility of amendment"). The futility-of-amendment analysis is context-dependent and looks to the circumstances at the time a pleading is filed. *Id.*

Here, the Court should dismiss Plaintiffs' claims against Cresline with prejudice in light of Plaintiffs' unfettered access to OPIS's files and utter failure to allege that Cresline *ever* provided its pricing sheets to OPIS. Plaintiffs have obtained an attorney proffer regarding their allegations and extensive documents from OPIS, including messages to and from Ms. Todd, whom they identify as the "primary facilitator of the alleged conspiracy." Plaintiffs have described the scope of that information as impossible to overstate. *See, e.g.,* Dkt. No. 296 ¶¶ 15-18.

Even after obtaining unique access to the documents from the alleged hub of the price-

fixing conspiracy, a critical predicate to each Plaintiffs' case against Cresline is absence.  Under such circumstances, dismissal with prejudice is the only appropriate result.  *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 526-27 (7th Cir. 2015). Cresline should not be required to incur substantial additional legal expenses and costs in defense of a lawsuit where the Plaintiffs' claims lack any legitimate basis.

## V.  CONCLUSION

For the reasons above, Cresline respectfully requests that its Motion to Dismiss be granted, and that all claims against Cresline in this action be dismissed with prejudice.

Dated: November 21, 2025

Respectfully submitted,

/s/ *John Briody*

**MCKOOL SMITH P.C.**

John Briody (*pro hac vice*)
James H. Smith
Daniel W. Levy (*pro hac vice*)
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
jbriody@mckoolsmith.com
jsmith@mckoolsmith.com
dlevy@mckoolsmith.com

Joshua D. Jones
600 Travis Street
Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344
jjones@mckoolsmith.com

**HANSEN REYNOLDS LLC**

Alan W. Nicgorski
Joseph J. Jacobi
150 South Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 265-2253
anicgorski@hansenreynolds.com
jjacobi@hansenreynolds.com

**COUNSEL OF RECORD FOR
CRESLINE PLASTIC PIPE CO., INC.,
CRESLINE-WEST LLC, CRESLINE-
NORTHWEST LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025 a true copy of the foregoing document was

electronically filed by CM/ECF and served on all counsel of record.

*John Briody*
John Briody