## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| *In re PVC Pipe Antitrust Litigation* | Case No. 24-cv-07639 |
| ———————————— | |
| THIS DOCUMENT RELATES TO: | Hon. LaShonda A. Hunt |
| *All Direct Purchaser Plaintiff Actions* | |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS BILL WAGNER & SON, INC.'S, VITOLITE ELECTRIC SALES CO.'S, AND HODGES SUPPLY COMPANY'S MOTION – UNOPPOSED[1] BY SETTLING DEFENDANTS ATKORE INC., ATKORE INTERNATIONAL, INC., ATKORE PLASTIC PIPE CORP., ATKORE RMCP, INC., AND ALLIED TUBE & CONDUIT CORPORATION (COLLECTIVELY, "ATKORE") – FOR PRELIMINARY APPROVAL OF <u>SETTLEMENT AND RELATED RELIEF</u>**

---

[1] The Settling Defendants do not oppose Direct Purchaser Plaintiffs' ("DPPs'") motion. Because the Settlement Agreement required the terms of Direct Purchaser Plaintiffs' settlement with Atkore to remain confidential until this motion was filed, it was not possible to conduct a pre-filing meet-and-confer with other parties.

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................................... iii

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND .............................................................................................................. 2

III. SUMMARY OF THE ATKORE SETTLEMENT AGREEMENT ................................... 4

IV. JOINT AND SEVERAL LIABILITY OF NON-SETTLING DEFENDANTS................. 5

V. ARGUMENT.................................................................................................................... 6

    A. The Proposed Settlement Satisfies the Standard for Preliminary Approval ........... 6

        1. The Strength of the DPP Case Compared to the Settlement Amount Favors Approval...................................................................................... 7

        2. The Settlement Will Reduce the Complexity, Length, and Expense of Further Litigation.................................................................................. 8

        3. The Arm's-Length Negotiations Resulted in a Settlement Lead Counsel Believes is in the Best Interests of the DPP Settlement Class...................................................................................................... 8

        4. This Settlement at a Relatively Early Stage of the Case Supports Approval ..................................................................................... 9

    B. The Court Should Certify the Proposed DPP Settlement Class............................. 9

        1. The DPP Settlement Class Satisfies Rule 23(a)'s Requirements.............. 11

            a. Numerosity.................................................................................... 11

            b. Commonality................................................................................. 11

            c. Typicality ..................................................................................... 12

            d. Adequacy ..................................................................................... 12

        2. The Proposed DPP Settlement Class Satisfies Rule 23(b)(3)................... 13

    C. The Proposed Form and Manner of Class Notice Are Appropriate, and Will Be Effectuated by JND Legal Administration, an Experienced Settlement Administrator ........................................................................................ 14

        1. Form of Notice............................................................................................ 15

2. Manner of Notice .................................................................................... 16

D. The Proposed Schedule Is Fair and Should be Approved..................................... 16

VI. CONCLUSION.......................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................... 9, 13, 14

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
784 F.2d 1325 (7th Cir. 1986) ................................................................................ 7

*Brown v. Cook Cnty.*,
332 F.R.D. 229 (N.D. Ill. 2019) ........................................................................... 11

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) .................................................................................. 6

*In re American Int'l. Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ................................................................................... 9

*In re Auto. Parts Antitrust Litig.*,
2017 WL 3499291 (E.D. Mich. July 10, 2017) ...................................................... 5

*In re Domestic Airline Travel Antitrust Litig.*,
322 F. Supp. 3d 64 (D.D.C. 2018) ....................................................................... 16

*In re HealthSouth Corp. Sec. Litig.*,
334 F. App'x. 248 (11th Cir. 2009) ........................................................................ 4

*In re Packaged Ice Antitrust Litig.*,
2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ....................................................... 5

*In re TikTok Inc., Consumer Privacy Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ................................................................... 6

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012) ........................................................................... 13

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ............................................................................. 5, 8

*Kaufman v. Am. Express Travel Related Servs. Co.*,
877 F.3d 276 (7th Cir. 2017) .................................................................................. 7

*Kohen v. Pacific Inv. Mgmt.*,
571 F.3d 672 (7th Cir. 2009) ................................................................................ 12

*Lechuga v. Elite Eng'g., Inc.*,
  559 F. Supp. 3d 736 (N.D. Ill. 2021) ................................................................................. 6

*Lucas v. Vee Pak, Inc.*,
  2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ............................................................... 7, 8

*Moehrl v. Nat'l Ass'n of Realtors*,
  2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) ............................................................. 11, 12

*Paper Sys. Inc. v. Nippon Paper Indus.*,
  281 F.3d 629 (7th Cir. 2002) .......................................................................................... 7

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009) ................................................................................ 11, 13

