# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| *In re: PVC Pipe Antitrust Litigation* | Case No. 1:24-cv-07639 |
| THIS DOCUMENT RELATES TO: | Hon. LaShonda A. Hunt |
| DIRECT PURCHASER PLAINTIFF CLASS | |

**SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER
CLASS PLAINTIFFS AND ATKORE DEFENDANTS**

This Settlement Agreement is made and entered into as of April 28, 2026 ("Execution Date"), by and between Direct Purchaser Plaintiffs Bill Wagner & Son, Inc., Vitolite Electric Sales Co., and Hodges Supply Company ("DPPs"), individually and on behalf of the proposed DPP Settlement Class as defined below, and Atkore Inc., Atkore International, Inc., Atkore Plastic Pipe Corp., Atkore RMCP, Inc., and Allied Tube & Conduit Corporation (referred to collectively as "Atkore"). DPPs, on behalf of themselves and the proposed DPP Settlement Class, and Atkore are referred to collectively as the "Parties" or individually as a "Party."

This Settlement Agreement is intended to, and upon the Effective Date will, fully, finally, and forever resolve, compromise, discharge, and settle the claims of the DPP Settlement Class as to the Atkore Released Parties, subject to the terms and conditions set forth herein.

1.      General Definitions. The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

a.      "Action" means the consolidated litigation proceeding captioned *In re: PVC Pipe Antitrust Litigation*, 1:24-cv-07639, which is currently pending in the United States District Court for the Northern District of Illinois, including all consolidated actions, whether or not such

1

complaints were originally filed on separate dockets.

b.      "Affiliate" means with respect to any person, entity or company, a person, entity, or company that directly or indirectly controls, is controlled by or is under common control with such person, entity or company.

c.      "Class Notice" means any notice sent to the potential members of the DPP Settlement Class related to this Settlement Agreement, which was preliminarily approved by the Court pursuant to Federal Rule of Civil Procedure 23.

d.      "Complaint" means DPPs' Second Consolidated Amended Class Action Complaint filed with the Court in the Action on August 18, 2025 (Dkt. 390).

e.      "Confidential Letter Agreement" means that certain confidential letter agreement dated April 28, 2026, between DPPs and Atkore.

f.      "Court" means the United States District Court for the Northern District of Illinois and the Honorable LaShonda A. Hunt or her successors, or any other court in which the Action is proceeding.

g.      "Days," when used in this Settlement Agreement to specify a deadline or time period by which some event will occur, means the number of calendar days stated, excluding the day that triggers the period, except that if the last day is a Saturday, Sunday, or legal holiday, the period shall continue to run until the next day that is not a Saturday, Sunday, or legal holiday. But when a deadline or time period by which some event will occur in this Settlement Agreement is stated as a number of "Business Days," it shall mean the number of days, excluding the day that triggers the period, that are not a Saturday, Sunday, or legal holiday. "Legal holiday" has the same meaning as in Federal Rule of Civil Procedure 6(a)(6).

h.      "Defendant" means any named defendant in the Action; and "Converter Defendant" means any Defendant other than Oil Price Information Service, LLC.

i.      "Document" when capitalized shall have the same meaning as its meaning under Federal Rule of Civil Procedure 34.

j.      "DPP Settlement Class" means the class as set forth in Paragraph 5(a), including each member of such class.

k.      "DPPs" shall have the meaning as set forth on page one of this Settlement Agreement.

l.      "Effective Date" shall have the meaning set forth in Paragraph 9.

m.      "Execution Date" shall have the meaning as set forth on page one of this Settlement Agreement.

n.      "Escrow Account" means the interest-bearing escrow account established with the Escrow Agent at a bank approved by both Atkore and Interim Lead Counsel to receive the Settlement Amount and hold the Settlement Fund for the benefit of the DPP Settlement Class.

o.      "Escrow Agent" means the escrow agent approved by both Atkore and Interim Lead Counsel that establishes and maintains the Escrow Account.

p.      "Escrow Agreement" means an agreement among Atkore, the Escrow Agent, and DPPs (by and through Interim Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the DPP Settlement Class, as set forth in Paragraphs 10 and 11.

q.      "Final Approval" means an order and final judgment by the Court, containing the provisions contemplated in Paragraph 8(a)-(i), which finally approves this Settlement Agreement, including all of its material terms and material conditions without material modification, pursuant to Federal Rule of Civil Procedure 23, and directs immediate entry of a final judgment of dismissal with prejudice as to the claims by DPPs and the DPP Settlement Class against Atkore.

3

r.  "Interim Lead Counsel" means Kaplan, Fox & Kilsheimer LLP as appointed by the Court to represent a proposed class of direct purchasers of polyvinyl chloride pipe and/or polyvinyl chloride fittings (ECF No. 163).

s.  "NCSPs" means the Non-Converter Seller Purchaser Plaintiffs and proposed Non-Converter Seller Purchaser Plaintiff class, including Plaintiffs George Bavolak, Delta Line Construction Co., TC Construction, Inc., Blake Wrobbel, Stephen Bell, Bell Electric, LLC, Russell Jacobs, Kecia Newton, Alpha and Omega Development LLC, Eric Wasman, Adam Kennedy, My Flooring, Inc., and Victor Silva.

t.  "Non-Settling Defendants" means the Defendants in the Action that have not entered into a settlement agreement with DPPs.

u.  "Parties" and "Party" shall have the meaning set forth on page one of this Settlement Agreement.

v.  "Plaintiff" means any person or entity bringing claims in the Action.

w.  "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement, including all of its material terms and material conditions without material modification, pursuant to Federal Rule of Civil Procedure 23.

x.  "PVCPs and Fittings" means pipe and/or fittings made in whole or in part with polyvinyl chloride ("PVC"). For the avoidance of doubt, and without limitation, PVCPs and Fittings include PVC pipes of all kinds, including PVC pipes that carry municipal potable water (including, but not limited to, PVC pipes manufactured to AWWA C900 or ASTM D2241 standards), PVC pipes that carry wastewater to sewage treatment plants (including, but not limited to, PVC pipes manufactured to ASTM D3034 or ASTM F679 standards), PVC municipal drinking water pipe and PVC municipal sewer pipe, PVC plumbing pipe used for household and commercial plumbing, and PVC conduit used as electrical conduit pipe; detachable pieces of PVC plastic that

4

connect two or more PVC pipes, including couplings, elbows, tees, crosses, caps, plugs, adapters, bushings, nipples, and flanges; and any and all PVC pipe systems that connect PVC pipe segments and fittings into piping systems.

y.      "Released Claims" shall have the meaning set forth in Paragraphs 17 and 18.

