**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *In re PVC Pipe Antitrust Litigation* | Case No. 1:24-cv-07639 |
| This Document Relates to: | Hon. LaShonda A. Hunt |
| Non-Converter Seller Purchaser Class | |

**MEMORANDUM OF LAW IN SUPPORT OF NON-CONVERTER SELLER
PURCHASER CLASS PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
<u>AGREEMENT WITH ATKORE DEFENDANTS AND RELATED RELIEF</u>**

**TABLE OF CONTENTS**

I.     **INTRODUCTION** ............................................................................................ 1

II.    **LITIGATION BACKGROUND** ................................................................... 3

III.   **SUMMARY OF THE SETTLEMENT NEGOTIATIONS AND AGREEMENT** ....... 6

IV.   **THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL** ............ 8

    A.   The Proposed Settlement Should Be Approved. ........................................... 10

        1.   Procedural Aspects of the Settlement Satisfy Rule 23(e)(2) .......................... 10

           a.   The Proposed Settlement Was Negotiated at Arm's Length ......................... 10

           b.   The Class Representatives and Interim Co-Lead Counsel
               Have Adequately Represented the Class ........................................................11

        2.   The Terms of the Proposed Settlement Are Fair, Reasonable,
           and Adequate ................................................................................................ 12

           a.   The Settlement Provides Substantial Relief, Especially
               in Light of the Costs, Risks, and Delay of Further Litigation ...................... 12

           b.   The Settlement Will Effectively Distribute Relief to the Class ..................... 15

           c.   Co-Lead Counsel Are Not Requesting Attorneys' Fees
               at this Time ................................................................................................... 16

           d.   Plaintiffs Have Identified All Agreements Made in Connection
               with the Settlement ....................................................................................... 16

            e.   The Settlement Treats Class Members Equitably Relative to
               Each Other .................................................................................................... 17

V.    **THE SETTLEMENT CLASS SHOULD BE CERTIFIED** ........................................ 17

    A.   The Settlement Class Satisfies the Requirements of Rule 23(a). ................ 18

    B.   The Settlement Class Satisfies Rule 23(b)(3). ............................................ 20

VI.   **THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN** .. 22

    A.   The Content and Form of the Proposed Notice Documents Are Fairly
       Balanced, Easy to Read, and Contain All The Rule 23 Notice Requirements. ............ 23

    B.   The Proposed Class Notice Plan Provides the Best Notice Practicable Under The
       Circumstances Of This Case. ....................................................................... 24

VII.  **APPOINTMENT OF CLASS NOTICE AND SETTLEMENT
       ADMINISTRATOR AND ESCROW AGENT** ........................................................ 26

VIII. **THE COURT SHOULD SCHEDULE A FAIRNESS HEARING** ............................. 27

IX.   **CONCLUSION** ................................................................................................ 28

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, Nos. 06 c 7023, 07 C
0412, 08 C 1832, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016)....................................................... 11

*Am. Int'l Grp. v. ACE INA Holdings, Inc.*,
Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ................................... 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................................................... 21

*Anderson v. Weinert Enters., Inc.*,
986 F.3d 773 (7th Cir. 2021)......................................................................................................... 19

*Aranda v. Caribbean Cruise Line, Inc*.,
No. 12 C 4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017) .......................................................... 24

*Armstrong v. Bd. of School Dirs. of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980).................................................................................................... 9, 11

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
784 F.2d 1325 (7th Cir. 1986)....................................................................................................... 14

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004).......................................................................................................... 22

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc*.,
502 F.3d 91 (2d Cir. 2007)............................................................................................................. 21

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ...................................................................................................................... 22

*Goldsmith v. Tech. Sols. Co.*,
No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)....................................................... 8

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018).................................................. 16

*Hughes v. Kore of Ind. Enter., Inc.*,
731 F.3d 672 (7th Cir. 2013).......................................................................................................... 24

*In re Amaranth Nat. Gas Commodities Litig.*,
269 F.R.D. 366 (S.D.N.Y. 2010)................................................................................................... 20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ................................................................................ 24

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ............................................................................. 14

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ...................................................................................... 13

*In re HealthSouth Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) ............................................................................. 17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018) ....................................................................... 19

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) ....................................................................... 10

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................................ 21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................ 14

*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) .................................................................... 9, 24

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) .................................................................................. 21

*In re Vitamin C Antitrust Litig.*,
  No. 06-MD-1738, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .............................. 14

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002) .................................................................................... 21

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ........................................................................................ 8

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
  264 F.R.D. 438 (N.D. Ill. 2009) .............................................................................. 9, 19

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ................................................................................. 19, 20

*Kramer v. Am. Bank & Tr. Co., N.A.*,
  No. 11 C 8758, 2017 WL 1196965 (N.D. Ill. Mar. 31, 2017) ................................... 19

*Lucas v. Vee Pak, Inc.*,
No. 12-CV-09672, 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ............................................... 15

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ....................................................................................... 22

*Phillips v. Sheriff of Cook Cnty.*,
828 F.3d 541 (7th Cir. 2016) ........................................................................................... 19

*In re TikTok, Inc., Consumer Privacy Litig.*,
617 F. Supp. 3d 904, 933 (N.D. Ill. 2022) ......................................................... 12, 25

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ........................................................................................ 8, 12

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ................................................................................... 19, 22

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Illinois, Inc.*,
97 F.R.D. 668 (N.D. Ill. 1983) ........................................................................................ 19

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
257 F.3d 256 (2d Cir. 2001) .......................................................................................... 14

*Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props., Inc.*,
No. 2:16-cv-206, 2019 WL 13037030 (M.D. Fla. Apr. 24, 2019) ................................ 17

*Yates v. Checkers Drive-In Rests., Inc.*,
No. 17 C 9219, 2020 WL 6447196 (N.D. Ill. Nov. 3, 2020) ....................................... 25

**Statutes**

28 U.S.C. § 1715(b), (d) ..................................................................................... 27, 28

**Rules**

Fed. R. Civ. P. 23.......................................................................................................Passim

Fed. R. Civ. P. 42(a) ....................................................................................................... 4

**Other Authorities**

4 Newberg on Class Actions, § 11.53 (4th ed. 2002)................................................... 23

4 William B. Rubenstein, Newberg On Class Actions §13:13 (5th ed. 2021) ............... 9

Manual For Complex Litigation (Fourth) §13.14 (2020) ............................................... 8

## I. INTRODUCTION

The Non-Converter Seller Purchaser Plaintiff ("NCSP") Class has reached a proposed settlement ("Settlement") with Defendants Atkore Inc., Atkore International, Inc., Atkore Plastic Pipe Corp., Atkore RMCP, Inc., and Allied Tube & Conduit Corporation ("Atkore").[1] In addition to $64 million in monetary relief, Atkore will provide extensive cooperation to NCSPs[2]—including production of documents from five document custodians, four depositions, three trial witnesses, all documents provided to the U.S. Department of Justice ("DOJ"), and assistance obtaining the admission of documents at trial. Settlement Agreement, ¶ 10; Joint Decl., ¶ 20.

