# Exhibit 1

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *IN RE PVC PIPE ANTITRUST LITIGATION*, | Case No. 1:24-cv-07639 |
| This Document Relates To: | Hon. LaShonda A. Hunt |
| Non-Converter Seller Purchaser Action | |

**SETTLEMENT AGREEMENT BETWEEN NON-CONVERTER SELLER
PURCHASERS AND ATKORE**

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of April 28, 2026 ("Execution Date"), by and between the Non-Converter Seller Purchasers ("NCSPs"),[1] through Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class (as hereinafter defined), and Atkore Inc., Atkore International, Inc., Atkore Plastic Pipe Corp., Atkore RMCP, Inc., and Allied Tube & Conduit Corporation and all of their predecessors, successors, assigns, and Affiliates (as hereinafter defined) (including without limitation any Affiliates who are alleged co-conspirators); and any and all past, present, and future parents, owners, subsidiaries, divisions, departments (collectively referred to as "Settling Defendant" or "Atkore"). NCSPs, on behalf of themselves and the Settlement Class, and Atkore are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, NCSPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Action (as hereinafter defined), among other things, that Atkore participated in a conspiracy—with other Defendants (as hereinafter defined)

---

[1] As used herein, "NCSPs" means Plaintiffs George Bavolak, Delta Line Construction Co., TC Construction, Inc., Blake Wrobbel, Stephen Bell, Bell Electric, LLC, Russell Jacobs, Kecia Newton, Alpha and Omega Development LLC, Eric Wasman, Adam Kennedy, My Flooring, Inc., and Victor Silva.

1

and alleged non-Defendant co-conspirators—from at least January 1, 2020 through the present to fix, raise, maintain, and stabilize the price of PVC Pipe Systems (as hereinafter defined);

WHEREAS, Interim Co-Lead Counsel have been appointed by the Court to represent, on an interim basis, the putative class of purchasers of PVC Pipe Systems from non-converter sellers (as defined in Paragraph 5);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Atkore in any way arising out of or relating in any way to the purchase from a non-converter seller of PVC Pipe Systems (as hereinafter defined) produced, processed or sold by Atkore or any of the Defendants or their alleged co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations, including mediation with a nationally recognized and highly experienced mediator, on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the Settlement (as hereinafter defined);

WHEREAS, NCSPs have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of NCSPs to enter into this Settlement Agreement with Atkore to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of NCSPs and the Settlement Class;

WHEREAS, NCSPs and Interim Co-Lead Counsel believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable and adequate compensation for the Settlement Class to release, settle and discharge their claims that they were overcharged by the alleged anticompetitive conduct of which Atkore is accused;

WHEREAS, Atkore, notwithstanding its belief that the claims that are or could be asserted by NCSPs against it are without merit, that it has legitimate defenses to any such claims, and that it would ultimately prevail at trial on such claims, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, and thereby put this controversy to rest;

WHEREAS, NCSPs, notwithstanding their belief that they would ultimately prevail at trial and establish liability by Atkore for the conspiracy they have alleged, enter into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation; and

WHEREAS, both Parties wish to preserve all arguments, defenses and responses to all claims in the Action, including any arguments, defenses and responses to any proposed litigation class proposed by NCSPs in the event this Settlement does not obtain Final Approval;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the NCSPs be settled, compromised, and dismissed on the merits with prejudice as to the Atkore Released Parties (as hereinafter defined), subject to Court approval, and that the Atkore Released Parties be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

1.      General Definitions. The terms used below and elsewhere in this Settlement Agreement with initial capital letters shall have the following meanings ascribed to them.

        a.      "Action" means the putative class action filed by NCSPs in the above-captioned proceeding as well as all putative class action and direct action lawsuits which have been consolidated for pretrial purposes before the Hon. LaShonda A. Hunt, in the United States District Court for the Northern

3

District of Illinois under the title *In re PVC Pipe Antitrust Litigation*, along with any others that are pending or which may be filed based on substantially similar allegations.

b.    "Affiliate" means with respect to any person, entity or company, a person, entity, or company that directly or indirectly controls, is controlled by or is under common control with such person, entity or company.

c.    "Atkore Released Parties" means, collectively and individually, Atkore (as defined above) together with any and all of Atkore's past, current, and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities, Affiliates, associates, divisions, joint ventures, predecessors, and successors, specifically including, without limitation, all alleged subsidiaries, Affiliates, and divisions of Atkore named by NCSPs in the Action; and each of their respective past or present, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the foregoing, "Atkore Released Parties" does not include any Defendant other than Atkore (as defined above) and the alleged subsidiaries, Affiliates, and divisions of Atkore named by NCSPs in the Action, either explicitly or as a third-party beneficiary.

d.    "Complaint" means the NCSPs' Second Consolidated Class Action Complaint (ECF No. 394).

