# Exhibit 6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *IN RE TURKEY ANTITRUST LITIGATION,* | Civil No. 1:19-cv-08318 |
| This Document Relates To: | Hon. Sunil R. Harjani |
| Direct Purchaser Plaintiff Action | Hon. Keri L. Holleb Hotaling |

**LONG-FORM SETTLEMENT AGREEMENT BETWEEN**
**DIRECT PURCHASER PLAINTIFFS AND CARGILL**

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of January 8, 2025 ("Execution Date"), by and between the Direct Purchaser Plaintiffs ("DPPs"),[1] through Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class (as hereinafter defined), and Cargill, Incorporated and Cargill Meat Solutions Corporation and all of their predecessors, successors, assigns, and Affiliates (as hereinafter defined) (including without limitation any affiliates who are alleged co-conspirators); and any and all past, present, and future parents, owners, subsidiaries, divisions, departments (collectively referred to as "Settling Defendant" or "Cargill"). DPPs, on behalf of themselves and the Settlement Class, and Cargill are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, DPPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Action, among other things, that Cargill participated in a conspiracy — with other Defendants and alleged non-Defendant co-conspirators

---

[1] As used herein, "DPPs" means Maplevale Farms, Inc., and John Gross and Company, Inc.

in the Action— from at least January 1, 2010 to January 1, 2017 to fix, raise, maintain, and stabilize the price of Turkeys (as hereinafter defined);

WHEREAS, Interim Co-Lead Counsel have been appointed by the Court to represent, on an interim basis, the putative class of direct purchasers of Turkeys (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Cargill in any way arising out of or relating in any way to the direct purchase of Turkeys (as hereinafter defined) produced, processed or sold by Cargill or any of the Defendants or their alleged co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations, including mediation with a nationally recognized and highly experienced mediator, on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the settlement;

WHEREAS, DPPs have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of DPPs to enter into this Settlement Agreement with Cargill to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of DPPs and the Settlement Class;

WHEREAS, DPPs and Interim Co-Lead Counsel believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable and adequate compensation for the Settlement Class (as hereinafter defined) to release, settle and discharge their claims that they were overcharged by the alleged anticompetitive conduct of which Cargill is accused;

WHEREAS, Cargill, notwithstanding its beliefs that the claims that are or could be asserted by DPPs against it are without merit, that it has legitimate defenses to any such claims, and that it would ultimately prevail at trial on such claims, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, and thereby put this controversy to rest;

WHEREAS, DPPs, notwithstanding their belief that they would ultimately prevail at trial and establish liability by Cargill, for the conspiracy they have alleged, enter into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation; and

WHEREAS, both Parties wish to preserve all arguments, defenses and responses to all claims in the Action, including any arguments, defenses and responses to any proposed litigation class proposed by DPPs in the event this Settlement does not obtain Final Approval;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the DPPs be settled, compromised, and dismissed on the merits with prejudice as to Cargill subject to Court approval and that Cargill be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

1. <u>General Definitions</u>. The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

    a.     "Action" means the putative class action filed by DPPs in the above-captioned proceeding as well as all putative class action and direct action lawsuits which have been consolidated for pretrial purposes before the Hon. Sunil R. Harjani, in the United States District Court for the Northern District

of Illinois under the title *In re Turkey Antitrust Litigation*, along with any others that are pending or which may be filed based on substantially similar allegations.

b. "Affiliate" means with respect to any person, entity or company, a person, entity, or company that directly or indirectly controls, is controlled by or is under common control with such person, entity or company.

c. "Cargill Released Parties" means, collectively and individually, Cargill (as defined above) together with any and all of Cargill's past, current, and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities, Affiliates, associates, divisions, joint ventures, predecessors, successors and each of their respective past or present, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the foregoing, "Cargill Released Parties" does not include any Defendant other than Cargill (as defined above) named by DPPs in the Action, either explicitly or as a third-party beneficiary.

d. "Complaint" means the DPPs' Third Amended Class Action Complaint (ECF No. 665).

e. "Court" means the United States District Court for the Northern District of Illinois and the Honorable Sunil R. Harjani and the Honorable Keri L. Holleb Hotaling or their successors, or any other court in which the Action is proceeding.

