**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| *In re PVC Pipe Antitrust Litigation* | Case No. 24-cv-07639 |
| ———————————— | Hon. LaShonda A. Hunt |
| THIS DOCUMENT RELATES TO: | |
| *The Direct Purchaser Plaintiff Class* | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH
DEFENDANT OIL PRICE INFORMATION SERVICE, LLC ("OPIS")**

## I.      INTRODUCTION

Direct Purchaser Plaintiffs Bill Wagner & Son, Inc., Vitolite Electric Sales Co., and Hodges Supply Company, on behalf of themselves and the DPP Settlement Class[1] ("DPPs") hereby seek final approval of the Settlement with Defendant OPIS (along with the DPPs, collectively referred to here as the "Parties"). Pursuant to Court order, the Parties engaged in a massive notice program to the DPP Settlement Class including direct mail notice to almost 15,000 potential members of the DPP Settlement Class and a thorough digital campaign.[2]  After the extensive notice program, no member of the DPP Settlement Class (or any other entity) has objected to the settlement, which was the first settlement achieved by DPPs, and provides $3 million in cash and substantial cooperation from OPIS. The cooperation from OPIS continues to aid DPPs' prosecution of their claims against the Converter Defendants and was instrumental in assisting the DPPs with achieving proposed settlements with the Westlake and Atkore Defendants, both of which involve significant cash and cooperation benefits for class members.  *See* 06/06/25 Declaration of Robert N. Kaplan in Support of Direct Purchaser Plaintiff Bill Wagner & Son, Inc.'s Motion – Unopposed by Settling Defendant [OPIS] – for Preliminary Approval of Settlement with Defendant OPIS and Related Relief, ECF No. 304, at ¶¶ 7 – 11 ("Kaplan Prelim. App. Decl.").

The reaction of the members of the DPP Settlement Class has been entirely positive: in addition to the absence of any objections, JND Legal Administration, LLC ("JND"), the Court-appointed Settlement Administrator, has received only three requests for exclusion, and two of those three requests were submitted on behalf of related entities. Taken together, the lack of

---

[1] Unless stated otherwise, all capitalized words or terms herein are those defined and used in the Parties' Settlement Agreement.

[2] *See* 05/19/26 Declaration of Gina Intrepido-Bowden Regarding Settlement Notice Plan Implementation (the "Intrepido-Bowden Decl."), at ¶ 7.

objections and the real value that the OPIS settlement provides to DPP class members show that the Settlement with OPIS is a fair, reasonable, and adequate settlement reached at arm's-length, and should be granted final approval.

## II. LITIGATION BACKGROUND

This is an antitrust class action against the country's largest producers of PVC Pipe. DPPs allege that the Converter Defendants and OPIS conspired to fix, raise, elevate, maintain or stabilize prices of PVC Pipe sold to direct purchasers in the United States. DPP Bill Wagner & Son, Inc. filed the first direct-purchaser class action complaint on September 26, 2024 (ECF No. 1 in *Bill Wagner & Son, Inc. v. Atkore, Inc. et al.*, Case No. 24-cv-8991). DPPs allege that Defendants implemented their conspiracy in various ways, including the sharing of competitively sensitive pricing and customer information, both directly and through OPIS as an intermediary. OPIS published until November, 2024 the (now-discontinued) *PetroChem Wire PVC & Pipe Weekly* (the "OPIS Report").

On October 17, 2024, the Court appointed Kaplan Fox as Lead Counsel, and Sperling Kenny Nachwalter, LLP ("Sperling") as Liaison Counsel, for the proposed DPP Class (ECF No. 163), after which DPPs filed the first amended complaint (ECF No. 184 (public version, filed Oct. 30, 2024)).