*Schmidt v. Smith & Wollensky LLC*,
  268 F.R.D. 323 (N.D. Ill. 2010) .................................................................................... 10

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................................. 9

*Smith v. Sprint Commc'ns. Co.*,
  387 F.3d 612 (7th Cir. 2004) ......................................................................................... 9

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ........................................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................................... 11

*Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assoc. Props., Inc.*,
  2019 WL 13037030 (M.D. Fla. Apr. 24, 2019) ............................................................. 4

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

**Other Authorities**

Manual for Complex Litigation, § 21.312, 21.633 (4th ed. 2005) ................................. 14

## I.     INTRODUCTION

Direct Purchaser Plaintiffs Bill Wagner & Son, Inc., Vitolite Electric Sales Co. and Hodges Supply Company ("DPPs") respectfully move the Court to preliminarily approve a proposed settlement between DPPs and Atkore, which does not oppose this motion.  The Settlement[2] satisfies the standards for preliminary approval.  This Settlement furthers the public policy of efficiently resolving claims on a class-wide basis and provides the DPP Settlement Class with a substantial cash payment and substantial cooperation that will enable the parties to litigate more effectively and efficiently.

Pursuant to the Settlement, upon fulfillment of certain conditions set forth in the Settlement Agreement, Atkore will pay seventy-two million and five-hundred thousand dollars ($72,500,000) in cash into an interest-bearing Settlement Fund maintained by a Court-approved Escrow Agent, for the benefit of the DPP Settlement Class.  In addition, Atkore will provide substantial cooperation through (among other things) production of documents, which is valuable to the DPP Settlement Class in their continued prosecution of their claims against the non-settling Defendants.

In particular, Atkore will produce to DPPs Documents and data already produced by Atkore to the U.S. Department of Justice ("DOJ") as part of the DOJ's investigation into alleged antitrust violations in the PVC Pipe and Fittings market.

In addition, Atkore agrees to use reasonable efforts to authenticate and provide a business records affidavit or deposition testimony of a custodian of records, if required, for any Documents and/or things that DPPs intend to use at trial or summary judgment that were produced by Atkore

---

[2] The April 28, 2026 Settlement Agreement between DPPs and Atkore (the "Settlement" or "Settlement Agreement") is attached as Exhibit A to the April 29, 2026 Declaration of Robert N. Kaplan in Support of DPPs' Motion for Preliminary Approval of Settlement with Atkore (the "Kaplan Decl."), filed concurrently herewith.  Unless stated otherwise, all capitalized words or terms herein are those defined and used in the Settlement Agreement.

as part of the Settlement Agreement, where the facts indicate that the Documents and/or things at issue are authentic, which will save the DPP Settlement Class time and streamline its trial preparation against the remaining Defendants.

At this point, DPPs are not requesting approval to distribute the cash portion of the Settlement to members of the DPP Settlement Class. If and when the settlements with Oil Price Information Service, LLC ("OPIS") (final approval hearing June 3, 2026), Westlake and Atkore are approved, Lead Counsel will file a motion for leave to circulate claim forms to DPP Settlement Class members in order to effectuate a distribution from this Settlement, the OPIS settlement and the Westlake settlement.

Through Court-appointed DPP Lead and Liaison Counsel, DPPs now move the Court to preliminarily approve the Settlement Agreement, certify for settlement purposes only the proposed DPP Settlement Class, approve the form of notice and proposed plan for notifying members of the proposed DPP Settlement Class of the Settlement, approve the continued appointment of JND Legal Administration ("JND") as Settlement Administrator and The Huntington National Bank ("Huntington") as Escrow Agent, appoint Kaplan Fox & Kilsheimer, LLP ("Kaplan Fox") as Settlement Counsel for the DPP Settlement Class and Bill Wagner & Son, Inc., Vitolite Electric Sales Co. and Hodges Supply Company as named representatives for the DPP Settlement Class. If the Court preliminarily approves the Settlement Agreement, Settlement Counsel will at the Fairness Hearing request entry of a final order and judgment dismissing Atkore with prejudice from the litigation and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

## II.    BACKGROUND

This is an antitrust class action filed against the country's largest producers of PVC Pipe and Fittings. DPPs allege that the Defendants, including Atkore, combined and conspired to fix,

raise, elevate, maintain or stabilize prices of PVC Pipe and Fittings sold to direct purchasers in the United States, beginning at least as early as January 1, 2020. DPPs allege that Defendants implemented this conspiracy in various ways, including the sharing of competitively sensitive pricing and customer information, both directly and using OPIS as a mechanism to do so. DPP Bill Wagner & Son, Inc. filed the first direct-purchaser class action complaint on September 26, 2024 (ECF No. 1 in *Bill Wagner & Son, Inc. v. Atkore, Inc. et al.*, Case No. 24-cv-8991).