z.      "Releasing Parties" means DPPs and all members of the DPP Settlement Class, each on behalf of itself and any person or entity claiming by or through it, including without limitation, their respective predecessors, successors, and assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, Affiliates, heirs, executors, devisees, administrators, officers, directors, stockholders, partners, members, managers, principals, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally, whether or not they object to this Settlement Agreement and whether or not they make a claim for payment from the Settlement Fund.

aa.     "Settlement Administrator" means the firm retained to disseminate the Class Notice, maintain the settlement website, handle communications related to claims, and administer payments from the Settlement Fund to the DPP Settlement Class, subject to approval of the Court.

bb.     "Settlement Agreement" means this settlement agreement between DPPs and Atkore, including all exhibits and attachments hereto, together with the Confidential Letter Agreement between DPPs and Atkore concerning the Settlement Agreement.

cc.     "Settlement Amount" means seventy-two million, five hundred thousand U.S. dollars ($72,500,000.00), which is the absolute amount Atkore shall pay or cause to be paid into the Escrow Account for the benefit of the DPP Settlement Class. The Settlement Amount includes up to

$250,000.00 in nonrefundable class notice and administration costs provided that such class notice and administration costs have been actually incurred but the Settlement Agreement is terminated in accordance with the provisions of Paragraphs 21 and 22. The Settlement Amount is inclusive of all DPP Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), and costs. For the avoidance of doubt, the Settlement Amount is the maximum amount that Atkore will be obligated to pay in consideration of this Settlement Agreement, and under no circumstances will Atkore be obligated to provide any additional monetary consideration in connection with this Settlement Agreement.

dd.     "Settlement Fund" means the funds held in the Escrow Account by the Escrow Agent for the benefit of the DPP Settlement Class. The Settlement Fund initially consists of the Settlement Amount, shall include any interest accruing within the Escrow Account, and shall be reduced by any payments made from the Settlement Fund as authorized by this Settlement Agreement and the Court. After the Effective Date, the Settlement Fund will be used to pay all valid settlement claims submitted by members of the DPP Settlement Class, as well as all Class Notice and settlement administration costs, and all attorneys' fees, expenses, and any service awards approved by the Court.

ee.     "Atkore" shall have the meaning as set forth on page one of this Settlement Agreement.

ff.     "Atkore Released Parties" means Atkore, together with any and all of its past, present, and future, direct and indirect, corporate parents (including holding companies), owners, equity holders, shareholders, subsidiaries, divisions, departments, related entities, Affiliates, associates, joint ventures, predecessors, successors, and assigns, and specifically includes, without limitation, all alleged subsidiaries and divisions of Atkore identified in the DPPs' Second Consolidated Amended Class Action Complaint; and, with respect to each of the foregoing,

6

each and all of their respective past, present, and future officers, executives, managing directors, directors, trustees, partners, managers, members, employees, contractors, servants, agents, attorneys, advisors, auditors, accountants, insurers, beneficiaries, executors, administrators, devisees, heirs, legal or other representatives, and assignees. Notwithstanding the foregoing, "Atkore Released Parties" does not include any Defendant currently named by DPPs in the Action other than Atkore (as defined above) and all alleged subsidiaries and divisions of Atkore identified in the DPPs' Second Consolidated Amended Class Action Complaint, either explicitly or as a third-party beneficiary.

2.      <u>Reasonable Efforts to Effectuate this Settlement</u>. DPPs and Atkore agree to undertake reasonable efforts to carry out the terms of this Settlement Agreement.

3.      <u>Non-Opposition to Preliminary Approval or Final Approval Motions</u>. Atkore will not oppose DPPs' motions seeking Preliminary Approval or Final Approval of this Settlement Agreement, so long as those motions comply with prevailing law and this Settlement Agreement and shall not seek or support any appeal of any order certifying the DPP Settlement Class for purposes of this settlement only.

4.      <u>Litigation Standstill</u>.

a.      Upon execution of this Settlement Agreement, other than as set forth in the cooperation provisions of Paragraph 12, DPPs and the DPP Settlement Class shall cease all litigation activities in the Action with respect to Atkore Released Parties except to the extent expressly authorized in this Settlement Agreement, and Atkore shall cease all litigation activities in the Action with respect to DPPs and the proposed DPP Settlement Class except to the extent expressly authorized in this Settlement Agreement. DPPs may not seek discovery from Atkore in the Action except as expressly authorized pursuant to the cooperation terms of this Settlement Agreement, but DPPs may participate in meet and confers which involve Atkore and other

Defendants and in the event that current or former employees of Atkore are noticed by other parties in the Action, other than the NCSPs, to appear for depositions, DPPs may attend the depositions and ask reasonable follow-up questions for up to 45 minutes on the record after the noticing party has completed its examination. This litigation standstill precludes DPPs or DPPs' counsel from directly assisting any other Plaintiff or Plaintiff class in this Action in prosecuting claims or pursuing relief that is solely applicable to Atkore, making oral arguments to the Court or conducting direct or cross-examination of witnesses on merits- or class-related issues that are solely applicable to Atkore (and in no event, will DPPs' attorneys be the attorneys arguing on behalf of other Plaintiffs or Plaintiff classes on issues that solely apply to Atkore), working with expert witnesses or on expert materials in connection with opinion testimony and disclosures that are specifically and exclusively related to Atkore, providing Documents for use in other cases in the Action that remain pending against Atkore that have not otherwise been produced in discovery, or through the provision of Documents, affidavits or declarations for use in other cases in the Action that remain pending against Atkore (not requested by Atkore) or by offering witnesses at trial (not requested by Atkore) in any trial in which DPPs are not one of the Plaintiffs with live claims against other Defendants. For the avoidance of doubt, none of the foregoing provisions shall be construed to prohibit DPPs and the proposed DPP Settlement Class from (1) seeking appropriate discovery from any other entity or person other than the Atkore Released Parties; (2) seeking to prove the conspiracy alleged in this Action, including through discovery, motion practice or oral argument; (3) presenting any analysis by DPPs' economic expert(s) that those experts deem necessary to show classwide impact or damages to DPPs, or to respond to Defendants' expert analyses concerning the same; and (4) arguing on behalf of DPPs on issues that are permitted by the terms of this standstill, even if those issues benefit other Plaintiffs or apply to Atkore. Nothing in this Settlement Agreement shall be construed to prohibit Atkore, in any way, from defending itself against claims brought by Plaintiffs other than DPPs or the DPP

Settlement Class in the Action or from coordinating with Non-Settling Defendants in the joint defense of such claims, including through the retention and disclosure of joint experts as to such claims, or from defending itself in proceedings outside of the Action. None of the foregoing will prevent Atkore from obtaining discovery from any Plaintiff or Plaintiff class member in this Action who is pursuing claims that are not released under this Settlement Agreement, even if such Plaintiff or Plaintiff class member is also a member of the DPP Settlement Class.

b. The Parties' litigation standstill shall cease in the event that this Settlement Agreement does not receive Preliminary Approval or Final Approval from the Court, or this Settlement Agreement is terminated.

c. The Parties' litigation standstill under this Settlement Agreement shall not prevent the Parties from raising disputes related to this Settlement Agreement.