The amount of this settlement is significant, particularly in light of Atkore's position among Defendants. Atkore is estimated to hold only a 6% to 7% market share of sales within the NCSP Class, and, unlike other Defendants, Atkore made only *de minimis* sales to Distributor Co-Conspirators. As a result, this settlement primarily resolves traditional indirect purchaser claims against Atkore, and the NCSP Class's potentially direct claims—arising from purchases through the Distributor Co-Conspirators—remain preserved for future resolution or trial against the remaining Defendants. Joint Decl., ¶¶ 6-7.

Given the significant monetary, cooperation, and other relief Atkore has agreed to provide, in the experienced opinion of Interim Co-Lead Counsel, the Settlement is fair, reasonable, and

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Settlement Agreement, dated April 28, 2026 ("Settlement Agreement" or "Settlement"), which is attached as Exhibit 1 to the Joint Declaration of Brian D. Clark and Karin E. Garvey in Support of Non-Converter Seller Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement with Atkore Defendants and Related Relief, filed concurrently herewith. Unless otherwise noted, ECF cites are to the docket in this Action, and all internal citations and quotations are omitted.

[2] The NCSP Class Named Representatives are Plaintiffs George Bavolak, Delta Line Construction Co., TC Construction, Inc., Blake Wrobbel, Stephen Bell, Bell Electric, LLC, Russell Jacobs, Kecia Newton, Alpha and Omega Development LLC, Eric Wasman, Adam Kennedy, My Flooring, Inc., and Victor Silva.

adequate to the Settlement Class and will substantially advance NCSPs' continued litigation against the remaining Converter Defendants. Joint Decl., ¶ 25; *see also* Settlement Agreement, at 2. Importantly, all commerce associated with the alleged conspiracy remains in the case, as the other Defendants remain jointly and severally liable for any damages caused by Atkore's conduct. Joint Decl., ¶ 6.

NCSPs now move the Court to (i) preliminarily approve the Parties' Settlement Agreement; (ii) preliminarily certify the proposed Settlement Class; (iii) appoint Interim Co-Lead Counsel as Settlement Class Counsel; (iv) appoint the NCSP Class Named Representatives as named representatives for the Settlement Class; (v) approve the proposed plan for disseminating notice to the Settlement Class; (vi) appoint the Settlement Administrator and Escrow Agent, including permitting NCSPs to withdraw from the Settlement Funds up to $325,000 without further approval for Settlement notice and administration costs; and (vii) set a Fairness Hearing for the Settlement.

As with the prior Oil Price Information Service, LLC ("OPIS") settlement, NCSPs propose deferring commencement of the claims process and distribution of the Settlement Fund in this case until later in the litigation and after Interim Co-Lead Counsel have had the opportunity to explore the possibility of additional settlements. This practical approach is often used in antitrust cases.[3] Further, discovery in this case will further guide the development of the plan of distribution and plan of allocation of the Settlement Fund. To that end, at an appropriate time, NCSPs will bring a motion for approval of a plan for allocation and distribution of the settlement funds.

---

[3] *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637 (TMD), ECF No. 462, at 2 (N.D. Ill. Aug. 8, 2017) (order granting preliminary approval of icebreaker settlement and deferral of notice and distribution plans) (Joint Decl., Ex. 2).

## II.    LITIGATION BACKGROUND

NCSPs are purchasers of PVC Pipe Systems manufactured by Converter Defendants[4] through a non-converter PVC Pipe seller in the United States between January 1, 2020, through the date of Preliminary Approval ("Settlement Class Period").[5] NCSPs bring their claims under Section 1 of the Sherman Act and under various state antitrust and consumer protection laws to address alleged anticompetitive conduct by Converter Defendants and Atkore. NCSPs allege that Converter Defendants conspired and combined to fix the price for PVC Pipes through the use of OPIS, a reporting service which, for a fee, provides pricing and market information to Converter Defendants. NCSPs allege that Converter Defendants fixed, stabilized, and raised the price of PVC Pipe to supracompetitive levels.

Co-Lead Counsel's extensive pre-suit investigation, done without any knowledge of the parallel investigation by the DOJ, led to the filing of the first three class action complaints in this consolidated action, alleging an industry-wide conspiracy involving Converter Defendants and Atkore. Joint Decl., ¶ 8. On August 23, 2024, Plaintiff George Bavolak filed the first of these lawsuits on behalf of himself individually and on behalf of a class of purchasers from non-converter sellers of PVC Pipe. ECF No. 1. Interim Co-Lead Counsel filed substantially similar actions, *Wrobbel* and *TC Construction*, in September 2024 on behalf of overlapping classes of purchasers from non-converter sellers of PVC Pipe. These cases were consolidated for pretrial

---

[4] Converter Defendants, also referred to herein as the "remaining Defendants" or "Non-Settling Defendants," are Cantex, Inc.; Charlotte Pipe & Foundry; Cresline Plastic Pipe Co., Inc.; Cresline-West, Inc.; Cresline-Northwest, LLC; Diamond Plastics Corporation; IPEX USA LLC; Pipelife Jetstream, Inc.; J-M Manufacturing Company, Inc. d/b/a JM Eagle; National Pipe & Plastics, Inc.; Northern Pipe Products, Inc.; Otter Tail Corporation; Prime Conduit, Inc.; Sanderson Pipe Corporation; Southern Pipe, Inc.; Westlake Corporation; Westlake Pipe & Fittings Corporation; and Vinyltech Corporation.

[5] The Execution Date of the Settlement Agreement was April 28, 2026.

purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. ECF No. 109, ¶ 2, *as amended*, ECF No. 165.[6]

On September 30, 2024, the Court granted NCSPs' motion (i) appointing Lockridge Grindal Nauen PLLP and Scott+Scott Attorneys at Law LLP as Interim Co-Lead Counsel and Cohen Milstein Sellers & Toll PLLC as Interim Liaison Counsel for a putative class consisting of "all purchasers of PVC Pipes through a non-converter seller" and (ii) consolidating all actions alleging such purchases under Interim Co-Lead Counsel's leadership. ECF No. 122, *as amended*, ECF No. 164.