4

e.      "Confidential Letter Agreement" means that certain confidential letter agreement dated April 28, 2026, between NCSPs and Atkore.

f.      "Court" means the United States District Court for the Northern District of Illinois and the Honorable LaShonda A. Hunt or her successors, or any other court in which the Action is proceeding.

g.      "Defendant" means any named defendant in the Action; and "Converter Defendant" means any named defendant in the Action other than Oil Price Information Service, LLC. For the avoidance of doubt, "Defendant" includes any Defendants that have been dismissed from the Action.

h.      "DPPs" means Direct Purchaser Plaintiffs and the proposed Direct Purchaser Plaintiff class, including Bill Wagner & Son, Inc., Vitolite Electric Sales Co., and Hodges Supply Company.

i.      "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Atkore for the benefit of the Settlement Class.

j.      "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and NCSPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9.

k.      "Fairness Hearing" means a hearing by the Court to determine whether the Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

5

l.      "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement, including all of its material terms and conditions without modification, and the Settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Atkore with prejudice from the Action.

m.      "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) no appeal or petition to seek permission to appeal the Court's Final Approval has been made within the time for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) Days after entry of the order of Final Approval; or (2) if any timely appeals from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise, or (ii) the date the Final Approval is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

n.      "Interim Co-Lead Counsel" means Lockridge Grindal Nauen PLLP and Scott+Scott Attorneys at Law LLP as appointed by the Court on an interim basis to represent the putative class of non-converter seller purchasers of PVC Pipe Systems.

o.      "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

6

p. "Released Claims" shall have the meaning set forth in Paragraph 14.

q. "Releasing Parties" means, collectively and individually, NCSPs, the Settlement Class, and all members of the Settlement Class, including the NCSPs, each on behalf of themselves and their respective predecessors, successors, and all of their respective past, present and future (i) direct and indirect parents, subsidiaries, associates and Affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in the Settlement.

r. "Settlement" means the settlement of all claims that are or could have been asserted by NCSPs and the Settlement Class in the Action and specifically includes, without limitation, the Released Claims, according to the terms set forth in the Settlement Agreement.

s. "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer payments from the Settlement Fund to the Settlement Class, subject to approval of the Court.

7

t.   "Settlement Class" means the class defined in Paragraph 5, including each member of such class.

u.   "Settlement Class Notice" means any notice sent to the Settlement Class pursuant to Preliminary Approval or otherwise approved by the Court pursuant to Federal Rule of Civil Procedure 23.

v.   "Settlement Class Period" means January 1, 2020, through Preliminary Approval.

w.   "Settlement Fund" means $64,000,000.00 (sixty-four million U.S. dollars) (the "Settlement Sum"), the amount Atkore shall pay or cause to be paid into a non-reversionary settlement fund. The Settlement Fund will be held in an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9, and shall include any interest accruing within the interest-bearing Escrow Account. The Settlement Fund will be used to pay all valid settlement claims submitted by Settlement Class members, as well as all settlement notice and administration costs, and all attorneys' fees and any service awards approved by the court. For the avoidance of doubt, the Settlement Sum is the maximum amount that Atkore will be obligated to pay in consideration of the Settlement, and under no circumstances will Atkore be obligated to provide any additional monetary consideration in connection with the Settlement.

x.   "PVC Pipe Systems" consist of (1) Pipes and (2) Fittings made in whole or in part with polyvinyl chloride ("PVC") that connect PVC Pipe segments

8

into piping systems. For the avoidance of doubt, PVC Pipe Systems include PVC Pipes sold without PVC Fittings, and vice-versa, and include all products made in whole or in part from PVC that are defined as "PVCPs" and "Fittings" in the DPP Second Consolidated Amended Class Action Complaint (ECF No. 390) filed in the Action and that are defined as "PVC Pipe Products" in the Consolidated Class Action Complaint for the End-User Class (ECF No. 398) field in the Action.

y. "Days," when used in this Settlement Agreement to specify a deadline or time period by which some event will occur, means the number of calendar days stated, excluding the day that triggers the period, except that if the last day is a Saturday, Sunday, or legal holiday, the period shall continue to run until the next day that is not a Saturday, Sunday, or legal holiday. But when a deadline or time period by which some event will occur in this Settlement Agreement is stated as a number of "Business Days," it shall mean the number of days, excluding the day that triggers the period, that are not a Saturday, Sunday, or legal holiday. "Legal holiday" has the same meaning as in Federal Rule of Civil Procedure 6(a)(6).

2. The Parties' Efforts to Effectuate this Settlement Agreement. The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3. Litigation Standstill.

a. Upon execution of this Settlement Agreement, NCSPs and the Settlement Class shall cease all litigation activities in the Action with respect to the

9

Atkore Released Parties except to the extent expressly authorized in this Settlement Agreement, and Atkore shall cease all litigation activities in the Action with respect to NCSPs and the Settlement Class except to the extent expressly authorized in this Settlement Agreement.

b. Atkore may not seek discovery from NCSPs in the Action, but Atkore may participate in meet and confers which involve NCSPs and other plaintiffs. This litigation standstill precludes Atkore or Atkore's counsel from directly assisting any other Defendant or alleged co-conspirator in this Action in prosecuting claims or pursuing relief that is solely applicable to NCSPs, making oral arguments to the presiding court or conducting direct or cross-examination of witnesses on merits- or class-related issues that are solely applicable to NCSPs (and in no event, will Atkore's attorneys be the attorneys arguing on behalf of other plaintiffs or plaintiff classes on issues that solely apply to NCSPs), working with expert witnesses or on expert materials in connection with opinion testimony and disclosures that are specifically and exclusively related to NCSPs, providing documents for use in other cases in the Action that remain pending against NCSPs that have not otherwise been produced in discovery, or through the provision of documents, affidavits or declarations for use in the NCSP case (not requested by NCSPs) or by offering witnesses at trial (not requested by NCSPs) in any trial in which NCSPs are the only plaintiffs. Nothing in this Settlement Agreement shall be construed to prohibit Atkore, in any way, from defending itself against claims brought by plaintiffs other than NCSPs