4

f.  "Defendant" means any named defendant in the Action. For the avoidance of doubt, "Defendant" includes any defendants that have been dismissed from the Action.

g.  "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Cargill for the benefit of the Settlement Class.

h.  "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and DPPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

i.  "Fairness Hearing" means a hearing by the Court to determine whether the Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

j.  "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Cargill with prejudice from the Action.

k.  "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) no appeal or petition to seek permission to appeal the Court's Final Approval has been made within the time for filing or noticing any appeal

5

under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) days after entry of the order of Final Approval; or (2) if any timely appeals from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise, or (ii) the date the Final Approval is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

l.    "Interim Co-Lead Counsel" means Lockridge Grindal Nauen PLLP and Hagens Berman Sobol Shapiro LLP as appointed by the Court on an interim basis to represent the putative class of direct purchasers of Turkey.

m.    "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

n.    "Released Claims" shall have the meaning set forth in Paragraph 16 of this Settlement Agreement.

o.    "Releasing Parties" means, collectively and individually, DPPs, the Settlement Class, and all members of the Settlement Class, including the DPPs, each on behalf of themselves and their respective predecessors, successors, and all of their respective past, present and future (i) direct and indirect parents, subsidiaries, associates and Affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents,

6

employees, contractors, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in the Settlement.

p. "Settlement" means the settlement of all claims that are or could have been asserted by DPPs and the Settlement Class in the Action according to the terms set forth in the Settlement Agreement.

q. "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

r. "Settlement Class" means the class defined in Paragraph 5 below, excluding all persons who file a valid request for exclusion from the Settlement.

s. "Settlement Class Notice" means any notice sent to the Settlement Class pursuant to Preliminary Approval or otherwise approved by the Court pursuant to Federal Rule of Civil Procedure 23.

t. "Settlement Class Period" means January 1, 2010, through January 1, 2017.

u. "Settlement Fund" means $32,500,000 (thirty-two million, five hundred thousand U.S. dollars) (the "Settlement Sum"), the amount Cargill shall pay or cause to be paid into a non-reversionary settlement fund. The Settlement Fund will be held in an interest-bearing Escrow Account maintained by an

7

escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below, and shall include any interest accruing with in the interest-bearing Escrow Account. The Settlement Fund will be used to pay all valid settlement claims submitted by Settlement Class members, as well as all settlement notice and administration costs, and all attorneys' fees and any service awards approved by the court. For the avoidance of doubt, the Settlement Sum is the maximum amount that Cargill will be obligated to pay in consideration of the Settlement, and under no circumstances will Cargill be obligated to provide any additional monetary consideration in connection with the Settlement. The Settlement Sum may be reduced under the conditions set forth in Paragraph 11(c), below.

v.    "Turkey" means turkey meat, which may be sold in a variety of forms, including fresh or frozen, ground or parts, and raw or cooked. Turkey includes, but is not limited to: breasts, wings, drums, legs, thighs, tenderloins, necks, tails, gizzards, feet, trim, tenders, mechanically separated turkey ("MST"), ground turkey, and further processed and value added turkey products. Turkey also includes, but is not limited to, products containing turkey meat such as lunch meat, deli meat, sausage, franks, bacon, and corn dogs.

w.    The term "days," when used in this Settlement Agreement to specify a deadline or time period by which some event will occur, shall mean the number of calendar days stated, excluding the day that triggers the period, except that if the last day is a Saturday, Sunday, or legal holiday, the period

shall continue to run until the next day that is not a Saturday, Sunday, or legal holiday.

2.  The Parties' Efforts to Effectuate this Settlement Agreement. The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.  Litigation Standstill.

    a.  DPPs shall cease all litigation activities against Cargill except to the extent expressly authorized in the Settlement Agreement. Cargill and its counsel shall cease all litigation activities against DPPs except to the extent expressly authorized in the Settlement Agreement or as it pertains to any cooperation terms arising under Paragraph 10 hereof. None of the foregoing provisions shall be construed to prohibit DPPs from (1) seeking appropriate discovery from non-settling Defendants or alleged co-conspirators or any other person other than Cargill and (2) seeking to prove the conspiracy alleged in this Action. Once the Parties have executed the Settlement Agreement, Cargill shall cease all litigation activities against the putative DPP class, except to the extent any putative class member has filed or files a direct action complaint in the Action ("Direct Action Plaintiff").[2] No Mayer Brown attorney who has represented Cargill in this Action may