## III. SUMMARY OF THE SETTLEMENT NEGOTIATIONS AND TERMS

After more than two months of extensive and contentious arms-length negotiations between Settlement Class Counsel and counsel for OPIS, DPPs agreed to settle with OPIS in return for its substantial non-monetary cooperation and its agreement to pay $3 million into a Settlement Fund (including up to $250,000 in non-refundable class notice and administration costs) for distribution at a future date to eligible members of the DPP Settlement Class who did not request exclusion from that class. *See* Settlement Agreement, ¶¶ 1(v), 9, 10. In consideration, DPPs and

the proposed DPP Settlement Class agreed to release claims against OPIS related to the PVC Pipe Market which were, or could have been, asserted in this litigation. *Id.*, at ¶ 14. This release, which is incorporated into the [Proposed] Final Approval Order and Final Judgment submitted concurrently with this motion, does not extend to any other Defendants.

OPIS' extensive cooperation gave the DPP Class significant non-monetary compensation that was, and will continue to be,[3] of substantial value to the DPP Settlement Class in their continued prosecution of their claims against the Converter Defendants. Pursuant to the Settlement Agreement, OPIS provided, through its outside counsel, roughly seven hours of attorney proffers regarding the material facts regarding the alleged antitrust violations. *Id.*, ¶ 10(a). OPIS also made several productions to DPP Settlement Counsel of all documents subpoenaed by and produced to the grand jury empaneled by the U.S. Department of Justice, Antitrust Division, as well as OPIS' responses to a state antitrust enforcer's civil investigative demand. *Id.*, at ¶¶ 9(d), 10(d). DPPs used the OPIS cooperation materials in drafting the Second Consolidated Amended Complaint (ECF No. 391 (public version), filed Aug. 18, 2025).

## IV. THE SETTLEMENT SATISFIES THE STANDARDS FOR FINAL APPROVAL

There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884,

---

[3] With respect to its cooperation at later stages of the litigation, OPIS is required under the Settlement Agreement to use reasonable efforts to make available for depositions up to three current or former OPIS employees – including Donna Todd, the longtime editor of the OPIS Report – as well as up to three current or former OPIS employees to testify live at DPPs' trial. Settlement Agreement, ¶¶ 10(b)-(c). OPIS will provide DPPs with declarations, affidavits and/or testimony to establish the authenticity and admissibility of its documents, which will save the DPP Settlement Class time and streamline their trial preparation against the remaining Defendants. *Id.*, at ¶ 9(e).

888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Any dismissal, compromise, or settlement of a class action is subject to court approval. The "court may approve a class action settlement if: (1) it is able to certify the settlement class; (2) the class was provided adequate notice and a public hearing; and (3) it determines that the settlement is 'fair, reasonable, and adequate.'" *In re TikTok, Inc. Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 921 (N.D. Ill. 2022) (quoting Fed. R. Civ. P. 23(e)(1)-(2)). This procedure safeguards class members' due process rights, and enables the Court to fulfill its role as the guardian of the class's interests.

### A.    The DPP Settlement Class Satisfies Rule 23(e)(1)(B)

Fed. R. Civ. P. 23(e)(1)(B)(ii) states that a Court may grant final approval of a class action settlement if the proposed settlement class can be certified for purposes of issuing a judgment on the proposed settlement. The DPP Settlement Class satisfies Rule 23(e)(1)(B) because, as to the requirements of Rule 23(a) certification for settlement purposes only, the following is true: (1) the customer lists provided to JND by the Converter Defendants pursuant to the Preliminary Approval Order shows that the DPP Settlement Class exceeds 14,000 members, making joinder of all of them impracticable, *see* Intrepido-Bowden Decl., at ¶ 13; (2) the claims of the representatives of the DPP Settlement Class are typical in that their claims arise from the same alleged illegal

4

anticompetitive conduct, are based on the same alleged theories, and require the same kinds of evidence to prove those theories, *see* Memorandum of Law in Support of Direct Purchaser Plaintiff Bill Wagner & Son, Inc.'s Motion – Unopposed by Settling Defendant [OPIS] – for Preliminary Approval of Settlement with Defendant OPIS and Related Relief (ECF No. 303, filed June 6, 2025 (the "DPP Prelim. App. Brief")), at 11, which is incorporated herein; and the representatives of the DPP Settlement Class share with all members of that class the same overriding interest in obtaining the largest possible cash recovery and most extensive cooperation as possible to diligently pursue the case against the Converter Defendants, *id.*, at 6 – 8.