On October 17, 2024, the Court appointed Kaplan Fox as Lead Class Counsel, and Sperling Kenny Nachwalter, LLC ("Sperling") as Liaison Counsel, for the proposed DPP Class (ECF No. 163), and DPPs filed a Second Consolidated Amended Class Action Complaint on August 18, 2025 (ECF No. 390). Motions to dismiss have been fully briefed and are under the Court's review. While DPPs have served Converter Defendants with document requests, due to the discovery stay, Defendants have not yet responded to those discovery requests, and the Converter Defendants have only produced organizational charts. *See* 2/19/2026 Joint Status Report, ECF No. 669.

On May 16, 2025, DPPs and OPIS entered into a settlement agreement (ECF No. 304-1). DPPs moved for preliminary approval on June 6, 2025 (ECF No. 301) and the Court granted preliminary approval of the OPIS settlement on July 17, 2025 (ECF No. 360). Notice has been disseminated to OPIS Settlement Class Members and a final approval hearing is scheduled for June 3, 2026.

On March 26, 2026, DPPs and Westlake entered into a settlement agreement (ECF No. 699-1). DPPs moved for preliminary approval on April 13, 2026 (ECF No. 697), and the Court granted preliminary approval of the Westlake settlement on April 24, 2026 (ECF No. 710).

As a result of the OPIS settlement, OPIS has produced extensive documents and given extensive cooperation, some of which was used to draft the August 18, 2025 Second Amended

Complaint. Westlake shall also produce documents and give cooperation pursuant to the Westlake Settlement Agreement. Therefore, even though this case is at an early stage in terms of discovery, at the time DPPs were negotiating with Atkore, they were aware of key facts learned from the OPIS production.

## III.   SUMMARY OF THE ATKORE SETTLEMENT AGREEMENT

After more than seven months of extensive and contentious arm's-length negotiations between Lead Class Counsel and counsel for Atkore (Kaplan Decl., ¶ 4), DPPs agreed to settle with Atkore for seventy-two million and five-hundred thousand dollars ($72,500,000), which Atkore has agreed to pay into a Settlement Fund (including up to $250,000 in non-refundable class notice and administration costs) for distribution to eligible members of the DPP Settlement Class who did not validly and timely request exclusion from that class.  In addition, Atkore has agreed to provide substantial non-monetary cooperation discussed in greater length below. *See* Settlement Agreement ¶ 12 (cooperation provisions).[3]   In consideration, DPPs and the proposed DPP Settlement Class agree to release claims against the Atkore Released Parties as defined in the Settlement Agreement.  Settlement Agreement ¶¶ 17-18. This release does not extend to any other Defendants.

Atkore's cooperation provides the DPP Settlement Class with significant non-monetary

---

[3] In addition to the Settlement Agreement, the Parties executed a confidential side letter, which the Parties can provide upon the Court's request for its *in-camera* review, pursuant to which Atkore, in its sole discretion, may terminate the Settlement if the opt-outs exceed a certain threshold. *Id.* at ¶ 21(c).  Confidential side letters specifying such "blow" provisions are routinely used in class action settlements, with courts finding that they encourage settlement and do not impact the fairness of the proposed settlement. *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x. 248, 250 n.4 (11th Cir. 2009) (a blow provision threshold "is typically not disclosed and is kept confidential to encourage settlement"); *Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props., Inc.*, 2019 WL 13037030, at *9 (M.D. Fla. Apr. 24, 2019) (confidential side letter "does not impact the fairness" of the proposed settlement "because it does not contain any relevant information for the Settlement Class").

compensation that is of substantial value to the DPP Settlement Class in their continued prosecution of their claims in this litigation.

As detailed in Paragraph 12 of the Settlement Agreement, Atkore will produce to DPPs Documents already produced by Atkore to the DOJ or any other governmental entity as part of its investigation into alleged antitrust violations in the sale of PVC Pipes and Fittings, data, and other Documents. Settlement Agreement ¶ 12. Atkore will also make certain of its then-current employees available for deposition or to testify at trial subject to conditions set forth in the Parties' Settlement Agreement. *Id.* Finally, Atkore agrees to use reasonable efforts to authenticate and provide a business records affidavit or testimony of a custodian of records, if required, for any Documents and/or things that DPPs intend to use at trial or summary judgment that were produced by Atkore as part of the Settlement Agreement, where the facts indicate that the Documents and/or things at issue are authentic, which will save the DPP Settlement Class time and streamline its trial preparation against the remaining Defendants. *Id*.