5. Motion for Preliminary Approval. As soon as practicable, but no sooner than the Execution Date, DPPs will move the Court for Preliminary Approval of this Settlement Agreement.

a. DPP Settlement Class Certification. DPPs shall seek appointment of Interim Lead Counsel as DPP Settlement Class counsel for purposes of this Settlement Agreement, and certification in the Action of the following DPP Settlement Class for settlement purposes only:

> All persons and entities who purchased PVCPs and/or Fittings in the United States and its territories directly from one or more of the Converter Defendants (or from any of the Converter Defendants' parents, predecessors, subsidiaries, or Affiliates) at any time from January 1, 2020 through March 31, 2026 (the "Settlement Class Period"). Excluded from the DPP Settlement Class are Converter Defendants, and their parents, predecessors, subsidiaries, and Affiliates, and all federal government entities and instrumentalities of the federal government.

The DPP Settlement Class does not include any person or entity that has or will submit a valid and timely request for exclusion from the class that is approved by the Court.

b. Preliminary Approval Papers. Interim Lead Counsel shall provide to Atkore,

9

a reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval, including any proposed orders and the proposed Class Notices and notice plan, for its review. To the extent that Atkore objects to any aspect of the motion, it shall communicate such objection to Interim Lead Counsel, and the Parties shall meet and confer in good faith to resolve any such objection in advance of submission to the Court.

6.      Class Action Fairness Act ("CAFA") Notice. Within ten (10) Days of the filing of this Settlement Agreement in Court with the above-mentioned motion for Preliminary Approval, Atkore, at its sole discretion and expense, shall serve (or cause to be served) upon appropriate Federal and State officials all materials required pursuant to CAFA, and shall confirm to DPPs' Interim Lead Counsel via a filing on CM/ECF that such notices have been served.

7.      Settlement Class Notices. Along with the motion for Preliminary Approval, and subject to approval by the Court of the means for dissemination, the Interim Lead Counsel shall submit Class Notice to the DPP Settlement Class.

a.      To the extent that Atkore has objections to, or has edits or comments to, the proposed Class Notice, it shall communicate such objections, edits, or comments to Interim Lead Counsel, and the Parties shall meet and confer in good faith to resolve them in advance of the proposed Class Notice being submitted to the Court.

b.      Notice shall be reasonable under the circumstances based on information that the Parties have available. The DPPs will request that the Court approve a publication notice plan calculated to reach the greatest possible number of class members. Reasonable efforts shall also be made to provide individual notice of this Settlement Agreement to potential DPP Settlement Class members, which shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Interim Lead Counsel, to potential members of the DPP Settlement Class, in conformance with a notice plan to be approved by the Court, including a required provision in the

10

Class Notice that members of the DPP Settlement Class who wish to exclude themselves from the DPP Settlement Class must submit a valid and timely request for exclusion.

c. The Class Notice shall include a provision stating that requests to be excluded from the DPP Settlement Class can be made only by individuals or individual entities on behalf of themselves (and their subsidiaries) and personally signed by each individual person or entity requesting exclusion. Any DPP Settlement Class member, or Affiliate or assign thereof, who requests to be excluded from the Settlement Agreement with respect to an assigned claim must identify the assignor, the assignee, and the total value of direct purchases during the Settlement Class Period from each Converter Defendant that is subject to the assignment, and provide a copy of the assignment agreement. Copies of exclusion requests received by the Settlement Administrator during the exclusion period shall be provided to counsel for Atkore upon reasonable request and in any event within three (3) Days after the deadline to request exclusion from the Settlement Agreement ordered by the Court. Within three (3) Days of the deadline to request exclusion from the Settlement Agreement, the Settlement Administrator shall provide a list of all DPP Settlement Class members, including Affiliates and assigns thereof, who have submitted requests to be excluded from the Settlement Agreement.

d. Atkore shall have no responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the DPP Settlement Class or obtaining approval of this Settlement Agreement or administering this Settlement Agreement, other than the $250,000.00 in nonrefundable notice costs described in this Settlement Agreement. Interim Lead Counsel shall be responsible for any costs related to notice, administration, or settlement approval beyond the $250,000.00 in nonrefundable notice costs described in this Settlement Agreement.

e. The costs of notice or administration actually incurred that Interim Lead Counsel is permitted to withdraw from the Settlement Fund, under the terms of this Settlement

11

Agreement, up to $250,000.00, shall be nonrefundable, even if this Settlement Agreement is terminated according to its terms or is not granted Final Approval by the Court.

f.　　The Settlement Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval order, shall administer and calculate the claims, and shall oversee distribution of the Settlement Fund in accordance with the plan of distribution at a future date, under the continued supervision of the Court.

8.　　<u>Motion for Final Approval</u>. If the Court grants Preliminary Approval, then DPPs, through Interim Lead Counsel—in accordance with the schedule set forth in the Court's Preliminary Approval order—shall submit to the Court a separate motion for Final Approval of this Settlement Agreement. No less than fourteen (14) Days in advance of submission to the Court, Interim Lead Counsel shall provide Atkore its draft papers in support of the motion for Final Approval for Atkore's review. To the extent that Atkore objects to any aspect of the motion, it shall communicate such objection to Interim Lead Counsel, and the Parties shall meet and confer to resolve any such objection in advance of submission to the Court. The motion for Final Approval shall seek entry of an order and final judgment:

a.　　Certifying the DPP Settlement Class without material alteration pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) solely for the purpose of this Settlement Agreement;

b.　　Finally approving this Settlement Agreement as being a fair, reasonable, and adequate settlement for the DPP Settlement Class within the meaning of Federal Rule of Civil Procedure 23, and directing the implementation, performance, and consummation of this Settlement Agreement and its material terms and material conditions, without material modification of those terms and conditions;

c.　　Determining that the Class Notice provided to the DPP Settlement Class

12

constituted the best notice that is practicable under the circumstances, and constituted due and sufficient notice for all other purposes to all persons entitled to receive notice;

        d.      Dismissing DPPs' Complaint, and all other complaints asserted by Releasing Parties in the Action, with prejudice as to the Atkore Released Parties, without further costs or fees;

        e.      Discharging and releasing the Atkore Released Parties from all Released Claims;

        f.      Enjoining the Releasing Parties from suing any of the Atkore Released Parties for any of the Released Claims;

        g.      Finding that Atkore has provided the appropriate notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1711 *et seq.*;

        h.      Reserving and continuing exclusive jurisdiction over this Settlement Agreement for all purposes; and

        i.      Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Atkore shall be entered and shall be final and immediately appealable.