On October 30, 2024, NCSPs filed the First Consolidated Class Action Complaint ("Complaint"). ECF Nos. 179 (sealed version) and 180 (public redacted version). The depth and detail of the allegations in the Complaint showcase Interim Co-Lead Counsel's extensive investigation, which spanned numerous fronts—legal, factual, and economic—and entailed substantial resources, in both attorney time and monetary expense. Interim Co-Lead Counsel held discussions with class members and other industry participants, developed sources, collected relevant information, retained expert economists, and conducted considerable industry research. Joint Decl., ¶ 9. On November 7, 2024, the DOJ's inquiry into price-fixing in the PVC Pipe market was publicly disclosed for the first time when Defendant Otter Tail revealed that it had received a federal criminal grand jury inquiry. Joint Decl., ¶ 10. Subsequently, Defendants Atkore and Westlake also confirmed that they too received a criminal grand jury subpoena. *Id.*

On May 5, 2025, following hard-fought settlement negotiations, NCSPs and DPPs informed the Court that they had reached proposed settlements with OPIS. ECF Nos. 282-83. The

---

[6] A related action, *Bill Wagner & Sons*, on behalf of direct purchaser plaintiffs ("DPPs") was subsequently related, reassigned, and consolidated. ECF No. 162. The Court appointed separate counsel to represent the DPP class. ECF No. 163.

OPIS settlement was executed on May 16, 2025. On June 6, 2025, in response to concerns regarding potential intraclass conflict within the NCSP class raised by proposed End-User Plaintiffs ("EUPs") class counsel, the Court created the EUP class which included: (1) all public water systems who purchased for end-use; (2) public wastewater systems who purchased PVC for end-use; (3) all suppliers of public energy or electricity, in connection with the supply of electricity for public consumption; or (4) individuals who purchased PVC product from a seller, who purchased indirectly from a Converter Defendant on. ECF No. 307.[7]

On July 17, 2025, the Court granted Preliminary Approval of NCSPs' settlement with OPIS. ECF No. 362. Subsequently, the Court approved the NCSP Notice Plan on July 31, 2025, ECF No. 374, and granted NCSPs' unopposed motion to modify the Notice Plan on January 12, 2026. ECF No. 621. A Fairness Hearing is scheduled for June 3, 2026. ECF No. 672.

The OPIS settlement provided a significant amount of cooperation, including thousands of emails, thousands of pages of handwritten pricing notes, and over 8,000 text messages from a senior editor of OPIS's *PVC & Pipe Weekly* report. That production enabled Interim Co-Lead Counsel to file a 265-page Second Consolidated Amended Class Action Complaint (ECF Nos. 394, 395), which extended the Class Period by a full year, expanded the alleged product market, traced the conspiracy back to 2017, added multiple additional Converter Defendants and Co-Conspirator Distributors, and pleaded the year-by-year mechanics of the alleged price-fixing conspiracy in granular detail.

---

[7] On June 23, 2025, the Court granted EUPs' motion appointing Interim Co-Lead Counsel for a putative class consisting of "end-users of PVC Pipe who purchased through a non-converter seller." ECF Nos. 307, 340.

All Defendants[8] moved to dismiss by November 11, 2025. *See* ECF Nos. 534, 538, 549, 552, 555, 567, 571, 575. All briefing on the motion to dismiss was completed by January 26, 2026. The Court has indicated that it is endeavoring to rule on the motions to dismiss by July 1, 2026. ECF No. 671.

### III.    SUMMARY OF THE SETTLEMENT NEGOTIATIONS AND AGREEMENT

NCSPs reached the Settlement Agreement with Atkore after hard-fought and arm's-length negotiations over the course of nearly three months. Joint Decl., ¶ 19. After a 10-hour in person mediation with Miles Ruthberg[9] on April 21, 2026, the parties reached a settlement fully resolving NCSPs' claims against Atkore, in exchange for a combination of monetary relief and substantial non-monetary consideration. *Id*.

First, Atkore is making a payment of $64,000,000. This Settlement provides substantial monetary relief to the NCSP Class on highly favorable terms, particularly given Atkore's position in the case and the early stage of the litigation. Joint Decl., ¶ 20.

Second, Atkore is providing NCSPs with extensive cooperation in their ongoing prosecution of claims against the remaining Defendants. *See* Settlement Agreement, ¶ 10. Atkore's cooperation includes providing NCSPs with: (a) four depositions; (b) three live trial witnesses, in the event that NCSPs' claims against any of the remaining Defendants proceed to trial; (c) all documents produced by Atkore to DOJ in connection with DOJ's investigation; (d) collection and

---

[8] Pre-Existing Defendants moved to dismiss on October 30, 2025; New Defendants moved to dismiss on November 11, 2025.

[9] The Parties selected Miles Ruthberg of Phillips ADR to serve as mediator. Mr. Ruthberg is a former Global Chair of Latham & Watkins LLP's Litigation & Trial Department and a law clerk to Justice Thurgood Marshall, who has personally closed over $4 billion in settlements across antitrust, securities, and complex commercial matters and is widely regarded as one of the preeminent mediators in the country. *See* Joint Decl., ¶ 19.

search of five document custodians' files that NCSP counsel selects; and (e) declarations to establish the authenticity and admissibility of Atkore's documents. *Id.*

Third, Atkore also agrees that, for a period of two years from the date of the entry of the Final Judgment, it will not engage in conduct that has been expressly determined in a final, non-appealable judgment entered in the Action to constitute a *per se* violation of Section 1 of the Sherman Act in a relevant market for PVC Pipe Systems. *Id.*, ¶ 32.

In consideration, NCSPs and the proposed Settlement Class agree, among other things, to release claims against Atkore that were, or could have been, asserted in the Action from January 1, 2020, through the date of Preliminary Approval. *Id.*, ¶¶ 14-16.

The Settlement Agreement also contains a termination provision that allows Atkore, at its sole discretion, to elect to terminate the Settlement Agreement if more than a specific threshold of NCSP class members opt out of the Settlement Class. Settlement Agreement, ¶ 20. The precise threshold of opt-outs needed to trigger the termination provision is contained in the Parties' Confidential Side Letter.[10] *Id.*

Subject to the approval and direction of the Court, the Settlement Sum (plus interest) will be used to: (1) pay for settlement notice and administration costs; (2) pay taxes and tax-related costs associated with the Escrow Account for the proceeds of the Settlement; (3) pay any attorneys' fees, costs, expenses, and service awards, as awarded by the Court pursuant to a separate application to be filed at a later date; and (4) distribute funds to claimants in accordance with a future plan for allocation and distribution to be approved by the Court. *Id.*, ¶¶ 1(w), 11-13.