10

or the Settlement Class in the Action or from coordinating with non-settling Defendants in the joint defense of such claims, including through the retention and disclosure of joint experts as to such claims, or from defending itself in proceedings outside of the Action. None of the foregoing will prevent Atkore from obtaining discovery from any plaintiff or plaintiff class member in this Action who is pursuing claims that are not released under this Settlement Agreement, even if such plaintiff or plaintiff class member is also a member of the Settlement Class.

c.  NCSPs may not seek discovery from Atkore in the Action except as expressly authorized pursuant to the cooperation terms of the Settlement Agreement, but NCSPs may participate in meet and confers which involve Atkore and other Defendants. This litigation standstill precludes NCSPs or NCSPs' counsel from directly assisting any other plaintiff or plaintiff class in this Action in prosecuting claims or pursuing relief that is solely applicable to Atkore, making oral arguments to the presiding court or conducting direct or cross-examination of witnesses on merits- or class-related issues that are solely applicable to Atkore (and in no event, will NCSPs' attorneys be the attorneys arguing on behalf of other plaintiffs or plaintiff classes on issues that solely apply to Atkore), working with expert witnesses or on expert materials in connection with opinion testimony and disclosures that are specifically and exclusively related to Atkore, providing documents for use in other cases in the Action that remain pending against Atkore that have not otherwise been produced in discovery, or through the

11

provision of documents, affidavits or declarations for use in other cases in the Action that remain pending against Atkore or by offering witnesses at trial in any trial in which NCSPs are not one of the plaintiffs with live claims against other Defendants. For the avoidance of doubt, none of the foregoing provisions shall be construed to prohibit NCSPs and the proposed Settlement Class from (1) seeking appropriate discovery from any other entity or person other than the Atkore Released Parties; (2) seeking to prove the conspiracy alleged in this Action, including through discovery, motion practice or oral argument; (3) presenting any analysis by NCSPs' economic expert(s) that those experts deem necessary to show classwide impact or damages to NCSPs, or to respond to Defendants' expert analyses concerning the same; and (4) arguing on behalf of NCSPs on issues that are permitted by the terms of this standstill, even if those issues benefit other plaintiffs or apply to Atkore.

d.      The Parties' litigation standstill shall cease in the event that this Settlement Agreement does not receive Preliminary Approval or Final Approval from the Court, or this Settlement Agreement is terminated.

e.      The Parties' litigation standstill under this Settlement Agreement shall not prevent the Parties from raising disputes related to this Settlement Agreement.

4.      <u>Motion for Preliminary Approval</u>. As soon as practicable, but no sooner than the Execution Date, NCSPs will move the Court for Preliminary Approval of this Settlement. A reasonable time in advance of submission to the Court, the papers in support of the motion for

12

Preliminary Approval shall be provided by Interim Co-Lead Counsel to Atkore for its review. To the extent that Atkore objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel, and the Parties shall meet and confer to resolve any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for settlement purposes.

5.  Certification of a Settlement Class. As part of the motion for Preliminary Approval of this Settlement, NCSPs shall seek, and Atkore shall take no position with respect to,[2] appointment of Interim Co-Lead Counsel as Settlement Class counsel for purposes of this Settlement and certification in the Action of the following Settlement Class for settlement purposes only:

> All entities and persons who purchased PVC Pipe Systems in the United States between January 1, 2020 through Preliminary Approval (1) directly from a seller that purchased PVC Pipe Systems from a Converter Defendant that was (2) manufactured by a Converter Defendant.
>
> Specifically excluded from the Settlement Class are (1) the following categories of purchasers: (a) All public water systems that purchased PVC Pipe Products for end-use, including in connection with the treatment or supply of water; (b) All public wastewater systems that purchased PVC Pipe Products for end-use, including for the collection, disposal, or treatment of wastewater; (c) All suppliers of public energy or electricity that purchased PVC Pipe Products for end-use, including in connection with the supply of electricity for public consumption; or (d) All purchasers of PVC Pipe Products that purchased from a seller who purchased the product indirectly from a Converter Defendant; (2) Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any Affiliate, legal representative, heir, or assign of any Defendant, (3) any federal government entities, (4) any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any business majority-owned by any such person, and (5) and the following alleged co-

---

[2] By agreeing not to object to the proposed Settlement Class and appointment of Interim Co-Lead Counsel as Settlement Class counsel, Atkore is not waiving any rights, arguments or defenses and Atkore expressly preserves all such rights, arguments and defenses including with respect to any situation where the Settlement Agreement is not approved in all material respects by the Court.

13

conspirators: Core & Main Inc., Ferguson Enterprises, Inc., Fortiline Waterworks, Hajoca Corporation, Porter Pipe & Supply Co., and United Pipe & Steel Corp.

6.      Settlement Class Notices. After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

a.      A reasonable time in advance of submission to the Court for approval, or within a reasonable time in advance of dissemination if Court approval is not required, proposed communications to the Settlement Class regarding the Settlement (including, but not limited to, email notice, detailed notice, and advertisements) shall be provided by Interim Co-Lead Counsel to Atkore for its review. To the extent that Atkore has edits or comments to the class notices, Interim Co-Lead Counsel will consider such edits. Each Party reserves all rights in the event that disputes as to form or contents of class notices cannot be resolved informally, and for the avoidance of doubt, any litigation or disputed motions practice arising between the Parties concerning such disputes shall not be subject to the litigation standstill obligations set forth in Paragraph 3.

b.      Individual notice of this Settlement shall be emailed, or otherwise sent by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

c.      Neither the Settlement Class nor Interim Co-Lead Counsel shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining

14

approval of the Settlement or administering the Settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

d. Atkore shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $325,000.00 to pay settlement notice and administration costs.