---

[2] For the avoidance of doubt, "Direct Action Plaintiffs" includes all plaintiffs who have filed or may file direct action lawsuits based on factual allegations that are substantially similar to those asserted in the Action, including but not limited to the presently pending actions *Winn-Dixie Stores, Inc., et al. v. Agri Stats, Inc., et al.*, No. 1:21-cv-04131 (N.D. Ill.), *Amory Investments LLC v. Agri Stats, Inc., et al.*, No. 1:21-cv-06600 (N.D. Ill.), *Aramark Food and Support Servs. Grp., Inc. v. Agri Stats, Inc., et al.*, No. 1:23-cv-4404 (N.D. Ill.), and *Carina Ventures LLC v. Agri Stats, Inc., et al.*, No. No. 1:23-cv-16948 (N.D. Ill.).

9

directly assist the Mayer Brown attorneys representing Foster Farms in its defense of claims asserted against it in the putative DPP class action for so long as Mayer Brown represents Cargill in the Action.

b. This litigation standstill precludes Cargill or Cargill's counsel from directly assisting any non-settling Defendant in this Action in opposing the DPPs' motion for class certification, making oral arguments to the presiding court or conducting direct or cross-examination of witnesses on merits- or class-related issues that are solely applicable to DPPs or the putative DPP class (but in no event, will Cargill's attorneys be the attorneys arguing on behalf of multiple Defendants on issues that apply to both DPPs and any other plaintiffs), working with expert witnesses or on expert materials in connection with opinion testimony and disclosures that are specifically and exclusively related to the putative DPP class action, providing documents for use in the putative DPP class action that have not otherwise been produced in discovery, or through the provision of documents, affidavits or declarations for use in the putative DPP class action (not requested by DPPs) or by offering witnesses at trial (not requested by the DPPs) in any trial in which DPPs are the only plaintiffs; provided however, that none of the foregoing provisions shall be construed to limit Cargill's ability to fully defend itself against claims asserted by Direct Action Plaintiffs or any other parties other than DPPs in the Action or from coordinating with non-settling Defendants in the joint defense of such claims, including through the retention and disclosure of joint experts as to such claims. Opinions

10

disclosed by any such experts retained jointly by Cargill and non-settling Defendants will be used affirmatively by Cargill only in the defense of claims asserted by Direct Action Plaintiffs or any other parties other than DPPs in the Action. For the avoidance of doubt, nothing in the foregoing shall limit any Mayer Brown attorney who has represented Cargill in this Action from continuing to represent Cargill against claims asserted by Direct Action Plaintiffs or any other parties other than DPPs in the Action. In the event that Cargill fully settles with all plaintiffs in the Action, Cargill and Cargill's attorneys shall cease any and all litigation activities in this Action (provided, however, that Cargill may reinitiate litigation activities should new plaintiffs assert claims in the Action). The Parties' litigation standstill shall cease in the event that the Settlement is terminated for any reason set forth in the Parties' Settlement Agreement.

4.        Motion for Preliminary Approval. No later than seven (7) days after the Execution Date, DPPs will move the Court for Preliminary Approval of this Settlement. A reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Interim Co-Lead Counsel to Cargill for its review. To the extent that Cargill objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for settlement purposes.

5.      Certification of a Settlement Class. As part of the motion for Preliminary Approval of this Settlement, DPPs shall seek, and Cargill shall take no position with respect to,[3] appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement and certification in the Action of the following Settlement Class for settlement purposes only:

> All persons and entities who directly purchased Turkey from any Defendant or alleged co-conspirator in the United States at any time during the Settlement Class Period. Specifically excluded from the Settlement Class are Defendants and any alleged co-conspirators identified in the Action; the officers, directors or employees of any Defendant or alleged co-conspirator; any entity in which any Defendant or alleged co-conspirator has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant or alleged co-conspirator. Also excluded from the Settlement Class are any federal, state or local governmental entities, any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff, and any juror assigned to the Action.

6.      Settlement Class Notices. After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

       a.      A reasonable time in advance of submission to the Court for approval, or within a reasonable time in advance of dissemination if Court approval is not required, proposed communications to the Settlement Class regarding the Settlement (including, but not limited to, short-form and long-form notices and advertisements) shall be provided by Interim Co-Lead Counsel to Cargill for its review. To the extent that Cargill has edits or comments to the class notices, Interim Co-Lead Counsel will consider such edits. Each Party reserves all rights in the event that disputes as to form or contents of

---

[3] By agreeing not to object to the proposed Settlement Class and appointment of Interim Co-Lead Counsel as Settlement Class Counsel, Cargill is not waiving any rights, arguments or defenses and Cargill expressly preserves all such rights, arguments and defenses including with respect to any situation where the Settlement Agreement is not approved in all material respects by the Court.