With respect to Rule 23(b)(3), in turn, questions of law and fact common to the DPP Settlement Class predominate over any questions affecting any individual DPP Settlement Class member, and a class action on behalf of that class is superior to other available means of settling and disposing of their claims. *See id.*, at 8-13.

### B.     The DPP Settlement Class Was Given Adequate Notice

The Court-approved Notice Plan related to the Settlement has been successfully implemented and DPP Settlement Class members have been notified of the Settlement through both direct (mailed) notice and summary (digital) notice.[4] When a proposed class action settlement is presented for court approval, the Federal Rules require "the best notice that is practicable under the circumstances," and that certain specifically identified items in the notice be "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). A settlement

---

[4] On June 16, 2025, at the request of OPIS and pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), JND sent via U.S. Mail or Federal Express notice of DPPs' proposed settlement with OPIS to each appropriate Federal and each appropriate State official. *See* Defendant Oil Price Information Service, LLC's Notice of Compliance with 28 U.S.C. § 1715, ECF No. 335 (filed June 17, 2025). JND also posted supplemental CAFA materials to the CAFA website maintained for this case. Intrepido-Bowden Decl., at ¶ 10.

notice is a summary, not a complete source, of information. *See*, *e.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988); *Mangone v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001).

Settlement Class Counsel, through JND, followed the notice plan set out in ¶¶ 6-8 of the Preliminary Approval Order. That plan relied primarily on direct (*i.e.*, mailed) notice to potential members of the DPP Settlement Class, which was designed to alert DPP Settlement Class members (identified from the Converter Defendants' customer lists) in concise, plain-language text, to: the terms of the proposed settlement; that distribution of any proceeds of the Settlement would occur in the future; how and when to object or exclude themselves from the Settlement and the consequences of doing so; and the binding effect of a final judgment on members of the DPP Settlement Class. *See* Intrepido-Bowden Decl., at ¶¶ 11-16. The direct-notice program had an overall deliverability rate (*i.e.*, the percentage of identifiable potential members of the DPP Settlement Class who received the Long Form Notice) at 89.8%. *Id.*, at ¶ 16.

JND's direct-notice effort was supplemented by an extensive digital-notice campaign designed to target likely members of the DPP Settlement Class, giving a concise summary of the Settlement's key points, and directing readers to both the settlement website (containing all relevant court filings, including the public versions of DPPs' operative complaint and the motion to dismiss briefing, along with the preliminary approval order and related filings) and a toll-free number where readers could get more detailed information. *See* Intrepido-Bowden Decl., at ¶¶ 17-26.

The combination of direct and summary notice implemented by JND here maximized the likelihood of potential members of the DPP Settlement Class getting actual notice, and is

6

commonly used in class actions like this one. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting Fed. R. Civ. P. 23(c)(2)); *City of Greenville v. Syngenta Crop Prot., Inc.*, 2012 WL 1948153, at *4 (S.D. Ill. May 30, 2012) (same); Fed. R. Civ. P. 23(c)(2)(B). It constituted valid, due, and sufficient notice to DPP Settlement Class members, and was the best notice practicable under the circumstances.

**C.**      **The Settlement with OPIS Is Fair, Reasonable and Adequate and Should be Finally Approved and the Final Judgement Should be Entered**

A class action settlement may be finally approved under Fed. R. Civ. P 23(e) if it is "fair, reasonable and adequate" after analysis of the factors outlined in Rule 23(e)(2). *See*, *e.g.*, *Am. Int'l. Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28, 2012). In applying Rule 23(e)(2), a court must consider whether and to what extent: (1) the class representatives and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see*, *e.g.*, *T.K. v. Bytedance Tech. Co.*, 2022 WL 888943, at *11-16 (N.D. Ill. Mar. 25, 2022); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019). The facts here satisfy all four pre-requisites for fairness under Rule 23(e).