## IV.    JOINT AND SEVERAL LIABILITY OF NON-SETTLING DEFENDANTS

The Settlement Agreement provides that "(n)o person other than the Atkore Released Parties is intended to be, or is, included within the scope of the release" and that "Atkore's sales of PVCPs and Fittings to the DPPs and the DPP Settlement Class, and Atkore's alleged conduct, shall remain in the case against current and future Defendants other than Atkore Released Parties, as a potential basis for damages claims and shall be part of any joint-and-several liability claims against such other current or future Defendants in the Action." Settlement Agreement ¶ 13. Therefore, the Settlement Agreement provides that for the purposes of joint and several liability against non-settling Defendants, the DPP Settlement Class maintains the ability to rely on Atkore's sales of PVC Pipe and Fittings to seek the full damages to which the DPP Settlement Class is entitled from any non-settling Defendant. This term is valuable to DPPs and the DPP Settlement

Class, as it maintains the DPP Settlement Class's right to seek alleged damages associated with Atkore's sales from Atkore's alleged co-conspirators. The non-settling Defendants will only be entitled to a credit for any judgment against them for the value of the settlement proceeds paid by Atkore after a judgment is trebled. This is a win-win for the DPP Settlement Class.[4]

## V.     ARGUMENT

### A.     The Proposed Settlement Satisfies the Standard for Preliminary Approval

As the Seventh Circuit has recognized, federal courts "naturally favor the settlement of class action litigation," *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996), because such settlements further the public policy of efficient and dispositive resolution of complex, costly disputes. *See Lechuga v. Elite Eng'g., Inc.*, 559 F. Supp. 3d 736, 744 (N.D. Ill. 2021) (settlement minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources).

When assessing whether to grant preliminary approval to a proposed settlement, a court should "not … conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *In re TikTok Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021). The court instead need assess only whether the settlement is "within the range of possible approval," *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982), and "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *TikTok*, 565 F. Supp. 3d at 1083.

At the preliminary approval stage, courts in the Seventh Circuit consider: (1) the strength

---

[4] *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at \*17 (E.D. Mich. Feb. 22, 2011) (granting final approval of settlement where the settlement agreement provides that settling defendants' sales "remain in th[e] action and shall be part of any joint and several liability against any non-settling Defendant"); *In re Auto. Parts Antitrust Litig.*, 2017 WL 3499291, at \*2 (E.D. Mich. July 10, 2017) (similar).

of the plaintiffs' case compared to the settlement amount; (2) the complexity, length, and expense of the litigation; (3) the opinion of competent counsel; and (4) the stage of the proceedings (including the amount of discovery completed) at the time of the settlement. *Id.* at 1084. Consideration of the relevant factors supports preliminarily approving the Settlement and authorizing notice to the DPP Settlement Class.[5]

### 1.     The Strength of the DPP Case Compared to the Settlement Amount Favors Approval

The proposed settlement provides a significant monetary payment of $72.5 million to the DPP Settlement Class, plus the material benefit of Atkore's cooperation. Additionally, all non-settling Converter Defendants remain jointly and severally liable for injuries resulting from their alleged cartel. *See Paper Sys. Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output.").

The Seventh Circuit has held that the "evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indications that the settlement reasonably reflects the relative merits of the case." *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017). Here, Atkore is paying $72.5 million, a sizeable amount, and is providing cooperation which will, among other benefits, save time and resources. *See, e.g.*, *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *10 (N.D. Ill. Dec. 20, 2017) (noting that a "cooperation agreement will save the plaintiffs from trying to determine the right questions to ask the right people"). These factors strongly weigh in favor of approval.

---

[5] An additional factor – any DPP Settlement Class member opposition to the settlement – is inapplicable here. Putative class members have not yet been given notice and therefore have not yet had an opportunity to object.

DPPs believe that the case is strong – even stronger if the Court approves the Settlement – but complex antitrust litigation is inherently risky, and the outcome of any trial is naturally uncertain. To that end, Atkore has made clear to DPPs that it would continue to vigorously defend the claims asserted against it absent the Settlement. *See Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1333 (7th Cir. 1986) (noting that "[a]ntitrust cases are notoriously extended"). In contrast, if approved, the Settlement would resolve the DPP Settlement Class's claims against Atkore and provide not only a substantial monetary benefit, but extensive and valuable cooperation to the DPP Settlement Class.

The Settlement thus benefits and protects the DPP Settlement Class by eliminating litigation risk as to Atkore, and mitigating the risks of continued litigation against the remaining Converter Defendants. Lead Class Counsel believes the Settlement to be in the best interests of the DPP Settlement Class, and that it should be preliminarily approved.