    9.    <u>Finality of Settlement</u>. This Settlement Agreement shall become final on the date when all of the following events have occurred, and shall be conditioned on the occurrence of all of the following events (the "Effective Date"):

        a.      Preliminary Approval;

        b.      Atkore pays the Settlement Amount into the Escrow Account;

        c.      Final Approval;

        d.      The time for appeal or permission to seek appeal from the Court's entry of Final Approval has expired, or, if Final Approval is appealed, any such appeal has been resolved

by agreement and withdrawn by the appealing party, or the appealed order has been finally affirmed on appeal and is no longer subject to further appeal or review; and

      e.     No party has exercised its right to terminate this Settlement Agreement.

10.     <u>Escrow Account</u>. Atkore and DPPs, by and through Interim Lead Counsel, shall enter into an Escrow Agreement with a third-party Escrow Agent establishing an Escrow Account and containing terms agreeable to all Parties. The Escrow Account shall be administered by the Escrow Agent pursuant to this Settlement Agreement and the Escrow Agreement, under the Court's continuing supervision, jurisdiction, and control.

      a.     Atkore shall have the right to approve: (a) the selection of the Escrow Agent; (b) the bank at which the Escrow Account will be held; and (c) any disbursement of funds from the Settlement Fund, prior to the Effective Date. Interim Lead Counsel's right to withdraw funds from the Settlement Fund prior to the Effective Date shall be limited to $250,000.00 for notice and administration costs, and no other withdrawals from the Settlement Fund shall be permitted prior to the Effective Date without approval from Atkore and the Court.

      b.     The Escrow Agreement shall be drafted to ensure that, in the event this Settlement Agreement terminates before the Effective Date, the Settlement Amount, plus any interest earned thereon (net of any taxes paid on such interest), less any nonrefundable notice and administration costs actually incurred pursuant to Paragraph 7(e) not to exceed $250,000.00, shall be promptly returned to Atkore by the Escrow Agent.

      c.     Interim Lead Counsel shall take all steps necessary to ensure that the Escrow Agent fulfills its obligations under the Escrow Agreement and this Settlement Agreement.

11.     <u>Settlement Payment</u>. In consideration for the release of Released Claims, the dismissal of the Action under the terms set forth herein, and the other material terms and material conditions of this Settlement Agreement and the Escrow Agreement, within twenty-one (21) Days

14

after Preliminary Approval is granted by the Court, and after receipt of wiring instructions, Atkore will pay the Settlement Amount into the Escrow Account by wire transfer pursuant to instructions provided by the Escrow Agent and confirmed by Interim Lead Counsel.

12.　　Non Monetary Consideration – Cooperation. Cooperation by Atkore is a material term of the Settlement Agreement and shall include the following upon Preliminary Approval:

　　a.　　Government Productions. Atkore will produce, electronically, any Documents and data already (or that are in the future) produced by Atkore to the U.S. Department of Justice ("DOJ") or any other governmental entity as part of its investigation into alleged antitrust violations in the sale of PVCPs and Fittings, any written analysis, interrogatory response, or other written submission (excluding ordinary correspondence related to productions, administrative issues, scheduling matters, or the like) provided to the DOJ or any other governmental entity in connection with its investigation into alleged antitrust violations in the sale of PVCPs and PVC Fittings. These productions will be made by the later of the date that is seven (7) Business Days after Preliminary Approval or five (5) Business Days after the materials are produced by Atkore to the DOJ or any other governmental entity.

　　b.　　Structured Data. Within fourteen (14) Days after Preliminary Approval, Atkore will produce transactional sales data related to the sale of PVCPs and Fittings in the United States from the period January 1, 2018, through December 31, 2025. To the extent it exists in structured form and is reasonably available on active systems, within ninety (90) Days after Preliminary Approval, Atkore will produce cost input data (including PVC resin, energy, labor, and all other material factors contributing to the cost of producing PVCPs and Fittings), P&L data, inventory data, and plant capacity and capacity utilization data related to the sale of PVCPs and Fittings products in the United States from the period January 1, 2018, through December 31, 2025. Atkore will respond to reasonable follow-up questions regarding the data. In addition, to the extent

15

that Atkore produces transactional sales data related to the sale of PVCPs and Fittings in the United States from earlier or later periods to other Plaintiffs in the Action, either pursuant to discovery in the Action or as a condition of any settlement, and DPPs do not receive a copy of such data at the time it is produced, Atkore will produce such data to DPPs within fourteen (14) Days after its production. Further, if Non-Settling Defendants produce transactional sales data to DPPs in the Action from periods prior to January 1, 2018 or subsequent to December 31, 2025, pursuant to a request for discovery issued under the Federal Rules of Civil Procedure, and Atkore is not otherwise required to provide comparable transactional sales data to DPPs pursuant to this Paragraph, then DPPs may issue a subpoena to Atkore pursuant to Federal Rule of Civil Procedure 45 seeking production of such data (and only such data) notwithstanding the standstill provisions of Paragraph 4. All objections that Atkore may assert to any such subpoena are expressly reserved.

        c.      <u>Documents from Centralized Sources</u>. To the extent they exist in active systems and repositories and are maintained in centralized non-custodial sources (e.g., Sharepoint locations) maintained by Atkore at its corporate headquarters and/or centralized servers, within ninety (90) Days after Preliminary Approval, Atkore will produce to DPPs the following go-get non-privileged Documents for the period from January 1, 2018 through December 31, 2025, related to PVCPs and Fittings sold in the United States:

        i.      Profit and loss data for each level (e.g., company-wide, plant-by-plant, etc.) for which it is maintained on as granular a basis as maintained (e.g., daily, weekly, monthly, or quarterly);

        ii.      Inventory data for each level (e.g., company-wide, plant-by-plant, etc.) for which it is maintained on as granular a basis as maintained (e.g., daily, weekly, monthly, or quarterly);

        iii.      Plant capacity and capacity utilization, on a plant-by-plant basis;

iv.       Investor relations reports related to prices or pricing of PVCPs and Fittings; and

v.       Board meeting agendas, books, presentations, and minutes related to prices or pricing of PVCPs and Fittings;

d.       Telephone Numbers. Within fourteen (14) Days after Preliminary Approval, Atkore will provide phone numbers and email addresses that Atkore has in its possession for all "C-suite" level leadership at Atkore, as well as Atkore employees with responsibility for pricing, sales and/or marketing of PVCPs and Fittings, during the time period January 1, 2018, through December 31, 2025. Atkore will not object to DPPs' subpoenas to third-party phone carriers for phone records relating to such phone numbers.