---

[10] This Confidential Side Letter will be provided to the Court for *in camera* review upon request.

As set forth in the proposed notice documents (*see* Section VI *infra*) and the Settlement Agreement, $325,000 of the $64 million to be paid by Atkore is non-refundable, *id.*, ¶ 6(e), and NCSPs may withdraw that amount from the Settlement Fund, without further approval of the Court, to pay for actual costs of Settlement Class Notice and for Preliminary Approval and Final Approval of this Settlement Agreement. *Id.*, ¶ 6(d).

## IV.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Settlement is a strongly favored method for resolving class action litigation. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *1 (N.D. Ill. Oct. 10, 1995) ("[T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement.").

Rule 23(e) requires judicial approval of class action settlements in a two-step process. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). *First*, under Rule 23(e)(1), a court performs a preliminary review of the terms of the proposed settlement to determine whether it is sufficient to warrant notice to the class and a hearing. *Second*, under Rule 23(e)(2), after notice has been provided and a hearing held, a court determines whether to grant final approval of the settlement. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) §13.14 (2020).

A court should grant preliminary approval and authorize notice of a settlement to the class upon a finding that it "will likely be able" to: (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for settlement purposes. *See* Fed. R. Civ. P. 23(e)(1)(B). This standard codifies case law holding that preliminary approval is warranted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments

8

of the class, and falls within the range of possible [judicial] approval." 4 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:13 (5th ed. 2021) (alteration in original).[11]

> In considering whether final approval is likely, courts consider whether:
>
> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[12] At the preliminary approval stage, however, the purpose of the inquiry is only "'to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing, not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards.'" *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (quoting *Am. Int'l Grp. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011)). Because these factors are satisfied here, preliminary approval of the Settlement is warranted. Fed. R. Civ. P. 23(e)(1)(B).

---

[11] *See also Armstrong v. Bd. of School Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (the question at preliminary approval is "whether the proposed settlement is 'within the range of possible approval'"); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009) (a relevant consideration is "whether [the settlement] 'has no obvious deficiencies [and] does not improperly grant preferential treatment to class representatives or segments of the class'") (second alteration in original).

[12] Final approval will involve an analysis of the Rule 23(e)(2) factors and, to the extent they do not overlap, the Seventh Circuit's approval factors: (i) the strength of the case, balanced against the settlement amount; (ii) the defendant's ability to pay; (iii) the complexity, length, and expense of further litigation; (iv) the amount of opposition to the settlement; (v) the presence of collusion in reaching a settlement; (vi) the reaction of class members to the settlement; (vii) the opinion of competent counsel; and (viii) the stage of the proceedings. *See Armstrong*, 616 F.2d at 314.

A.      **The Proposed Settlement Should Be Approved.**

1.      **Procedural Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) Advisory Committee's Notes to 2018 Amendment.

a.      **The Proposed Settlement Was Negotiated at Arm's Length**

Pursuant to Rule 23(e)(2)(B), to determine whether a settlement is procedurally fair, courts evaluate the process undertaken to achieve it. Courts have found that a settlement arrived at after arm's-length negotiations by fully informed, experienced, and competent counsel may be properly presumed to be fair and adequate. *See, e.g.*, *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000), *aff'd sub nom. In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001).

Here, the Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). First, NCSPs' settlement posture was informed by Interim Co-Lead Counsel's extensive factual investigation that preceded the Settlement, including reviewing thousands of documents produced pursuant to the OPIS settlement, discussions with class members and other industry participants, developing sources, collecting relevant information, retaining expert economists, and conducting considerable industry research. Joint Decl., ¶ 18. Interim Co-Lead Counsel comprehensively vetted the factual record, analyzed Atkore's arguments and contrary facts, and thoroughly considered the costs and risks of ongoing litigation. Interim Co-Lead Counsel, who have extensive experience litigating antitrust class actions, were well informed of the strengths and weaknesses of the claims and defenses in this action, as well as the potential value in early cooperation from a Defendant situated at the center of the alleged conspiracy, and conducted the settlement negotiations seeking to achieve the best possible result for the Settlement

10

Class in light of the risks, costs, and delays of continued litigation. *Id*. Courts may give considerable weight to the opinion of experienced and informed counsel. *See, e.g.*, *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, Nos. 06 c 7023, 07 C 0412, 08 C 1832, 2016 WL 772785, at *12 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 325 (in assessing a class settlement, "the court is entitled to rely heavily on the opinion of competent counsel").

Second, the Parties' settlement negotiations were at arm's length (*see id.*, Joint Decl., ¶ 19). The Parties negotiated the Settlement over the course of several months after Atkore, through its experienced and respected counsel, approached NCSP Interim Co-Lead Counsel to initiate settlement discussions. The negotiations were hard-fought, over both monetary and non-monetary (*e.g.*, cooperation) components of a settlement. Over the course of a number of phone calls and a 10-hour in-person mediation with experienced mediator Miles Ruthberg, the Parties reached an agreement in principle reflected in a Settlement Agreement executed on April 28, 2026. At all times, counsel zealously advocated for their respective clients. *Id.*

Accordingly, the Settlement negotiations were procedurally fair, as the Settlement Agreement was entered into only after extensive factual investigation and legal analysis and was the result of extensive good faith negotiations between knowledgeable and skilled counsel.

### b. The Class Representatives and Interim Co-Lead Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) asks whether "the class representatives and class counsel have adequately represented the class." First, NCSPs and Interim Co-Lead Counsel have already demonstrated their ability to vigorously and diligently represent the absent class members through their actions in this case, including the thoroughness of their investigation, leading to the detailed allegations in the Complaint. In addition, Interim Co-Lead Counsel have appeared at multiple in-person hearings, coordinated with all parties on consolidation and case deadlines, ensured service of the complaints,

held a discovery conference, served discovery, vetted potential class representatives, reached a critical settlement with Defendant OPIS, drafted the detailed 265-page Second Consolidated Amended Class Action Complaint that substantially expanded the case, and briefed motions to dismiss. The proposed Settlement Class will likewise be well served by Interim Co-Lead Counsel as their advocates.

Second, there are no conflicts between NCSPs and absent class members. Any such potential concerns were resolved by the Court appointing separate Interim Co-Lead Counsel for the End User Class. *See* ECF Nos. 307, 340.