e. Interim Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class within twenty-eight (28) Days of Preliminary Approval by the Court of the Settlement Agreement. Any costs of notice actually incurred that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund up to $325,000.00, either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court.

f. The Settlement Class Notice shall include provisions stating that requests to be excluded from the Settlement Class must (i) be submitted only by individuals or entities on behalf of themselves (and their subsidiaries and Affiliates) and must be personally signed by each person or entity requesting exclusion, (ii) comply with the instructions and deadlines set forth in this Settlement Agreement, the notice plan to be approved by the Court, and the Preliminary Approval order, and (iii) include information on the total dollar value of purchases of PVC Pipe Systems during the Settlement Class Period, which will be used to calculate the Opt-Out Percentage as set forth in the

15

Parties' Confidential Letter Agreement. The purchase information required from Settlement Class members who request exclusion shall be comparable to the information required from Settlement Class members who will submit claims for *pro rata* distribution of Settlement Fund in instances where the Settlement Administrator is without information necessary to determine their total purchase of the PVC Pipe Systems.

g. Any Settlement Class member, or Affiliate or assign thereof, who requests to be excluded from the Settlement with respect to an assigned claim must identify the assignor, the assignee, and the total value of purchases of PVC Pipe Systems during the Settlement Class Period that is subject to the assignment, and provide a copy of the assignment agreement.

h. Copies of exclusion requests received by the Settlement Administrator during the exclusion period shall be provided to counsel for Atkore upon reasonable request and in any event within three (3) Days after the deadline to request exclusion from the Settlement. Within three (3) Days of the deadline to request exclusion from the Settlement, the Settlement Administrator shall provide to Atkore a list of all Settlement Class members, including Affiliates and assigns thereof, who have submitted requests to be excluded from the Settlement.

7. <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval and preliminarily certifies the Settlement Class, then NCSPs, through Interim Co-Lead Counsel—in accordance with the schedule set forth in the Court's Preliminary Approval—shall submit to the Court a separate motion for Final Approval of this Settlement

16

Agreement by the Court. No less than seven (7) Days in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to Atkore for its review. To the extent that Atkore objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel, and the Parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and judgment:

    a.    Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and conditions;

    b.    Determining that the Settlement Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all persons entitled to receive notice;

    c.    Dismissing all complaints asserted by Releasing Parties in the Action with prejudice as to the Atkore Released Parties without further costs or fees;

    d.    Discharging and releasing the Atkore Released Parties from all Released Claims;

    e.    Enjoining the Releasing Parties from suing any of the Atkore Released Parties for any of the Released Claims;

f.      Filing a declaration prepared by counsel for Atkore confirming that Atkore has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1711, *et seq.* ("CAFA");

g.      Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

h.      Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Atkore shall be final and appealable and entered forthwith.

The Parties shall use all best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

8.      Escrow Account. The Escrow Account shall be administered by Interim Co-Lead Counsel for the NCSPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9.      Settlement Consideration. In consideration for the release of Released Claims, the dismissal of the Action, and the other material terms and conditions herein, within twenty-one (21) Days after Preliminary Approval is granted by the Court, Atkore will pay or cause to be paid the Settlement Sum into the Escrow Account.

10.     Cooperation. Cooperation by Atkore is a material term of the Settlement Agreement and shall include the following upon Preliminary Approval:

a.      Government Productions. Atkore will produce, electronically, any documents and data already (or that are in the future) produced by Atkore to the U.S. Department of Justice ("DOJ") or any other governmental entity as part of its investigation into alleged antitrust violations in the sale of PVC

18

Pipes and PVC Fittings, any written analysis, interrogatory response, or other written submission (excluding ordinary correspondence related to productions, administrative issues, scheduling matters, or the like) provided to the DOJ or any other governmental entity in connection with its investigation into alleged antitrust violations in the sale of PVC Pipes and PVC Fittings. These productions will be made by the later of the date that is seven (7) Business Days after Preliminary Approval or five (5) Business Days after the materials are produced by Atkore to the DOJ or any other governmental entity.

b. <u>Structured Data</u>. Within fourteen (14) Days after Preliminary Approval, Atkore will produce transactional sales data related to the sale of PVC Pipes and PVC Fittings in the United States from the period January 1, 2018, through December 31, 2025. To the extent it exists in structured form and is reasonably available on active systems, within ninety (90) Days after Preliminary Approval, Atkore will produce cost input data (including PVC resin, energy, labor, and all other material factors contributing to the cost of producing PVC Pipe and PVC Fittings), P&L data, inventory data, and plant capacity and capacity utilization data related to the sale of PVC Pipe and PVC Fittings products in the United States from the period January 1, 2018, through December 31, 2025. Atkore will respond to reasonable follow-up questions regarding the data. In addition, to the extent that Atkore produces transactional data related to the sale of PVC Pipes and PVC Fittings in the United States from earlier periods to other plaintiffs in the Action, either

19

pursuant to discovery in the Action or as a condition of any settlement, and NCSPs do not receive a copy of such data at the time it is produced, Atkore will produce such data to NCSPs within fourteen (14) Days after its production. Atkore will also consider in good faith requests by NCSPs to produce additional transactional data from earlier periods if a subsequent order or decision in the Action unrelated to this Settlement Agreement holds that transactional data from such earlier periods are relevant and proportional to the Action and Atkore is not otherwise required to produce such data pursuant to the terms of this Paragraph. However, in no event will Atkore be required by the terms of this Settlement Agreement to produce transactional data to NCSPs from periods that pre-date the period of transactional data that Atkore produces to other plaintiffs in the Action, either pursuant to discovery in the Action or as a condition of any settlement.