12

class notices cannot be resolved informally, and for the avoidance of doubt, any litigation or disputed motions practice arising between the Parties concerning such disputes shall not be subject to the litigation standstill obligations set forth in Paragraph 3 hereof.

b. Individual notice of this Settlement shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

c. Neither the Settlement Class, Interim Co-Lead Counsel, nor Cargill shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the Settlement or administering the Settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

d. Cargill shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $250,000 to pay the costs for notice and for Preliminary Approval, Final Approval, and administration of the claims process for this Settlement Agreement.

e. Interim Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class within twenty-one (21) days of Preliminary Approval by the Court of the Settlement Agreement. Any costs of notice actually incurred that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund up to $250,000, either pursuant to the Parties' Settlement

Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court.

7.    Motion for Final Approval and Entry of Final Judgment. If the Court grants Preliminary Approval and preliminarily certifies the Settlement Class, then DPPs, through Interim Co-Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval — shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to Cargill for its review. To the extent that Cargill objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.    Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and conditions;

b.    Determining that the Settlement Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

14

c.    Dismissing all complaints asserted by Releasing Parties in the Action with prejudice as to Cargill without further costs or fees;

d.    Discharging and releasing the Cargill Released Parties from all Released Claims;

e.    Enjoining the Releasing Parties from suing any of the Cargill Released Parties for any of the Released Claims;

f.    Filing a declaration prepared by counsel for Cargill confirming that Cargill has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1711 *et seq.* ("CAFA");

g.    Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

h.    Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Cargill shall be final and appealable and entered forthwith.

The Parties shall use all best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

8.    <u>Escrow Account</u>. The Escrow Account shall be administered by Interim Co-Lead Counsel for the DPPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9.    <u>Settlement Consideration</u>. In consideration for the release of Released Claims, the dismissal of the Action, and the other material terms and conditions herein, within twenty-one (21) days after Preliminary Approval is granted by the Court, Cargill will pay $32,500,000 (thirty-two million, five hundred thousand U.S. dollars) into the Escrow Account.

15

10.    Cooperation. Cooperation by Cargill is a material term of the Settlement Agreement and shall include the following once the Settlement becomes final:

a.    Notwithstanding anything to the contrary set forth in Paragraph 3, above, once  Final Judgment has occurred, Cargill agrees to use reasonable efforts to provide declarations or affidavits relating to whether documents identified in Appendix A of the parties' Evidentiary Stipulation dated December 20, 2024, satisfy the factual predicates for a record of regularly conducted activity within the meaning of F.R.E. 803(6), if reasonably requested by the DPPs in connection with this Action. Additionally, Cargill agrees to use reasonable efforts to provide comparable declarations or affidavits relating to up to 30 additional documents not on the aforementioned Appendix A.

b.    DPPs will identify up to three (3) then-current employees of Cargill who will appear as witnesses at trial if requested by DPPs, assuming they remain employed at the time of trial. This limitation does not apply to former employees of Cargill who could be called at trial or who agree to voluntarily appear at trial.

11.    Opt-Out Reduction. DPPs have disclosed expert opinion testimony in the Action, which includes an analysis of certain transactional sales data indicating that Cargill's direct Turkey sales during the Settlement Class Period to the Settlement Class totaled approximately $7,830,125,134 ("Cargill Sales Data"). By reference to the Cargill Sales Data, the Parties will enter into a separate confidential letter agreement no later than February 18, 2025, that summarizes the dollar value of each Settlement Class member's direct purchases of Turkey from Cargill during

16

the Settlement Class Period. This letter agreement will be used to calculate the percentage of Cargill's Turkey sales during the Settlement Class Period to Settlement Class members, including Affiliates and assigns thereof, who (1) timely and validly request to be excluded from the Settlement in accordance with the applicable provisions set forth in the Settlement Agreement and order preliminarily approving the Settlement or (2) file a direct action complaint related to this Action before the deadline to request exclusion ("Opt-Out Percentage").

a. Any Settlement Class member, or Affiliate or assign thereof, who requests to be excluded from the Settlement with respect to an assigned claim must identify the assignor, the assignee, and the total value of direct Turkey purchases during the Settlement Class Period from each Defendant or alleged co-conspirator that is subject to the assignment.