**Adequacy of Representation.** The principal question here is "the actual performance of counsel acting on behalf of the class," *Bytedance*, 2022 WL 888943, at *11, which relates to whether class counsel "has extensive experience with class action litigation." *Id.* Settlement Class Counsel and the Class Representatives have zealously represented the DPP Settlement Class by: conducting a thorough pre-filing investigation of the structure and economics of the PVC Pipe market, the Converter Defendants, and OPIS' role in the alleged conspiracy; negotiating not only the Settlement with OPIS, but additional proposed settlements with two of the Converter

7

Defendants; synthesizing hours of proffers given by OPIS' counsel and tens of thousands of pages of OPIS documents produced pursuant to the Settlement, along with working with economic consultants, to draft and file an amended complaint filled with detailed allegations of the conspiracy; opposed the Converter Defendants' numerous motions to dismiss; drafting and serving discovery for both parties and non-parties; meeting and conferring with numerous Defendants regarding a variety of structured data issues; and preparing for, attending and arguing at multiple hearings and case-management conferences.

**Arm's Length Negotiations.** The Settlement was the product of over two months of often contentious, arm's-length negotiations with OPIS' experienced counsel, which resulted in an agreement that, in addition to millions of dollars in cash for the DPP Settlement Class, included extensive cooperation that has significantly strengthened DPPs' claims at a very early stage of the litigation. *See* Kaplan Prelim. App. Decl., at ¶¶ 4-13.

**Equitable Treatment of Class Members Relative to Each Other.** "Generally, a settlement that provides for *pro rata* shares to each class member will meet this standard." *Bytedance*, 2022 WL 888943, at \*15. As the Court-approved notice advised potential members of the DPP Settlement Class, proceeds from this Settlement will not be distributed until a later time. *See* Intrepido-Bowden Decl., at ¶ 33. However, when such a distribution is made, it will be done on a *pro rata* basis based on DPP Settlement Class members' purchases from the Converter Defendants.

**Adequacy of Relief.** The OPIS cooperation has proved to be invaluable: not only was it used to draft the Second Amended Complaint, but DPPs believe that it was instrumental in DPPs entering into favorable proposed settlements with the Westlake Defendants ($67 million), and the

8

Atkore Defendants ($72.5 million). [5]

### D. The Settlement Satisfies the Seventh Circuit's Factors Under Rule 23(e)(2).

The Seventh Circuit has set forth several factors – some of which overlap with the factors outlined above – for assessing whether a class settlement in fair, reasonable and adequate. *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d, at 1198-99. In evaluating the fairness of a proposed class action settlement, courts in the Seventh Circuit typically consider the following factors: (1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (2) an assessment of the likely complexity, length and expense of the litigation; (3) the reaction of the class members; (4) the opinion of competent counsel; and, (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *See Isby*, 75 F.3d at 1198-99. In addition, there is an initial presumption that a proposed class action settlement is fair, reasonable and adequate when the settlement was the result of arm's-length negotiations. *See* 4 Newberg on Class Actions, § 13:43 Presumptions Governing Approval Process—Generally (5th ed.); *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, *L.L.P*., 212 F.R.D. 400, 410 (E.D. Wis. 2002).

#### 1. The Strength of DPPs' Case Compared to the Benefits of the Proposed Settlement Supports Approval of the Settlement

As the Seventh Circuit recognized, "[T]he first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *See Isby*, 75 F.3d at 1198-99. Settlement Class Counsel's assessment is

---

[5] The Court has preliminarily approved DPPs' proposed settlements with Westlake (ECF No. 710, entered on April 24, 2026) and Atkore (ECF No. 734, entered on May 14, 2026). These settlements collectively amount to nearly $140 million in cash recovery to the DPP Settlement Class along with significant cooperation from each of Westlake and Atkore in DPPs' continued prosecution of their case against the remaining Converter Defendants.