### 2. The Settlement Will Reduce the Complexity, Length, and Expense of Further Litigation

The Settlement will end the DPP Settlement Class's claims against Atkore, narrowing the field of adversaries, and Atkore's cooperation will both assist in prosecuting the DPPs' claims against the remaining Converter Defendants (perhaps leading to additional settlements) and help reduce the costs and risks of litigating this action. *See, e.g.*, *Lucas,* 2017 WL 6733688, at *12 (cooperation "will serve to minimize the costs and challenges" against remaining defendants). This favors preliminary approval of the Settlement.

### 3. The Arm's-Length Negotiations Resulted in a Settlement Lead Counsel Believes is in the Best Interests of the DPP Settlement Class

At preliminary approval, there is an initial presumption that a proposed settlement is fair and reasonable and satisfies Rule 23(e) when it results from arm's-length negotiations between experienced, competent counsel, whose opinions on the settlement factor into approving it. *See*

8

*Isby*, 75 F.3d at 1200 (district court "entitled to give consideration to the opinion of competent counsel" that settlement was fair). Here, the Settlement Agreement stems from extensive arm's-length negotiations, over seven months, between attorneys who were sufficiently informed of the relative strengths and weaknesses of their positions. Indeed, these negotiations were conducted under the auspices of a mediator, Miles Ruthberg, of Phillips ADR, were very lengthy and although professional, both sides argued strenuously for their positions.

### 4. This Settlement at a Relatively Early Stage of the Case Supports Approval

This factor supports approval of the Settlement as well. Even at the relatively early stage of the case, Lead Class Counsel had – as evidenced by the detailed allegations in the Complaint – "access to sufficient information such that they could effectively represent the class" during settlement negotiations, which is all that is required for preliminary approval. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 588 (N.D. Ill. 2011) (negotiation of fair settlement "evidence that [counsel] had enough information to effectively represent the class").

### B. The Court Should Certify the Proposed DPP Settlement Class

In connection with the OPIS and Westlake settlements, the Court has certified a DPP settlement class. The proposed DPP Settlement Class here should also be certified for settlement purposes in connection with the Atkore settlement. Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). While certification of a settlement class must satisfy Rule 23's requirements, there is a lower threshold for certification of a settlement class than for certification of a litigation class because there will not be a trial against the settling defendant (here, Atkore), and therefore the Settlement obviates the manageability problems of trying the case on a class-wide basis. *See Smith v. Sprint Commc'ns. Co.*, 387 F.3d 612, 614 (7th Cir. 2004) (when faced with "'a request for settlement-

only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial'" (quoting *Amchem*, 521 U.S. at 620)). Indeed, other courts have found that the lack of a trial also assists the predominance requirement, *see, e.g.*, *In re American Int'l Group, Inc. Securities Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) (class settlement that "eliminates manageability problems" resolved predominance concerns that doomed litigation class).

Therefore, courts in this District routinely certify settlement-only classes before certifying a litigation class, including settlements reached in the early stages of antitrust cases. *See, e.g.*, Kaplan Decl., Exs. B, D-F (collection of preliminary approval orders from *In re Broiler Antitrust Litigation*, 1:16-cv-08637, certifying settlement-only direct purchaser classes in 2017 (Fieldale), 2019 (Peco/George's/Amick), and 2021 (Tyson/Pilgrims and Mar-Jac/Harrison) well before Judge Durkin certified a direct purchaser litigation class on May 27, 2022) and G (Judge Kendall's order from *In re Turkey Antitrust Litig.*, 1:20-cv-02295, ECF No. 196 (N.D. Ill., July 28, 2021), preliminarily approving settlement and certifying settlement-only class before merits litigation class certification proceedings).

DPPs seek certification of the DPP Settlement Class defined in ¶ 5(a) of the Settlement Agreement as follows:

> All persons and entities who purchased PVCPs and/or Fittings in the United States and its territories directly from one or more of the Converter Defendants (or from any of the Converter Defendants' parents, predecessors, subsidiaries or Affiliates) at any time from January 1, 2020 through March 31, 2026 (the "Settlement Class Period"). Excluded from the DPP Settlement Class are Converter Defendants, and their parents, predecessors, subsidiaries, and Affiliates, and all federal government entities and instrumentalities of the federal government.

As detailed below, the proposed DPP Settlement Class meets the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy – as well as the requirements of Rule 23(b)(3) – predominance and superiority – and should be preliminarily approved for settlement

10

purposes.

### 1. The DPP Settlement Class Satisfies Rule 23(a)'s Requirements

#### a. Numerosity

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies this requirement, but a class with 40 or more members is "generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (cleaned up). While the precise number of probable DPP Settlement Class members is currently known only to the Converter Defendants, based on their extensive investigation, Lead and Liaison Counsel believe there are at least several thousand persons and entities within the DPP Settlement Class as defined. Thus, joinder would be impracticable, and Rule 23(a)(1) is satisfied here.