e.       Depositions. DPPs may take a total of up to four (4) depositions, each to last no more than seven (7) hours on the record. DPPs and NCSPs must jointly select at least two of those deponents, and up to two (2) other current or former Atkore employees may be selected separately by DPPs. Atkore will make any then-current employees noticed for deposition by DPPs available for deposition prior to the scheduled end of fact discovery. If DPPs take depositions of fewer than four (4) current employees of Atkore, DPPs may subpoena for deposition in the Action former employees of Atkore, whom they may select, for depositions pursuant to Federal Rule of Civil Procedure 45 provided that the total number of current and former employees of Atkore noticed for deposition by DPPs does not exceed four (4) (with at least two (2) of those current or former employees jointly selected by DPPs and NCSPs). For the avoidance of doubt, nothing herein shall require Atkore to produce for deposition former employees who are not within Atkore's control or prohibit Atkore's counsel from representing former employees in connection with such depositions.

17

f.  <u>Witnesses for Live Testimony at Trial</u>. Atkore will make available up to three (3) then-current employees, whom DPPs may select, to provide live testimony at trial if requested by DPPs assuming those individuals remain employed by Atkore at the time of any trial. This limitation does not apply to prohibit DPPs from calling former employees of Atkore who could be called at trial either by subpoena or who agree to voluntarily appear at trial; provided, however, that in no event shall DPPs call more than five (5) total then-current or former employees of Atkore to provide live testimony at trial. For the avoidance of doubt, this Paragraph shall not limit DPPs' ability to designate deposition testimony of any current or former Atkore witnesses for use at trial. Notwithstanding the foregoing, if DPPs and NCSPs proceed to trial jointly in the same trial, then the limits in this Paragraph shall be applicable to both DPPs and NCSPs collectively (and not cumulatively).

g.  <u>Custodial Documents</u>. DPPs will identify four (4) current or former employees from Atkore as Document custodians. DPPS and NCSPs must jointly select at least three (3) of those custodians, and up to one (1) other former or current employee may be selected separately by DPPs. For the avoidance of doubt, and notwithstanding any term set forth in Paragraph 12(k) below, any agreement by Atkore to produce custodial Documents from current or former employees to other Plaintiffs in the Action, whether pursuant to discovery or cooperation obligations, shall not enlarge the number of custodians that DPPs may select pursuant to this Paragraph. Atkore will produce non-privileged custodial Documents in the possession, custody, or control of Atkore that are responsive to agreed-upon search terms for the period from January 1, 2018, to December 31, 2025, and that are responsive to Plaintiffs' Revised First Set of Requests to Converter Defendants for the Production of Documents and Electronically Stored Information. Such production will further be limited to PVCPs and Fittings sold in the United States. DPPs will propose custodian and search terms to Atkore no later than twenty-eight (28) Days after

18

Preliminary Approval. DPPs and Atkore will confer in good faith and attempt to reach agreement on custodian and search terms. Any disputes regarding custodians or search terms will be submitted to Miles N. Ruthberg of Phillips ADR (the "Mediator") for final resolution. Atkore will produce custodial Documents by the later of sixty (60) Days after the expiration of the stay of discovery in the Action (ECF No. 690) or ninety (90) Days after the search terms are finalized.

h.      OPIS Communications. Atkore will produce all communications in any form with Donna Todd, Kathy Hall, Joe Link, Bobby Clark, or Ben Scribner of Oil Price Information Service, LLC located in the custodial files, to the extent within Atkore's possession, custody, or control, of the  four (4) current or former employees identified by DPPs (including those identified jointly with the NCSPs) as Document custodians pursuant to Paragraph 12(g) above.

i.      Authentication of Documents. Atkore will use reasonable efforts to provide declarations and/or affidavits (or, if specifically required by the Court, testimony) relating to whether up to 150 Documents identified by DPPs are authentic and otherwise admissible under, without limitation, Federal Rule of Evidence 803(6). For the avoidance of doubt, nothing in this provision shall: (1) require Atkore to accept DPPs' factual characterizations of Documents that Atkore has a good faith basis to dispute, such as, by way of example only, assertions that the Document reflects an admission by Atkore as a purported co-conspirator of a Non-Settling Defendant; or (2) be interpreted to enlarge the number of then-current employees that Atkore is required to provide for live trial testimony pursuant to Paragraph 12(f) above. If DPPs and NCSPs are in a joint trial, then they shall collectively identify no more than 200 Documents for authentication pursuant to this Paragraph.

j.      Confidentiality of Cooperation Materials. No cooperation provided by Atkore pursuant to this Settlement Agreement may be provided to a Non-Settling Defendant absent

the agreement of the Parties or an order of the Court. However, the foregoing shall not be construed to require Atkore to oppose any application to the Court by a Non-Settling Defendant for Documents or information provided by Atkore pursuant to the cooperation terms of this Settlement Agreement or to refuse to comply with any discovery request served by a Non-Settling Defendant for the production of such materials, provided that Atkore will provide notice of such discovery request to DPPs and allow DPPs fourteen (14) Days from receipt of notice to intervene and move for an order prohibiting Atkore's production of such materials.

k.    Production of Discovery and Cooperation to Other Plaintiffs. To the extent that Atkore responds to discovery, produces Documents, or provides proffers or other cooperation to any other Plaintiff in the Action, it will provide the same information to DPPs within five (5) Business Days thereof. For the avoidance of doubt, Atkore will provide DPPs with no less cooperation than it provides any other Plaintiff in the Action pursuant to a settlement including, without limitation, witnesses, declarations, affidavits, proffers, witness interviews, Documents and data.

13.    Reservation of DPP Settlement Class Members' Rights Against Other Defendants. No person other than the Atkore Released Parties is intended to be, or is, included within the scope of the release and covenant not to sue contained in Paragraphs 17-19. For the avoidance of doubt, neither any other Defendant in the Action, nor any other Defendant's parent(s) or any successor to the liability of such other Defendant in this Action is intended to be, or is, included within the scope of this release. Atkore's sales of PVCPs and Fittings to the DPPs and the DPP Settlement Class, and Atkore's alleged conduct, shall remain in the case against current and future Defendants other than Atkore Released Parties, as a potential basis for damages claims and shall be part of any joint-and-several liability claims against such other current or future Defendants in the Action.