### 2. The Terms of the Proposed Settlement Are Fair, Reasonable, and Adequate

Rule 23(e)(2)'s factors (C) and (D) constitute the "substantive" analysis factors and examine "[t]he relief that the settlement is expected to provide to class members . . . ." Rule 23(e)(2) advisory committee's notes to 2018 amendment.

### a. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

Rule 23(e)(2)(C)(i) evaluates whether the "relief provided for the class is adequate," considering "the costs, risks, and delay of trial and appeal." One factor in this assessment is the plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. "Twenty years ago, in *Reynolds v. Beneficial National Bank*, the Seventh Circuit advised that, in making this inquiry, district courts should 'quantify the net expected value of continued litigation' by 'estimating the range of possible outcomes and ascribing a probability to each point on the range.'" *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 933 (N.D. Ill. 2022) (quoting *Reynolds*, 288 F.3d at 284–85). "More recently," however, "the Seventh Circuit has endorsed a less formulaic scrutiny of class action settlements when indicia of trustworthiness . . . work against any suggestion of impropriety." *Id.* at 934.

12

As discussed above, the Settlement provides $64 million and substantial cooperation for the class. Moreover, the Settlement was reached after months of negotiations and only after a 10-hour in-person mediation. There is a complete absence of any suggestion of impropriety with respect to this Settlement. Joint Decl., ¶ 19; *see In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.")

While NCSPs believe that their case is strong, any complex antitrust litigation is inherently costly and risky, and this Settlement mitigates that risk and protects the NCSP Class, enabling it to move forward more effectively against the remaining Defendants. Conversely, Atkore has neither conceded nor admitted liability concerning Plaintiffs' allegations that it entered into an agreement to reduce or suppress competition in the market for PVC Pipe Systems with Converter Defendants. Indeed, absent this Settlement, Atkore would vigorously defend this case. *See* Settlement Agreement, at 2-3. But in the interests of avoiding the risk and uncertainty of litigation and trial, Atkore has agreed to settle. *Id.*

NCSPs allege that Defendants engaged in an illegal price-fixing conspiracy that was operational as early as 2017 and fully implemented by January 1, 2020, through which Converter Defendants, Atkore, and their Co-Conspirator Distributors artificially inflated and stabilized PVC Pipe System prices at supracompetitive levels, exploiting supply chain disruptions from the COVID-19 pandemic. NCSPs allege that the conspiracy was carried out through direct communications among competitors and through coordinated information exchange via OPIS, which enabled competitors to share competitively sensitive pricing data, coordinate price increases, and signal future pricing intentions to maintain historically high profit margins even as

13

input costs and demand declined. NCSPs allege that this conspiracy resulted in PVC Pipe prices remaining approximately 3x-4.7x higher across municipal, plumbing, and electrical conduit applications, causing purchasers to pay artificially inflated prices and generating record profits for Converter Defendants, including Atkore, at the expense of free market competition.

While NCSPs will vigorously dispute any defenses that Defendants assert, this case will present complex issues of fact and law that will require extensive discovery and expert analysis to resolve. As numerous courts have recognized, "'Federal antitrust cases are complicated, lengthy[, and] . . . bitterly fought[,]' as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (internal citation omitted); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) (noting that "[a]ntitrust class actions are inherently complex, and this case in particular presented a number of complicated factual and legal issues").

Beyond the pleading stage, Atkore was certain to mount formidable defenses to fact discovery and class certification (including a potential interlocutory appeal to the Seventh Circuit). Atkore also would have undoubtedly asserted numerous arguments and defenses at summary judgment and trial. A jury trial might well turn on questions of proof, many of which would be the subject of dueling expert testimony, making the outcome of such a trial uncertain for both Parties. In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998); *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1333 (7th Cir. 1986) (noting that "[a]ntitrust cases are notoriously extended").

14

In contrast, the Settlement, if approved, would resolve NCSPs' claims against Atkore and provide a monetary benefit, extensive cooperation, and other relief to the Settlement Class. Critically, this Settlement does not reduce the damages available to the NCSP Class against the remaining Defendants. The other remaining Converter Defendants are jointly and severally liable for the full measure of treble damages, meaning the Class's recovery ceiling is entirely unaffected by this Settlement.

In addition to not affecting the overall damages, the Settlement will hasten and improve the Class's recovery by providing NCSPs with access to Atkore's information that likely would otherwise only be obtainable through protracted discovery, which has been stayed, in large part, for now. This provides an immediate strategic advantage. *See, e.g.*, *Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688, at *10 (N.D. Ill. Dec. 20, 2017) (noting that a "cooperation agreement will save the plaintiffs from trying to determine the right questions to ask the right people"). Further, NCSPs believe Atkore's cooperation will help streamline discovery, making the litigation more efficient against remaining Defendants. Joint Decl., ¶¶ 20-21.

### b.     The Settlement Will Effectively Distribute Relief to the Class

Rule 23(e)(2)(C)(ii) evaluates the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The Settlement Agreement provides that the Court-approved Settlement Administrator will administer and calculate the claims and oversee the distribution of the Settlement Fund in accordance with an allocation and distribution plan to be approved by the Court. Settlement Agreement, ¶¶ 1(s), 6.

At a future time, NCSP Interim Co-Lead Counsel will file a motion to approve a plan of allocation and distribution, which will seek preliminary approval of the (i) proposed plan of allocation and distribution of the Settlement Fund and (ii) plan for notifying the Settlement Class of the plan of allocation and distribution, and the process for making a claim. The NCSP Class

will be provided with an opportunity to object to the proposed plan of allocation and distribution at that time. NCSPs will then ask the Court to resolve any objections and permit the claims process to commence.

### c. Co-Lead Counsel Are Not Requesting Attorneys' Fees at this Time

Rule 23(e)(2)(C)(iii) evaluates the "terms of any proposed award of attorney's fees, including the timing of payment." Interim Co-Lead Counsel and NCSPs are not seeking an award of attorneys' fees, litigation expenses or costs, or service awards for the named representatives for the Settlement Class from the Settlement Fund at this time but will do so at a future time and will request up to one-third of the Settlement Sum (plus interest) as attorneys' fees and reimbursement of expenses.