c. Documents from Centralized Sources. To the extent they exist in active systems and repositories and are maintained in centralized non-custodial sources (e.g., Sharepoint locations) maintained by Atkore at its corporate headquarters and/or centralized servers, within ninety (90) Days after Preliminary Approval, Atkore will produce to NCSPs the following go-get non-privileged documents for the period from January 1, 2018 through December 31, 2025, related to PVC Pipes and PVC Fittings sold in the United States:

i.  Profit and loss data for each level (e.g., company-wide, plant-by-plant, etc.) for which it is maintained on as granular a basis as maintained (e.g., daily, weekly, monthly, or quarterly);

ii. Inventory data for each level (e.g., company-wide, plant-by-plant, etc.) for which it is maintained on as granular a basis as maintained (e.g., daily, weekly, monthly, or quarterly);

iii. Plant capacity and capacity utilization, on a plant-by-plant basis;

iv. Investor relations reports related to prices or pricing of PVC Pipes and PVC Fittings; and

v.  Board meeting agendas, books, presentations, and minutes related to prices or pricing of PVC Pipes and PVC Fittings.

d.  Telephone Numbers. Within fourteen (14) Days after Preliminary Approval, Atkore will provide phone numbers and email addresses that Atkore has in its possession for all "C-suite" level leadership at Atkore, as well as Atkore employees with responsibility for pricing, sales and/or marketing of PVC Pipes and PVC Fittings, during the time period January 1, 2018, through December 31, 2025. Atkore will not object to NCSPs' subpoenas to third-party phone carriers for phone records relating to such phone numbers.

e.  Depositions. NCSPs may take a total of up to four (4) depositions, each to last no more than seven (7) hours on the record. DPPs and NCSPs must jointly select at least two of those deponents, and up to two (2) other current or former Atkore employees may be selected separately by NCSPs. Atkore

21

will make any then-current employees noticed for deposition by NCSPs available for deposition prior to the scheduled end of fact discovery. If NCSPs take depositions of fewer than four (4) current employees of Atkore, NCSPs may subpoena for deposition in the Action former employees of Atkore, whom they may select, for depositions pursuant to Federal Rule of Civil Procedure 45 provided that the total number of current and former employees of Atkore noticed for deposition by NCSPs does not exceed four (4) (with at least two (2) of those current or former employees jointly selected by DPPs and NCSPs). For the avoidance of doubt, nothing herein shall require Atkore to produce for deposition former employees who are not within Atkore's control or prohibit Atkore's counsel from representing former employees in connection with such depositions.

f.     Witnesses for Live Testimony at Trial. Atkore will make available up to three (3) then-current employees, whom NCSPs may select, to provide live testimony at trial if requested by NCSPs, assuming those individuals remain employed by Atkore at the time of any trial. This limitation does not apply to prohibit NCSPs from calling former employees of Atkore who could be called at trial either by subpoena or who agree to voluntarily appear at trial; provided, however, that in no event shall NCSPs call more than five (5) total then-current or former employees of Atkore to provide live testimony at trial. For the avoidance of doubt, this Paragraph shall not limit NCSPs' ability to designate deposition testimony of any current or former Atkore witnesses for use at trial. Notwithstanding the foregoing, if DPPs and

22

NCSPs proceed to trial jointly in the same trial, then the limits in this Paragraph shall be applicable to both DPPs and NCSPs collectively (and not cumulatively).

g.  Custodial Documents. NCSPs will identify five (5) current or former employees from Atkore as document custodians. DPPs and NCSPs must jointly select at least three (3) of those custodians, and up two (2) other current or former employees may be selected separately by NCSPs. Atkore will produce non-privileged custodial documents in the possession, custody, or control of Atkore that are responsive to agreed-upon search terms for the period from January 1, 2018, to December 31, 2025, and that are responsive to Plaintiffs' Revised First Set of Requests to Converter Defendants for the Production of Documents and Electronically Stored Information. Such production will further be limited to PVC Pipes and PVC Fittings sold in the United States. NCSPs will propose custodians and search terms to Atkore no later than twenty-eight (28) Days after Preliminary Approval. NCSPs and Atkore will confer in good faith and attempt to reach agreement on custodians and search terms. Any disputes regarding custodians or search terms will be submitted to Miles N. Ruthberg of Phillips ADR (the "Mediator") for final resolution. Atkore will produce custodial documents by the later of sixty (60) Days after the expiration of the stay of discovery in the Action (ECF No. 690) or ninety (90) Days after the search terms are finalized.

23

h.    <u>OPIS Communications</u>. Atkore will produce all communications in any form with Donna Todd, Kathy Hall, Joe Link, Bobby Clark, or Ben Scribner of Oil Price Information Service, LLC located in the custodial files, to the extent within Atkore's possession, custody, or control, of the five (5) current or former employees identified by NCSPs as document custodians pursuant to Paragraph 10(g) above.

i.    <u>Authentication of Documents</u>. Atkore will use reasonable efforts to provide declarations and/or affidavits (or, if specifically required by the Court, testimony) relating to whether up to 150 documents identified by NCSPs are authentic and otherwise admissible under, without limitation, Federal Rule of Evidence 803(6). For the avoidance of doubt, nothing in this provision shall: (1) require Atkore to accept NCSPs' factual characterizations of documents that Atkore has a good faith basis to dispute, such as, by way of example only, assertions that the document reflects an admission by Atkore as a purported co-conspirator of a non-settling Defendant; or (2) be interpreted to enlarge the number of then-current employees that Atkore is required to provide for live trial testimony pursuant to Paragraph 10(f) above. If DPPs and NCSPs are in a joint trial, then they shall collectively have no more than 200 documents pursuant to this Paragraph.

j.    <u>Confidentiality of Cooperation Materials</u>. No cooperation provided by Atkore pursuant to the settlement may be provided to a non-settling Defendant absent the agreement of the Parties or an order of the Court.