b. Within seven (7) days after the deadline to request exclusion from the Settlement, the Settlement Administrator will provide to counsel for the Parties a list of Settlement Class members, including Affiliates or assigns thereof, who timely and validly requested exclusion, along with the information described in Paragraph 11(a), above. The Parties will then meet and confer to determine the Opt-Out Percentage. If the Parties are unable to agree in writing on the Opt-Out Percentage at least fourteen (14) days before the deadline for DPPs to move for Final Approval of the Settlement, the matter will be submitted for confidential mediation by a mediator jointly selected by the Parties. If mediation is unsuccessful, the Opt-Out Percentage shall be determined by way of final, binding, non-appealable decision by an

17

arbitrator jointly selected by the Parties, who will choose between final proposals made by each of the Parties.

c.      If the Opt-Out Percentage exceeds a certain number ("Opt-Out Reduction Threshold") provided for in a separate confidential letter agreement among the Parties, available to the Court under seal upon request ("Confidential Letter Agreement"), then the Settlement Sum shall be reduced by a percentage amount that is equal to the Opt-Out Percentage less the Opt-Out Reduction Threshold. However, DPPs will take from the Settlement Fund the amount reduced from the Settlement Sum in accordance with this Paragraph 11(c) and do the following: (1) refund 75% of the amount to Cargill and (2) deposit 25% of the amount into an Opt-Out Fee and Expense Account, to be paid to DPPs' counsel, upon application and approval by the Court. In the event that the Court does not approve any DPP counsel's payment request, any funds in the Opt-Out Fee and Expense Account shall be returned to the Settlement Fund. By way of example, if the Opt-Out Percentage exceeds the Opt-Out Reduction Threshold by 2%, then the Settlement Sum will be reduced by $650,000 (2% of the original Settlement Sum (the difference between the Opt-Out Reduction Threshold and the Opt-Out Percentage)), $487,500 (75% of the amount by which the Settlement Sum has been reduced) will be refunded to Cargill, and $162,500 (25% of the amount by which the Settlement Sum has been reduced) will be deposited into the Opt-Out Fee and Expense Account.

12. <u>Additional Reduction Term</u>. DPPs have been provided with a copy of the agreement entered into by certain Defendants dated March 28, 2024 (hereinafter referred to as "Defendants' Agreement"). The defined terms in Defendants' Agreement shall have the same meaning when used in this Paragraph 12. DPPs agree that notwithstanding anything to the contrary contained in this Settlement Agreement, DPPs shall reduce the dollar amount collectible from the Parties to the Defendants' Agreement pursuant to any Final Judgment by a percentage equal to the Sharing Percentage of Cargill, calculated pursuant to Section 4 and Exhibits A and B of Defendants' Agreement (as illustrated by the Appendix to Defendants' Agreement) as if Cargill had not settled, had been found liable on the claim, and was a Sharing Party with respect to the Final Judgment. DPPs agree that this undertaking is also for the benefit of any Defendant that is a Party to the Defendants' Agreement and that this undertaking may be enforced by any or all of such Defendants as third party beneficiaries thereof. Any ambiguity in this Paragraph 12 or inconsistency between this Settlement Agreement and the Defendants' Agreement shall be resolved in favor of the Defendants' Agreement, including without limitation, Sections 6.D.1 and 6.D.2 thereof. DPPs further represent and warrant that they have not reached any agreement to provide any portion of the settlement proceeds provided hereunder to any person or entity that is not explicitly identified as a releasor in this Settlement Agreement, except for the proceeds received by DPPs' attorneys for payment of attorneys' fees.

13. <u>Qualified Settlement Fund</u>. The Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of

19

this Paragraph 13, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j))
back to the earliest permitted date. Such elections shall be made in compliance with the
procedures and requirements contained in such regulations. It shall be the responsibility of Interim
Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for
signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All
provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with
the Settlement Funds being a Qualified Settlement Fund within the meaning of Treas. Reg. §
1.4688-1. Interim Co-Lead Counsel shall timely and properly file all information and other tax
returns necessary or advisable with respect to the Settlement Fund (including without limitation
the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes
(including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund
shall be paid out of the Settlement Fund. Cargill shall not be responsible for the filing or payment
of any taxes or expenses connected to the Qualified Settlement Fund.