that the benefits of the Settlement – extensive cooperation in the form of detailed attorney proffers and production of documents OPIS produced to the Justice Department – considerably strengthened DPPs' case against the Converter Defendants. The value of OPIS's cooperation to the DPPs is reflected in the substantially enhanced allegations set forth in DPPs' Second Amended Complaint. *See* ECF No. 391 (public version), filed Aug. 18, 2025; *see also* Kaplan Prelim. App. Decl., at ¶ 13; ECF No. 714, at 3-4 (DPPs' memorandum in support of preliminary approval of the Atkore settlement explaining that "even though this case is at an early stage in terms of discovery, at the time DPPs were negotiating with Atkore, they were aware of key facts learned from the OPIS production"); ECF No. 698, at 3 (same with respect to the DPP-Westlake settlement).

### 2. Continuing Litigation Against OPIS Would Have Resulted in Expenses, Delay and Administrative Burdens on the Class

This factor, in this case, fits courts' common observation that "[a]ntitrust cases are particularly complex and risky," *Kleen Prods. LLC v. Int'l. Paper Co.*, 2017 WL 5247928, at * 5 (N.D. Ill. Oct. 17, 2017), such that "settlement in a complex antitrust case like this is far from a foregone conclusion." *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021).

Continued litigation against OPIS would have involved significant expenses and protracted legal battles up to and including a potential trial. Therefore, the complexity, length and expense of further litigation against OPIS, which the Settlement will eliminate, also favor approval. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (granting final approval and noting that "the present lawsuit will come to an end and Class members will realize both immediate and future benefits as a result"); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1008 (E.D. Wis. 2010) ("The 'complexity, length and expense of further litigation' factor strongly favors this settlement….").

3.    **No Class Member Objected to the Proposed Settlement**

The absence of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l. Grp., Inc.*, 2012 WL 651727, at *6. That is the case here, where the unanimous and positive reaction of Settlement Class members to the Settlement supports final approval. Pursuant to the Court's Preliminary Approval Order, 14,859 hard-copy notices were sent directly by U.S. mail to potential members of the DPP Settlement Class identified by the customer lists the Converter Defendants provided to JND, *see* Intrepido-Bowden Decl., at ¶¶ 11-16. In addition, the digital notice campaign resulted in in 4,552,849 impressions and 26,984 website sessions between January 15, 2026 and February 11, 2026. *Id.*, at ¶¶ 17-26.

After this outreach, no Class member objected to the Settlement, and only three of the nearly 15,000 members of the DPP Settlement Class requested exclusion, two of which were related entities. *id.*, at ¶¶ 29-30.  This positive response of the DPP Settlement Class supports a finding that the Settlement is fair, reasonable, and adequate. *See Schulte*, 805 F. Supp. 2d at 586. In fact, the absence of objections to the Settlement especially favor approval when, as here, "much of the class consists of sophisticated business entities." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *7 (N.D. Cal. Dec. 17, 2015) (citing *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004)).

4.    **DPP Settlement Class Counsel Believes the Settlement is in the Best Interest of the DPP Settlement Class**

The Court in *Isby* noted that, in deciding whether to approve a proposed settlement, the court should consider the opinion of competent counsel. *See Isby*, 75 F.3d at 1198-99; *see also Kleen*, 2017 WL 5247928, at *3 ("The Settlement was negotiated by highly skilled and experienced antitrust and class action lawyers, who have held leadership positions in some of the

11

largest class actions around the country.") Here, DPP Settlement Class Counsel, and Court-appointed Liaison Counsel (who have both individually and together handled several major antitrust class actions, including through trial, in this District and within the Seventh Circuit)[6] fully endorse the proposed Settlement, based on their extensive experience and deep familiarity with this case. This is yet another factor that supports final approval.

### 5. The Stage of the Proceedings and Amount of Discovery Support Final Approval

The stage of the case strongly supports granting final approval to the Settlement. The case is at a relatively early stage with motions to dismiss pending. The OPIS cooperation has provided substantial document production before there has been formal discovery in the case. Therefore, the procedural posture and status of the case supports granting final approval to the Settlement.