#### b. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that resolution of an issue of law or fact be "central to the validity" of each class member's claim— "even a single" common question of law or fact will satisfy the commonality requirement. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). A central allegation in the Complaint is that Defendants illegally conspired to fix, raise and maintain prices that the DPP Settlement Class paid for PVC Pipe and Fittings. This alone satisfies commonality, because "where an antitrust conspiracy has been alleged, courts have consistently held that the very nature of a conspiracy [in an] antitrust action compels a finding that common questions of law and fact exist." *Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199, at *11 (N.D. Ill. Mar. 29, 2023) (cleaned up). Here, the existence of the alleged conspiracy, how it operated, whether the conspiracy caused the DPP Settlement Class to pay supracompetitive prices, and the appropriate measure of damages are all questions that will be

11

common to all class members, satisfying Rule 23(a)(2)'s commonality requirement.

### c. Typicality

Rule 23(a)(3) requires that a class representative's claims be "typical" of class members' claims. "Typicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (cleaned up). Typicality "does not require perfect identity of claims," but rather requires that they share the "same essential characteristics." *Brown v. Cook Cnty.*, 332 F.R.D. 229, 241 (N.D. Ill. 2019). If, as is the case here, a proposed class representative must prove a conspiracy, its effectuation, and resultant damages – *i.e.*, exactly what absent class members would need to prove – then the representative claims are typical. *See Moehrl*, 2023 WL 2683199, at *12 (in the antitrust context, "typicality will be established by plaintiffs and all class members alleging the same antitrust violation by the defendants."). Here, the claims arise from the same alleged illegal anticompetitive conduct, are based on the same alleged theories, and require the same kinds of evidence to prove those theories. Rule 23(a)(3)'s typicality requirement is thus satisfied.

### d. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," and the Court must determine whether: (1) the named plaintiffs' claims conflict with those of other class members; and (2) the named plaintiffs and proposed class counsel can demonstrate their ability to litigate the case vigorously and competently on behalf of the named and absent class members alike. *Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009). Both requirements are satisfied here.

First, DPPs and Lead Counsel have already demonstrated their ability to vigorously and competently represent both the named and absent class members alike through their actions in this case to date, including their thorough investigation and settlement with OPIS leading to the

12

detailed allegations set forth in the Complaint as well as their thorough investigation and settlement with Westlake. Further, Lead Counsel have appeared at multiple in-person conferences, coordinated with Defendants on consolidation and case deadlines, served discovery, analyzed the documents produced by OPIS, briefed the opposition to Defendants' motions to dismiss, and vetted potential class representatives. These facts, and Lead Counsel's financial ability to fund this litigation, led the Court to appoint Lead Counsel, *see* ECF No. 163. The DPP Settlement Class will likewise be well served by Lead Counsel as their advocates.

Bill Wagner & Son, Inc., Vitolite Electric Sales Co. and Hodges Supply Company as direct purchasers of allegedly price-fixed PVC Pipes and Fittings, share with all DPP Settlement Class members an overriding interest in obtaining the largest possible cash recovery and as extensive cooperation as possible to diligently press the case against the remaining Converter Defendants. Further, as demonstrated at the time they sought appointment, Lead and Liaison Counsel are qualified, experienced, and will continue to vigorously prosecute this case and efficiently litigate this matter for the best possible result for the DPP Class. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

### 2. The Proposed DPP Settlement Class Satisfies Rule 23(b)(3)

The proposed DPP Settlement Class also satisfies Rule 23(b)(3), which requires that "[q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Courts have observed that "[a] finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484. Moreover, in this particular context, the Supreme Court has recognized that "predominance is a test readily met in certain cases alleging

13

… violations of the antitrust laws." *Amchem*, 521 U.S. at 625. The DPP Settlement Class satisfies the predominance requirement because the core of this case involves common questions of law and fact, including whether Defendants' conduct violated antitrust laws and resulted in supracompetitive prices. *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (stating that in price-fixing conspiracy cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class") (citing cases). In addition, as noted above, there will not be a trial against Atkore, which provides further support for finding the predominance factor is met here.

This Settlement likewise satisfies the superiority factor because it will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Here, any given Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism, and settling the claims against Atkore on a class-wide basis saves both judicial and private resources, speeds DPP Settlement Class members' recovery, and provides substantial assistance to the DPP Settlement Class in pursuing their claims against the remaining Converter Defendants. The DPP Settlement Class meets Rule 23(b)(3)'s predominance and superiority requirements.