14.    Qualified Settlement Fund. The Parties agree to treat the Settlement Fund as being

20

at all times a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Interim Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary persons, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. Interim Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (l)). Such returns shall reflect that all taxes (including any estimated taxes) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. With respect to the Settlement Fund, Atkore shall not be responsible for expenses, the filing of any tax returns, payment of any taxes of any kind, or any other responsibility related to taxes.

15.     Distribution of Settlement Fund to DPP Settlement Class. After the Effective Date, the Settlement Fund shall be distributed in accordance with a plan of distribution and plan of allocation to be approved by the Court. Atkore Released Parties shall have no responsibility or liability whatsoever for the allocation or distribution of the Settlement Fund or the determination, administration, or calculation of claims, and Atkore Released Parties shall not be responsible for any dispute relating to the allocation or distribution of any amounts, fees, or expenses, including attorneys' fees. Any issue or proceeding related to the distribution plan shall not impact this

Settlement Agreement, the Effective Date, the effectiveness of this Settlement Agreement's release of claims, or the finality of the Final Approval entered pursuant to this Settlement Agreement. Members of the DPP Settlement Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of any of the Released Claims against the Atkore Released Parties and shall not be entitled to any other payment or relief from the Atkore Released Parties. Except as provided by order of the Court, no DPP Settlement Class member shall have any interest in the Settlement Fund or any portion thereof. DPPs, members of the DPP Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of this Settlement Agreement to potential members of the DPP Settlement Class. Atkore Released Parties shall not be liable for any costs, fees, or expenses of any of DPPs' and Interim Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

16.     Fee Awards, Costs and Expenses, and Service Awards to DPPs.

a.      Interim Lead Counsel may apply for a fee award from the Settlement Fund and payment of litigation expenses and costs (plus any interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid), and service awards for DPPs to be paid from the Settlement Fund. Atkore Released Parties shall have no responsibility, financial obligation, or liability for any such fees, costs, expenses, or awards, which shall be paid exclusively from the Settlement Fund. Any issue or proceeding related to fee awards, costs and expenses, or service awards shall not impact this Settlement Agreement, the Effective Date, the effectiveness of this Settlement Agreement's release of claims, or the finality of the Final Approval entered pursuant to this Settlement Agreement.

b.      No fee award, award of litigation expenses and costs, or service award shall

22

be distributed from the Settlement Fund until after the Effective Date.

c. If a service award or award of fees, costs, or expenses is vacated, reversed, or reduced subsequent to the disbursement of any such award, the recipient of such award shall within ten (10) Days after receiving written notice from the Court or a Party of such vacatur, reversal, or reduction, make a refund to the Escrow Account in the amount of such vacatur, reversal, or reduction, plus interest earned (net of any taxes paid on such interest).

17. Settlement Release. In addition to the effect of any Final Approval entered in accordance with this Settlement Agreement, upon the Effective Date, and in consideration of payment of the Settlement Amount, the non-monetary consideration set forth in Paragraph 12 and other material terms and material conditions of this Settlement Agreement, the Releasing Parties agree and hereby effectuate that Atkore Released Parties shall be completely and fully released, acquitted, and forever discharged and dismissed from the Action, and any and all claims, cross-claims, counter-claims, liabilities, demands, actions, judgments, suits, causes of action, obligations, debts, setoffs, rights of recovery, or liabilities of any kind whatsoever (however denominated), whether class or individual, joint or several, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, or damages, whenever incurred, known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted that Releasing Parties, or each of them, ever had, now has, or hereafter can, shall, or may have against any of the Atkore Released Parties on account of, or arising out of, or relating in any way to, any of the claims in the Action are hereby released, whether such claims are actual or alleged, whether legal or factual, from the beginning of the world up to the date of this Settlement Agreement, including any conduct alleged and any cause of action asserted or that could have been alleged or asserted, based upon the allegations in the Action, including but not limited to those arising under any

23

federal or state antitrust, unfair competition, unfair practices, consumer protection, unjust enrichment, price discrimination, unitary pricing, or trade practice law, except for claims to enforce any of the terms of this Settlement Agreement (the "Released Claims"). **This release is intended to be and is as broad and comprehensive as the law allows, both as to its subject matter and as to the persons and entities released.** This release of the Released Claims is binding on the Releasing Parties regardless of whether or not any member of the DPP Settlement Class has objected to this Settlement Agreement or makes a claim for monetary benefits from the Settlement Fund, whether directly, representatively, derivatively or in any other capacity. Releasing Parties, or anyone representing them or acting on their behalf, shall not encourage any individual or entity to sue Atkore Released Parties over matters related in any way to the Released Claims. However, this release does not preclude DPP Settlement Class members from pursuing claims (a) arising in the ordinary course of business under Article 2 of the Uniform Commercial Code (pertaining to sales), other than claims based in whole or in part on any of the Released Claims, (b) solely for the purchase of PVCPs and Fittings made indirectly from one or more of the Converter Defendants (or from any of the Converter Defendants' parents, predecessors, subsidiaries, or Affiliates), or (c) for negligence, breach of contract, bailment, failure to deliver, lost goods, damaged or delayed goods, breach of warranty, or product liability claims, other than claims based in whole or in part on any of the Released Claims.

18.     Further Release. In addition to the provisions of Paragraph 17, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon the Effective Date, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT

THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY,

or conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. This provision includes without limitation 20-7-11 of the South Dakota Codified Laws providing:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to this Settlement Agreement, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, accrued or unaccrued, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to this Settlement Agreement or that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual and not a mere recital. For the avoidance of doubt, Releasing Parties also hereby agree that as of the Effective Date, they expressly waive and fully, finally, and forever settle and release any and all claims that would otherwise fall within the definition of Released Claims they may have against any Atkore Released Parties under §§ 17200, *et seq.*, of the California Business and Professions Code or any similar, comparable, or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the

25

definition of Released Claims.