### d. Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

Rule 23(e)(2)(C)(iv) evaluates "any agreement required to be identified under Rule 23(e)." In addition to the Settlement Agreement, the Parties have entered into a Confidential Letter Agreement the sole purpose of which is to give Atkore the option to terminate the Settlement if requests for exclusion from the Settlement Class exceed a certain agreed-upon numeric threshold. *See* Settlement Agreement, ¶ 20. This type of agreement is standard in class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *see also In re Turkey Antitrust Litig.*, No. 1:19-cv-08318 (KLH), ECF No.1100-1 at 23-24 (N.D. Ill. Jan. 15, 2025) (setting out settlement termination

16

rights in long-form settlement agreement between direct purchaser plaintiffs and Cargill) (Joint Decl., Ex. 3).[13]

### e. The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) evaluates whether "the proposal treats class members equitably relative to each other." Here, the substantial monetary recovery will be equitably distributed to Settlement Class Members. NCSPs are treated the same as all other Settlement Class Members and all share a common interest in obtaining Atkore's early and substantial cooperation to prosecute this case. Further, the release applies uniformly to all Settlement Class Members and does not affect the apportionment of the relief. *See* Settlement Agreement, ¶¶ 14-15. Finally, all Settlement Class Members will receive further notice and an opportunity to object to a proposed plan of allocation and distribution.

## V. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The second part of the approval process is to determine whether the Action may be maintained as a class action for settlement purposes under Rule 23. *See* Fed. R. Civ. P.

---

[13] The Parties agree to provide the Confidential Letter Agreement to the Court *in camera* upon request. Settlement Agreement, ¶ 20. Confidential letter agreements are routinely used in class action settlements to specify the precise opt-out threshold. *See In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250, 250 n.4 (11th Cir. 2009) ("The Stipulation included a "blow provision," granting HealthSouth the opportunity to withdraw from the proposed settlement if a certain undisclosed number of class members opted out of the Partial Settlement," and noting "the threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."); *Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props., Inc.*, No. 2:16-cv-206, 2019 WL 13037030, at *9 (M.D. Fla. Apr. 24, 2019) ("Here, the only agreement made in connection with the Settlement Agreement is a side letter between Class Counsel and Defendants' Counsel identifying the number of opt-outs that would allow Defendants to invalidate the Settlement Agreement under Section 9.4. The side letter does not impact the fairness of the Settlement Agreement because it does not contain any relevant information for the Settlement Class and therefore the Court finds that this factor weighs in favor of a finding that the Settlement Agreement is fair and adequate.").

17

23(e)(1)(B)(ii). At the preliminary approval stage, the Court should determine whether it "will likely be able" to certify the proposed Settlement Class at final approval. Fed. R. Civ. P. 23(e)(1)(B).

The Settlement Class NCSPs ask the Court to approve is provided for in Paragraph 5 of the Settlement Agreement:

> All entities and persons who purchased PVC Pipe Systems in the United States between January 1, 2020 through Preliminary Approval (1) directly from a seller that purchased PVC Pipe Systems from a Converter Defendant that was (2) manufactured by a Converter Defendant.
>
> Specifically excluded from the Settlement Class are (1) the following categories of purchasers: (a) All public water systems that purchased PVC Pipe Products for end-use, including in connection with the treatment or supply of water; (b) All public wastewater systems that purchased PVC Pipe Products for end-use, including for the collection, disposal, or treatment of wastewater; (c) All suppliers of public energy or electricity that purchased PVC Pipe Products for end-use, including in connection with the supply of electricity for public consumption; or (d) All purchasers of PVC Pipe Products that purchased from a seller who purchased the product indirectly from a Converter Defendant; (2) Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any Affiliate, legal representative, heir, or assign of any Defendant, (3) any federal government entities, (4) any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any business majority-owned by any such person, and (5) and the following alleged co-conspirators: Core & Main Inc., Ferguson Enterprises, Inc., Fortiline Waterworks, Hajoca Corporation, Porter Pipe & Supply Co., and United Pipe & Steel Corp.

This definition meets the requirements of Fed. R. Civ. P. 23(e)(1)(B).

## A. The Settlement Class Satisfies the Requirements of Rule 23(a).

Rule 23(a) requires for class certification that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical . . .; and (4) the representative parties will fairly and adequately protect the interests of the class.

18

*First*, Rule 23(a)(1)'s numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is typically satisfied where there are more than 40 class members. *See Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11 C 8758, 2017 WL 1196965, at *4 (N.D. Ill. Mar. 31, 2017); *see also Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). Here, the Settlement Class consists of millions of members. Accordingly, the numerosity requirement is met.

*Second*, Rule 23(a)(2)'s commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions "need not address every aspect of the plaintiffs' claims," but they "must 'drive the resolution of the litigation.'" *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 553 (7th Cir. 2016). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Kaufman*, 264 F.R.D. at 442 (characterizing Rule 23(a)(2)'s commonality requirement as a "'low . . . hurdle'"). Commonality is regularly found in antitrust cases because questions of the existence, nature, and scope of an antitrust conspiracy are common. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 590 (S.D.N.Y. 2018) (stating that "the existence of a conspiracy is a common question").

Here, the claims present common questions of law and fact, including whether Atkore, Defendants, and their co-conspirators engaged in a conspiracy to artificially inflate and stabilize the price of PVC Pipe Systems. *See, e.g.*, *Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Illinois, Inc.*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy."). In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class including: (1) the identities of the

19

participants in the alleged agreement; (2) the duration of the alleged agreement and the acts performed by Defendants and Co-conspirators in furtherance of the agreement; (3) whether the conduct of Defendants and their Co-conspirators, as alleged in the Complaint, caused injury to the business or property of NCSPs and other class members; (4) the effect of the alleged conspiracy on the prices of PVC Pipe in the United States during the Class Period; and (5) the appropriate class-wide damages. Accordingly, the Settlement Class satisfies the commonality requirement of Rule 23(a)(2).

*Third*, Rule 23(a)(3)'s typicality requirement is satisfied if a plaintiff's claims arise from the same "event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Keele*, 149 F.3d at 595. Here, NCSPs' claims are typical of the Settlement Class's claims because NCSPs allege the same unlawful course of conduct harmed all Settlement Class Members. *See In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 376 (S.D.N.Y. 2010) (stating that "the typicality requirement may be satisfied where 'injuries derive from a unitary course of conduct by a single system.'"). Therefore, typicality is established.

*Fourth*, Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." For the reasons stated in § IV.A.1.a., *supra*, the adequacy requirement is satisfied.