24

However, the foregoing shall not be construed to require Atkore to oppose any application to the Court by a non-settling Defendant for documents or information provided by Atkore pursuant to the cooperation terms of this Settlement or to refuse to comply with any discovery request served by a non-settling Defendant for the production of such materials, provided that Atkore will provide notice of such discovery request to NCSPs and allow NCSPs fourteen (14) Days from receipt of notice to intervene and move for an order prohibiting Atkore's production of such materials.

k. <u>Production of Discovery and Cooperation to Other Plaintiffs</u>. To the extent that Atkore responds to discovery, produces documents, or provides proffers or other cooperation to any other plaintiff in the Action, it will provide the same information to NCSPs within five (5) Business Days thereof. For the avoidance of doubt, Atkore will provide NCSPs with no less cooperation than it provides any other plaintiff in the Action pursuant to a settlement including, without limitation, witnesses, declarations, affidavits, proffers, witness interviews, documents and data.

11. <u>Qualified Settlement Fund</u>. The Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and

25

requirements contained in such regulations. It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.4688-1. The Settlement Administrator shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. Atkore shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.     Distribution of Settlement Fund to Settlement Class. Members of the Settlement Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the Settlement Agreement or in connection with any of the Released Claims against the Atkore Released Parties and shall not be entitled to any other payment or relief from the Atkore Released Parties. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. NCSPs, members of the Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Atkore and the other Atkore Released Parties shall not be liable for any costs, fees, or expenses of any of NCSPs' or Interim Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13.     <u>Fee Awards, Costs and Expenses, and Service Awards to NCSPs</u>. Subject to Interim Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel may apply for a fee award, plus expenses and costs incurred, and service awards to the NCSPs to be paid from the Settlement Fund. Atkore shall have no responsibility, financial obligation, or liability for any such fees, costs, expenses, or awards, which shall be paid exclusively from the Settlement Fund. Attorneys' fees and expenses awarded by the Court to Interim Co-Lead Counsel shall be payable from the Settlement Fund immediately upon entry by the Court of both (1) Final Approval and (2) an order awarding such amounts, notwithstanding the existence of any timely filed objections thereto, or potential for appeal or collateral attack on the Settlement Agreement or any part thereof. However, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, any attorneys' fees and expense award is overturned or reduced, or if the Settlement Agreement is terminated or is not approved by the Court, or if there is an appeal and any order approving the Settlement does not become final and binding upon the Settlement Class, then, within thirty (30) Days after receiving such an order from a court of appropriate jurisdiction, each Interim Co-Lead Counsel law firm that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Interim Co-Lead Counsel, as a condition of receiving a portion of the attorneys' fees and expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are jointly and severally liable for any damage, loss, or injury resulting from a breach of this Paragraph and subject to the jurisdiction of the Court for purposes of enforcing the provisions of this Paragraph. Any service awards authorized by the Court may be paid only after Final Judgment. Atkore shall have no

27

responsibility, financial obligation, or liability for any such fees, costs, expenses, or awards, which shall be paid exclusively from the Settlement Fund. If a service award or award of fees, costs, or expenses is vacated, reversed, or reduced subsequent to the disbursement of any such award, the recipient of such award shall within thirty (30) Days after receiving written notice from the Court or a Party of such vacatur, reversal, or reduction, make a refund to the Escrow Account in the amount of such vacatur, reversal, or reduction, plus interest earned (net of any taxes paid on such interest).

14. <u>NCSPs' Release</u>. Upon Final Judgment, the Releasing Parties shall be deemed to have fully, finally and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Atkore Released Parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement or makes a claim upon or participates in the Settlement, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses, or damages arising from or in connection with any act or omission from January 1, 2020 through date of the order granting Preliminary Approval of this Settlement Agreement relating to or referred to in the Action or arising from the factual predicate of the Action (the "Released Claims"). **This release is intended to be and is as broad and comprehensive as the law allows, both as to its subject matter and as to the persons and entities released.** Notwithstanding the above, Released Claims do not include claims (i) asserted against any Defendant other than the Atkore Released Parties; (ii) arising in the ordinary course of business

28

under Article 2 of the Uniform Commercial Code (pertaining to sales), other than claims based in whole or in part on any of the Released Claims; (iii) solely for the purchase of PVC Pipe Systems made directly from the Atkore Released Parties; (iv) by the following categories of purchasers against the Atkore Released Parties: (a) All public water systems that purchased PVC Pipe Products for end-use, including in connection with the treatment or supply of water, (b) All public wastewater systems that purchased PVC Pipe Products for end-use, including for the collection, disposal, or treatment of wastewater, (c) All suppliers of public energy or electricity that purchased PVC Pipe Products for end-use, including in connection with the supply of electricity for public consumption, or (d) All purchasers of PVC Pipe Products that purchased from a seller who purchased the product indirectly from a Converter Defendant; nor (v) any claims wholly unrelated to the allegations in the Action that are based on negligence, breach of contract, bailment, failure to deliver, lost goods, damaged or delayed goods, breach of warranty, or product liability claims, other than claims based in whole or in part on any of the Released Claims. This reservation of claims set forth in (i)-(v) of this Paragraph does not impair or diminish the right of the Atkore Released Parties to assert any and all defenses to such claims, and the Parties agree that all such arguments and defenses are preserved.