14.     Distribution of Settlement Fund to Settlement Class. Members of the Settlement
Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the
Settlement Agreement or in connection with any of the Released Claims against the Cargill
Released Parties and shall not be entitled to any other payment or relief from the Cargill Released
Parties. Except as provided by order of the Court, no member of the Settlement Class shall have
any interest in the Settlement Fund or any portion thereof. DPPs, members of the Settlement
Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses
including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement
Agreement to potential members of the Settlement Class. Cargill and the other Cargill Released
Parties shall not be liable for any costs, fees, or expenses of any of DPPs' and Interim Co-Lead

20

Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

15. Fee Awards, Costs and Expenses, and Service Awards to DPPs. Subject to Interim Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel will apply for a fee award, plus expenses and costs incurred, and service awards to the DPPs to be paid from the Settlement Fund. Cargill shall not oppose such a motion. Cargill shall have no responsibility, financial obligation, or liability for any such fees, costs, expenses, or awards, which shall be paid exclusively from the Settlement Sum.

16. Settlement Release. Upon Final Judgment, the Releasing Parties shall be deemed to have fully, finally and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Cargill Released Parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement or makes a claim upon or participates in the Settlement, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses, or damages arising from or in connection with any act or omission through date of the order granting Preliminary Approval of this Settlement Agreement relating to or referred to in the Action or arising from the factual predicate of the Action (the "Released Claims"). Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant other than the Cargill Released Parties nor (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, any negligence,

21

personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim. This reservation of claims set forth in (i) and (ii) of this Paragraph does not impair or diminish the right of the Cargill Released Parties to assert any and all defenses to such claims, and the Parties agree that all such arguments and defenses are preserved.

17.      Further Release. In addition to the provisions of Paragraph 16, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including without limitation 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR"). Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 16, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties

have agreed to release pursuant to Paragraph 16 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual and not a mere recital.

18.     Covenant Not to Sue. DPPs and each Settlement Class Member covenant not to sue any of the Cargill Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

19.     Public Comment. The Parties agree not to publicly comment on the Settlement other than through court filings. In addition, unless the Parties specifically agree otherwise, if any Party or attorney is contacted by a member of the press or other person seeking a public comment on the Settlement, the Party or attorney may only refer the inquiring party to publicly available filings in the Action and/or the settlement website if one has been established.

20.     This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

21.     This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

22.     Termination Rights. The Settlement is conditioned upon Preliminary and Final Approval of the Parties' Settlement Agreement, and all terms and conditions thereof, without material changes, material amendments, or material modifications (except to the extent such changes, amendments, or modifications are agreed to in writing by the Parties). Either Party may

23

elect to terminate the Settlement upon written notice to the other Party if the Court refuses to grant Preliminary or Final Approval of the Settlement Agreement, the order(s) granting Preliminary or Final Approval of the Settlement Agreement are substantially modified or reversed, or the Court refuses to enter a Final Judgment in any material respect. In addition, if the Opt-Out Percentage exceeds the Opt-Out Termination Threshold (a number provided for in the Parties' Confidential Letter Agreement, available to the Court under seal upon request) then Cargill may, in its sole discretion, elect to terminate the Settlement. In the event that the Settlement is terminated by either Party, the Settlement Agreement shall become null and void, any Preliminary Approval entered by the Court and all of its provisions shall be vacated by its own terms, any certification of a Settlement Class for settlement purposes will be vacated, and the Parties will be restored to their respective positions as if no Settlement had occurred. No term of the Settlement Agreement or any draft thereof, or any aspect of the negotiation, documentation, or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence for any purpose in any proceeding.

23. <u>Effect of Disapproval</u>. If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1(k) of this Settlement Agreement, then this Settlement Agreement may be rescinded, cancelled, or terminated by Cargill or DPPs on behalf of the Settlement Class. If rescinded, cancelled, or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes that are nonrefundable pursuant to Paragraph 6(e), in

24

the event the Settlement is not preliminarily or finally approved by the Court, all other funds in the Escrow Account shall be returned to Cargill and the Parties' positions shall be returned to the status quo ante. In no way shall DPPs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorney's fees, any costs, or any awards to DPPs.

24.    Choice of Law and Dispute Resolution. Any disputes relating to this Settlement Agreement or the Confidential Letter Agreement shall be governed by Illinois law without regard to conflicts of law provisions, and any and all disputes regarding this Settlement Agreement or the Confidential Letter Agreement will be mediated in good faith before a mutually agreed-upon mediator before any suit, action, proceeding or dispute may be filed in the Court pursuant to Paragraph 25 below.