## V. CONCLUSION

For these reasons, Settlement Class Counsel respectfully requests that the Court grant final approval to OPIS Settlement Agreement, and enter the [Proposed] Final Approval Order and Final Judgment.

Dated: May 20, 2026

Respectfully submitted,

*/s/ Robert N. Kaplan*

Robert N. Kaplan
Elana Katcher
Matthew P. McCahill
Carihanna Morrison
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, New York 10022
Tel: (212) 687-1980
rkaplan@kaplanfox.com
ekatcher@kaplanfox.com
mmccahill@kaplanfox.com
cmorrison@kaplanfox.com

---

[6] *See* Kaplan Prelim. App. Decl., at ¶¶ 2, 13.

Gary L. Specks
**KAPLAN FOX & KILSHEIMER LLP**
681 Prestwick Lane
Wheeling, Illinois 60090
Tel: (847) 831-1585
gspecks@kaplanfox.com

*Lead Counsel for the Direct Purchaser Plaintiff Class*

Joseph M. Vanek
David Germaine
John P. Bjork
Allison G. Margolies
**SPERLING KENNY NACHWALTER, LLC**
321 N. Clark Street, Suite 2500
Chicago, Illinois 60654
Tel: (312) 641-3200
jvanek@sperlingkenny.com
dgermaine@sperlingkenny.com
jbjork@sperlingkenny.com
amargolies@sperlingkenny.com

Phillip F. Cramer
**SPERLING KENNY NACHWALTER, LLC**
1221 Broadway, Suite 2140
Nashville, Tenn. 37212
Tel: (312) 641-3200
pcramer@sperlingkenny.com

James Almon
**SPERLING KENNY NACHWALTER, LLC**
1616-D Metropolitan Cir.
Tallahassee, Florida 32308
Tel: (850) 942-4334
jalmon@sperlingkenny.com

*Liaison Counsel for the Direct Purchaser Plaintiff Class*

Dianne M. Nast
Joseph Roda
Michael Ford
Michele Burkholder
Michael Tarringer

13

**NASTLAW LLC**
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Tel: (215) 923-9300
dnast@nastlaw.com
jnroda@nastlaw.com
mford@nastlaw.com
mburkholder@nastlaw.com
mtarringer@nastlaw.com

Joshua H. Grabar
Julia Varano
**GRABAR LAW OFFICE**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (267) 507-6085
jgrabar@grabarlaw.com
jvarano@grabarlaw.com

Linda P. Nussbaum
Meghan J. Talbot
**NUSSBAUM LAW GROUP, P.C.**
1133 Avenue of the Americas, 31st Floor
New York, NY 10036
Tel: (917) 438-9189
lnussbaum@nussbaumpc.com
mtalbot@nussbaumpc.com

Roberta D. Liebenberg
Jeffrey B. Gittleman
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Tel: (215) 567-6565
rliebenberg@finekaplan.com
jgittleman@finekaplan.com

Eric R. Lifvendahl
**LIFVENDAHL LAW, LLC**
265 Latrobe Avenue
Northfield, IL 60093
Tel: (847) 830-7002
eric@liflaw.com

14

Richard L. Coffman
**THE COFFMAN LAW FIRM**
3355 W. Alabama Street, Suite 240
Houston, Texas 77098
Tel: (713) 528-6700
rcoffman@coffmanlawfirm.com

Mitchell A. Toups
**Weller, Green, Toups & Terrell, LLP**
P.O. Box 350 (490 Park St., Suite 111 - 77701)
Beaumont, TX 77704
Tel: (409) 832-1800
matoups@wgttlaw.com

*Counsel for the Direct Purchaser Plaintiff Class*

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 20, 2026 I caused true and correct copies of this brief and its accompanying declarations and exhibits to be served via the Court's CM/ECF system on all counsel of record.

*/s/ Robert N. Kaplan*
Robert N. Kaplan