> **C.    The Proposed Form and Manner of Class Notice Are Appropriate, and Will Be Effectuated by JND Legal Administration, an Experienced Settlement Administrator**

Under Rule 23(e), class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court, and to notice of the final Fairness Hearing. *See* Manual for Complex Litigation, §§ 21.312, 21.633 (4th ed. 2005). For 23(b)(3) classes like this, pursuant to Rule 23(c)(2)(B), the Court must "direct to class members the best notice that is practicable

14

under the circumstances, including individual notice to all members who can be identified through reasonable effort." The two components of notice are: (1) the form of the notice, and (2) the manner in which notice is sent to class members. Both are satisfied here.

### 1. Form of Notice

The proposed forms of notice are based on notices approved by courts in this District in antitrust class actions, such as *Broilers*.[6] The proposed long-form notice (Exhibit B to the Declaration of Gina Intrepido-Bowden Regarding Settlement Notice Plan[7] (the "Intrepido-Bowden Decl.")) is designed to alert DPP Settlement Class members to the proposed Settlement by using a bold headline, and the plain-language text gives important information regarding the Settlement's terms, clearly stating that distribution of the proceeds of this settlement, the Westlake and OPIS settlements will occur after final approval of all three settlements, the method of objecting or excluding oneself from the Settlement and the consequences of doing so, and the binding effect of a final judgment on members of the DPP Settlement Class. Intrepido-Bowden Decl. ¶¶ 11-22. The proposed Summary Notice – the centerpiece of an extensive digital notice effort targeting likely members of the DPP Settlement Class – will take readers to a comprehensive settlement website and toll-free number where readers can get more detailed information about the Settlement, including (on the website) the Settlement Agreement itself and filings and pleadings relevant to the DPP litigation. *Id.* at Exhibit C, and ¶¶ 23-31.

---

[6] *See* Kaplan Decl. Exs. B, D-F.

[7] JND's experience and success as a court-appointed class settlement administrator is outlined at Intrepido-Bowden Decl., ¶¶ 3-9. As several courts in this District have recognized, the company and its team are well-qualified to be the court-appointed Settlement Administrator here. The costs of Class Notice will be drawn from the Settlement Fund maintained by proposed Escrow Agent Huntington, whose experience and qualifications are detailed in Kaplan Decl., Ex. H, and who DPPs and Lead Counsel respectfully request be appointed as Escrow Agent for the Settlement.

## 2.    Manner of Notice

The proposed notice plan is the same as the notice plan utilized for the OPIS and Westlake settlements, which have been approved by the Court.  In addition to the digital notice effort summarized above, it will give direct individual notice by U.S. mail to potential members of the DPP Settlement Class identified by name and mailing address in the customer lists the Converter Defendants have furnished, and will be asked to furnish to JND to effectuate notice.  *Id.* ¶ 17.[8] Numerous courts have approved near-identical notice plans as appropriately satisfying both due process and Rule 23, *see* footnote 6, *supra*.  DPPs and Lead Counsel respectfully suggest the Court do the same for this Settlement.

## D.    The Proposed Schedule Is Fair and Should be Approved

If the Court grants the motion, DPPs and Lead and Liaison Counsel propose the following schedule for the Settlement approval process:

| Event | Proposed Timing |
|---|---|
| Notice Plan Begins | 14 days after Converter Defendants' production of additional customer data to JND |

---

[8] The Converter Defendants' customer contact information is necessary for Class Notice. In connection with the OPIS settlement, Converter Defendants produced customer information to JND.  Because the DPP Settlement Class in the Atkore settlement is broader than that in the OPIS settlement, Converter Defendants will need to provide supplemental customer information to JND. DPPs will request that they do so voluntarily, and will seek Court assistance if needed.

Courts within this District have ordered non-settling antitrust defendants to produce customer contact information to effectuate notice in early settlements. *See, e.g.*, Kaplan Decl., Ex. I, *In re Broiler Antitrust Litigation,* 1:16-cv-08637, ECF No. 980 (N.D. Ill. June 22, 2018) ("Each Defendant to produce customer names, addresses, phone numbers and email addresses, to the extent the Defendant has that information in its structured transactional data or other sources as agreed, to Direct Purchaser Plaintiffs and the Settlement Administrator"). *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 67-68 (D.D.C. 2018) (granting class plaintiffs' request to order non-settling defendants "to provide Plaintiffs with e-mail customer contact information in order that Plaintiffs may give notice to possible class members," and noting that the "Non-Settling Defendants do not object to providing the e-mail addresses associated with the relevant tickets in their transactional data" so long as they had 30 days from the court's order to do so) (cleaned up).