19.    Covenant Not to Sue. Upon the Effective Date, Releasing Parties covenant not to sue or threaten to sue any of the Atkore Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. Upon the Effective Date, Releasing Parties shall be forever barred from initiating, asserting, maintaining, participating in, or prosecuting any and all Released Claims against any of the Atkore Released Parties. Subject to the provisions of Paragraph 12, Releasing Parties further agree that they shall not hereafter initiate or participate (absent a subpoena) in any claim, lawsuit, administrative or other proceeding of any type in any way arising out of, related to, or involving those claims or allegations which were the subject of the Action or that are released hereunder and that implicate Atkore Released Parties. Nothing in this provision is intended to restrict or prohibit cooperation with any governmental investigation or inquiry. If a Releasing Party violates the covenant not to sue by asserting or threatening to assert a Released Claim against any of the Atkore Released Parties, that Releasing Party will promptly reimburse the Atkore Released Parties for the reasonable attorneys' fees and costs actually incurred to defend against the improperly asserted Released Claim. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

20.    No Admission.

a.    Whether or not Preliminary Approval is granted, Final Approval is granted, or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission of liability or wrongdoing by any Party. The terms of this Settlement Agreement, and Atkore's agreement to those terms, do not constitute an admission as to any legal or factual issue, including the

26

certifiability of any class. The Parties agree that no Party shall be considered a prevailing party in the Action for any purpose.

b. This Settlement Agreement shall not be construed as an admission by Atkore of liability, wrongdoing, or violation of any statute, law, rule, or regulation, nor of the truth of the allegations against Atkore. This Settlement Agreement shall not be used as evidence of any of the foregoing for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

c. In the event this Settlement Agreement is terminated, then the pre-Settlement status of this Action shall be restored, and the Settlement Agreement shall have no effect on the rights of DPPs and the DPP Settlement Class or Atkore to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification or any other defense, which rights Atkore specifically and expressly retains, and there shall be no admission of any kind as to the certifiability of a litigation class or any other legal issue. For the avoidance of doubt, by stipulating for purposes of only this Settlement Agreement to the proposed DPP Settlement Class, Atkore does not admit that the Rule 23 requirements are met for purposes of certifying a litigation class, or that antitrust injury or damages are provable on a class-wide basis as to a litigation class, or that the DPP Settlement Class, as it is defined in Paragraph 5(a), would be appropriate for a litigation class.

21. <u>Termination Events and Rights</u>. This Settlement Agreement is conditioned upon entry of Preliminary Approval and Final Approval, and all terms and conditions thereof, without material changes, material amendments, or material modifications (except to the extent such changes, amendments, or modifications are agreed to in writing by the Parties).

a. <u>Termination Based on Lack of Preliminary Approval or Final Approval</u>. Either Party may elect to terminate this Settlement Agreement upon written notice to the other Party, after the

occurrence of any of the following: (i) if the Court declines to grant or enter Preliminary Approval or Final Approval of this Settlement Agreement; (ii) if the Court's order(s) granting Preliminary Approval or Final Approval of this Settlement Agreement include(s) material changes, material amendments, or material modifications of the terms and conditions of this Settlement Agreement, including but not limited to changes to the class definition; or (iii) if the Court's order(s) granting Preliminary Approval or Final Approval of this Settlement Agreement is (are) materially modified, reversed, or vacated on appeal.

b.        No Termination Due to Attorneys' Fees or Award. Notwithstanding the preceding subsection, and for the avoidance of doubt, the Parties may not terminate this Settlement Agreement because of the amount of any attorneys' fees or costs award authorized or denied by the Court; and any modification, reduction or rejection of the attorneys' fees or costs awarded by the Court, or any appellate court, shall not be a termination event, or in any way a basis for termination or rescission of this Settlement Agreement.

c.        Termination Based on Exclusion Process and Limit. The Parties' Confidential Letter Agreement identifies the total dollar value of PVCPs and Fittings directly sold by Atkore to each DPP Settlement Class member, net of credits and rebates (to the extent such information is reasonably available), during the period January 1, 2020, to March 31, 2026. By reference to these amounts, the Parties will calculate the percentage of Atkore's total sales of PVCPs and Fittings to DPP Settlement Class members, including Affiliates and assigns thereof, who timely and validly request to be excluded from the Settlement Agreement in accordance with the applicable provisions set forth in the Settlement Agreement, Class Notice, and Preliminary Approval order entered by the Court ("Opt-Out Percentage"). In addition to the termination events set forth in Paragraph 21(a), Atkore may, in its sole discretion, terminate this Settlement Agreement if the Opt-Out Percentage exceeds a certain threshold (defined as the "Opt-Out Termination Threshold") that is

28

set forth in the Parties' Confidential Letter Agreement. The Confidential Letter Agreement is available to the Court *in camera* upon request.

22. <u>Effect of Termination</u>. In the event that this Settlement Agreement is terminated, this Settlement Agreement shall become null and void, any Preliminary Approval entered by the Court and all of its provisions shall be vacated, any certification of a DPP Settlement Class for settlement purposes will be vacated, the Parties will be restored to their respective positions as if no Settlement Agreement had occurred, and the cooperation materials provided to DPPs by Atkore under Paragraph 12 will be destroyed or returned to Atkore within three (3) Days; provided, however, that the confidentiality obligations set forth in Paragraph 40 and Paragraph 12 shall survive any such termination. Further, in the event of termination by either Party under the terms of this Settlement Agreement, no term of this Settlement Agreement or any draft thereof, or any aspect of the negotiation, documentation, or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in or used as evidence for any purpose in any proceeding. Interim Lead Counsel shall take all steps necessary to ensure that the Escrow Agent returns all funds in the Escrow Account to Atkore, plus interest earned (net of any taxes paid on such interest), within 10 Days of written notice of termination, except for any funds from the Settlement Fund used for notice and administration purposes that are nonrefundable pursuant to Paragraph 7(e). None of the foregoing provisions shall be construed to prevent the Parties from agreeing to modify this Settlement Agreement to cure the reasons for any rejection, denial, modification, non-affirmance, or alteration of this Settlement Agreement by the Court or any appellate court.

23. <u>Choice of Law and Dispute Resolution</u>. Any disputes relating to this Settlement Agreement shall be governed by Illinois law without regard to conflicts of law provisions. Any and all disputes regarding this Settlement Agreement, including any aspect of its breadth, scope, interpretation, applicability, or the finalization of this Settlement Agreement, will be mediated in

good faith before the Mediator (as defined in Paragraph 12(g)) or another mediator upon whom the Parties mutually agree before any suit, action, proceeding, or dispute may be filed in the Court pursuant to the terms of this Settlement Agreement.