## B.    The Settlement Class Satisfies Rule 23(b)(3).

The Settlement Class satisfies Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

20

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class Members in a single adjudication. Predominance is "'a test readily met in certain cases alleging . . . violations of the antitrust laws.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 108 (2d Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Here, each element of the Plaintiffs' antitrust claims—collusion, causation and impact, and damages—would be proven through common evidence. *See In re Vitamin C Antitrust Litig*., 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (stating that in price-fixing conspiracy cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class.") (citing cases). The existence and scope of Atkore and Defendants' alleged conspiracy to fix prices for PVC Pipe Systems can be established by common evidence, such as OPIS's PVC & Pipe Weekly reports and communications by OPIS with Converter Defendants, price increase announcement and implementation letters issued by Converter Defendants, Converter Defendants' public statements and investor presentations about their price increases, internal corporate documents and communications reflecting pricing strategy and coordination, communications between Converter Defendants, and deposition testimony of Defendants' employees. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("Courts repeatedly have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present."). In other words, proof of the alleged conspiracy "will focus on the actions of the defendants, and, as such, proof for these issues will not vary among class members." *In re Vitamins Antitrust Litig*., 209 F.R.D. 251, 264 (D.D.C. 2002). Further, class-wide impact, causation, and damages can also be demonstrated using

predominantly common evidence, including through expert testimony and modeling that relies on market and transaction data, which is common to all members of the Settlement Class.

A class action is the superior method for the fair and efficient adjudication of these claims. NCSPs' claims are shared by millions of other Settlement Class Members nationwide. The resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23'") (alteration in original). Further, it is unlikely that many, if any, Class Members would be willing or able to pursue relief on an individual basis. *See Suchanek,* 764 F.3d at 760 (holding that superiority demonstrated "because no rational individual plaintiff would be willing to bear the costs of this lawsuit"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

Thus, Rule 23(b)(3)'s predominance and superiority requirements are satisfied.

## VI. THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN

NCSPs respectfully request the Court's approval of the Settlement Class Notice Plan, which will inform the Settlement Class Members of the Settlement and their rights. NCSPs have retained Kroll Settlement Administration ("Kroll") to administer the Notice Plan and the Settlement. As discussed in detail below, Kroll has developed a multi-method campaign for the Notice Plan based on similar notice campaigns previously approved by other Courts in this District. Ultimately, "the form and content of the class notice is committed to the sound discretion of the court." *Mangone v. First USA Bank*, 206 F.R.D. 222, 231 (S.D. Ill. 2001).

**A.      The Content and Form of the Proposed Notice Documents Are Fairly Balanced, Easy to Read, and Contain All the Rule 23 Notice Requirements.**

Notice to a class certified under Rule 23(b)(3), whether litigated or by virtue of settlement, requires that:

> [t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any members who request exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The manner of the notice is reasonable "if it may be understood by the average class member." 4 NEWBERG ON CLASS ACTIONS, § 11.53 (4th ed. 2002).

The Class Notice documents conform to the seven plain language requirements of Rule 23(c)(2)(B). They provide the following information to the Certified Class: (1) the nature of the action and the Settlement; (2) the definition of the Settlement Class; (3) the Settlement Class's claims, issues, and defenses; (4) that any Settlement Class member may enter an appearance through an attorney if the member so desires; (5) that the Court will exclude from the Settlement Class any Settlement Class member who requests exclusion; (6) the time and manner for requesting such exclusions; and (7) the binding effect of a class judgment on Settlement Class members under Rule 23(c). *See* Declaration of Christie Reed ("Reed Decl."), ¶¶ 7-16, Exs. 2-3. As such, the Class Notice documents provide the required information to the Settlement Class about the Settlement. Moreover, the Notice Documents avoid legalese in favor of modern language and direct Settlement Class Members to a toll-free number and the case-specific website maintained by Kroll for purposes of providing information about the case to the Settlement Class. *Id*.

23

**B.    The Proposed Class Notice Plan Provides the Best Notice Practicable Under the Circumstances of this Case.**

Rule 23(c)(2)(B) requires the Court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 676 (7th Cir. 2013) (holding that the federal law requires only the best notice that is practicable under the circumstances). Such notice may be by "United States mail, electronic means, or other appropriate means," including by publication. Fed. R. Civ. P. 23(c)(2)(B); *see Aranda v. Caribbean Cruise Line, Inc*., No. 12 C 4069, 2017 WL 818854, at *2 (N.D. Ill. Mar. 2, 2017) (holding that publication is permissible if class members are not reasonably identifiable), *affirmed sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018). The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii); *see also In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 352 (N.D. Ill. 2010). Additionally, the Settlement Class is entitled to receive notice of the Settlement in a reasonable manner. *See* Fed. R. Civ. P. 23(e)(1)(B). This requirement is satisfied by providing the best notice practicable under the circumstances. *See In re TikTok, Inc.*, 565 F. Supp. 3d at 1084.

The proposed Detailed Notice (Reed Decl., Ex. 2) and Email Notice (*Id.*, Ex. 3) objectively and neutrally apprise recipients of (among other disclosures): (i) the nature of the Action; (ii) the definition of the Settlement Class; (iii) the claims and issues involved; (iv) that a Settlement Class Member may enter an appearance through an attorney if desired; (v) that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and the procedures and deadlines for doing so); (vi) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B); and (vii) the deferral of distribution of Settlement Funds

24

until after approval of a plan of allocation and distribution, with a further opportunity to object to the allocation and distribution process.

As explained in the Declaration of Christie Reed, Kroll (the proposed Settlement Administrator, *see* Section VII *supra*), has designed a proposed Notice Plan that provides individual, direct email notice to all reasonably identifiable Settlement Class Members, combined with a state-of-the-art media campaign including internet, social media, and paid search advertising. Reed Decl., ¶¶ 18-31; *see* Fed. R. Civ. P. 23(e)(1) (calling for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal").

As set forth in the Reed Declaration, the Settlement Administrator will provide individual direct email notice to Settlement Class Members.[14] The Email Notice will direct recipients to the case-specific Settlement Website, which will include the Detailed Notice as well as additional information and documents (including the pleadings and various Court orders) relating to the case. Reed Decl., Ex. 3. The Settlement Administrator will utilize best practices to increase deliverability and avoid spam and junk filters. The Settlement Administrator will track the deliverability of email notices sent and provide statistics on the number of undeliverable email notices, opened emails, and click-throughs to the settlement website and attempts to resend any undeliverable email notices. Reed Decl., ¶ 12.

Additionally, the Settlement Administrator will establish paid media, digital and social media, and earned media programs which will attempt to provide notice to Settlement Class Members who do not receive direct notice. Reed Decl., ¶¶ 16-27, Ex. 4 (digital ads notices), Ex. 5 (press release).

---

[14] Courts permit notice by email. *See, e.g.*, *In re TikTok, Inc.*, 617 F. Supp. 3d at 920; *Yates v. Checkers Drive-In Rests., Inc.*, No. 17 C 9219, 2020 WL 6447196, at *5 (N.D. Ill. Nov. 3, 2020).