15.     Further Release. In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

29

        AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
        OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including without limitation 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR"). Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 14 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual and not a mere recital. For the avoidance of doubt, Releasing Parties also hereby agree that upon Final Judgment, they expressly waive and fully, finally, and forever settle and release any and all claims that would otherwise fall within the definition of Released Claims they may have against any Atkore Released Parties under §§ 17200, *et seq.*, of the California Business and Professions Code or any similar, comparable, or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

16.     Covenant Not to Sue. NCSPs and each Settlement Class member covenant not to sue any of the Atkore Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. Subject to the provisions of Paragraph 10, Releasing Parties further agree that they shall not hereafter initiate or participate (absent a subpoena) in any claim, lawsuit, administrative or other proceeding of any type in any way arising out of, related to, or involving those claims or allegations which were the subject of the Action or that are released hereunder and that implicate the Atkore Released Parties. Nothing in this provision is intended to restrict or prohibit cooperation with any governmental investigation or inquiry. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

17.     Public Comment. The Parties shall not publicly comment on the Parties' Settlement or the Settlement Agreement other than through court filings, as may be required by public reporting obligations, or to announce the fact that a settlement has been reached, and shall refer any member of the press or other person seeking a public comment on the Parties' Settlement or Settlement Agreement to publicly-available filings in the Action and/or the settlement website maintained by the Settlement Administrator if one has been established. In no event will either party disparage the other party in a public comment.

18.     No Admission. This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

19.     Enforceability. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

31

20.     Termination Rights. The Settlement is conditioned upon Preliminary and Final Approval of the Parties' Settlement Agreement, and all terms and conditions thereof, without material changes, material amendments, or material modifications (except to the extent such changes, amendments, or modifications are agreed to in writing by the Parties). Either Party may elect to terminate the Settlement upon written notice to the other Party if the Court refuses to grant Preliminary or Final Approval of the Settlement Agreement or certify the Settlement Class as defined in Paragraph 5, the order(s) granting Preliminary or Final Approval of the Settlement Agreement are substantially modified or reversed, or the Court refuses to enter a Final Judgment in any material respect. In addition, if the Opt-Out Percentage exceeds the Opt-Out Termination Threshold (a number provided for in the Parties' Confidential Letter Agreement, available to the Court *in camera* upon request), then Atkore may, in its sole discretion, elect to terminate the Settlement. For the avoidance of doubt, in no way shall NCSPs have the right to rescind, cancel, or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorney's fees, any costs, or any awards to NCSPs.

21.     Effect of Termination. In the event that this Settlement Agreement is terminated, this Settlement Agreement shall become null and void, any Preliminary Approval entered by the Court and all of its provisions shall be vacated, any certification of a Settlement Class for settlement purposes will be vacated, the Parties will be restored to their respective positions as if no Settlement Agreement had occurred, and any cooperation materials provided to NCSPs by Atkore pursuant to Paragraph 10 will be destroyed or returned to Atkore within seven (7) Days; provided, however, that the confidentiality obligations set forth in Paragraphs 10 and 40 shall survive any such termination. Further, in the event of termination by either Party under the terms of this Settlement Agreement, no term of this Settlement Agreement or any draft thereof, or any

32

aspect of the negotiation, documentation, or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in or used as evidence for any purpose in any proceeding. Interim Co-Lead Counsel shall take all steps necessary to ensure that the escrow agent returns all funds in the Escrow Account to Atkore, plus interest earned (net of any taxes paid on such interest), within 10 Days of written notice of termination, except for any funds from the Settlement Fund used for notice and administration purposes that are nonrefundable pursuant to Paragraph 6(e). None of the foregoing provisions shall be construed to prevent the Parties from agreeing to modify this Settlement Agreement to cure the reasons for any rejection, denial, modification, non-affirmation, or alteration of this Settlement Agreement by the Court or any appellate court.

22. <u>Effect of Disapproval</u>. If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1(m), then this Settlement Agreement may be rescinded, cancelled, or terminated by Atkore or NCSPs on behalf of the Settlement Class. If rescinded, cancelled, or terminated, this Settlement Agreement shall become null and void, and, with the exception of any amounts used for notice purposes that are nonrefundable pursuant to Paragraph 6(e), all other funds in the Escrow Account shall be returned to Atkore, and the Parties' positions shall be returned to the status quo ante as of the Execution Date.

23. <u>Choice of Law and Dispute Resolution</u>. Any disputes relating to this Settlement Agreement or the Confidential Letter Agreement shall be governed by Illinois law without regard

33

to conflicts of law provisions, and any and all disputes regarding this Settlement Agreement or the Confidential Letter Agreement will be mediated in good faith before the Mediator (as defined in Paragraph 10(g)) before any suit, action, proceeding or dispute may be filed in the Court pursuant to Paragraph 24.

24. <u>Consent to Jurisdiction</u>. The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the Confidential Letter Agreement, or the applicability of this Settlement Agreement or the Confidential Letter Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14-16, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14-16 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraphs 14-16 are asserted by any Atkore Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Atkore Released Party shall be entitled to a stay of that suit, action, or proceeding until the mediation required by Paragraph 23 is complete and, if the matter is not resolved by mediation, the Court has entered a Final Judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for

34

any purpose other than enforcement of this Settlement Agreement and the Confidential Letter Agreement.

25.     Class Action Fairness Act. Within ten (10) Days of filing of this Settlement Agreement in court with the abovementioned motion for Preliminary Approval, Atkore, at its sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to CAFA and shall confirm to Interim Co-Lead Counsel via a filing on CM/ECF that such notices have been served.