25.    Consent to Jurisdiction. The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the Confidential Letter Agreement, or the applicability of this Settlement Agreement or the Confidential Letter Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 16-18, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 16-18 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraphs 16-18 are asserted by any Cargill Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Cargill Released Party shall be entitled to a stay of that

25

suit, action, or proceeding until the mediation required by Paragraph 24 is complete and, if the matter is not resolved by mediation, the Court has entered a Final Judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement and the Confidential Letter Agreement.

26. Class Action Fairness Act. Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for Preliminary Approval, Cargill, at its sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to CAFA, and shall confirm to DPPs' Interim Co-Lead Counsel that such notices have been served.

27. Costs Relating to Administration. The Cargill Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Fund.

28. Binding Effect. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Cargill Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the DPPs shall be binding upon all members and potential

26

members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

29.     Sole Remedy. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Cargill Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Cargill Released Party.

30.     Counsel's Express Authority. Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

31.     It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

32.     Notices. All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to DPPs, the Settlement Class, or any member of the Settlement Class, to:

Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
shanas@hbsslaw.com

27

If directed to the Cargill, to:

Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
bmiller@mayerbrown.com
mprovance@mayerbrown.com

and

Kate Hibbard
Managing Associate General Counsel, Law
Cargill, Incorporated
15407 McGinty Road West
Wayzata, MN 55391
kate_hibbard@cargill.com

or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph. The Parties shall also provide courtesy copies of all notices by electronic mail.

33.     No Admission. Whether or not Preliminary Approval is granted, Final Judgment is entered, or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission of liability or wrongdoing by any Party or Cargill Released Party.

34.     No Unstated Third-Party Beneficiaries. Except as expressly stated in this Settlement Agreement, no provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Cargill Released Party, DPP, member of the Settlement Class, or Interim Co-Lead Counsel.

35.     No Party is the Drafter. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case

28

law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

36.    <u>Amendment and Waiver</u>. This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement. This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means injunction, without the requirement of posting a bond or other security.

37.    <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

38.    <u>Integrated Agreement</u>. This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. The Parties agree that this Settlement Agreement may

be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

39.     Voluntary Settlement. The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

40.     Confidentiality. The Parties agree to keep the terms of the Settlement Agreement confidential until such time as DPPs seek Preliminary Approval of the Settlement in the Action (except to the extent Cargill is required by the terms of Defendants' Agreement to share the terms of the Settlement with non-settling Defendants on a confidential basis). The Parties further agree to continue to maintain the confidentiality of all settlement discussions communications exchanged in the course of reaching and entering into this Settlement.

41.     Irrespective of any term in this Settlement Agreement, it is expressly agreed that nothing in this Settlement Agreement prohibits DPPs and DPP counsel in ongoing litigation of the Action from establishing a conspiracy under the Sherman Act, including discovering and introducing evidence of Settling Defendant as a co-conspirator in the Action for purposes of prosecuting DPPs' claims against non-settling Defendants or from effecting the cooperation provisions herein.

42.     Irrespective of any term in this Settlement Agreement, the Parties agree that (1) DPPs and DPP counsel will not share any material obtained through the cooperation terms set forth in Paragraph 10 of this Settlement Agreement with any other plaintiff or plaintiff group in related actions (unless authorized by Cargill) but (2) nothing in this Settlement Agreement otherwise

30

prevents DPPs from continuing to jointly prosecute this case and utilizing any work product developed in this matter.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

_____

Brian D. Clark (*Pro Hac Vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
bdclark@locklaw.com

*Interim Co-Lead Counsel for the Direct
Purchaser Plaintiff Class*

Dated: January 8, 2025

32

_d. Scarlett_

_____

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
T: (510) 725-3000
F: (510) 725-3001
shanas@hbsslaw.com


*Interim Co-Lead Counsel for the Direct*
*Purchaser Plaintiff Class*

January 8, 2025

Dated: _____

Dated: January 8, 2025

Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
T: (312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

X. Kevin Zhao
Davida S. McGhee
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
T: (612) 373-8346
kzhao@greeneespel.com
dwilliams@greeneespel.com

*Counsel for Cargill, Incorporated and Cargill
Meat Solutions Corporation*

34