16

| Event | Proposed Timing |
|---|---|
| Objection and Exclusion Deadline | 60 days after Notice Plan begins |
| Motion for Final Approval Filings | 14 days before Fairness Hearing |
| Fairness Hearing | 40 days after the Objection and Exclusion Deadline or as soon thereafter as is convenient for the Court |

This schedule is fair to DPP Settlement Class members because it provides ample time for consideration of the Settlement and to determine the course of action that they believe is best for themselves. The schedule also allows the full statutory period for Atkore to serve its Class Action Fairness Act notices, and for regulators to review the proposed Settlement and advise the Court of their view should they choose to do so.

## VI.    CONCLUSION

For the reasons stated above, DPPs respectfully request that the Court preliminarily approve the DPP Settlement Agreement, certify, for settlement purposes only, the proposed DPP Settlement Class, approve the proposed form and content of the Class Notice and the plan for issuing it, and enter the proposed schedule for implementing notice and setting the final approval hearing. DPPs also respectfully request that the Court appoint Kaplan Fox as DPP Settlement Class Counsel, Bill Wagner & Son, Inc., Vitolite Electric Sales Co. and Hodges Supply Company as the representatives of the DPP Settlement Class, JND Legal Administration as the Settlement Administrator, and The Huntington National Bank as the Escrow Agent.

Dated: April 29, 2026

Respectfully submitted,

*/s/ Robert N. Kaplan*

Robert N. Kaplan
Elana Katcher
Matthew P. McCahill
Carihanna Morrison
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor

17

New York, New York 10022
Tel: (212) 687-1980
rkaplan@kaplanfox.com
ekatcher@kaplanfox.com
mmccahill@kaplanfox.com
cmorrison@kaplanfox.com

Gary L. Specks
**KAPLAN FOX & KILSHEIMER LLP**
681 Prestwick Lane
Wheeling, Illinois 60090
Tel: (847) 831-1585
gspecks@kaplanfox.com

*Lead Counsel for the Direct Purchaser Plaintiff
Class*

Joseph M. Vanek
David Germaine
John P. Bjork
Allison G. Margolies
**SPERLING KENNY NACHWALTER, LLC**
321 N. Clark Street, Suite 2500
Chicago, Illinois 60654
Tel: (312) 641-3200
jvanek@sperlingkenny.com
dgermaine@sperlingkenny.com
jbjork@sperlingkenny.com
amargolies@sperlingkenny.com

Phillip F. Cramer
**SPERLING KENNY NACHWALTER, LLC**
1221 Broadway, Suite 2140
Nashville, Tenn. 37212
Tel: (312) 641-3200
pcramer@sperlingkenny.com

James Almon
**SPERLING KENNY NACHWALTER, LLC**
1616-D Metropolitan Cir.
Tallahassee, Florida 32308
Tel: (850) 942-4334
jalmon@sperlingkenny.com

*Liaison Counsel for the Direct Purchaser Plaintiff
Class*

18

Dianne M. Nast
Joseph Roda
Michael Ford
Michele Burkholder
Michael Tarringer
**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, Penn. 19107
Tel: (215) 923-9300
dnast@nastlaw.com
jnroda@nastlaw.com
mford@nastlaw.com
mburkholder@nastlaw.com
mtarringer@nastlaw.com

Joshua H. Grabar
Julia Varano
**GRABAR LAW OFFICE**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, Penn. 19103
Tel: (267) 507-6085
jgrabar@grabarlaw.com
jvarano@grabarlaw.com

Linda P. Nussbaum
Meghan J. Talbot
**NUSSBAUM LAW GROUP, P.C.**
1133 Avenue of the Americas, 31st Floor
New York, NY 10036
Telephone: (917) 438-9189
lnussbaum@nussbaumpc.com
mtalbot@nussbaumpc.com

Roberta D. Liebenberg
Jeffrey B. Gittleman
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com
jgittleman@finekaplan.com

Eric R. Lifvendahl
**LIFVENDAHL LAW, LLC**

19

265 Latrobe Avenue
Northfield, IL 60093
Tel : (847) 830-7002
eric@liflaw.com

Richard L. Coffman
**THE COFFMAN LAW FIRM**
3355 W. Alabama Street, Suite 240
Houston, Texas  77098
Tel: (713) 528-6700
rcoffman@coffmanlawfirm.com

Mitchell A. Toups
**Weller, Green, Toups & Terrell, LLP**
P.O.  Box 350 (490 Park St., Suite 111 - 77701)
Beaumont, TX 77704
(409) 832-1800
Fax:   (409) 832-8577
Email:  matoups@wgttlaw.com

*Counsel for the Direct Purchaser Plaintiff Class*

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 29, 2026, I caused true and correct copies of this brief and its accompanying declarations and exhibits to be served via the Court's CM/ECF system on all counsel of record.

*/s/ Robert N. Kaplan*
Robert N. Kaplan