24.     Consent to Jurisdiction. Other than as set forth in Paragraph 23, the Parties and Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. Solely for purposes of such suit, action, proceeding, or dispute, to the fullest extent that they may effectively do so under applicable law, the Parties and Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing in this Paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to the claim brought in that forum or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

25.     Distribution of Settlement Fund to DPP Settlement Class. Members of the DPP Settlement Class shall look solely to the Settlement Fund for settlement and satisfaction of the Settlement Agreement or in connection with any of the Released Claims against Atkore Released Parties and shall not be entitled to any other payment or relief from Atkore Released Parties. Except as provided by order of the Court, no member of the DPP Settlement Class shall have any interest in the Settlement Fund or any portion thereof. DPPs, members of the DPP Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the DPP Settlement Class. Atkore and the other Atkore Released Parties shall

have no responsibility or liability for any costs relating to administration of the Settlement Fund and shall not be liable for any costs, fees, or expenses of any of DPPs' and Interim Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

26. Binding Effect. Upon the Execution Date, this Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein. This Settlement Agreement shall be binding upon, and inure to the benefit of, the Parties, the Releasing Parties, the Atkore Released Parties, Interim Lead Counsel, and their successors, assigns, and heirs. Without limiting the generality of the foregoing, upon Final Approval, each and every covenant and agreement herein by DPPs shall be binding upon all members of the DPP Settlement Class.

27. Sole Remedy. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any of the Atkore Released Parties.

28. Admissibility to Enforce Agreement. It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any purpose with respect to implementing or enforcing this Settlement Agreement.

29. Notices. All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b), or (c) shall be addressed:

If directed to DPPs or the DPP Settlement Class, to:

> Robert N. Kaplan
> Matthew P. McCahill
> Carihanna Morrison
> **KAPLAN FOX & KILSHEIMER LLP**
> 800 Third Avenue, 38th Floor
> New York, New York 10022
> Tel: (212) 687-1980

rkaplan@kaplanfox.com
mmccahill@kaplanfox.com
cmorrison@kaplanfox.com

If directed to Atkore, to:

Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
bmiller@mayerbrown.com
mprovance@mayerbrown.com

and

Atkore Inc. – Legal Department
16100 South Lathrop Avenue
Harvey, IL 60426
legal@atkore.com

or such other addresses as the Parties may designate, from time to time, by giving notice to all Parties hereto in the manner described in this Paragraph. **The Parties shall also provide copies of all notices by electronic mail**.

30. <u>No Unstated Third-Party Beneficiaries</u>. Except as expressly stated in this Settlement Agreement, no provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not one of the Parties, the Releasing Parties, the Atkore Released Parties, Interim Lead Counsel, or their successors, assigns, and heirs.

31. <u>No Party Is the Drafter</u>. None of the Parties shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation, or construction that would or might cause any provision to be construed against the drafter hereof.

32. <u>Authority</u>. Each of the Parties represents and warrants that it is authorized to enter into this Settlement Agreement, that it has authorized its undersigned counsel to enter into this

32

Settlement Agreement on its behalf, and that it intends this Settlement Agreement to be a valid and binding obligation, enforceable in accordance with its terms.

33. <u>Amendment and Waiver</u>. This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement. Except as expressly provided in this Settlement Agreement, nothing herein waives or limits the Parties' rights and remedies for any breach of this Settlement Agreement.

34. <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. DocuSign, facsimile, or electronic mail signatures shall be considered as valid signatures.

35. <u>Integrated Agreement</u>. This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, drafts, term sheets, and discussions, either oral or written, between the Parties, and reflects the final and binding agreement between the Parties. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

36. <u>Headings</u>. The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

37.     Voluntary Settlement. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties and reflects an agreement that was reached voluntarily, and no Party has entered this Settlement Agreement as the result of any coercion or duress. Each of the Parties warrants that it has read this Settlement Agreement, has had the opportunity to consult counsel about this Settlement Agreement, understands this Settlement Agreement's terms, and freely and knowingly enters into this Settlement Agreement.

38.     No Reliance. Each of the Parties acknowledges that (1) it is not entitled to any disclosure and is not relying upon any statement, understanding, representation, expectation, or agreement other than those expressly set forth in this Settlement Agreement; (2) it is relying upon its own knowledge and investigation, including formal and informal discovery in and relating to the Action, and upon the advice of its own counsel; (3) it knowingly waives any claim that this Settlement Agreement was induced by any misrepresentation or nondisclosure; and (4) it knowingly waives any right to rescind, amend, or avoid this Settlement Agreement based upon presently existing facts, known or unknown.

39.     Assignment. DPPs represent and warrant that they have not assigned any of the Released Claims to any other person or entity. DPPs and Interim Lead Counsel further represent and warrant that, to their knowledge, no member of the DPP Settlement Class has assigned any of the Released Claims to any other person or entity, and DPPs and Interim Lead Counsel covenant that they will not encourage, solicit, or assist any member of the DPP Settlement Class in assigning any of the Released Claims.

40.     Confidentiality. The Parties agree to keep the terms of this Settlement Agreement confidential until such time as DPPs seek Preliminary Approval of this Settlement Agreement in the Action, except as otherwise provided herein. Notwithstanding the foregoing: (1) Atkore may disclose the fact and terms of this Settlement Agreement to its attorneys, auditors, accountants, and

as necessary to satisfy regulatory and legal reporting obligations; and (2) Atkore may disclose the fact of this Settlement Agreement to other Non-Settling Defendants. The Parties may disclose the fact that they have entered into this Settlement Agreement as reasonably necessary to effectuate this Settlement Agreement. The Parties further agree to continue to maintain the confidentiality of all settlement discussions and communications exchanged in the course of reaching and entering into this Settlement Agreement, unless and until the Parties agree to disclose such information. The Parties agree that this Settlement Agreement will become public when it is filed with the Court as an exhibit to DPPs' motion for Preliminary Approval. The obligations of the Parties under this Paragraph and the confidentiality obligations set forth in Paragraph 12 shall survive any termination of this Settlement Agreement. Notwithstanding the foregoing, the Parties shall keep the terms of the Confidential Letter Agreement confidential and shall not disclose the terms of the Confidential Letter Agreement except to the Court *in camera* upon request.

41. <u>Privilege</u>. Nothing in this Settlement Agreement, or the negotiations or proceedings relating to the foregoing, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountant-client privilege, the attorney-client privilege, the joint litigant privilege, the common interest privilege, and the attorney work product privilege.

42. <u>Public Comments and Non-Disparagement</u>. DPPs and Interim Lead Counsel agree they will not disparage the Atkore Released Parties, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter. Atkore has not admitted any liability for the claims alleged in DPPs' complaint."

*     *     *     *     *

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

35

**[SIGNATURES ON NEXT PAGE]**

Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

**_Defendants Atkore Inc., Atkore_**
**_International, Inc., Atkore Plastic Pipe_**
**_Corp., Atkore RMCP, Inc., and Allied Tube_**
**_& Conduit Corporation_**

Dated: April 28, 2026

Robert N. Kaplan
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, New York 10022
Tel: (212) 687-1980
rkaplan@kaplanfox.com

**_Interim Lead Counsel for the Direct_**
**_Purchaser Plaintiff Class_**

Dated: April 28, 2026

37