The Notice Plan outlined above includes individual, direct notice to all reasonably identifiable Settlement Class Members combined with a media campaign consisting of state-of-the-art internet advertising, a robust social media campaign, and a paid search campaign. Reed Decl., ¶ 9. Accordingly, NCSPs respectfully request that the proposed forms of Notice and the Notice Plan be approved.

## VII.    APPOINTMENT OF CLASS NOTICE AND SETTLEMENT ADMINISTRATOR AND ESCROW AGENT

NCSPs move the Court for an order appointing the necessary administrators to implement Settlement Class Notice and the Settlement Agreement. First, NCSPs respectfully request the Court to appoint Kroll as the Settlement Administrator of the Class Notice Plan and the Settlement. Kroll is an experienced national class action notice provider and settlement administrator. *See* Reed Decl., Ex. 1. Kroll has committed that notice of the Atkore Settlement will not exceed a cost of $220,200, excluding the cost of distribution that will be paid from the Settlement at a later time. Reed Decl., ¶ 31.

Second, Interim Co-Lead Counsel propose Huntington National Bank ("HNB") to serve as Escrow Agent, having the duties and responsibilities as described in the Settlement Agreement. HNB was established in 1866, holds over $60 billion in assets, and has more than 700 branches nationwide. HNB's National Settlement Team has handled more than 1,000 settlements for law firms, claims administrators, and regulatory agencies. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 2:17-md-02785, ECF No. 2590-1 (D. Kan.) (preliminary approval motion seeking appointment of Huntington Bank as escrow agent) (Joint Decl., Ex. 4); *id.* at ECF No. 2594 (order granting preliminary approval) (Joint Decl., Ex. 5); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503, ECF No. 1145 (D. Mass. Apr. 5, 2018) (appointing Huntington Bank as escrow agent) (Joint Decl., Ex. 6). The

26

Court previously appointed Huntington as Escrow Agent in connection with the OPIS Settlement. ECF No. 362.

## VIII. THE COURT SHOULD SCHEDULE A FAIRNESS HEARING

The last step in the settlement approval process is the Fairness Hearing. There, the Court may hear all the evidence necessary to evaluate the proposed Settlement. Proponents of the Settlement may explain and describe the terms and conditions of the Settlement and offer argument in support of the Settlement's approval. Additionally, members of the Settlement Class, or their counsel, may be heard regarding the proposed Settlement, if they choose. NCSPs propose the following schedule of events necessary for disseminating Notice to the Settlement Class and the Fairness Hearing.

| DATE | EVENT |
|---|---|
| 10 days after the filing of this Motion for Preliminary Approval | Atkore Defendants shall file via ECF confirmation of the provision of notice to government regulators pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d) |
| Within 28 days of an order granting Preliminary Approval of this Motion | Settlement Administrator to commence direct email notice and commence implementation of publication notice plan |
| 60 days after commencement of Notice | Last day for Settlement Class Members to: (1) request exclusion from the Settlement; (2) file objections to the Settlements, and (3) file notices to appear at the Fairness Hearing |
| 3 days after last day to request exclusion from the Settlement | Settlement Administrator to provide Atkore Defendants with a list of all persons and entities who have timely and validly requested exclusion from the Settlement Class |
| 14 days before the Fairness Hearing | Co-Lead Counsel shall file a motion for Final Approval of the Settlements and all supporting papers, providing a list of all timely and valid exclusions from the Settlement Class and/or Settlement (as well as all rejected exclusion requests), and Co-Lead Class Counsel and Atkore Defendants may respond to any objections to the proposed Settlement |

| DATE | EVENT |
|---|---|
| 30 days after the last day to request exclusion from the Settlement Class and/or Settlements or as soon thereafter as may be heard by the Court | Fairness Hearing regarding the Settlement[15] |

## IX. CONCLUSION

For all the foregoing reasons, NCSPs respectfully request that the Court: (i) preliminarily approve the Parties' Settlement Agreement; (ii) preliminarily certify the proposed Settlement Class; (iii) appoint Interim Co-Lead Counsel as Settlement Class Counsel; (iv) appoint the NCSP Class Named Representatives as named representatives for the Settlement Class; (v) approve the proposed plan for disseminating notice to the Settlement Class, including allowing NCSPs to seek contact information for NCSP Settlement Class Members; (vi) appoint the Settlement Administrator and Escrow Agent, including permitting NCSPs to withdraw from the Settlement Funds up to $325,000 without further approval for Settlement notice and administration costs, and (vii) set a Fairness Hearing for the Settlement.

---

[15] Under CAFA, the Court may not issue an order giving final approval to a proposed settlement earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with notice of these proposed Settlements. *Id*. at 28 U.S.C. § 1715(d). Under the Settlement Agreement, within 10 days of the filing of this motion, Atkore Defendants will serve upon the appropriate state officials and the appropriate federal official the CAFA notice required by Section 1715(b). This schedule will allow the Court to schedule a Fairness Hearing as NCSPs propose in the schedule above, in conformance with CAFA's requirements.

Dated: April 29, 2026

Respectfully submitted,

**LOCKRIDGE GRINDAL NAUEN PLLP**

/s/ *Brian D. Clark*
Brian D. Clark (IL Bar No. 6350416)
Simeon A. Morbey (MN #0391338)
Laura M. Matson (MN #0396598)
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
(612) 339-6900
bdclark@locklaw.com
samorbey@locklaw.com
lmmatson@locklaw.com

Kyle J. Pozan (IL Bar No. 6306761)
Consuela Abotsi-Kowu (MN #0505682)
1165 N. Clark Street, Suite 700
Chicago, IL 60610
(312) 205-8968
kjpozan@locklaw.com
cmabotsi-kowu@locklaw.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

/s/ *Karin E. Garvey*
Karin E. Garvey (N.D. Ill. Bar No. 2997831)
Brian M. Hogan (N.D. Ill. Bar No. 6286419)
The Helmsley Building
230 Park Ave., 24th Floor
New York, NY 10169
(212) 223-6444
kgarvey@scott-scott.com
brian.hogan@scott-scott.com

Patrick J. Coughlin (N.D. Ill. Bar No. 90785466)
600 W. Broadway, Suite 3300
San Diego, CA 92101
(619) 233-4565
pcoughlin@scott-scott.com

Patrick McGahan *(*admitted *pro hac vice)*
Michael Srodoski (admitted *pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
(860) 537-5537
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

*Interim Co-Lead Class Counsel for Non-Converter Seller Purchasers*

29