26.     Costs Relating to Administration. The Atkore Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Fund.

27.     Binding Effect. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class members, the Releasing Parties, and the Atkore Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the NCSPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

28.     Sole Remedy. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Atkore Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Atkore Released Party.

29.    Counsel's Express Authority. Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

30.    Admissibility. It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

31.    Notices. All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to Interim Co-Lead Counsel, NCSPs, the Settlement Class, or any member of the Settlement Class, to:

Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Karin E. Garvey
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Ave., 24th Floor
New York, NY 10169
kgarvey@scott-scott.com

If directed to Atkore, to:

Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
bmiller@mayerbrown.com
mprovance@mayerbrown.com

and

36

Atkore Inc. – Legal Department
16100 South Lathrop Avenue
Harvey, IL 60426
legal@atkore.com

or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph. The Parties shall also provide courtesy copies of all notices by electronic mail.

32.     No Admission. Whether or not Preliminary Approval is granted, Final Judgment is entered, or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission of liability or wrongdoing by any Party or Atkore Released Party. Without making any admission of liability or wrongdoing, Atkore agrees that from the entry of Final Judgment and for a period of two (2) years thereafter, it will not engage in conduct that has been expressly determined in a final, non-appealable judgment entered in the Action to constitute a per se violation of Section 1 of the Sherman Act in a relevant market for PVC Pipe Systems. For the avoidance of doubt, Atkore's obligation to refrain from conduct pursuant to this Paragraph shall arise only after a final judgment as to such conduct has been entered in the Action and has become non-appealable. Further, the Parties agree that any disputes that may arise over Atkore's compliance with the obligations set forth in this Paragraph shall not alter or affect the Releasing Parties' release of claims pursuant to the Settlement, including, without limitation, as set forth in Paragraphs 14-16.

33.     No Rule 11 Violations. The Parties and their counsel agree that they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecuting, defense, or settlement of the Action, and the Judgment and Order of Dismissal shall

37

contain a finding that all Parties and their counsel complied with the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Action.

34. No Unstated Third-Party Beneficiaries. Except as expressly stated in this Settlement Agreement, no provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Atkore Released Party, NCSP, member of the Settlement Class, or Interim Co-Lead Counsel.

35. No Party Is the Drafter. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

36. Amendment and Waiver. This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement. This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means injunction, without the requirement of posting a bond or other security.

37. <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute a single agreement. Electronic signatures (including DocuSign) shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

38. <u>Integrated Agreement</u>. This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

39. <u>Voluntary Settlement</u>. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

40. <u>Confidentiality</u>. The Parties agree to keep the terms of the Settlement Agreement confidential until such time as NCSPs seek Preliminary Approval of the Settlement in the Action. The Parties further agree to continue to maintain the confidentiality of all settlement discussions exchanged in the course of reaching and entering into this Settlement.

41. <u>No Reliance</u>. Each Party acknowledges that (1) it is not entitled to any disclosure and is not relying upon any statement, understanding, representation, expectation, or agreement other than those expressly set forth in this Settlement Agreement; (2) it is relying upon its own

knowledge and investigation, including formal and informal discovery in and relating to the Action, and upon the advice of its own counsel; (3) it knowingly waives any claim that this Settlement Agreement was induced by any misrepresentation or nondisclosure; and (4) it knowingly waives any right to rescind, amend, or avoid this Settlement Agreement based upon presently existing facts, known or unknown.

42. <u>Assignment</u>. NCSPs represent and warrant that they have not assigned any of the Released Claims to any other person or entity. NCSPs and Interim Co-Lead Counsel further represent and warrant that, to their knowledge, no member of the Settlement Class has assigned any of the Released Claims to any other person or entity, and NCSPs and Interim Co-Lead Counsel covenant that they will not encourage, solicit, or assist any member of the Settlement Class in assigning any of the Released Claims.

43. Irrespective of any term in this Settlement Agreement, it is expressly agreed that nothing in this Settlement Agreement prohibits NCSPs and NCSP counsel in ongoing litigation of the Action from establishing a conspiracy under the Sherman Act, including discovering and introducing evidence of Settling Defendant as a co-conspirator in the Action for purposes of prosecuting NCSPs' claims against non-settling Defendants or from effecting the cooperation provisions herein.

44. Irrespective of any term in this Settlement Agreement, the Parties agree that (1) NCSPs and NCSP counsel will not share any material obtained through the cooperation terms set forth in Paragraph 10 with any other plaintiff or plaintiff group in related actions (unless authorized by Atkore), but (2) nothing in this Settlement Agreement otherwise prevents NCSPs from continuing to jointly prosecute this case in accordance with the standstill obligations set forth in Paragraph 3 and utilizing any work product developed in this matter.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

Dated: April 28, 2026

Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
bdclark@locklaw.com

*On behalf of Lockridge Grindal Nauen P.L.L.P. and as Interim Co-Lead Counsel for the Non-Converter Seller Purchaser Class*

_____     Dated: ___April 28, 2026___
Karin E. Garvey
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Ave., 24th Floor
New York, NY 10169
(212) 223-6444


*On behalf of Scott+Scott Attorneys at Law LLP
and as Interim Co-Lead Counsel for the Non-
Converter Seller Purchaser Class*

_____         Dated: April 28, 2026

Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
T: (312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

*Counsel for Atkore Inc., Atkore International, Inc., Atkore Plastic Pipe Corp., Atkore RMCP, Inc., and Allied Tube & Conduit Corporation*

43